IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>ANGIODYNAMICS, INC,<br><br>    Defendant. | Civil Action No. 1:04-CV-10019 (RGS) |

| |
|---|
| ANGIODYNAMICS, INC.,<br><br>    Counterclaim Plaintiff,<br><br>v.<br><br>ENDOLASER ASSOCIATES, LLC,<br><br>    Counterclaim Defendant. |

**ENDOLASER'S OPPOSITION TO ANGIODYNAMICS'**
**MOTION FOR LEAVE TO AMEND ITS COUNTERCLAIMS**

Michael A. Albert (BBO #558566)
James J. Foster (BBO #553285)
Michael N. Rader (BBO #646990)
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
(617) 720-3500

COUNSEL FOR ENDOLASER ASSOCIATES, LLC

TABLE OF CONTENTS

I.   BACKGROUND ............................................................................................................1

    A.   Endolaser's Transfer Of All Its Substantial
        Rights In The '777 Patent To Diomed ...................................................................1

    B.   Procedural Posture Of AngioDynamics' Motion For Leave To Amend .................2

II.  ARGUMENT ................................................................................................................2

    A.   Standards Governing Leave To Amend ..................................................................2

        1.   Leave To Amend Should Be Denied For Futile Claims ..............................2

        2.   Boilerplate Antitrust Claims Lacking Factual Predicates Are Futile ...........4

    B.   Leave To Assert The New Counterclaims Against
        Endolaser Should Be Denied Because It Would Be Futile .....................................6

        1.   The Count For Declaratory Judgment Of Patent Unenforceability
            Is Futile Because Endolaser Possesses No Substantial Rights
            In The Patent-In-Suit And Never Threatened AngioDynamics ...................6

        2.   The Antitrust Count Is Futile Because It Does Not
            Allege Facts Supporting A Claim Against
            Endolaser Upon Which Relief Can Be Granted .........................................7

        3.   The "Patent Misuse" Count Is Futile Because It
            Is An Affirmative Defense, Not A Claim For Relief ..................................8

        4.   The Chapter 93A Count Is Futile Because It Does Not Allege That
            Endolaser Acted "Primarily And Substantially In Massachusetts" .............9

III. CONCLUSION ...........................................................................................................11

By its motion for leave to amend, AngioDynamics seeks to add several counterclaims not only against Diomed – the plaintiff and real party in interest – but also against Endolaser, an entity that (as Diomed's pending motion to dismiss[1] establishes) holds nothing but nominal title to the patent-in-suit, having transferred all of its substantial rights in that patent to Diomed.

AngioDynamics' motion should be denied because its new counterclaims against Endolaser (like its original ones) would be futile. None of them state a claim against Endolaser upon which relief can be granted.

## I.   BACKGROUND

### A.   Endolaser's Transfer Of All Its Substantial Rights In The '777 Patent To Diomed

U.S. Patent No. 6,398,777 ("the '777 patent," Ex. A to Docket #1), directed to endovascular laser treatment technology, issued on June 4, 2002 to the following five inventors: Robert J. Min, Luis Navarro, Nestor Navarro, Carlos Bone Salat and Joaquina Fructuoso Gomez.

While the '777 patent application was pending, four of the named inventors (both Navarro's, Salat and Gomez) assigned their interests therein to Endolaser. See 35 U.S.C. § 261 ("Applications for patent … shall be assignable."). A copy of the assignment document was previously submitted to the Court by AngioDynamics. (Ex. A to Docket #8).

In or about July 2003, Endolaser and Diomed entered into an exclusive license (the "Exclusive License"), in which Endolaser remained the nominal holder of title to the '777 patent, but transferred to Diomed all of its substantial rights therein, including the exclusive right to sue for infringement. A copy of the Exclusive License is already before the Court. See Ex. A to 5/14/04 Declaration of James A. Wylie, Jr. (Docket #23).

