IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC.,<br><br>  Plaintiff,<br><br>v.<br><br>ANGIODYNAMICS, INC,<br><br>  Defendant. | Civil Action No. 1:04-CV-10019 (RGS) |
| ANGIODYNAMICS, INC.,<br><br>  Counterclaim Plaintiff,<br><br>v.<br><br>ENDOLASER ASSOCIATES, LLC,<br><br>  Counterclaim Defendant. | |

**DIOMED'S OPPOSITION TO ANGIODYNAMICS'
<u>MOTION FOR LEAVE TO AMEND ITS COUNTERCLAIMS</u>**

       Michael A. Albert (BBO #558566)
       James J. Foster (BBO #553285)
       Michael N. Rader (BBO #646990)
       WOLF, GREENFIELD & SACKS, P.C.
       600 Atlantic Avenue
       Boston, MA 02210
       (617) 720-3500

       COUNSEL FOR DIOMED, INC.

- 1 -

TABLE OF CONTENTS

I. ARGUMENT ...................................................................................................................1

    A. Standards Governing Leave To Amend................................................................1

        1. Leave To Amend Should Be Denied For Futile Claims .............................1

        2. Boilerplate Antitrust Claims Lacking Factual Predicates Are Futile..........2

    B. AngioDynamics' Motion For Leave To Amend
Should Be Denied Because Several Of The
Requested Amendments Would Be Futile.............................................................4

        1. Leave To Assert A Generalized Count For Declaratory
Judgment Of Inequitable Conduct Should Be Denied
As Futile Because It Fails To Comply With Rule 9(b)...............................4

        2. Leave To Assert An Antitrust Count Under Sections 1 or 2
Of The Sherman Act Based On A "Conspiracy" Theory
Should Be Denied As Futile Because AngioDynamics' Pleading
Fails To Allege Facts Upon Which Such Relief Can Be Granted ...............6

        3. Leave To Add A "Patent Misuse" Count Should Be Denied
Because It Is An Affirmative Defense, Not A Claim For Relief .................8

II. CONCLUSION................................................................................................................8

Diomed opposes AngioDynamics' motion for leave to amend its "Answer, Affirmative Defenses and Counterclaims" at least to the extent set forth below.

## I.    ARGUMENT

### A.    Standards Governing Leave To Amend

#### 1.    Leave to Amend Should Be Denied For Futile Claims.

Although leave to amend a pleading "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), the Court is within its discretion to deny such leave where the amendment would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962); Kay v. New Hampshire Democratic Party, 821 F.2d 31 (1st Cir. 1987) (affirming denial of leave to amend complaint where the amendment would have been futile).

"Futility" means that the pleading, "as amended, would fail to state a claim upon which relief could be granted," Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996), such that the amended claim (or, as in this case, counterclaim) would not survive a Rule 12(b)(6) motion to dismiss.

In deciding a motion for leave to amend, courts must, as in deciding a Rule 12(b)(6) motion to dismiss, "assume the truth of all well-pleaded facts contained in" the pleading. Podiatrist Ass'n, Inc. v. La Cruz Azul De Puerto Rico, 322 F.3d 6, 18 (1st Cir. 2003).

Despite this generous standard, the First Circuit has emphasized that Rule 12(b)(6) "is not entirely a toothless tiger." Id. at 19 (citation omitted).  To state a claim upon which relief can be granted, a claim (or, as here, counterclaim) must set forth "factual allegations … respecting each material element necessary to sustain recovery under some actionable legal theory." Id.[1]

---

[1] See also Assoc. Gen'l Contractors of Calif., Inc. v. Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983) ("It is not … proper to assume that the [plaintiff] can prove facts that it has not alleged.").

As the First Circuit has explained, bald "conclusions" set forth in the pleading are not the same – and do not suffice – as statements of fact:

> It is only when such conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that "conclusions" become "facts" for pleading purposes.

The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).

The policy rationale underlying the requirement that the pleading provide *facts* supporting each cause of action is straightforward:

> [T]he discovery process is not available where, at the complaint stage, a plaintiff has nothing more than unlikely speculations… *the reason is to protect society from the costs of highly unpromising litigation.*

DM Rsch., Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 56 (1st Cir. 1999) (emphasis added).[2]

In summary, the plaintiff must set forth *facts* sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Boston & Maine Corp. v. Town of Hampton, 987 F.2d 855, 865 (1st Cir. 1993).

