IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DIOMED, INC.,

       Plaintiff,

v.

ANGIODYNAMICS, INC,

       Defendant.

Civil Action No. 1:04-CV-10019 (RGS)

ANGIODYNAMICS, INC.,

       Counterclaim Plaintiff,

v.

ENDOLASER ASSOCIATES, LLC,

       Counterclaim Defendant.

## COMBINED SUR-REPLY OF DIOMED AND ENDOLASER TO ANGIODYNAMICS' REPLY BRIEFS SUPPORTING ITS MOTION TO AMEND ITS COUNTERCLAIMS

Diomed and Endolaser respectfully submit this Combined Sur-Reply Brief for the limited purpose of responding to new issues raised by AngioDynamics in its Reply Briefs.

## I.    ANGIODYNAMICS' PROPOSED THIRD COUNTERCLAIM

In its proposed Third Counterclaim, AngioDynamics seeks a declaratory judgment that the '777 patent is unenforceable for inequitable conduct based on allegedly withheld material information "including without limitation the 1989 Biegeleisen paper." (¶ 24).

AngioDynamics effectively concedes that the phrase "including without limitation" is improper because it fails to comply with Rule 9(b). (Reply to Diomed Opp. at 7). Accordingly, leave to add the Third Counterclaim against Diomed should be denied as futile, at least to the extent that it includes the language that AngioDynamics agrees is improper.

As against Endolaser, the Third Counterclaim as a whole is deficient because no declaratory judgment jurisdiction exists over Endolaser, which conveyed all of its substantial rights in the '777 patent – including the right to sue for infringement – to Diomed.

AngioDynamics' arguments to the contrary have been rejected by this District and by the Federal Circuit.

In its Reply, AngioDynamics argues that, pursuant to the Exclusive License, Endolaser is obligated to "inform" Diomed of third-party infringements and to "assist" in enforcement of the '777 patent if called upon by Diomed. (Reply to Endo. Opp. at 3).  This District, however, has held that such provisions do *not* reflect the retention of "substantial rights" by the licensor. Nomos v. ZMED, Inc., 178 F. Supp. 2d 96, 99 (D. Mass. 2001) (all substantial rights conveyed despite provision in license that "each party shall *keep the other informed of any activity pertaining to an infringement action*") (emphasis added). See also id. at 100 ("That UJF retains peripheral rights, such as the rights to be informed and to intervene, does not negate the fact that Praxim was granted substantial rights, which in turn granted such substantial rights to ZMED.").

AngioDynamics also notes that Endolaser is "entitled to share in the proceeds" of patent suits brought by Diomed. (Reply to Endo. Opp. at 3). The Federal Circuit, however, has held that this right is *insubstantial* as a matter of law. Vaupel Textilmaschinen v. Meccanica Euro Italia, 944 F.2d 870, 875 (Fed. Cir. 1991) ("[T]he right to receive infringement damages is merely a means of compensation under the agreement; this was not inconsistent with an assignment.").

Finally, AngioDynamics presses the untenable proposition that an Exclusive License in which the parties expressly recorded their intent that "Diomed secure all remaining rights in [the '777] Patent" (Ex. A to Docket # 23 at 1) nevertheless somehow "reflects an intent by the parties to convey less than the full right to exclude." (Reply to Endo. Opp. at 7).

The basis for this remarkable contention is that when Endolaser conveyed to Diomed exclusive rights to sell both the lasers *and* the disposable accessories used in the patented procedure, Endolaser allegedly intended (although it never said so) to retain the right to sell "non-disposable" accessories.  AngioDynamics was unable, however, to name a single "non-disposable" accessory for use in the procedure, and its own web site explains that its procedure accused of infringement is performed with (1) a laser; and (2) "*disposable* treatment kits."[1]

In Speedplay, Inc. v. Bebop, Inc., the Federal Circuit rejected a similar attempt by a defendant to avoid the plain intended meaning of the exclusive license between the plaintiff licensee and the nominal patent owner.  There, the plaintiff sued on U.S. Patent No. 4,942,778 although, due to a "scrivener's error," the exclusive license referred to a different patent. See 211 F.3d at 1250-51.  Because the context of the exclusive license made clear that substantial rights in the '778 patent were intended to be transferred, the Federal Circuit concluded that the plaintiff exclusive licensee had standing to sue thereon without joining the nominal patent owner. Id.

In this case, it is difficult to imagine how the Exclusive License could have been clearer in conveying to Diomed the exclusive right to sell the accessories used in the patented procedure.  In any event, the recital (at the very top of the agreement) that the parties intended Diomed to "secure all remaining rights" in the patent removes any conceivable ambiguity.[2]  Thus, Diomed has standing to sue for infringement, and Endolaser is not a proper (let alone necessary) party.

