UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ANGIODYNAMICS, INC., | ) CIVIL ACTION NO.: 04-10019-RGS |
| | ) |
| Defendant. | ) |
| | ) |
| AND | ) |
| | ) |
| ANGIODYNAMICS, INC., | ) |
| | ) |
| Counterclaim-Plaintiff, | ) |
| v. | ) |
| | ) |
| DIOMED, INC. AND ENDOLASER, LLC, | ) |
| | ) |
| Counterclaim-Defendants. | ) November 9, 2004 |

**ANGIODYNAMICS' REPLY MEMORANDUM IN SUPPORT OF ITS CLAIM CONSTRUCTION**

Defendant AngioDynamics hereby replies to Diomed's Combined Responsive <u>Markman</u> Memorandum on Claim Construction in Opposition to AngioDynamics' and Vascular Solutions' Opening Claim Construction Briefs ("the Diomed Opp.") and requests the Court to construe Claims 1, 9-11, 16-19, and 21 of U.S. Patent No. 6,398,777 ("the '777 patent") in accordance with this memorandum, AngioDynamics' Brief in chief, filed October 1, 2004 ("the AngioDynamics Brief") and Opposition Memorandum filed October 22, 2004 ("the AngioDynamics Opp.").

I.    **Points of Agreement.**

Diomed has made further concessions in its Opposition Brief that further reduce the Court's construction burden. Specifically, AngioDynamics requests the Court to explicitly include Diomed's statement on page 2 of the Opposition that "contact between the exposed

portion of the fiber optic line and the wall of the blood vessel is an essential feature of the invention" in its construction of the claims.

Diomed states that "emission-during-contact is essential to the method's clinical efficacy, and sufficient laser energy must be emitted during contact to cause the desired clinical effect," Diomed Opp. at 34. Diomed has previously stated that the "'emitting' limitation should be construed simply to mean the step of delivering laser energy at enough points of contact between the emitting section and the inner wall along a vessel being treated to cause a reduction in vessel diameter." Diomed Brief at 17. Given these admissions, the Court should explicitly provide in its claim construction that "the clinical effect must come only from laser energy entering the vein wall through the point of contact of the emitting section and the interior vein wall and not from laser energy emitted by that portion of the emitting section not in contact with the vein wall."

Diomed "distinguishes the invention of the '777 patent from earlier laser techniques, which used laser energy to coagulate blood within the vessel (rather than damaging the tissue of the vessel itself)." Diomed Brief at 16. More specifically, the prosecution history stated that in the prior art "laser energy is not directed into the wall of the blood vessel but rather is used to create a blood clot in the vessel." AngioDynamics' Exhibit 6 at 6. Together with the just cited language from Diomed's Opposition at 34 and Diomed's Brief at 17, these statements admit that the claims of the '777 patent cannot include any method that achieves a clinical effect through clotting of blood. Accordingly, the Court should expressly state that "the claims of the '777 patent do not include any method that achieves any clinical effect by clotting blood."

II.  **"Placing said laser emitting section of said emitting means into intraluminal contact with the blood vessel"**

    a.  **Deliberate and systematic contact and draining and compression are required.**

Diomed argues that deliberate and systematic contact through draining and compression is simply a preferred embodiment. Diomed Opp. at 3. It further states that the sentence "[t]he drainage of blood is important to insure direct contact of the vessel walls with tip 41 during delivery of laser energy" "does not exclude contact from being achieved in other ways." Diomed Opp. at 24 n.12. Diomed suggests that the '777 patent "recommended [draining and compression] simply to help ensure that contact occurs." Diomed Opp. at 3. This position is premised on Diomed's unsupported assumption that "[n]aturally, contact between the exposed section of the fiber optic line and the vessel wall can and does occur in other ways, even if not caused by compression and drainage as described in the preferred embodiment. In other words, compression and drainage are not required" Id.

