IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DIOMED, INC.,

    Plaintiff,

v.

ANGIODYNAMICS, INC,

    Defendant.

Civil Action No. 04-CV-10019 (RGS)

## DIOMED'S *MARKMAN* SUR-REPLY BRIEF

Michael A. Albert (BBO #558566)
Michael N. Rader (BBO #646990)
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
(617) 646-8000

COUNSEL FOR PLAINTIFF DIOMED, INC.

Diomed respectfully requests leave to file this sur-reply brief for the limited purpose of correcting misstatements made by AngioDynamics in its Markman reply brief (Docket #47).[1]

## I. INTRODUCTION

Diomed's opening brief (Docket #39) explains its proposed claim construction, which has not changed since the parties exchanged proposals on September 1, 2004 as required by the Court's Scheduling Order.

Diomed's responsive brief (Docket #43) addresses AngioDynamics' opening arguments (Docket #40) as well as the changes made by AngioDynamics to its claim construction position between the September 1 Court-ordered exchange and the opening round of briefing.

Diomed will not burden the Court by repeating arguments made previously. This brief is limited to correcting some of the more significant misstatements made by AngioDynamics in its Markman reply brief.

## II. ANGIODYNAMICS' MISSTATEMENTS

### A. Misstatements Regarding "Contact" Of The Laser Emitting Section And The Vessel Wall

Under the inapt heading "Points of Agreement," AngioDynamics requests that the Court pluck statements from Diomed's briefs, remove them from their context, and adopt them as part of its claim construction. This is improper and invites legal error. The construction of patent claims begins with the words of the claims themselves and proceeds with consideration of the intrinsic evidence, i.e., the patent specification and file history. Statements made by parties in briefing to explain their proposed claim constructions to the Court are not intrinsic evidence and should not be "adopted" as part of a claim construction. A strategy identical to that advanced by AngioDynamics was recently rejected by the Northern District of Illinois for just this reason:

---

[1] In filing its reply brief, AngioDynamics acknowledged Diomed's right to respond. (Docket #46 at 1).

> Papst's argument that the Court must construe the claim in view of Sunon's "admissions" is misguided. Arguments in a brief are not intrinsic evidence. The Court therefore need not consider whether Sunon "admitted" anything regarding the proper scope of the claim term "corner areas."

Papst Licensing v. Sunonwealth Elec. Machine, 2004 WL 557385, *5 n.5 (N.D. Ill. 2004).

In any event, AngioDynamics' arguments are based on outright distortion of Diomed's statements in briefing. For example, Diomed explained that the "thereby" clause in claim 9 of the '777 patent ("thereby decreasing the diameter of said blood vessel") should be interpreted, straightforwardly, to require emission of sufficient laser energy at the laser emitting section of the fiber to cause vessel wall tissue damage to lead to a decrease in the diameter of the vein. (Docket #39 at 17-18; Docket #43 at 34). AngioDynamics divines from "these admissions" that

> the Court should explicitly provide in its claim construction that "the clinical effect must come *only* from laser energy entering the vein wall through the point of contact … and not from laser energy emitted by that portion of the emitting section not in contact with the vein wall."

(Angio. Reply at 2) (emphasis added).

But Diomed said nothing of the sort. The idea of excluding even the slightest clinical effect from laser energy emitted during a moment of no contact does not appear anywhere in Diomed's briefs, let alone – more importantly – in the patent or its file history. AngioDynamics' request that the Court adopt such a narrow and absolute requirement is unsupported.

AngioDynamics also argues that, by distinguishing the '777 patent from prior art that relied on clotting of blood rather than contact with the vessel wall, Diomed "admit[s] that the claims of the '777 patent cannot include *any* method that achieves a clinical effect through clotting of blood." (Id.) (emphasis added). Once again, Diomed never said this, and such a limitation is not found in the patent or its file history either.[2]

---

[2] The Goldman patent cited by the Examiner taught positioning a laser-emitting tip *in the middle* of the blood vessel to clot the blood. Goldman was distinguished because the '777 patent claims placing the fiber *in contact* with the vessel wall. Clotting, in addition to contact damage of the vessel wall, was never disclaimed. (Docket #43 at 4-6).

