UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC., <br><br> Plaintiff, Defendant in Counterclaim, <br><br> v. <br><br> VASCULAR SOLUTIONS, INC. <br><br> Defendant, Plaintiff in Counterclaim. | Civil Action No.: 04-10444-RGS |
| DIOMED, INC. <br><br> Plaintiff, Defendant in Counterclaim, <br><br> v. <br><br> ANGIODYNAMICS, INC. <br><br> Defendant, Plaintiff in Counterclaim. | Civil Action No.: 04-10019-RGS |

**VASCULAR SOLUTIONS, INC.'S SECOND
AMENDED ANSWER AND COUNTERCLAIM**

In accordance with the July 29, 2005 Order of this Court granting Defendant Vascular Solutions, Inc.'s ("VSI") Consented Motion to Amend Its First Amended Answer, Affirmative Defenses, and Counterclaims, VSI hereby submits this Second Amended Answer and Counterclaims in response to the Complaint of Plaintiff Diomed, Inc. ("Diomed"). VSI admits, denies and alleges as follows:

1.  VSI lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1.

2.  VSI admits the allegations of Paragraph 2.

3-13.  VSI lacks knowledge or information sufficient to form a belief as to the truth

of the allegations of Paragraphs 3-13, which relate to Diomed's alleged activities and the significance of those activities.

14. For its response to the allegations of Paragraph 14, VSI admits that it competes with Diomed, but denies that it infringes Diomed's '777 Patent.

15. VSI admits the allegations of Paragraph 15.

16. VSI admits the allegations of Paragraph 16.

17. VSI admits that this Court has personal jurisdiction over VSI and that VSI does business in this District, but denies the remaining allegations of Paragraph 17.

18. VSI admits the allegations of Paragraph 18.

19. VSI incorporates its answers to Paragraphs 1-18 as if fully set forth herein.

20. For its response to the allegations of Paragraph 20, VSI admits that a copy of the '777 Patent is attached as Exhibit A, and states that it lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 20.

21. VSI admits the allegations of Paragraph 21.

22. VSI admits the allegations of Paragraph 22.

23. VSI denies the allegations of Paragraph 23.

24. VSI denies the allegations of Paragraph 24.

25. VSI denies the allegations of Paragraph 25.

26. VSI denies the allegations of Paragraph 26.

27. VSI denies the allegations of Paragraph 27.

28. VSI denies each and every allegation of Diomed's Complaint not otherwise admitted or qualified herein.

## AFFIRMATIVE DEFENSES

29. According to the records of the United States Patent Office, Endolaser, LLC

and Dr. Robert Min are the owners of the '777 Patent. Endolaser should be added as a necessary party under Fed. R. Civ. P. 19.

30. One or more of the claims of Diomed's '777 Patent is invalid under the provisions of 35 U.S.C. § 101 et seq. of the patent laws of the United States.

31. During the prosecution of the '777 patent application from August 13, 1999 through June 4, 2002, the inventors and/or those associated with the filing and prosecution of the patent application, committed inequitable conduct or fraud by knowingly withholding, and otherwise failing to bring to the attention of the U.S. Patent and Trademark Office a 1989 paper by Dr. Ken Biegeleisen published in *Phlebologie* and entitled "Use of the venoscope for treatment of varicose veins." This paper referenced information that was material to patentability, thereby rendering the '777 patent unenforceable.

32. During the prosecution of the '777 patent application from August 13, 1999 through June 4, 2002, the inventors and/or those associated with the filing and prosecution of the patent application, committed inequitable conduct or fraud by knowingly withholding, and otherwise failing to bring to the attention of the U.S. Patent and Trademark Office a 1982 article by O'Reilly, et al., titled "Transcatheter Fiberoptic Laser Coagulation of Blood Vessels," Radiology, 142(3): 777-780. This paper referenced information that was material to patentability, thereby rendering the '777 patent unenforceable.

33. During the prosecution of the '777 patent application from August 13, 1999 through June 4, 2002, the inventors and/or those associated with the filing and prosecution of the patent application, committed inequitable conduct or fraud by knowingly withholding, and otherwise failing to bring to the attention of the U.S. Patent and Trademark Office a 1989 paper by Dr. Brunello Puglisi published in *Phlebologie* and entitled "L'application du laser ND-YAG dans le traitement du syndrome variqueux" which translates to read "Application of

the ND-YAG laser in the treatment of varicose syndrome." This paper referenced information that was material to patentability, thereby rendering the '777 patent unenforceable.

## COUNTERCLAIMS

1. Counterclaim Plaintiff VSI is a Minnesota corporation with its principal place of business at 6464 Sycamore Court, Minneapolis, Minnesota.

2. On information and belief, Counterclaim Defendant Diomed is a Delaware corporation with its principal place of business at One Dundee Park, Suite 5/6, Andover, Massachusetts 01810.

3. This Court has jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 2201, 1331, and 1338(a).

4. Diomed alleges that it is the owner of all right, title and interest in U.S. Patent No. 6,398,777 that formerly belonged to Dr. Robert Min. Diomed further alleges that the '777 Patent's other owner, Endolaser, LLC, has granted Diomed an exclusive license to its interest in the '777 Patent, including the right to sue for infringement.

5. Diomed's Complaint alleges that VSI is infringing the '777 Patent through sales of its Vari-Lase kit and other activities, as set forth in Diomed's Complaint in Paragraphs 21-24.

6. There is an actual, justiciable controversy over whether VSI is infringing the '777 Patent and whether the claims of the '777 Patent are invalid.

7. VSI has not infringed the '777 Patent.

8. One or more of the claims of the '777 Patent is invalid under the provisions of 35 U.S.C. § 101 et seq.

9. The '777 patent identifies Luis Navarro, Nester Navarro, Carlos Bone Salat,

4

Joaquina Fructuso Gomez, and Robert J. Min as its inventors ("the inventors").

