THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>ANGIODYNAMICS, INC,<br><br>    Defendant. | Civil Action No. 04-10019 RGS |
| DIOMED, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>VASCULAR SOLUTIONS, INC.,<br><br>    Defendant. | Civil Action No. 04-10444 RGS<br>**(CONSOLIDATED UNDER 04-10019 RGS)** |

## **DECLARATION OF JOHN L. STRAND**

1. I, John L. Strand, am an attorney with Wolf, Greenfield & Sacks, P.C., counsel for Diomed in the above captioned matter.

2. On May 4, 2004, Diomed served document requests on defendant AngioDynamics. A copy of Diomed's requests along with AngioDynamics' answers and objections is attached as Exhibit C to the December 7, 2005 declaration of Heather D. Redmond. Among other requests, Diomed sought the following categories of documents:

    (a) "All documents concerning purchases of AngioDynamics Products by persons or entities that might otherwise have purchased products from Diomed." (Request No. 49).

    (b) "All financial statements, including without limitation balance sheets, income statements, and cash flow statements, all governmental filings (including but not limited to SEC filings) and all other documents reflecting AngioDynamics' financial condition." (Request No. 43).

  (c)  "All customer lists for the AngioDynamics Products." (Request No. 52).

  (d)  "All documents concerning sales, revenues, costs and profits and/or profit projections for AngioDynamics since the company's date of incorporation, and all documents concerning sales, revenues, costs and profits and/or profit projections for the AngioDynamics products." (Request No. 14).

 3. On June 2, 2004, Diomed served document requests on defendant VSI. A copy of these requests along with VSI's responses and objections is attached as Exhibit B to the December 7 Redmond Declaration. Among other requests, Diomed sought the following categories of documents:

  (a)  "All documents concerning purchases of VSI Products by persons or entities that might otherwise have purchased products from Diomed." (Request No. 48).

  (b)  "All financial statements, including without limitation balance sheets, income statements, and cash flow statements, all governmental filings (including but not limited to SEC filings) and all other documents reflecting VSI's financial condition." (Request No. 42).

  (c)  "All customer lists for the VSI Products." (Request No. 51).

  (d)  "All documents concerning sales, revenues, costs and profits and/or profit projections for VSI since the company's date of incorporation, and all documents concerning sales, revenues, costs and profits and/or profit projections for the VSI products." (Request No. 14).

 4. On March 31, 2005, counsel for Diomed sent letters to counsel for AngioDynamics and VSI seeking "updated financial and sales information." (Ex. A to Redmond Decl. at 4, 10). In particular, counsel for Diomed sought "documents responsive to at least" a series of existing document requests – including request numbers 14 and 43 for AngioDynamics (Ex. A to Redmond Decl. at 10) and request numbers 14 and 42 for VSI (Ex. A to Redmond Decl. at 4).

5.    On June 22, 2005 – the deadline for disclosing experts and producing expert reports – Diomed identified Mr. Philip Green, Dr. Richard Rox Anderson, and Dr. Chieh-Min Fan as retained experts and produced written reports from them pursuant to Fed. R. Civ. P. 26(b)(2)(B). (Ex. A to Redmond Decl. at 17).

6.    As of that date, Diomed still had not received any documents from AngioDynamics or VSI concerning sales to particular customers.

7.    That same day, Diomed also identified Dr. Luis Navarro and Dr. Robert J. Min as other experts who might testify at trial. (Ex. A to Redmond Decl. at 17). Since Diomed did not employ or retain either Dr. Navarro or Dr. Min to provide expert testimony, however, Diomed relied on the plain language of Rule 26.

8.    In response to AngioDynamics' and VSI's failure to produce customer-specific sales information, counsel for Diomed made multiple explicit requests for such data.

9.    On August 9, 2005, counsel for Diomed sent a letter to counsel for AngioDynamics and VSI detailing categories of documents that Diomed believed "both AngioDynamics and VSI have in their possession, and are responsive to Diomed's document requests, but as of yet have not been produced." (Ex. A to Redmond Decl. at 19).

10.   In particular, Diomed singled out the following categories of documents from AngioDynamics:

    (a)    "All documents evidencing the price actually paid by particular AngioDynamics' customers for each month since the first sale of AngioDynamics' kits. In addition, all documents evidencing price discounts offered, available, or given on a per customer basis." (Category E).

    (b)    "All documents evidencing information collected by AngioDynamics about its actual and potential customers, broken down by kit model, sale price, other kits used by customer, etc." (Category F).

    (c)    "Updated documents on AngioDynamics' market analysis, sales data, and cost data." (Category J).

    (d)    "Detailed AngioDynamics' customer lists, identifying potential customers, actual customers, and repeat customers, broken down by sales of kits and sales of laser consoles" (Category K).

(Ex. A to Redmond Decl. at 19-20).

11.    Similarly, Diomed identified the following categories of documents from VSI:

    (a)    "All correspondence with potential and actual customers concerning price and product features. In addition, all correspondence and internal memos relating to how product price is determined and the impact of product design or the target market on the pricing. These documents would include per customer price lists or quotes and evidence actual prices (after discounts, etc.) as well as proposed prices. (Category B)

    (b)    "All documents concerning Diomed customers and VSI's efforts to target those customers. These documents would include documents showing Diomed's customer base, price bids or offers made to Diomed customers, internal documents concerning acquisition of Diomed's customers, and detailed customer lists." (Category F)

(Ex. A to Redmond Decl. at 21).

12.    When the defendants failed to respond to these requests, counsel for Diomed sent another letter on October 14, 2005 again requesting certain documents Diomed "believe[d] both VSI and AngioDynamics have in their possession, and are responsive to Diomed's document requests." (Ex. A to Redmond Decl. at 23). In particular, Diomed identified "[s]ales data on a per customer, per kit, and per laser basis." (Id. at 24-25). Diomed even offered a chart to illustrate the sort of data that would be responsive to the long-standing request. (Id. at 24).

13.    On October 28, 2005, counsel for Diomed again informed counsel for AngioDynamics and VSI that Diomed intended to supplement Mr. Green's expert report to include a lost profits theory.

14.    On November 2, 2005, counsel for Diomed sent an e-mail message to counsel for AngioDynamics and VSI once again reiterating the request for customer-specific sales information. (Ex. A to Redmond Decl. at 26-27).

15.	After counsel for VSI objected to the prospect of Mr. Green supplementing his report to address the lost profits theory, counsel for Diomed sent an e-mail on November 11, 2005 explaining how the requests for customer-specific sales data "could not have been clearer or more consistent." (Ex. A to Redmond Decl. at 28-29).

I swear under the pains and penalties of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Dated: January 3, 2006

_____
John L. Strand