UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC., <br><br>  Plaintiff, <br><br> v. <br><br> VASCULAR SOLUTIONS, INC. <br><br>  Defendant. | Civil Action No.: 04-10444-RGS |
| DIOMED, INC. <br><br>  Plaintiff, <br><br> v. <br><br> ANGIODYNAMICS, INC. <br><br>  Defendant. | Civil Action No.: 04-10019-RGS |

## VSI'S RESPONSE TO DIOMED'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS SUPPORTING SUMMARY JUDGMENT OF INFRINGEMENT

Pursuant to Local Rule 56.1, defendant Vascular Solutions, Inc. ("VSI") responds to each of Diomed's alleged undisputed facts as follows:[1]

---

[1] To the extent that Diomed's factual assertions relate solely to AngioDynamics, VSI neither specifically admits or denies that the assertions are undisputed.

1.      Disputed.  The use of tumescent anesthesia, as instructed by VSI, does not cause the Greater Saphenous Vein to collapse, obliterating the vein lumen.  See Samson Decl. ¶¶ 5, 6, Ex. B; Proebstle Decl. ¶¶ 7,8, Ex. B[2] [explained in greater detail in VSI LR 56.1 ¶¶ 68-70, 73][3]; Second Proebstle Decl. ¶¶ 39-49.

The testimony of Diomed's own witnesses establishes that the use of tumescent anesthesia, without more, is not sufficient to result in a "complete collapse" or "obliteration" of the vessel lumen.  See Redmond Decl., Ex. E (Fan Dep. at 29-33, 38-40, 59-60); Ex. F (Fan Ex. 2); Ex. G (Min Dep. at 99-104, 109, 118-19, 123-26, 146-48); Ex. I (Min Dep. at 231-240); Ex. L (Navarro Dep. at 271-76); Ex. J (Navarro Dep. at 41-43, 53) [VSI LR 56.1 ¶¶ 58-66].  VSI does not teach or recommend that physicians apply tumescent anesthesia until they observe the complete collapse of the vein on to the laser emitting section of the laser fiber.  See Root Decl., Exs. 1, 2-4 [VSI LR 56.1 ¶ 67].

2.      VSI does not dispute that intraluminal laser ablation is a technique for closing the GSV.  VSI also does not dispute that, in studies performed by Dr. Min, long-term results indicate a success rate of more than ninety percent.

3.      To the extent that Diomed's statement is suggesting that steam bubbles are an insufficient source of heat to damage the vein wall, or that steam bubbles are the only source of possible damage other than direct contact with the vein wall, VSI disputes the assertion in paragraph 3.  VSI's procedure relies on a combination of steam bubbles, heated blood, and laser

---

[2] References to "Samson Decl.," "Proebstle Decl.," and "Root Decl." are to the December 2005 declarations submitted in connection with defendants' motions for summary judgment.  References to the "Second Samson Decl.," "Second Proebstle Decl.," and "Second Root Decl." are to the February 2006 declarations submitted in connection with this opposition.  References to "Redmond Decl." are to the December 2005 declaration and Exhibits A-R submitted in connection with VSI's motion for summary judgment.  References to "Second Redmond Decl." are to the February 2006 declaration and Exhibits S-V submitted in opposition to Diomed's motion.

[3] References to "VSI LR 56.1" are to the December 21, 2005 Local Rule 56.1 Statement of Defendant Vascular Solutions, Inc., submitted in connection with VSI's motion for summary judgment.

beam impact to cause circumferential damage to the vein wall. See Second Proebstle Decl. ¶¶ 16-20, 23; Second Samson Decl. ¶¶ 5-8; Second Redmond Decl., Ex. V (Anderson Dep. at 108-09; 159-61)

4. Not disputed.

5. VSI does not dispute that the differences between the components of VSI's kits and Diomed's kits are immaterial to the issues presented in this case.

6. Not disputed.

7. VSI does not dispute that the administration of tumescent anesthesia causes a decrease in the diameter of the vein. However, the administration of tumescent anesthesia, as recommended in VSI's instructions for use, does not compress the vein sufficiently to completely collapse the vein (see response to paragraph 1 above; Second Samson Decl., Ex. A at 4-8; Second Proebstle Decl. ¶¶ 39-49) or cause the tip of the laser fiber to come into contact with the vessel wall, see Samson Decl. ¶¶ 5, 6, 8, Ex. B; Proebstle Decl. ¶¶ 6-8, Ex. B; Redmond Decl., Ex. M (Navarro Dep. at 144-45); Second Samson Decl. ¶¶ 9-10, Ex. A at 4-8; Second Proebstle Decl. ¶¶ 39-49.

