UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Diomed, Inc.,<br><br>    Plaintiff/Defendant in Counterclaim,<br><br>v.<br><br>Angiodynamics, Inc.,<br><br>    Defendant/Plaintiff in Counterclaim, | ) ) ) ) ) ) ) Civ. No. 04-10019-RGS ) ) ) ) ) ) |

**Declaration of Bruce D. Sunstein, Expert for Angiodynamics, Inc.**

I, Bruce D. Sunstein, hereby declare as follows:

1. In my Expert Report submitted previously in this matter (a copy of which is attached hereto as Exhibit A and incorporated herein by reference), I presented my opinion that the O'Reilly reference is highly material to the subject matter claimed in patent 6,398,777 (the "Patent") and more material than the prior art of record. I presented a chart (Exhibit 3 to my Report) showing how close the O'Reilly reference is to the subject matter claimed in comparison to the key references that were of record in prosecution of the Patent; I concluded that the O'Reilly reference was required to be disclosed under 37 C.F.R. § 1.56 to the United States Patent and Trademark Office, and that the failure to disclose this reference constituted inequitable conduct.

2. This Supplement addresses additional evidence provided by the plaintiff since the date of my Expert Report, in discovery and in support of its motion for summary judgment.

3. Since the date of my Expert Report, Dr. Min has admitted that the Goldman and Trelles references are "material to the patent"—Min Deposition, January 10, 2006, page 34, lines 4-14 ("Min Deposition"); that he uncovered these references in a search he performed (Min Deposition, page 26, lines 3 to page 27, line 13), that he understood he had a duty to disclose to the Patent and Trademark Office prior art that is material (*e.g.*, Min Deposition, page 28, line 18 to page 30, line 8; and page 32, lines 10-22); that he regarded Goldman and Trelles as the "most relevant" (Min Deposition, p. 35, lines 16 to p. 36, line 13); and that "any procedure that was already being done, even if it wasn't patented" can serve as prior art (Min Deposition, page 29, lines 14 to page 30, line 24).

4. Thus Dr. Min himself found the Trelles and Goldman references, knew that they were material to the subject matter claimed in the Patent, and understood that they needed to be disclosed to the Patent and Trademark Office. For the reasons stated in my Expert Report, the O'Reilly reference was even more relevant than either one of these references, In fact, as shown in Exhibit 3 of my report, O'Reilly discloses a methodology having 4 features in common with the claim 9 of the Patent, whereas Trelles has only 1 and Goldman has only 2. In fact, even combining Goldman and Trelles, there are only 3 features in common with claim 9, whereas O'Reilly has 4 features. Thus O'Reilly is substantially more relevant not only than Trelles or Goldman, it is more relevant than those references taken together.[1]

---

[1] Plaintiff argues variously that O'Reilly is not material, Plaintiff's Memorandum in support of Motion for Summary Judgment, page 28 et seq., or that it is cumulative of Trellis and Goldman, *id.*, page 29. However,

5. I noted in my Expert Report (see especially, par. 26) that Dr. Min understood the relation of the "Study Protocol" to safety of the procedure described in the Patent, that he understood the importance of the O'Reilly reference to safety of such a procedure because he cited it in the Study Protocol, and that he had been apprised by counsel of his duty to disclose material information to the Patent and Trademark Office within weeks after filing the Study Protocol with the Independent Review Board. Given these facts, including the great materiality of the O'Reilly reference, I opined that because Dr. Min knew about the O'Reilly article, used it to his advantage before the Independent Review Board, he was more than reckless in failing to disclose it to the Patent and Trademark Office.

6. The Plaintiff objects to my characterization, and adduces evidence that when Dr. Min supplied a copy of the Study Protocol to the Independent Review Board, he did not thereafter remove the references and send the Study Protocol stripped of references to patent counsel. On the contrary, says the plaintiff, Dr. Min provided the Study Protocol to patent counsel before the references were added to it. Plaintiff's Memorandum in Support of Motion for Summary Judgment, page 25. Yet the plaintiff's evidence means that after Dr. Min had submitted the Study Protocol with the citation of numerous references, including O'Reilly, Dr. Min received a letter from patent counsel reminding him of his duty to disclose material prior art, and Dr. Min did nothing further, even though Dr. Min testified that he understood this duty (see paragraph 3 above), and even though O'Reilly is a white hot prior art reference.

---

Exhibit 3 to my Expert Report shows that it is neither immaterial nor cumulative. See also my paragraphs 7-9 below.