---

[1] Endolaser's Motion to Dismiss (Docket #20), and accompanying Memorandum in Support (Docket #22) and Reply Memorandum (not yet docketed) address AngioDynamics' two current counterclaims for declaratory judgment of patent invalidity and non-infringement.

B.     **Procedural Posture Of AngioDynamics' Motion For Leave To Amend**

In its original response to Diomed's Complaint, AngioDynamics filed two counterclaims against both Diomed and Endolaser – for declaratory judgment of patent invalidity and non-infringement. (Docket #6).

In response, Endolaser moved to dismiss both counterclaims for two reasons. First, under black-letter Federal Circuit law, there is no declaratory judgment jurisdiction over a nominal patent holder (Endolaser) that has transferred all of its substantial rights in a patent to an exclusive licensee (Diomed). Second, declaratory judgment jurisdiction is also lacking because Endolaser never threatened AngioDynamics on the '777 patent. See Endolaser's opening brief (Docket #22) and reply brief (not yet docketed) supporting its Motion to Dismiss (Docket #20).

After seeing Endolaser's Motion to Dismiss its original two counterclaims, AngioDynamics sought additional "hooks" for keeping Endolaser in the case – namely, the four new counterclaims proposed in AngioDynamics' "First Amended Answer, Affirmative Defenses and Counterclaims." (Ex. 1 to Docket #24).

Because none of these new counterclaims state a claim against Endolaser upon which relief can be granted, the motion for leave to add them (Docket # 24) should be denied.

**II.   ARGUMENT**

A.     **Standards Governing Leave To Amend**

1.     **Leave to Amend Should Be Denied For Futile Claims.**

Although leave to amend a pleading "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), the Court is within its discretion to deny such leave where the amendment would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962); Kay v. New Hampshire Democratic Party, 821 F.2d 31 (1st Cir. 1987) (affirming denial of leave to amend complaint where the amendment would have been futile).

"Futility" means that the pleading, "as amended, would fail to state a claim upon which relief could be granted," Glassman v. Computervision, 90 F.3d 617, 623 (1st Cir. 1996), such that the amended claim (or counterclaim) would not survive a Rule 12(b)(6) motion to dismiss.

In deciding a motion for leave to amend, courts must, as in deciding a Rule 12(b)(6) motion to dismiss, "assume the truth of all well-pleaded facts contained in" the pleading. Podiatrist Ass'n, Inc. v. La Cruz Azul De Puerto Rico, 322 F.3d 6, 18 (1st Cir. 2003).

Despite this generous standard, the First Circuit has emphasized that Rule 12(b)(6) "is not entirely a toothless tiger." Id. at 19 (citation omitted). To state a claim upon which relief can be granted, a claim (or, as here, counterclaim) must set forth "factual allegations … respecting each material element necessary to sustain recovery under some actionable legal theory." Id.[2]

As the First Circuit has explained, bald "conclusions" set forth in the pleading are not the same – and do not suffice – as statements of fact:

> It is only when such conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that "conclusions" become "facts" for pleading purposes.

The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).

The policy rationale underlying the requirement that the pleading provide *facts* supporting each cause of action is straightforward:

> [T]he discovery process is not available where, at the complaint stage, a plaintiff has nothing more than unlikely speculations… *the reason is to protect society from the costs of highly unpromising litigation*.

DM Rsch., Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 56 (1st Cir. 1999) (emphasis added).[3]

---

[2] See also Assoc. Gen'l Contractors of Calif., Inc. v. Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983) ("It is not … proper to assume that the [plaintiff] can prove facts that it has not alleged.").

[3] Conclusory allegations, "if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition." Id. at 55. See also Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988) ("To permit a plaintiff, on such a skimpy foundation, to drag a defendant past the pleading threshold would be to invite litigation by hunch.").

In summary, the plaintiff (or, as here, the plaintiff-in-counterclaim) bears the burden to set forth *facts* sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Boston & Maine Corp. v. Town of Hampton, 987 F.2d 855, 865 (1st Cir. 1993) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)).