### 2.    **Boilerplate Antitrust Claims Lacking Factual Predicates Are Futile.**

For antitrust claims, the "issue is whether the complaint states a claim under the Sherman Act, assuming the factual allegations to be true and indulging to a reasonable degree a plaintiff who has not yet had an opportunity to conduct discovery." DM Rsch., 170 F.3d at 55 (affirming dismissal of antitrust claim). See also Serpa Corp. v. McWane, Inc., 199 F.3d 6, 9 (1st Cir. 1999) (same); Shepherd Intelligence Sys., Inc. v. Defense Tech., Inc., 702 F. Supp. 365, 368 (D. Mass. 1988) ("[T]he First Circuit has made it plain that vague pleadings lacking the requisite factual allegations of an antitrust claim are insufficient to uphold a cause of action.").

---

[2] Conclusory allegations, "if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition." Id. at 55. See also Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988) ("To permit a plaintiff, on such a skimpy foundation, to drag a defendant past the pleading threshold would be to invite litigation by hunch.").

Indeed, the Supreme Court has held that for antitrust claims, "a district court must retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed." Associated Gen'l Contractors of Calif., Inc. v. Calif. State Council of Carpenters, 459 U.S. 519, 528 n.17 (1983).

Accordingly, in "conspiracy to monopolize" cases, merely invoking the word "conspiracy" is insufficient. To state a claim upon which relief can be granted, the pleading must specify *facts* underlying the conspiracy allegation. The Butcher Co., Inc. v. Bouthot, 2000 U.S. Dist. Lexis 14522, *3 (D. Me. Oct. 2, 2000) (dismissing antitrust counterclaim: "[I]n the area of antitrust law, conclusory allegations of a conspiracy or agreement should be carefully assessed."); Boston Scientific v. Schneider (Eur.) AG, 983 F. Supp. 245, 253 (D. Mass. 1997) ("[I]nvocation of antitrust terms of art does not confer immunity from a motion to dismiss."); Estate Constr. Co. v. Miller & Smith Holding Co., Inc., 14 F.3d 213, 221 (4th Cir. 1994) (affirming dismissal of antitrust claim; "[I]t is not enough merely to state that a conspiracy has taken place … Dismissal of a 'bare bones' allegation of antitrust conspiracy without any supporting facts is appropriate."); Heart Disease Rsch. Found. v. Gen'l Motors Corp., 463 F.2d 98, 100 (2d Cir. 1972) ("[A] bare bones statement of conspiracy … under the antitrust laws without any supporting facts permits dismissal.").

Antitrust claims are particularly suspect when they are not only devoid of underlying facts, but are made only "on information and belief." E.g., CCBN.com v. Thomson Fin., Inc., 270 F. Supp. 2d 146, 154 (D. Mass. 2003) ("Even under notice pleading standards, as framed, the complaint does nothing more than parrot the second element of the tying claim and assert that 'on information and belief' it is implicated here."); Butcher, 2000 U.S. Dist. Lexis 14522 at *3 (dismissing antitrust counterclaim where "the one paragraph in the counterclaim that alleges an agreement, unlike every other paragraph, conspicuously begins 'on information and belief'").

As the Second Circuit recently explained, the requirement of pleading antitrust claims with reasonable specificity does "not hold plaintiffs to a heightened pleading standard, but rather" reflects a straightforward application of Rules "8(a), 12(b)(6), and associated caselaw." Stephens v. CMG Health, 1998 U.S. App. Lexis 29430 (2d Cir. Nov. 12, 1998) (unpublished).[3]

> **B. AngioDynamics' Motion For Leave To Amend Should Be Denied Because Several Of The Requested Amendments Would Be Futile.**
>
> **1. Leave To Assert A Generalized Count For Declaratory Judgment Of Inequitable Conduct Should Be Denied As Futile Because It Fails To Comply With Rule 9(b).**

Diomed opposes AngioDynamics' motion to the extent it seeks to add a counterclaim for declaratory judgment of inequitable conduct ("AngioDynamics' Third Counterclaim") including the following highlighted phrase:

> 24. During prosecution of the '777 patent application from August 13, 1999 through June 4, 2002, the inventors and/or those associated with the filing and prosecution of the patent application, committed inequitable conduct or fraud by knowingly withholding, and otherwise failing to bring to the attention of the U.S. Patent & Trademark Office prior art that was material to patentability, ***including without limitation***, the 1989 Biegeleisen paper.

(Ex. 1 to Docket #24 at ¶ 24) (emphasis added).