What is more, Endolaser conveyed to Diomed the exclusive right to sue for infringement of the patent, negating any possible "apprehension of suit" that AngioDynamics might have.

---

[1] See http://www.elvslaser.com/physician/news/news01.html (visited July 9, 2004) (emphasis added).

[2] Determination of whether the Exclusive License conveys all of Endolaser's substantial rights in the '777 patent is a matter of law for the Court to decide. Radionics, Inc. v. Elekta Instrument AB, 33 U.S.P.Q. 2d 1110, 1113 (D. Mass. 1994) ("[T]he crucial question is whether, as a matter of law, Radionics was effectively the assignee of the Brown patent.").  Accordingly, AngioDynamics' assertion that there are "disputed issues of fact" regarding the interpretation of the Exclusive License (Angio. Sur-Reply re: Endo. Mot. to Dismiss at 5) is simply misplaced.

In its Reply, AngioDynamics attempts to manufacture such an apprehension by pointing to Endolaser's early efforts to license the '777 patent. (Reply to Endo. Opp. at 3-5 & Ex. A, B) No evidence is provided (let alone pled), however, of any threat against AngioDynamics.  In any event, Endolaser's July 2003 transfer (in the Exclusive License) of its right to sue to Diomed removed any conceivable apprehension of suit by Endolaser – as well as declaratory judgment jurisdiction over Endolaser – as a matter of law. E.g., Hydrofoil Int'l, Inc. v. Doelcher Products, Inc., 18 U.S.P.Q. 2d 1791, 1794 (S.D.N.Y. 1991) (granting motion to dismiss declaratory judgment counterclaim against nominal patent owner / licensor, despite evidence that the patent owner *actually claimed to be involved in the infringement suit*, because the right to sue had been transferred to the exclusive licensee).  The Exclusive License establishes, as a matter of law, that there is no declaratory judgment jurisdiction over Endolaser with respect to the '777 patent.

Leave to add the Third Counterclaim should therefore be denied as futile, at least to the extent that AngioDynamics seeks to name Endolaser as a counterclaim-defendant therein.

## II.    ANGIODYNAMICS' PROPOSED FOURTH COUNTERCLAIM

In its proposed Fourth Counterclaim, AngioDynamics seeks to assert an antitrust claim against Endolaser and Diomed based on an alleged "conspiracy" between those two parties.  No facts, however, are pled concerning the alleged conspiracy.

In its Reply, AngioDynamics still does not point to a single act of "conspiracy" between Endolaser and Diomed to violate the antitrust laws.  As an attempted surrogate, AngioDynamics claims that some provisions of the Exclusive License (which are standard terms in patent licenses) – such as the licensor's obligation to inform its exclusive licensee of infringements, and the licensor's agreement to participate in an infringement suit if necessary – sufficiently describe an antitrust "conspiracy" for pleading purposes. (Reply to Endo. Opp. at 10-11).  If these license provisions evidence a "conscious commitment to a common scheme designed to achieve an

unlawful objective," <u>Monsanto Co. v. Spray-Rite Service Corp.</u>, 465 U.S. 752, 768 (1984), as AngioDynamics admits is required for pleading purposes, then every patent licensor and licensee may be sued for "conspiracy" to monopolize.

This, of course, is not (and cannot be) true. Such a rule would eviscerate the Supreme Court's statement that, for antitrust claims, "a district court must retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed." <u>Assoc. Gen'l Contractors of Calif. v. Calif. State Council of Carpenters</u>, 459 U.S. 519, 528 n.17 (1983). Rather, to state a valid claim, an antitrust pleading based on "conspiracy" must specify *facts* underlying the conspiracy allegation. <u>E.g.</u>, <u>The Butcher Co., Inc. v. Bouthot</u>, 2000 U.S. Dist. Lexis 14522, *3 (D. Me. Oct. 2, 2000) (dismissing antitrust counterclaim: "[I]n the area of antitrust law, conclusory allegations of a conspiracy or agreement should be carefully assessed."); <u>Boston Scientific v. Schneider (Eur.) AG</u>, 983 F. Supp. 245, 253 (D. Mass. 1997) ("[I]nvocation of antitrust terms of art does not confer immunity from a motion to dismiss.").

Because AngioDynamics has set forth no such facts in its pleading, leave to add the Fourth Counterclaim should be denied as futile, at least to the extent that it is based on an alleged "conspiracy" between Endolaser and Diomed.

## III.    ANGIODYNAMICS' PROPOSED FIFTH COUNTERCLAIM

In its proposed Fifth Counterclaim, AngioDynamics seeks to assert a "patent misuse" claim against Endolaser and Diomed.