Diomed's argument misses the point. Nowhere does the patent or prosecution history support, let alone suggest, that contact and therefore performance of the claimed invention can occur in other ways. By using the affirmative term "placing," repeatedly stating in the specification that draining and compressing "insured" contact and were "important," the '777 patentees defined the term "placing . . . into intraluminal contact" and thus their invention to require draining and compression. Reading "placing . . . into intraluminal contact" to mean only "contacting," as Diomed suggests, would remove the word "placing" from the claim language, and would be inconsistent with the '777 specification and prosecution history.[1]

---

[1] AngioDynamics provided Diomed oral notice and written notice of its clarified claim construction position, well before any party made substantive argument or briefed the issue to be sure all parties briefed all the issues. Diomed's Brief and Opposition have certainly briefed these issues. Diomed's statement that AngioDynamics has

### b. AngioDynamics' cases are on point and undistinguished.

#### i. The claims require deliberate and systematic, not incidental contact.

It would be error to ignore the Federal Circuit's explicit holdings to conclude that the '777 patent does not require deliberate and systematic action of draining and compression when "placing . . . into intraluminal contact." The Federal Circuit's holding in Combined Systems, is directly on point, cannot be distinguished from this case, and requires an express statement in the claim construction that "placing . . . into intraluminal contact" requires deliberate and systematic actions to achieve contact, and does not include incidental or accidental contact.

Diomed's suggestion that the Combined Systems holding was based only on the "formed folds" claim language is incorrect. Diomed Opp. at 31-33. The claim in that case was to a method that included a step of "forming folds," like the term "placing . . into intraluminal contact" here. The Circuit court held first that "the affirmative recitation of 'forming folds. . .' . . . requires the 'deliberate' forming of 'folds.'" Combined Systems, Inc. v. Defense Techn. Corp. of America, 350 F.3d 1207, 1211-12 (Fed. Cir. 2003). The court further held that nothing in the specification or prosecution history was inconsistent with deliberately forming folds, and that the "forming folds" limitation itself when read in the context of the specification, just like the claim term "placing" when read in conjunction with the "important to insure" language in the '777 patent, properly excluded incidental folds. The "formed folds" footnote that Diomed cites at pages 31-33 of the Opposition, takes nothing from the force of the holding requiring deliberate and systematic action and excluding incidental contact in this case.[2]

---

changed its position "again," at page 7 and the chart on page 22 suggesting the same, is inaccurate, as a quick look at page 2 of the claim chart attached to Exhibit E of Diomed's brief reveals. Compare chart p. 22 with Diomed's Exhibit E Claim 9 (b) ("this requires drainage of blood and compression of the vein.").

[2] Diomed's suggestion that unintentional infringement is still infringement has no place in this claim construction analysis and moreover, is wrong in a case like this where deliberate action is properly construed to be a claim

Further support for this position comes from a point Diomed makes. Diomed is correct that "Goldman does not disclose intraluminal contact between the fiber tip and the vessel wall." Diomed Opp. at 5 n.3. More to the point however, nothing in Goldman suggests that its method and device <u>did not</u> contact the vein wall incidentally or cause vein wall damage or blood clots while contacting the wall. Since Goldman did not rule out incidental contact, the '777 patentees could only have meant, and the examiner could only have understood them to say, that the term "placing . . . into intraluminal contact" means deliberate, systematic and non-incidental contact.

The term can not now mean anything broader than what it meant when it was relied on by the examiner to issue the '777 patent. Accordingly, the Court should explicitly limit the claims to deliberate and systematic contact and state expressly that the claims of the '777 patent do not cover methods that result in incidental contact. Defining the term "placing . . . into intraluminal contact" to require deliberate and systematic contact is fully consistent with the further requirement that contact be achieved by draining and compression.

### ii. The claims require draining and compression

The Federal Circuit's recent decision in <u>Bard</u> reiterates that the statements of importance and insurance in this case define the term "placing . . . into intraluminal contact" to require draining and compression. <u>C.R. Bard Co., Inc. v. Davol Inc.</u>, No. 04-1135, 2004 WL 2414612 at * 5 (Fed. Cir. Oct. 29, 2004) (limiting statements in specification define claim term "plug" to require "pleats"). The '777 patent specification states expressly that "drainage is important to insure direct contact," and Diomed admits that this contact "is an essential feature of the invention." Diomed Opp. at 2. In contrast to Diomed's assertion at page 24 of its Opposition, <u>Toro Co. v. White Consol. Indus.</u>, 199 F.3d 1295, 1301 (Fed. Cir. 1999), does not require

---

limitation. <u>Combined Systems,</u> 350 F.3d at 1213-14 (affirming summary judgment based on construction that forming folds must be deliberate and that inherent formation of folds does not infringe).

limiting language in the specification to be directed to the invention as a whole in order to limit claim language. Diomed Opp. at 24 n.12. Rather, the Toro holding is directly analogous to the '777 patent here, with both Toro and this case involving statements in the specification that define the importance of a particular restriction to achieving a required claim limitation. Id.