It is also important to note that AngioDynamics advances here yet *another* series of changes to its claim construction position, urging the Court to adopt constructions that it did not advance in its September 1 submission, its September 21 "revision" of that submission, its October 1 opening brief or its October 22 opposition brief. AngioDynamics' *fifth* version of its proposed construction – made for the first time in a reply brief – is improper, inefficient, and in any event incorrect. Its changes also undercut the stridency with which AngioDynamics has advocated each iteration of its proposed claim construction as being the only true construction.

### B. Misstatements Regarding "Drainage And Compression" Of The Vessel

AngioDynamics' reply also advances (at 3) a new argument why the phrase "placing said laser emitting section … into intraluminal contact with the blood vessel" should be interpreted to *require* the preferred embodiment of drainage and compression of the vein. AngioDynamics argues that, when it states that drainage and compression of the vein are important to "insure" (not "achieve") contact, the '777 patent *defines* "placing" to require that the drainage and compression steps be carried out in all cases.

This misstates the law. The Federal Circuit is reluctant to find that a patentee has acted as his own lexicographer and "defined" a term. It draws that conclusion only when the patentee "defines the specific terms used to describe the invention with reasonable clarity, deliberateness, and precision." Golight, Inc. v. Walmart Stores, Inc., 355 F.3d 1327, 1332 (Fed. Cir. 2004). No "definition" of the word "placing" to require "drainage and compression" appears in the '777 patent or its file history, let alone with the required "clarity, deliberateness, and precision."[3]

---

[3] Diomed does not seek to "remove the word 'placing' from the claim language" as AngioDynamics suggests. (Angio. Reply at 3). The word "contacting" in Diomed's proposed construction is a synonym for the slightly longer "*placing* … into intraluminal contact." As discussed in the main text, it is AngioDynamics that seeks (as it admits) to alter the plain and ordinary meaning of the word "placing" by introducing an alleged "definition" from the '777 patent specification.

Indeed, this Court has held – consistent with Federal Circuit precedent – that describing a preferred embodiment as "important" in the patent specification does *not* limit the claims to that preferred embodiment. Provide Techs., Inc. v. East Coast Heat Seal, Inc., 974 F. Supp. 65, 69 (D. Mass. 1997) (Stearns, J.).

Like the '777 patent at issue in this case, the patents at issue in Provide were directed to a claimed method – specifically, a method for resealing a reconditioned toner cartridge without having to split its casing. Id. at 66. The claims called for application of a "hot melt adhesive" as part of the process. Id. The defendant argued that the step of applying the "hot melt adhesive" should be limited to using a wax-based adhesive even though this was not recited in the claim. The defendant relied upon this statement in the patent specification:

> The nature and choice of adhesives is *an important aspect of this invention*. In general, most hot-melt adhesive application temperatures exceed the softening or even melting temperature of some of the plastics used in the manufacture of cartridges, and are therefore, not useful. It has been found, however, that waxes … meet the requirements necessary for [this application] … Furthermore, wax-based adhesives can readily be screened onto the plastic seal, unlike most other hot-melt adhesives.

Id. at 69 (emphasis added).

This Court rejected the defendant's argument, holding that "[w]hile a wax-modified adhesive is clearly preferred by the [inventor's] method, nothing about the process as described limits the claims solely to such adhesives." Id. In contrast to this Court's precedent and that of the Federal Circuit, AngioDynamics would have the exception (clear, deliberate and precise "definition" of a term in the patent specification) swallow the black-letter rule that patent claims are not to be limited to the preferred embodiment. This invites legal error.

- 4 -

The patent at issue in Gaus v. Conair Corp., 363 F.3d 1284 (Fed. Cir. 2004) (cited in AngioDynamics' reply brief at 6) fell into the narrow category in which the "specification … demonstrates that *the invention itself* requires" the limitation advocated by the defendant. Id. at 1290. See also Docket #43 at 8 (discussing the Scimed case which involved a similar patent). The '777 patent is not even alleged to include such exceptional language.[4]

### C.   Misstatement Regarding The Construction Of "Laser Energy"

In an effort to convince the Court to limit "laser energy" to purely monochromatic light energy – that is, a beam having a single wavelength that does not include even the tiniest amount of light at any other wavelength – AngioDynamics says that Diomed "ignores its own dictionary definitions clearly defining the term as monochromatic light energy." (Angio. Reply at 12).