10. As of about May 1999, at least Drs. Min and Navarro knew about an article authored by O'Reilly, et al., titled "Transcatheter Fiberoptic Laser Coagulation of Blood Vessels," Radiology, 1982, 142 (3): 777-780 (the "O'Reilly Paper").

11. By August 1999, the inventors of the '777 patent knew of the duty of candor and good faith they owed to the USPTO during the process of prosecuting the '777 patent application.

12. The inventors also knew the definition of "materiality" and that failure to comply with these duties could result in the patent being unenforceable.

13. By August, 1999, at least one of the inventors of the '777 patent knew that the O'Reilly Paper was material to the prosecution of the '777 patent application.

14. In addition, in 1989, Dr. Ken Biegeleisen published a paper in Phlebologie entitled "Use of the venoscope for treatment of varicose veins" (the "Biegeleisen Paper").

15. Also in 1989, in the same publication of Phlebologie, Dr. Brunello Puglisi published a paper entitled "L'application du laser ND-YAG dans le traitement du syndrome variqueux" which translates to read "Application of the ND-YAG laser in the treatment of varicose syndrome" (the "Puglisi Paper"). This publication was widely disseminated to members of the international Phlebology community and made available to them.

16. Also in 1989, Dr. Puglisi and Dr. San Filippo presented the content of the Puglisi Paper in a video and oral presentation at the 10th World Congress of Phlebologie in Strasbourg, France, to hundreds of international specialists in Phlebology ("The Puglisi Video").

17. Since then and through the 1990's, Drs. Puglisi and San Filippo presented their video and oral presentations to hundreds of specialists in Phlebology, in numerous

conferences in various locations in Europe.

18.     During that time period in Europe and internationally, Phlebology has been a small and specialized medical community where news of new methods like Dr. Puglisi's travels fast.

19.     In 1993, one of the many people who learned about Dr. Puglisi's teachings, Dr. Mazza, published his own paper in MINERVA ANGIOLOGICA entitled "L'uso dell'argon laser nel trattamento delle varici essenziali degli arti inferiori" ("the Mazza Paper").  Like the Puglisi Paper, the Mazza Paper teaches analogous methods and devices to those claimed in the '777 patent application.

20.     In September 1999, Dr. Carlos Bone Salat, one of the inventors of the '777 patent, published a paper entitled "Endoluminal treatment of the varices with Laser of Diode" (the "Salat Paper").  In his paper, Dr. Salat references the Biegeleisen Paper.  Several additional papers that Dr. Salat published also referenced the Biegeleisen Paper.

21.     On information and belief, at least after reviewing the 1989 Phlebologie publication containing the Biegeleisen and Puglisi Papers, Dr. Salat knew of the Puglisi Paper and its materiality to the '777 patent.

22.     In November 1999, the inventors filed their First Information Disclosure Statement in the USPTO in connection with the '777 patent application.

23.     In September 2000, the inventors filed their Second Information Disclosure Statement in the USPTO in connection with the '777 patent application.

24.     The inventors failed to disclose the O'Reilly Paper as prior art in their Information Disclosure Statements.  The O'Reilly Paper contains information material to the patentability of the '777 patent application.

25.     The inventors failed to disclose the Puglisi Paper as prior art in their

6

Information Disclosure Statements. The Puglisi Paper contains information material to the patentability of the '777 patent application.

26. The inventors failed to disclose the Biegeleisen Paper as prior art in their Information Disclosure Statements. The Biegeleisen Paper contains information material to the patentability of the '777 patent application.

27. The references identified in paragraphs 24-26 were clearly within the purview of the inventors' knowledge and should have been disclosed as being material prior art.

28. During the prosecution of the '777 patent application from August 13, 1999 through June 4, 2002, the inventors and/or those associated with the filing and prosecution of the patent application, committed inequitable conduct or fraud by knowingly withholding, and otherwise failing to bring to the attention of the USPTO prior art that was material to patentability, the O'Reilly Paper, the Puglisi Paper, and the 1989 Biegeleisen Paper.

29. As a result of the inequitable conduct committed by the inventors and/or those associated with the filing and prosecution of the '777 patent application, the '777 patent is unenforceable.

## JURY DEMAND

VSI demands a jury trial on all claims asserted herein.

Wherefore, VSI respectfully requests that the Court grant the following relief:

1. A judgment dismissing Diomed's Complaint with prejudice;
2. A judgment declaring that VSI has not infringed the '777 Patent;
3. A judgment declaring that the '777 Patent is invalid;
4. A judgment declaring that the '777 Patent is unenforceable;
5. A judgment awarding VSI its costs and reasonable attorneys' fees as provided

by law; and

    6.    For such other and further relief as this Court may find just and proper.

    Respectfully submitted,

    VASCULAR SOLUTIONS, INC.

    By its counsel,

    /s/ Steven L. Feldman
    Steven L. Feldman, Esq. (BBO #162290)
    Karen Van Kooy, Esq. (BBO #644484)
    Ruberto, Israel & Weiner, P.C.
    100 North Washington Street
    Boston, Massachusetts 02114-2128
    Telephone: (617) 742-4200

    ˜and˜

    J. Thomas Vitt, Esq., MN #183817
    Heather D. Redmond, Esq., MN #313233
    Todd R. Trumpold, Esq., MN #313890
    Dorsey & Whitney LLP
    50 South Sixth Street, Suite 1500
    Minneapolis, Minnesota 55402-1498
    Telephone: (612) 340-2600

Dated:  August 2, 2005

U:\CPR\Steven Feldman\Vascular Solutions\Diomed Patent\VSISecondAmendedAns&Counterclaim.doc