VSI also disputes that Diomed fairly represents the testimony of Dr. Mackay. Although Dr. Mackay testified that he explains to physicians that he tries to inject the tumescent anesthesia directly into the fascial plane to compress the vein, Dr. Mackay's testimony continued:

> But reality is, this is the hardest part of the whole procedure for you guys learning to do this. What you need to do is just kind of get near it and fill the whole area with Lidocaine because the most important thing is to try and minimize the pain; that's the number one goal. So don't get too caught up into all that; because if you do, you'll be very frustrated early in this procedure.

Second Redmond Decl., Ex. S (Mackay Dep. at 88). See also id. (Mackay Dep. at 147) ("But mostly I was trying to make that point for people I'm teaching, is that they're probably not going to be able to do it [the "perfect doughnut"] very consistently, not for the first hundred cases

3

anyways."). In addition, although Dr. Mackay testified that he attempts to compress the vessel using tumescent anesthesia, he repeatedly explained that the compression he obtains is not sufficient to obliterate the vein lumen or to cause contact with the laser fiber tip. E.g., Redmond Decl., Ex. S (Mackay Dep. at 22-24, 121-23, 147-48, 150, 152, 156, 158).

8. Disputed. Although there may be some reduced volume of blood flow, there is no "drainage" as contemplated by the '777 patent. Blood is present in the vein lumen at all times: before, during, and after the laser treatment. See Second Proebstle Decl. ¶¶ 8, 11, 22. Any reduction in the volume of blood flow does not include drainage at the tip of the laser fiber to cause contact with the vessel wall. See Second Samson Decl., Ex. A.

9. Disputed. VSI's instructions for use instruct physicians to deliver a sufficient volume of anesthetic agent "to achieve a separation between the vein wall and the fascial sheath." Root Decl., Ex. 2 at 5. VSI's Vein Care Essentials program repeats this instruction, and also tells doctors to "look for separation around the vein, NOT collapse!" Root Decl., Ex. 4 at VSI 032403 (slide 111). See also Second Root Decl. ¶ 5. VSI also disputes that Diomed fairly represents the testimony of Dr. Mackay. See response to paragraph 7 above.

10. Disputed. See Second Proebstle Decl. ¶¶ 8, 11, 22; Root Decl., Ex. 2 at 5, Ex. 4 at VSI 032403 (slide 111); Second Root Decl. ¶ 5. VSI also disputes that Diomed fairly represents the testimony of Dr. Mackay. See response to paragraph 7 above.

11. Not applicable to VSI.

12. Not applicable to VSI.

13. Disputed. See Root Decl. ¶¶ 2-5.

14. Not applicable to VSI.

15. Disputed. See Second Root Decl. ¶¶ 5, 7.

16. Disputed. See Second Proebstle Decl. ¶¶ 31-38.

4

17.     Disputed. Carbonization does not require contact between the fiber tip and the vein wall. See Second Proebstle Decl. ¶¶ 27-30; Second Redmond Decl., Ex. V (Anderson Dep. at 135-36; 154-59).

18.     Disputed. See Samson Decl. ¶¶ 3, 5-6, Ex. B; Proebstle Decl. ¶¶ 6-8, Ex. B; Redmond Decl., Ex. M (Navarro Dep. at 144-45); Second Samson Decl. and Ex. A; Second Proebstle Decl.

Diomed also cites Dr. Mackay's testimony in support of this statement in its Memorandum. Diomed contends that Dr. Mackay testified that contact is inevitable during the procedure, citing page 114 of his deposition testimony. However, Dr. Mackay was not addressing the issue of whether deliberate and maintained contact occurred during a procedure following VSI's instructions for use. Diomed's question to Dr. Mackay was not limited to VSI's instructions regarding the use of tumescent anesthesia, but included Trendelenberg positioning; suction (which VSI does not teach), and other unidentified maneuvers. Second Redmond Decl., Ex. S (Mackay Dep. at 114). Dr. Mackay also did not testify that the contact occurred with any particular portion of the laser fiber, or that such contact occurred during laser emission. Id.

19.     VSI does not dispute that its kits have no substantial uses other than use in endovenous laser procedures. However, to the extent that Diomed intends to infer that all "ILA" procedures requires contact, compression, and drainage as described in the '777 patent, VSI affirmatively states that its kits are used in endovenous laser procedures without such contact, compression, and drainage. See responses to paragraphs 1, 7-10, 13, and 16-18 above.

5

VASCULAR SOLUTIONS, INC.

By its counsel,

_____
Steven L. Feldman, Esq. (BBO #162290)
Ruberto, Israel & Weiner, P.C.
100 North Washington Street
Boston, Massachusetts 02114-2128
Telephone: (617) 742-4200

~and~

J. Thomas Vitt, Esq., MN #183817
Heather D. Redmond, Esq., MN #313233
Todd R. Trumpold, Esq., MN #313890
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
Telephone: (612) 340-2600

Dated: February 13, 2006

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by e-Filing on

2/13/06 _____