7. In a declaration, Dr. Min says that he did not believe that the O'Reilly reference—which he cited in the Study Protocol created to justify the safety of the procedure he was patenting— was material for patent purposes. Dr. Min says that he did not believe that the O'Reilly reference was material because (a) it "does not disclose intraluminal contact between a bare laser fiber tip and a vessel wall" and (b) it "discusses laser treatment of rabbit ear arteries" as opposed to "enlarged, varicose veins". Min Declaration, par. 22. As to Dr. Min's first point, that O'Reilly does not disclose intraluminal contact, I have shown in my Exhibit 3 that O'Reilly does, however, disclose placing the exposed fiber tip directly within the blood vessel, and using energy directly from the fiber tip within the blood vessel to cause occlusion without clotting. Neither Trelles or Goldman, nor even their combination, discloses all of these features which are essential elements of claim 9 of the Patent—circumstances making O'Reilly particularly relevant. Given that Dr. Min, as I discuss in paragraph 3, regards Trelles and Goldman as particularly relevant—even though neither one of them discloses intraluminal contact— his stated belief that O'Reilly's is not material because it fails to disclose intraluminal contact is markedly inconsistent. As to Dr. Min's second point, that O'Reilly concerns arteries and not varicose veins, claim 9 of the patent is not directed to varicose veins; it concerns treatment of a "blood vessel". For purposes of claim 9, therefore, the distinction between an artery and a vein is irrelevant; both are blood vessels within the scope of claim 9.

8. In paragraphs 23 and 24 of his declaration, Dr. Min also seeks to distinguish O'Reilly based on technical details, such as the laser type used, to help show that there was no intraluminal contact and that arteries are different from veins. For the reasons

discussed in my paragraph 7, however, these distinctions do not remove the many points of similarity between O'Reilly and the subject matter of claim 9 of the patent. Moreover, Dr. Min has admitted that these technical distinctions were not in his mind when he determined that O'Reilly was not material for purposes of disclosure to the Patent and Trademark Office. Min Deposition, page 78, line 19 to page 79, line 15.

9. Similarly, while the plaintiff goes to great lengths discussing the diameter[2] of blood vessels of the ear of a rabbit—presumably the same type of rabbit that was the subject of the O'Reilly reference—to address the plaintiff's argument that O'Reilly does not inherently disclose intraluminal contact of the fiber optic tip with the blood vessel, this argument does not remove the great pertinence of O'Reilly to claim 9 for the reasons set forth in Exhibit 3 to my report and discussed above in my paragraph 7. The fact is that O'Reilly does disclose placing the exposed fiber tip directly within the blood vessel, and using energy directly from the fiber tip within the blood vessel to cause occlusion without clotting.

10. Finally, plaintiff argues that there is no evidence that Dr. Min had the requisite intent to deceive the Patent and Trademark Office, since he has taken the position that the O'Reilly reference is not material. Plaintiff's Memorandum in Support of Motion for Summary Judgment, p. 26. For the reasons stated above, however, the evidence is that O'Reilly is a white hot reference of great materiality, that Dr. Min cited O'Reilly as the first reference[3] in the Study Protocol documenting the safety of the procedure he was

---

[2] Plaintiff's Memorandum in Support of Motion for Summary Judgment, p. 30 et seq. Of course, one must consider the inside diameter of the relevant blood vessel, since the fiber optic tip is placed within the blood vessel, whereas the plaintiff appears to be describing the outside diameter, which is necessarily larger than the inside diameter.

[3] Plaintiff argues that this is because Dr. Min placed references in "roughly chronological" order. Plaintiff's Memorandum in Support of Motion for Summary Judgment, p. 26. This argument is disingenuous, because Dr. Min testified that they were also categorized, with the first group related to "endovascular use",

patenting, that Dr. Min understood his duty of disclosing material prior art to the Patent and Trademark Office, and that he nonetheless failed to disclose the reference to the Patent and Trademark Office. Decisional law supports a finding of inequitable conduct under these circumstances. See my Expert Report page 14, and *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1375 (Fed. Cir. 2001) cited therein.

8. Accordingly, I remain of the views expressed in my Expert Report, for the reasons stated herein and therein, that the evidence justifies a finding of inequitable conduct.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct as to facts set forth based on my own knowledge and as to facts set forth based on information and belief, I believe them to be true. Executed on February 8, 2006 at Boston, Massachusetts.

_____
Bruce D. Sunstein

03019/00501  466167.1

---

the next group to "dermatologic use", the next group "interstitial laser therapy", "and so on", "[f]inishing up with urology and ENT". Min Deposition, page 72, line 24 to page 73, line 16. O'Reilly was thus grouped at the beginning with endovascular use, the most relevant of these categories.