### 2. Boilerplate Antitrust Claims Lacking Factual Predicates Are Futile.

For antitrust claims, the "issue is whether the complaint states a claim under the Sherman Act, assuming the factual allegations to be true and indulging to a reasonable degree a plaintiff who has not yet had an opportunity to conduct discovery." DM Rsch., 170 F.3d at 55 (affirming dismissal of antitrust claim). See also Serpa Corp. v. McWane, Inc., 199 F.3d 6, 9 (1st Cir. 1999) (same: "We … accept[] all well-pleaded facts as true …. We do not, however, accept a plaintiff's unsupported conclusions."); Shepherd Intelligence Sys., Inc. v. Defense Tech., Inc., 702 F. Supp. 365, 368 (D. Mass. 1988) ("[T]he First Circuit has made it plain that vague pleadings lacking the requisite factual allegations of an antitrust claim are insufficient to uphold a cause of action.").

Indeed, the Supreme Court has held that for antitrust claims, "a district court must retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed." Associated Gen'l Contractors of Calif., Inc. v. Calif. State Council of Carpenters, 459 U.S. 519, 528 n.17 (1983).

Accordingly, in "conspiracy to monopolize" cases, merely invoking the word "conspiracy" is insufficient.  To state a claim upon which relief can be granted, the pleading must specify *facts* underlying the conspiracy allegation. The Butcher Co., Inc. v. Bouthot, 2000 U.S. Dist. Lexis 14522, *3 (D. Me. Oct. 2, 2000) (dismissing antitrust counterclaim: "[I]n the area of antitrust law, conclusory allegations of a conspiracy or agreement should be carefully assessed."); Boston Scientific v. Schneider (Eur.) AG, 983 F. Supp. 245, 253 (D. Mass. 1997) ("[I]nvocation of antitrust terms of art does not confer immunity from a motion to dismiss.");

Estate Constr. Co. v. Miller & Smith Holding Co., Inc., 14 F.3d 213, 221 (4th Cir. 1994) (affirming dismissal of antitrust claim; "[I]t is not enough merely to state that a conspiracy has taken place … Dismissal of a 'bare bones' allegation of antitrust conspiracy without any supporting facts is appropriate."); Heart Disease Rsch. Found. v. Gen'l Motors Corp., 463 F.2d 98, 100 (2d Cir. 1972) ("[A] bare bones statement of conspiracy … under the antitrust laws without any supporting facts permits dismissal.").

Finally, antitrust claims are particularly suspect when they are not only devoid of underlying facts, but are made only "on information and belief." E.g., CCBN.com, Inc. v. Thomson Financial, Inc., 270 F. Supp. 2d 146, 154 (D. Mass. 2003) ("Even under notice pleading standards, as framed, the complaint does nothing more than parrot the second element of the tying claim and assert that 'on information and belief' it is implicated here."); Butcher, 2000 U.S. Dist. Lexis 14522 at *3 (dismissing antitrust counterclaim where "the one paragraph in the counterclaim that alleges an agreement, unlike every other paragraph, conspicuously begins 'on information and belief'").

As the Second Circuit recently explained, the requirement of pleading antitrust claims with reasonable specificity does "not hold plaintiffs to a heightened pleading standard, but rather" reflects a straightforward application of Rules "8(a), 12(b)(6), and associated caselaw." Stephens v. CMG Health, 1998 U.S. App. Lexis 29430 (2d Cir. Nov. 12, 1998) (unpublished).[4]

---

[4] Given the threat of baseless litigation posed by bald assertions of "conspiracy," it is no surprise that courts apply similar requirements in other areas of the law. E.g., Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977) ("In an effort to control frivolous conspiracy suits under § 1983, federal courts have come to insist that the complaint state with specificity the facts that, in the plaintiff's mind, show the existence and scope of the alleged conspiracy. It has long been the law in this and other circuits that complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts."); Rosado v. Sabat, 204 F. Supp. 2d 252, 268 (D.P.R. 2002) ("[T]he Court cannot possibly conclude that there was a conspiracy against Plaintiff. Notably absent are the specific allegations of a meeting of the minds and overt acts that are necessary in order to bring forth a conspiracy claim."); NCR Credit Corp. v. Underground Camera, Inc., 581 F. Supp. 609, 611 (D. Mass. 1984) ("[T]he claim must be pleaded with reasonable certainty and definiteness so as to inform the opposing party of the nature of the conspiracy charged.").