It is well-settled that inequitable conduct allegations (i.e., allegations of "fraud on the Patent Office") are subject to the heightened pleading standards of Rule 9(b). E.g., Ferguson Beauregard/Logic Controls v. Mega Systems, LLC, 350 F.3d 1327, 1344 (Fed. Cir. 2003)

---

[3] Given the threat of baseless litigation posed by bald assertions of "conspiracy," it is no surprise that courts apply similar requirements in other areas of the law. E.g., Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977) ("In an effort to control frivolous conspiracy suits under § 1983, federal courts have come to insist that the complaint state with specificity the facts that, in the plaintiff's mind, show the existence and scope of the alleged conspiracy. It has long been the law in this and other circuits that complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts."); Rosado v. Sabat, 204 F. Supp. 2d 252, 268 (D.P.R. 2002) ("[T]he Court cannot possibly conclude that there was a conspiracy against Plaintiff. Notably absent are the specific allegations of a meeting of the minds and overt acts that are necessary in order to bring forth a conspiracy claim."); NCR Credit Corp. v. Underground Camera, Inc., 581 F. Supp. 609, 611 (D. Mass. 1984) ("[T]he claim must be pleaded with reasonable certainty and definiteness so as to inform the opposing party of the nature of the conspiracy charged.").

("[I]nequitable conduct … must be pled with particularity."); Davidson v. Cao, 211 F. Supp. 2d 264, 285 (D. Mass. 2002) ("Rule 9(b) applies to the inequitable conduct count in the counterclaim."); Systemation, Inc. v. Engel Indus., Inc., 183 F.R.D. 49, 51-52 (D. Mass. 1998) ("Rule 9(b) does in fact apply to claims of inequitable conduct.").

A party asserting inequitable conduct must therefore allege the time, place, and content of the alleged misrepresentation or omission. Systemation, 183 F.R.D. at 51 ("[A]t a minimum, Engel is required to state the time, place and content of the alleged inequitable conduct.").

Among other things, therefore, the pleading must identify with particularity any prior art that the patentee allegedly failed to disclose to the Patent Office. Failure to do so results in the inequitable conduct claim being dismissed or stricken. Systemation, 183 F.R.D. at 51 (granting motion to strike because defendant "failed to identify any particular prior art it claim[ed] should have been disclosed to the Patent and Trademark Office"); Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc., 41 U.S.P.Q. 2d 1770, 1775 (N.D. Cal. 1996) (granting motion to strike where the defendant had not "provided the particulars of what [the patentee] failed to disclose").

Moreover, identifying one or more specific pieces of prior art does not entitle the pleader to broaden the allegation with catch-all phrases. Safe Bed Techs. Co. v. KCI USA, Inc., 2003 U.S. Dist. Lexis 8514, *8  (N.D. Ill. 2003) (striking catch-all phrases "such as" and  "other material prior art"); Astra Aktiebolag v. Genpharm Inc., 2000 U.S. Dist. LEXIS 2513, *4 (S.D.N.Y. 2000) (striking the catch-all phrase "includes at least" from the allegation that the patentee had withheld prior art including "at least European Patent No. 124,495").

AngioDynamics' attempt to broaden its counterclaim for declaratory judgment of inequitable conduct to include the Biegeleisen paper "without limitation" is improper.

Accordingly, the Court should deny AngioDynamics' motion for leave to amend at least insofar as the proposed Third Counterclaim includes such catch-all language.

### 2. Leave To Assert An Antitrust Count Under Sections 1 or 2 Of The Sherman Act Based On A "Conspiracy" Theory Should Be Denied As Futile Because AngioDynamics' Pleading Fails To Allege Facts Upon Which Such Relief Can Be Granted.

AngioDynamics' proposed Fourth Counterclaim purports to set forth a claim under both Section 1 and Section 2 of the Sherman Act. As explained below, leave to assert an antitrust claim under Section 1 should be denied in its entirety, and leave to add a Section 2 claim should be denied at least to the extent that it is based on a "conspiracy."

The activities of a single party can never violate Section 1 of the Sherman Act – the presence of a "conspiracy" is mandatory. Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 767-68 (1984) ("The conduct of a single firm is governed by § 2 alone and is unlawful only when it threatens actual monopolization.").

Section 2 of the Sherman Act contemplates three types of prohibited conduct – namely, "monopolization," "attempted monopolization," and "conspiracy" to monopolize. 15 U.S.C. § 2.

Because AngioDynamics' pleading provides no factual predicate to a claim that Diomed and Endolaser "conspired," it does not state a claim under Section 1 (which, again, requires a "conspiracy"), nor does it state a "conspiracy"-based claim under Section 2.

The thin pleading asserts just two alleged misdeeds – (1) the filing of patent infringement lawsuits in this District based on the '777 patent; and (2) the publicizing of those cases through the issuance of press releases. (Ex. 1 to Docket #24 at ¶¶ 27, 29). Both of those actions were indisputably (and admittedly) undertaken by Diomed alone. (Id. at ¶ 29).

AngioDynamics' sole allegation of "conspiracy" is made "upon information and belief" in Paragraph 27. The pleading says absolutely nothing, however, about the alleged conspiracy – not when or how it took place, what nefarious agreement the parties reached, or how they were to carry out the scheme. Not one sentence of factual predicate is provided for the "conspiracy" allegation.