In its Reply, AngioDynamics concedes that "patent misuse" is not an affirmative claim for damages, but maintains that it can form the basis for a declaratory judgment. (Reply to Endo. Opp. at 12-13). Even if that statement of law is correct, AngioDynamics' proposed Fifth Counterclaim indisputably does not state a claim for declaratory judgment. Unlike its First, Second and Third Counterclaims, which seek "Declaratory Judgment" of Non-Infringement,

Invalidity and Unenforceability, respectively, AngioDynamics' Fifth Counterclaim is styled differently, as an affirmative claim for "Patent Misuse." There is no mention of a declaratory judgment remedy.

Accordingly, leave to add the Fifth Counterclaim should be denied as futile.[3]

## IV.    ANGIODYNAMICS' PROPOSED SIXTH COUNTERCLAIM

In its proposed Sixth Counterclaim, AngioDynamics seeks to assert a claim of "unfair and deceptive trade practices" under Mass. Gen. L. ch. 93A, based on lawsuits filed (and press releases issued) by Diomed. There is no mention of even a single act undertaken by Endolaser, let alone the required allegation that circumstances giving rise to AngioDynamics' claim against Endolaser occurred "primarily and substantially in Massachusetts."

In its Reply, AngioDynamics points to seven paragraphs of its Amended Complaint: ¶¶ 9, 10, 27, 28, 30, 39 and 40. (Reply to Endo. Opp. at 15-16).  None of these paragraphs provide even remote support for a Chapter 93A claim against Endolaser.

Paragraph 9 merely states that Endolaser is an owner of the '777 patent and has obligations to Diomed under the Exclusive License. There is no mention of a single allegedly unfair or deceptive act, let alone one that took place in Massachusetts.

Paragraphs 10, 27, 28, 30 and 40 complain about *Diomed's* filing of patent lawsuits in Massachusetts for allegedly nefarious purposes. The only mention of an act by Endolaser is the nebulous alleged "conspiracy." Yet Endolaser's principals are admittedly located in New York and Spain, *not* in Massachusetts. No facts regarding the alleged conspiracy or any conceivable connection thereof to Massachusetts are provided.

---

[3] If the Fifth Counterclaim had sought a declaratory judgment (it did not), it would have to be denied as futile at least as against Endolaser, for the reasons discussed in Section I above.

Finally, Paragraph 39 makes the generalized (and unsupported) assertion that Endolaser is "engaged in trade or commerce" in Massachusetts. Even if true, this statement would not establish a basis for a Chapter 93A claim against Endolaser because it is entirely generalized – it does not allege that *the circumstances giving rise to AngioDynamics' claim* against Endolaser have any connection to Massachusetts (let alone the strong connection required by Chapter 93A).

AngioDynamics relies upon Play Time, Inc. v. LDDS Metromedia Communications, Inc., 123 F.3d 23 (1st Cir. 1997) for the proposition that "the situs of the plaintiff's losses … is one of the factors considered" in the "primarily and substantially" test. (Reply to Endo. Opp. at 17). Here that factor strongly favors Endolaser, *not* AngioDynamics. The plaintiff in Play Time was based in Massachusetts, such that its losses were of course felt in the Commonwealth. 123 F.3d at 25, 33. The same is true for AngioDynamics' second and final case, Burnham v. Mark IV Homes, 442 N.E.2d 1027, 1029 (Mass. 1982) (plaintiffs purchased modular home units for transportation to their "sites in Massachusetts and assembl[y] on foundations here"). In the present case, by contrast, AngioDynamics is located in New York, such that its losses (if any) were felt *outside* of Massachusetts. Likewise, Endolaser and its principals are located outside of Massachusetts (as AngioDynamics concedes in ¶ 3 of its Counterclaim). Thus, the complained-of acts (if any) and the complained-of harm (if any) all occurred outside of Massachusetts, even under the authorities that AngioDynamics itself cites.

AngioDynamics' proposed Sixth Counterclaim accordingly does not (because it cannot) allege that any Chapter 93A claim against Endolaser arises from circumstances occurring primarily and substantially in Massachusetts. Leave to add the Sixth Counterclaim against Endolaser should be denied as futile.

**V.    CONCLUSION**

For the aforementioned reasons, AngioDynamics' motion for leave to amend its complaint should be denied, at least to the extent indicated above.

Respectfully submitted,

DIOMED, INC., and
ENDOLASER ASSOCIATES, LLC

By their attorneys,

Dated: July 9, 2004                   ____/s/ Michael A. Albert_____
                                      Michael A. Albert (BBO #558566)
                                      malbert@wolfgreenfield.com
                                      James J. Foster (BBO #553285)
                                      jfoster@wolfgreenfield.com
                                      Michael N. Rader (BBO #646990)
                                      mrader@wolfgreenfield.com
                                      WOLF, GREENFIELD & SACKS, P.C.
                                      600 Atlantic Avenue
                                      Boston, MA 02210
                                      (617) 720-3500