Accordingly, a limitation in the specification that ensures that even one element of a claim occurs, like the insurance of the claimed intraluminal contact here, requires that the limitation be explicitly set out in the claim construction and expressly excludes methods not performing these limitations. See also Gaus v. Conair Corp., 363 F.3d 1284, 1289 (Fed Cir. 2004) (holding that specification statements required limitation of claim term because they "ensured" performance of an "advantage" of the invention).

Several additional cases have held similarly and require limiting the '777 patent claims to draining and compression. Tronzo v. Biomet, 156 F.3d 1154, 1159 (Fed. Cir. 1998) (specification language "extremely important aspect" limited claim term to specific shape recited); Laitram v. Morehouse Industries, Inc. 143 F.3d 1456, 1462-63 (Fed. Cir. 1998) (driving section limited to "flat" structures where specification described benefits and only detailed flat structures.); O.I. Corp. v. Tekmar, 115 F.3d 1576 (Fed. Cir. 1997) (specification statement that "other non-smooth geometries may be used" required limiting claims to non-smooth geometries); Cognex Corp. v. Electro Scientific Indus., Inc., 214 F. Supp. 2d 110, 120 (D. Mass. 2002) (specification's describing something as an "important aspect" of claim limitation requires restriction of claim term). Diomed fails to distinguish AngioDynamics' cases.

### c. Diomed insufficiently distinguishes AngioDynamics' cases.

Diomed's efforts to distinguish AngioDynamics' cited cases fall short. Diomed is incorrect that Bell Atlantic Network Svcs., Inc. v. Covad Comm'ns Group, Inc, 262 F.3d 1258 (Fed. Cir. 2001) precludes "placing" to expressly exclude other ways of achieving contact. Diomed Opp. at 26. Bell expressly contradicts this assertion. Bell 262 F.3d at 1271-72 (consistent use of term defines by implication precluding other meanings and limiting claim term without distinguishing or expressly excluding other meanings). It is also important to note that both Wang and Bell explicitly held, directly contrary to Diomed's assertions at various points, e.g. Diomed Opp. at 3, 17, that generic broadening statements cannot expand the claims past specification limitations. Id. at 1273 ("The usage "preferred" does not of itself broaden the claims beyond their support in the specification.")

Abtox v. Exitron Corp, 122 F.3d 1019, 1024 (Fed. Cir. 1997) did not limit the claim term "a" solely by the way that term was used in the rest of the claim as Diomed asserts. Diomed Opp. at 26. Rather, the court specifically held that "because the claim language, as interpreted in light of the specification, limits the microwave devices to a single gas-confining chamber" the claim was properly limited. Id. at 1027 (emphasis added). Similarly, here the claim term "placing" when read in the context of the '777 specification and prosecution history requires limitation to draining and compression.

### d. Diomed's legal statements ignore clear precedent and its cases do not apply.

Diomed cites numerous Federal Circuit cases in its efforts to convince the Court that the specification does not require either deliberate and systematic action or draining and compression for "placing . . . into contact." Diomed Opp. at 7-10, 22-28. But, the cases Diomed cites, and particularly Libel-Flarsheim, recognized and cited the narrower black letter principles

cited above favorably and distinguished themselves from cases like the '777 patent here for that very reason. See Libel Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 906-908 (Fed. Cir. 2004).

Diomed's reliance on Home Diagnostics and Fuji Photo at pages 26-27 of its Opposition to suggest that its "method claim recites a step that can be performed in various ways, some of which are not described explicitly in the specification" is misplaced (emphasis added). The '777 patent does not describe any other way to achieve contact either explicitly or implicitly. Diomed's use of the highlighted language implies that the '777 patent somehow discloses some way other than draining and compression to achieve contact. The cases Diomed relies on apply only to situations where the specification or prosecution history specifically disclosed other ways of performing the claim limitation at issue, which is not the case here. Fuji Photo Film Co., Ltd v. Int'l Trade Comm'n, 2004 WL 2248087 at *9 (Fed. Cir. Oct. 7, 2004) (specification's explaining that can wind film in daylight precludes requiring claims to disposable camera to all be performed in darkroom); Home Diagnostics, Inc. v. Lifescan, Inc., 381 F.3d at 13572004 WL 1925613 (Fed. Cir. Aug. 31, 2004) at * 5-6 (patentee's amending to obtain broader claim scope precluded limiting claim language).