It is difficult to understand how AngioDynamics could have made this representation to the Court. On the contrary, the dictionary definitions Diomed cited explain that laser light "is **often near-monochromatic**" and "**can** have a very narrow bandwidth." (Docket #43 at 40-41). These definitions (with their express qualifications "often," "near" and "can") demonstrate that a definition of "laser energy" that excludes (as AngioDynamics would have it) "any energy other than amplified monochromatic light" is inconsistent with the ordinary meaning of the term.[5]

### D.   Misstatements Regarding Non-Asserted Claim 1

In an effort to place claim 1 of the '777 patent at issue – even though Diomed elected not to assert it when identifying the asserted claims as required by the Court's Scheduling Order – AngioDynamics alleges that "Diomed initially considered claim 1 close enough to the device used by AngioDynamics to prompt its being listed in the initial complaint." (Angio. Reply at 14).

---

[4] Rebuttal of AngioDynamics' sweeping contentions that Diomed "ignore[s] clear precedent" and that Diomed's "cases do not apply" (Angio. Reply at 7) is beyond the scope of this sur-reply. Diomed welcomes the opportunity to address applicable precedent should the Court have any questions.

[5] Indeed, lasers marketed commercially as emitting a particular wavelength do nevertheless emit some light at other wavelengths.

- 5 -

The statement is false. Diomed's complaint asserted the '777 patent without mentioning specific claims. It did not "list" claim 1. Diomed identified the specific asserted claims – which do *not* include claim 1 – when required by the Court's Scheduling Order. As the Court observed at the initial Scheduling Conference, this mechanism was designed to streamline the case by enabling the parties to focus on what is in dispute. AngioDynamics now seeks to undermine that benefit by asking the Court to construe the limitations of claim 1 even though it is not asserted.

AngioDynamics is also incorrect in contending that a court has unfettered discretion to exercise declaratory judgment jurisdiction. (Angio. Reply at 13). In fact, the opposite is the case. A court has discretion to *decline* to exercise declaratory judgment jurisdiction in appropriate cases, but it has no discretion to hear a declaratory judgment action that does not arise from a case of actual controversy. 28 U.S.C. § 2201(a). For this reason, declaratory judgment actions based on non-asserted patent claims should be dismissed. Grain Processing Corp. v. Am. Maize-Products Co., 840 F.2d 902, 904-06 (Fed. Cir. 1988) (no jurisdiction over patent claims asserted in original complaint but withdrawn by the patentee before trial) citing Prieser v. Newkirk, 422 U.S. 395, 401 (1975) ("[A]n actual case or controversy must be extant at all stages of review, not merely at the time the complaint is filed."); Howes v. Zircon Corp., 992 F. Supp. 957, 959-60 (N.D. Ill. 1998) ("Plaintiffs no longer allege infringement of claims 1 and 16 and thus no present case or controversy exists regarding their infringement."); Ultradent Prods., Inc. v. Life-Like Cosmetics, Inc., 924 F. Supp. 1101, 1106 n.3 (D. Utah 1996) ("The court's interpretation of claims is limited to those claims Ultradent asserts Life-Like has infringed. Although Life-Like seeks a declaratory judgment of invalidity of all claims … the unasserted claims are not properly before the court."); Biogen, Inc. v. Amgen, Inc., 913 F. Supp. 35 (D. Mass. 1996) (Stearns, J.) (granting motion to dismiss declaratory judgment counterclaim aimed at non-asserted patent claims).

### III.   CONCLUSION

For the above reasons and those set forth in Diomed's previous briefing (Docket #39, 43), the claim interpretations proposed by Diomed should be adopted.

                                        Respectfully submitted,

                                        DIOMED, INC.,

                                        By its attorneys,

Dated: December 22, 2004            /s/ Michael N. Rader
                                        Michael A. Albert (BBO #558566)
                                        malbert@wolfgreenfield.com
                                        Michael N. Rader (BBO #646990)
                                        mrader@wolfgreenfield.com
                                        WOLF, GREENFIELD & SACKS, P.C.
                                        600 Atlantic Avenue
                                        Boston, MA 02210
                                        (617) 646-8000