> B.  **Leave To Assert The New Counterclaims Against Endolaser Should Be Denied Because It Would Be Futile.**

Each of AngioDynamics' four proposed new counterclaims against Endolaser would be futile. Hence, the motion for leave to add these counterclaims should be denied.

> 1.  **The Count For Declaratory Judgment Of Patent Unenforceability Is Futile Because Endolaser Possesses No Substantial Rights In The Patent-In-Suit And Never Threatened AngioDynamics.**

AngioDynamics' proposed third count, for declaratory judgment that the '777 patent is unenforceable, is futile for the same reasons set forth in Endolaser's pending Motion to Dismiss AngioDynamics' current two counterclaims for declaratory judgment of patent invalidity and non-infringement. (Docket #20). Namely, there can be no declaratory judgment jurisdiction over Endolaser with respect to the '777 patent because (a) Endolaser transferred all of its substantial rights in that patent to Diomed, and (b) Endolaser never threatened AngioDynamics on that patent. As explained in the pending Motion to Dismiss, Endolaser simply is not a proper party.

For the sake of brevity, the discussion in Endolaser's pending briefs will not be repeated here. It is enough to note that the cases cited therein are directly on-point with respect to AngioDynamics' new "unenforceability" claim, which presents the same issues as its original "invalidity" and "non-infringement" claims. E.g., Hydrofoil Int'l, Inc. v. Doelcher Products, Inc., 18 U.S.P.Q. 2d 1791 (S.D.N.Y. 1991) (dismissing claim for declaratory judgment of patent invalidity *and unenforceability* brought against nominal patent owner that had transferred all of its substantial rights in the patent to an exclusive licensee); Cygnus Therapeutics Systems v. Alza Corp., 92 F.3d 1153 (Fed. Cir. 1996) (no jurisdiction over claims for declaratory judgment of patent invalidity *and unenforceability* in absence of threat by patent owner).

In short, AngioDynamics' declaratory judgment claims against Endolaser are futile and should not be entertained because the Court lacks jurisdiction over them.

### 2. The Antitrust Count Is Futile Because It Does Not Allege Facts Supporting A Claim Against <u>Endolaser Upon Which Relief Can Be Granted.</u>

AngioDynamics' proposed fourth count, for an alleged antitrust violation by Endolaser, is futile because it does not meet even minimum pleading standards under Rule 8(a).

The thin pleading asserts just two alleged misdeeds – (1) the filing of patent infringement lawsuits in this District based on the '777 patent; and (2) the publicizing of those cases through the issuance of press releases. (Ex. 1 to Docket #24 at ¶¶ 27, 29). Both of those actions were indisputably (and admittedly) undertaken by Diomed, not Endolaser. (<u>Id.</u> at ¶ 29).[5]

Thus, AngioDynamics is left attempting to implicate Endolaser by suggesting that Endolaser "conspired" with Diomed in the filing of the patent lawsuits. (<u>Id.</u> at ¶ 27).[6] AngioDynamics' pleading says absolutely nothing, however, about the alleged conspiracy – not when or how it took place, what nefarious agreement the parties reached, or what role Endolaser was supposed to play in the scheme.

Indeed, it is difficult to imagine how or why Endolaser and Diomed could or would have "conspired" as alleged. Under the Exclusive License, Diomed has the exclusive right to bring patent infringement lawsuits *and needs no cooperation from Endolaser to do so*. (Ex. A to Docket #23 at ¶ 4.6(b)). <u>Cf.</u> <u>DM Rsch.</u>, 170 F.3d at 56 (affirming dismissal of antitrust claim based on alleged "conspiracy" where "no antitrust lawyer could help but ask almost immediately *why* [the parties] would conspire") (emphasis original).