Indeed, it is difficult to imagine how or why Endolaser and Diomed could or would have "conspired" as alleged. Under the Exclusive License, Diomed has the exclusive right to bring patent infringement lawsuits *and needs no cooperation from Endolaser to do so*. (Ex. A to Docket #23 at ¶ 4.6(b)). Cf. DM Rsch., 170 F.3d at 56 (affirming dismissal of antitrust claim based on alleged "conspiracy" where "no antitrust lawyer could help but ask almost immediately *why* [the parties] would conspire") (emphasis original).

The lack of any factual predicate whatsoever to the unlikely (if not impossible) alleged conspiracy is fatal. E.g., Butcher, 2000 U.S. Dist. Lexis 14522 at *2 (dismissing antitrust counterclaim: "[I]n the area of antitrust law, conclusory allegations of a conspiracy or agreement should be carefully assessed."); Boston Scientific, 983 F. Supp. at 253 ("[I]nvocation of antitrust terms of art does not confer immunity from a motion to dismiss."); see also NCR Credit Corp. v. Underground Camera, Inc., 581 F. Supp. 609, 611 (D. Mass. 1984) ("[T]he claim must be pleaded with reasonable certainty and definiteness so as to inform the opposing party of the nature of the conspiracy charged.").

The fact that the "conspiracy" allegation is made "upon information and belief" further demonstrates that the pleading does not state a "conspiracy" claim (under either Section 1 or Section 2) upon which relief can be granted. Indeed, as in Butcher, Paragraph 27 of the amended pleading is "the one paragraph in the counterclaim that … unlike every other paragraph, conspicuously begins 'on information and belief.'" 2000 U.S. Dist. Lexis 14522 at *3.

As the Supreme Court itself has emphasized, this Court is well within its discretion to decline to entertain such a claim. Associated Gen'l Contractors, 459 U.S. at 528 n.17 ("[A] district court must retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed.").

Accordingly, leave to add a counterclaim under Section 1 of the Sherman Act, and leave to add a "conspiracy"-based counterclaim under Section 2 of the Sherman Act, should be denied.

### 3. Leave To Add A "Patent Misuse" Count Should Be Denied Because It Is An Affirmative Defense, Not A Claim For Relief.

Diomed opposes AngioDynamics' motion for leave to add a count for "patent misuse." (Ex. 1 to Docket #24 at ¶¶ 35-37).

The purported assertion of a "counterclaim" for patent misuse is a misnomer. "Patent misuse" is a defense to a claim of patent infringement, *not* an affirmative claim for relief. B. Braun Medical, Inc. v. Abbot Labs., 124 F.3d 1419 (Fed. Cir. 1997).

Accordingly, a "counterclaim" for patent misuse should be dismissed for failure to state a claim upon which relief can be granted. E.g., Bernhardt, LLC v. Collezione Europa USA, Inc., 2002 U.S. Dist. Lexis 13832 (M.D.N.C. July 3, 2002) (dismissing attempted "patent misuse" counterclaim); Mitsubishi Elec. Corp. v. IMS Tech., Inc., 44 U.S.P.Q. 2d 1904 (N.D. Ill. 1997) (same). The count is indisputably futile as a matter of law. Leave to add it should be denied.

## II. CONCLUSION

For the foregoing reasons, AngioDynamics' motion for leave to amend should be denied in at least the following respects:

- Leave to add AngioDynamics' proposed Third Counterclaim should be denied at least insofar it includes the catch-all phrase "including without limitation."

- Leave to add AngioDynamics' proposed Fourth Counterclaim should be denied at least insofar as such a claim is based on Section 1 of the Sherman Act (which requires a "conspiracy") or is based on a "conspiracy" under Section 2 of the Sherman Act

- Leave to add AngioDynamics' proposed Fifth Counterclaim for "patent misuse" should be denied.[4]

---

[4] Although AngioDynamics certified in its Motion for Leave to Amend that it complied with Local Rule 7.1, it failed to confer with Diomed's counsel with regard to its proposed Fifth and Sixth Counterclaims (for "Patent Misuse" and violation of Chapter 93A). Indeed, AngioDynamics never notified Diomed that it intended to include those counts, and they were not part of the draft amended pleading that AngioDynamics' counsel sent to Diomed's counsel on May 28, 2004.

- 8 -

        Respectfully submitted,

        DIOMED, INC.,

        By its attorneys,

Dated: June 15, 2004        /s/ Michael A. Albert
        Michael A. Albert (BBO #558566)
        malbert@wolfgreenfield.com
        James J. Foster (BBO #553285)
        jfoster@wolfgreenfield.com
        Michael N. Rader (BBO #646990)
        mrader@wolfgreenfield.com
        WOLF, GREENFIELD & SACKS, P.C.
        600 Atlantic Avenue
        Boston, MA 02210
        (617) 720-3500