Diomed's reliance on Superguide and Sunrace Roots is misplaced. The '777 patentees offered figures from the specification describing draining and compression to prove to the examiner that their invention achieved contact with the vessel wall. AngioDynamics does not rely on this citation alone to limit the claims. Instead, it is offered as evidence in conjunction with the statements in the specification to illustrate that the '777 patentees were consistent in their reliance on draining and compression to achieve contact, the element that they relied upon to distinguish over the prior art.[3]

---

[3] Diomed's straw man suggestion, Opp. at 5-6, that because Goldman taught compression (to limit clotting and prevent clot displacement), compression would not have been a patentable distinction over Goldman is an odd

### e. Claim differentiation does not avoid the draining and compression limitation.

Kalman v. Kimberly-Clark Corp., 713 F.2d 760 (Fed. Cir. 1983) detailed only a single claim limitation repeated in a dependent claim. Because claims 10 and 17 here have an additional temporal limitation, even if claim differentiation did apply, it would not change the result. AngioDynamics' Opp. Brief at 11.

## III. The Rounded Tip.

### a. Diomed's cases do not avoid the rounded tip.

Diomed's reliance on Odetics, Inc. v. Storage Tech. Corp., 185 F.3d 1259, 1268 (Fed. Cir. 1999) to establish that means for emitting laser energy is not an uncoated rounded tip is misplaced. First, the cited language comes from the Court's analysis of equivalents infringement, not claim construction. Id. at 1268. Second, because the uncoated rounded tip is the only structure identified to perform the function of emitting laser energy, it is clearly part of the "overall structure" and not the type of ancillary structure that performed an irrelevant function differently as found in Odetics. Id. at 1270-71.

Moreover, given the specific requirement of an uncoated rounded tip in this case, Raytheon Co. v. McData Corp., No. 2:03-CV-013 (TJW) (E.D. Tex. Feb. 10, 2004) supports AngioDynamics' position. In that case, the court specifically indicated that the specificity needed is a case by case determination and that "identifying sub-components may sometimes be necessary." Id. at *6. The court in Raytheon referred to the specification and figures and refused to adopt the overbroad generic descriptions offered by the patentee, like Diomed's suggested generic fiber optic line here. Id. at n.5. Just such guided referral to the specification and figures

---

argument. AngioDynamics has never argued that the '777 patentees relied on compression generally to distinguish over Goldman. Instead, the point is that the '777 patentees clearly relied on figures showing draining and compression to prove to the examiner that they were <u>achieving the crucial contact</u> and were therefore distinguishable over Goldman.

in this case establishes that the uncoated rounded tip is the only structure disclosed and that this structure is not merely some "sub-component" of a broader "overall structure."

Diomed's citation to Micro Chemical, Inc. v. Great Plains Chemical Co., Inc., 194 F.3d 1250, 1258 (Fed. Cir. 1999) is also misplaced. In that case the district court erroneously overlooked several embodiments properly disclosed and linked in the specification to performing the identified function. Id. But nowhere does the case suggest that the single structure identified here, the uncoated rounded tip, is not the disclosed structure that performs the claimed function, emitting laser energy. Diomed's reliance on Genzyme Corp. v. Atrium Medical Corp., 212 F. Supp. 2d 292, 308 (D. Del. 2002) pushes the limit and does not apply to the Section 112 para. 6 analysis. There the court specifically held that the one-way valve at issue "is not a means plus function limitation." Id. at 307 (emphasis added). The language Diomed relies on is pure dicta lacking any precedential value. Id. at 308 ("even if the court had . . . concluded that "one-way valve means is a means plus function element" just before quoted language).