---

[5] The tenuous nature of AngioDynamics' antitrust counterclaim is underscored by the fact that the filing of a patent infringement suit – the only substantive act alleged here – is immune from antitrust liability except in the very rare circumstances of knowing and willful fraud or outright sham litigation. See <u>Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.</u>, 508 U.S. 49, 56 (1993); <u>Nobelpharma AB v. Implant Innovations, Inc.</u>, 141 F.3d 1059, 1068 (Fed. Cir. 1998).

[6] Interestingly, the "conspiracy" is alleged to have begun "after" this case was filed (such that this case was *not* part of any "conspiracy") and allegedly concerns the two subsequently-filed cases only. (Docket #24 at ¶ 27).

The lack of any factual predicate whatsoever to the unlikely (if not impossible) alleged conspiracy is fatal. E.g., Butcher, 2000 U.S. Dist. Lexis 14522 at *2 (dismissing antitrust counterclaim: "[I]n the area of antitrust law, conclusory allegations of a conspiracy or agreement should be carefully assessed."); Boston Scientific, 983 F. Supp. at 253 ("[I]nvocation of antitrust terms of art does not confer immunity from a motion to dismiss."); see also NCR Credit, 581 F. Supp. at 611 ("[T]he claim must be pleaded with reasonable certainty and definiteness so as to inform the opposing party of the nature of the conspiracy charged.").

What is more, AngioDynamics' "conspiracy" allegation (¶ 27 of its proposed Fourth Counterclaim) is not only devoid of any factual support, but is pled "on information and belief." As in Butcher, this is "the one paragraph in the counterclaim that … unlike every other paragraph, conspicuously begins 'on information and belief.'" 2000 U.S. Dist. Lexis 14522, *3.

AngioDynamics' "antitrust" counterclaim against Endolaser was manifestly brought for one reason only: to complicate and expand the scope of the case by drawing in a party that does not belong. As the Supreme Court itself has emphasized, this Court is well within its discretion to decline to entertain such a claim. Associated Gen'l Contractors, 459 U.S. at 528 n.17 ("[A] district court must retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed."). The antitrust count against Endolaser is futile, and leave to add it should be denied.

### 3. The "Patent Misuse" Count Is Futile Because It Is An Affirmative Defense, Not A Claim For Relief.

AngioDynamics' proposed fifth count purports to state a "counterclaim" for "patent misuse." (Ex. 1 to Docket #24 at ¶¶ 35-37). This is a misnomer. "Patent misuse" is a defense to a claim of patent infringement, *not* an affirmative claim for relief. B. Braun Medical, Inc. v. Abbot Labs., 124 F.3d 1419 (Fed. Cir. 1997).

Accordingly, an attempted "counterclaim" for patent misuse should be dismissed for failure to state a claim upon which relief can be granted. E.g., Bernhardt, LLC v. Collezione Europa USA, Inc., 2002 U.S. Dist. Lexis 13832 (M.D.N.C. July 3, 2002) (dismissing attempted "patent misuse" counterclaim); Mitsubishi Elec. Corp. v. IMS Tech., Inc., 44 U.S.P.Q. 2d 1904 (N.D. Ill. 1997) (same). The count, in short, is futile as a matter of law.

Notably, even if AngioDynamics had framed this count as seeking a declaratory judgment that the '777 patent is unenforceable due to patent misuse (it did not), the claim would still be futile for the reasons set forth in Section II(B)(1) above with respect to AngioDynamics' proposed third count for declaratory judgment of patent unenforceability.

Because the "patent misuse" count is indisputably futile, leave to add it should be denied.

### 4. The Chapter 93A Count Is Futile Because It Does Not Allege That Endolaser Acted "Primarily And Substantially In Massachusetts".