Motorola Inc. v. Vosi Techs., Inc., 2001 WL 1646559, *5 (N.D. Ill. Dec. 21, 2001) involved entirely different facts and does not change the fact that the only structure disclosed in the '777 specification for performing the claimed function is an uncoated rounded tip. That the uncoated rounded tip has advantages other than emitting laser energy does not change the fact that it is the only structure disclosed for performing this function. Moreover, in order for Diomed's citations to the Medical Instr. and Medtronic cases to apply, Diomed would have to first assert that the uncoated rounded tip does not emit laser energy. In both cases, the court rejected the patentee's attempts to gain additional protection because the asserted structure did not perform the required function, but rather performed an entirely different function or did not have the required link to the relevant function. Medical Instrumentation and Diagnostic Corp.,

344 F.3d 1205, 1215-16 (Fed. Cir. 2003) (As it is actually written, there is nothing [in the specification] to indicate that conversion is one of the functions performed by the described software") (citing Medtronic Inc. v. Advanced Cardiovascular Systems, Inc., 248 F.3d 1303, 1311 (Fed. Cir. 2001) (failure to identify structure as performing claimed function precludes listing as Section 112 para. 6 structure).

Diomed's reliance on Fonar Corp. v. General Electric Co., 107 F.3d 1543, 1551-52 (Fed. Cir. 1997) is also misplaced. That case specifically held that statements in a specification like, "other forms may be used," failed to identify structure to means plus function claim language. Id. This holding requires that the '777 specification statement that "other shapes are contemplated" similarly fails to sufficiently identify other tip shapes. See also Bell Atlantic and Wang supra (use of "preferred" cannot broaden claims past specification). The method claims in Fonar contained no means clauses, and were not means plus function claims, and the court properly construed those claims without relying on Section 112 para. 6. Id. at 1546, 1550-51. Accordingly, any method claim aspect of the Fonar holding does not apply to the clear means plus function limitations at issue here.

The S3 Corp. v. NVIDIA Corp., 259 F.3d 1364, 1371 (Fed. Cir. 2001) case that Diomed cites in note 9 at page 18 of its Opposition does not support Diomed's assertion that the statement in the specification that "other shapes are contemplated" broadens the specification's disclosure beyond what it specifically describes. Rather, the S3 court held only that the specification's use of the term "selector" to define structure was adequate under Section 112 para. 6, and not invalid for indefiniteness. Id. at 1370-71. The claim was valid because one skilled in the art would know that a "selector" was "an electronic device such as a simple multiplexer, whose structure is well known." Id. There is no indefiniteness issue in the means

plus function limitation here, the specification specifically discloses only an uncoated rounded tip for performing the claimed function.

### b. Claim differentiation does not avoid a rounded tip.

Diomed's citation to Wenger Manufacturing, Inc. v. Coating Machinery Systems, Inc, 239 F. 3d 1225, 1234 provides no support for Diomed's claim differentiation argument because in that case the dependent claim recited an additional function of "recirculating air," whereas the independent claim only recited a single function, "circulating air." Id. at 1234. Wenger instead reaffirms the applicability of Laitram to this case by its statement that "the stringencies of a means plus function limitation are not to be avoided by the mere addition of a dependent claim that recites the same structure disclosed in the specification." Id. at 1234. This is precisely what the '777 patent did with dependent claims 14 and 15 reciting the uncoated rounded tip disclosed in the specification for emitting laser energy.

### IV. Diomed's "laser energy," "emptying" and "guidance means" definitions fail.

Diomed's proposed interpretation of laser energy as "energy emitted by a laser" ignores its own dictionary definitions clearly defining the term as monochromatic light energy. Diomed Opp. at 40-41. To the extent Diomed's interpretation would result in its covering the transfer of any energy other than amplified monochromatic light between the uncoated rounded tip and the vein wall, such interpretation is inconsistent with the unambiguous language of the claims, specification and prosecution history.

Diomed's citation to a case addressing a standard for the necessarily subjective term "clean," Diomed Opp. at 35, sheds no light on the definition of "emptying" and the absolute "empty."