AngioDynamics' final proposed count, for unfair and deceptive trade practices in violation of Mass. Gen. L. ch. 93A, is once again predicated on the filing of patent infringement lawsuits by Diomed. (Ex. 1 to Docket #24 at ¶ 40). Nowhere in the count is there a mention of a single act undertaken by Endolaser.

This count, therefore, is impermissibly vague as to its underlying facts, in that it lacks an identification of *any* allegedly wrongful conduct by Endolaser.

What is more, the Chapter 93A counterclaim fails for the additional and independent reason that it does not allege, as required by statute, that the circumstances giving rise to the claim occurred "primarily and substantially in Massachusetts" – or, as the Supreme Judicial Court has recently formulated the test, that the "center of gravity of the circumstances that give rise to the claim" against Endolaser lies in Massachusetts. Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 781 N.E.2d 787, 799 (Mass. 2003).

- 9 -

Indeed, there would be no good faith basis for such an allegation. AngioDynamics concedes that it is located in New York State (Ex. 1 to Docket #24 at ¶ 1), such that any alleged harm to AngioDynamics would have been felt (if at all) in New York.

AngioDynamics concedes that Endolaser is also located in New York (id. at ¶ 2), and it is a matter of public record that two of Endolaser's principals (Drs. Min and Luis Navarro) are located in New York, while the remaining three (Salat, Gomez and Nestor Navarro) are located in Spain. See front page of '777 patent (Ex. A to Docket #1).

Accordingly, any action undertaken by Endolaser would have taken place, if at all, in New York or Spain (or some combination of the two) – *not* in Massachusetts.

In any event, AngioDynamics' Chapter 93A counterclaim does not mention a single act of Endolaser anywhere in the world, let alone in Massachusetts. (Ex. 1 to Docket #24 at ¶¶ 38-43). Elsewhere in its counterclaims, AngioDynamics makes the bald allegation that Endolaser "conspired" with Diomed, but once again no facts (and no link to Massachusetts) are provided.

Because AngioDynamics does not (and cannot) allege that the relevant events occurred primarily and substantially in Massachusetts, the proposed Chapter 93A count is futile. Reicher, D.P.M. v. Berkshire Life Ins. Co. of Am., 2002 U.S. Dist. Lexis 20763 (D. Mass. Oct. 29, 2002) (granting motion to dismiss Chapter 93A claim based on events that did not occur primarily and substantially in Massachusetts); Brown v. Armstrong, 957 F. Supp. 1293, 1296 (D. Mass. 1997) (court "granted Defendants' motion to dismiss the 93A claim on the ground that the activities alleged in the complaint did not occur primarily and substantially in Massachusetts"); Am. Mgmt. Svcs., Inc. v. George S. May Int'l Co., 933 F. Supp. 64, 68 (D. Mass. 1996) (granting motion to dismiss where "there is no conceivable set of facts, reasonably consistent with the complaint, which would constitute violations of Chapter 93A taking place primarily and substantially in Massachusetts"). Accordingly, leave to add the claim should be denied.

## III.  CONCLUSION

For the aforementioned reasons, AngioDynamics' motion for leave to amend its complaint to add counterclaims against Endolaser should be denied in its entirety.[7]

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | ENDOLASER ASSOCIATES, LLC |
|  | By its attorneys, |
| Dated: June 15, 2004 | /s/ Michael A. Albert |
|  | Michael A. Albert (BBO #558566) |
|  | malbert@wolfgreenfield.com |
|  | James J. Foster (BBO #553285) |
|  | jfoster@wolfgreenfield.com |
|  | Michael N. Rader (BBO #646990) |
|  | mrader@wolfgreenfield.com |
|  | WOLF, GREENFIELD & SACKS, P.C. |
|  | 600 Atlantic Avenue |
|  | Boston, MA 02210 |
|  | (617) 720-3500 |

---

[7] Similarly, the motion for leave to amend should be denied to the extent the proposed amended pleading makes any other mention of Endolaser (or the plural "Counterclaim-Defendants").

- 11 -