Regardless of whether the function is locating or guiding, claim 16 is still invalid for indefiniteness based on the holding in Cardiac Pacemakers. The recited function is actively locating the tip "at" the treatment site, necessarily including a finding aspect and a placing aspect. But the claim and specification still provide no structure to perform the "placing" half, as opposed to the "finding" half, of the "locating" function. Furthermore, the locating function also requires monitoring of the ultrasound imager, or tip light. Here, just as in the Acacia case cited by Diomed "the specification fails to recite a human being as corresponding structure" for the placing or finding aspects of the locate function, rendering the claim indefinite. Although the figures, Figs. 6, 7A, 7B, 7C, 13, 19, and specification language, see, e.g., Col. 5, ll.15, teach human hands for draining and compression, the specification nowhere discloses a human being or component thereof for either observing the ultrasound image or emitted light to find the tip, or reacting to this information and placing it at the appropriate location. Accordingly, the holding of the Advanced Respiratory, Inc. case, where a hand was specifically disclosed, inapplicable.

## V.    The Court has jurisdiction over claim 1.

Diomed's citations on the point of jurisdiction do not preclude the Court from construing claim 1. First, claim 1 is part of AngioDynamics' antitrust claims, therefore is at issue and must be construed. Moreover, the Court has the discretion to retain jurisdiction under the Declaratory Judgment Act to avoid needless expenditure of time and resources of the parties or the court. Diomed Opp. at 42. Compared to the extreme waste of time and resources of an entirely new proceeding should Diomed or a subsequent owner of the '777 patent decide to assert claim 1 against AngioDynamics at some point in the future, the additional time spent addressing this single claim now is a much better investment of judicial and party resources.

Claim 1 recites the device corresponding to the method claims at issue in this case. Endolaser, Diomed's predecessor in interest asserted infringement of claim 1 by Biolitec, AngioDynamics' exclusive supplier of the devices it uses to perform the methods at issue. Furthermore, Diomed initially considered claim 1 close enough to the device used by AngioDynamics to prompt its being listed in the initial complaint (which AngioDynamics of course disputes), presumably after complying with Rule 11, and does not involve some unrelated device that is too far removed to create a case or controversy. Cf. Jevis B. Webb. Co. v. Southern Systems, Inc., 742 F.2d 1388, 1399 n.8 (Fed. Cir. 1984) (stating that declaratory judgment action asserting all claims are invalid is appropriate in response to complaint that asserted infringement of all claims) (citing Sterling Aluminum Prod. Inc. v. Bohn Aluminum & Brass Corp., 298 F.2d 538 (6th Cir. 1962)). Accordingly, unless Diomed is willing to indicate that neither it nor its sucessors in interest will assert claim 1 or its dependent claims at some point in the future, or state that they do not apply to the devices AngioDynamics uses, AngioDynamics maintains that under the totality of the circumstances it has a reasonable apprehension of future suit that is best resolved now. Cf. Grain Processing Corp. v. American Maize-Products Co., 840 F. 3d 902, 906 (Fed. Cir. 1988) (case or controversy determined from totality of the circumstances).

## Conclusion

For the reasons set forth above and in AngioDynamics' Brief filed October 1, 2004, and Opposition filed October 22, 2004, AngioDynamics respectfully requests the Court to construe claims 1, 9-11, 16-19 and 21 of U.S. Patent No. 6,398,777 in accordance with the constructions set out in these Briefs and summarized in the chart attached as Exhibit 2 to AngioDynamics' Brief, along with any additional explicit limitations the Court deems necessary

Dated: November 9, 2004

DEFENDANT
ANGIODYNAMICS, INC.
BY ITS ATTORNEYS

By _____
MARK D. GIARRATANA
ALEXANDRA B. STEVENS
SETH M. WILSON (BBO# 640270)
McCarter & English, LLP
CityPlace I
185 Asylum Street
Hartford, CT  06103
(860) 275-6700
(860) 724-3397 (fax)
smwilson@mccarter.com
astevens@mccarter.com
        -and-
RODNEY S. DOWELL (BBO # 620916)
Berman & Dowell
210 Commercial Street
Boston, MA  02109
(617) 723-9911
(617) 723-6688 (fax)
rdowell@bermandowell.com

15

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of <u>AngioDynamics' Reply Memorandum in Support of its Claim Construction</u> was served upon the attorney of record for the Plaintiff and Counterclaim-Defendants by regular mail on November 9, 2004.

Michael A. Albert, Esq.
Michael N. Rader, Esq.
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA 02210-2206

_____
Seth M. Wilson

HARTFORD: 625689.02

97353-00062