THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ANGIODYNAMICS, INC,<br><br>　　　　Defendant. | Civil Action No. 04-10019 RGS |
| DIOMED, INC.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>VASCULAR SOLUTIONS, INC.,<br><br>　　　　Defendant. | Civil Action No. 04-10444 RGS<br>**(CONSOLIDATED UNDER<br>04-10019 RGS)** |

**DIOMED'S RESPONSE TO THE COURT'S
ORDER REGARDING POTENTIAL RECUSAL**

As requested by the Court in its Order dated May 22, 2006, Diomed herein provides a general description of the role Dr. Chieh-Min Fan is expected to play in this litigation.[1]

Dr. Fan has been designated as an expert witness on patent infringement. Her testimony relates primarily to the mode of action of laser vein ablation, a scientific issue that is relevant to the question of whether the defendants infringe Diomed's '777 patent. Dr. Fan will also testify, as one of skill in the art, about the references cited by the defendants as prior art to support their theory that the '777 patent is invalid. In connection with Diomed's pending motions for

---

[1] Diomed has not yet designated experts for the New Star Lasers litigation (Civ. Action No. 04- 12157-RGS) or the Total Vein Solutions litigation (Civ. Action No. 04-10686-RGS). See those other cases' dockets for Diomed's comments concerning any potential role of Dr. Fan in those litigations.

1033685.3

summary judgment that the '777 patent is valid and infringed, Dr. Fan has submitted declarations to the Court summarizing her opinions on these topics. (D.I. ## 98 & 139).

Responding to the Court's second inquiry concerning any potential grounds for recusal, Diomed states that Dr. Fan's medical consultation with the Court does not create grounds for recusal or disqualification under 28 U.S.C. § 455(a). The Court's contact with Dr. Fan to date has been limited and unrelated to this litigation. Moreover, transfer of the case would be inefficient and burdensome to the parties, because of the Court's knowledge of the patent-in-suit, the length of time the case has been pending, and the fact that dispositive motions were days away from a hearing at the time of the Court's recent Order.

Additionally, as the Court noted in its May 22 Order, Dr. Fan will shortly be moving to another practice with several other doctors who, like her, have extensive experience practicing intraluminal laser vein ablation. Likewise, at Massachusetts General Hospital, where Dr. Fan currently practices, there are also other practitioners of laser ablation. Should the Court choose treatment by Dr. Fan, it does not appear that any grounds for recusal would exist. Should the Court elect treatment by a different practitioner, there would be even less of an argument for recusal. In either case, if the Court finds that there is a potential conflict, Diomed is willing to waive such conflict pursuant to 28 U.S.C. § 455(e).

Diomed respectfully suggests that the Court (1) not recuse itself from the above-captioned case, and (2) reschedule the summary judgment hearing that was originally scheduled for May 11, then postponed to June 1, and once again postponed by the May 22 Order, to the Court's earliest convenience.

## DISCUSSION

I.   **DR. FAN'S ROLE IN THIS LITIGATION**

Dr. Fan was retained by Diomed in the above-captioned litigation to serve as an expert on limited issues of scientific fact bearing on infringement and validity. She is one of several technical experts identified in the case (including Drs. Anderson, Min, and Navarro for Diomed, and Drs. Proebstle, Kabnick, and Samson for defendants). There are also non-technical experts on damages and enforceability. In the event of a trial, Diomed anticipates that Dr. Fan may testify about certain experiments that she performed, concluding that the laser procedure used by all parties to this case includes putting the bare laser fiber tip into intraluminal contact with the vessel wall, a step essential to the success of intraluminal laser vein ablation.

Dr. Fan may further explain the contents of certain of the defendants' training materials and instructions, and how those materials induce the users of the defendants' kits to practice the patented method.

Finally, Dr. Fan may be asked to review certain prior art references relied upon by the defendants in arguing that the '777 patent is invalid. Specifically, she is expected to testify that the references do not teach or disclose certain claim limitations. Inasmuch as the defendants' own expert has admitted, in deposition, the accuracy of Dr. Fan's opinions on this subject, it remains unclear whether Diomed will even need to call Dr. Fan to testify on these issues.

Further details regarding Dr. Fan's expected testimony may be found in her declarations filed in connection with Diomed's summary judgment motions (D.I. ## 98 and 139).

## II. THE COURT'S RELATIONSHIP WITH DR. FAN DOES NOT CONSTITUTE GROUNDS FOR RECUSAL UNDER § 455(a).

As the Court noted in its Order, judicial conflicts are evaluated under 28 U.S.C. § 455. The First Circuit has found that under this statute, "[a] trial judge must hear cases unless some reasonable factual basis to doubt the impartiality or fairness of the tribunal is shown by some sort of probative evidence." Blizard v. Frechette, 601 F.2d 1217, 1221 (1st Cir. 1979). This probative evidence must "provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality." Comfort v. Lynn School Comm., 418 F.3d 1, 26 (1st Cir. 2005) (*en banc*) (citations omitted).

Under this framework, the Court's interactions with Dr. Fan do not constitute a basis for recusal. It is understood that judges are part of the community in which they judge and serve on the bench, and that they may bring their out-of-courtroom experiences to their work. Id. In this instance, the Court's experiences may include a brief medical consultation involving no substantive discussion of any disputed issue, and possibly a single medical treatment by a specialist from the local community using a Diomed product.[2]

No relationship will be created with any party in interest. That is important, inasmuch as the appearance of bias is most likely to arise from an interest, or close connection to another having an interest, in a party.

This particular expert (who is independent and has no stake in the outcome of the litigation) is one of many identified in the case. The jury need have no knowledge of the Court's procedure, even assuming it will ultimately be performed by Dr. Fan rather than a different practitioner at MGH or the Brigham.

---

[2] One-time use of a Diomed product (which of course is not accused of infringement) surely cannot be a ground for recusal. A judge who had ever driven a Ford, eaten at a McDonald's or used Microsoft Windows would not thereby be precluded from hearing cases involving Ford, McDonald's, or Microsoft.

This type of limited contact with an expert in a pending case does not warrant recusal. See M.K. Metals, Inc. v. National Steel Corp., 593 F. Supp. 991, 994-95 (N.D. Ill.1984) (judge's friendship with the principal of a "think-tank" that was providing an expert witness to the defendant did not justify recusal). Judges have declined to recuse themselves despite a much greater connection to a witness, counsel, or party. E.g., Brody v. President & Fellows of Harvard College, 664 F.2d 10 (1st Cir. 1981) (fact that district judge attended defendant university was not a reasonable basis for questioning impartiality); U.S. v. Conforte, 457 F. Supp. 641 (D. Nev. 1978), *aff'd,* 624 F.2d 869 (1980) (recusal not required in criminal case in which defendant had dozens of social encounters with judge at bridge tournaments and despite the fact that the judge had publicly expressed a negative impression of the defendant): Parrish v. Board of Comm'rs of the Ala. State Bar, 524 F.2d 98, 104 (5th Cir. 1975) (the fact that judge was acquainted with witnesses and defense counsel did not require recusal); Cheney v. U.S. Dist. Court for D.C., 541 U.S. 913 (2004) (Scalia, J.) (fact that judge went duck-hunting with a party not basis for recusal). As a matter of law, the Court's recusal is not necessary.

Furthermore, considering that this Court is familiar with the patents-in-suit and other issues in the case, the unnecessary transfer of the case to another judge would be inefficient and would needlessly delay resolution of the matter, to the detriment of Diomed's rights. The technology at issue here is at the core of Diomed's business. Each day that goes by without a resolution allows infringers to continue undercutting Diomed's business, misleading the public as to the proprietary nature of this technology, and eroding the prices which are necessary for Diomed to fairly recoup its investment in this leading-edge technology. See Camacho v. Autoridad de Telefonos de Puerto Rico, 868 F.2d 482, 491 (1st Cir. 1989) (finding that the "judicial system would be paralyzed" if the recusal standard were too low).

Additionally, it is Diomed's understanding from the May 22 Order that the Court has held only an initial consultation with Dr. Fan but has not selected a course of treatment. Even assuming that the Court proceeds with treatment by Dr. Fan rather than another specialist in laser vein ablation at MGH or the Brigham, there would still be no reason why such treatment would bias the Court. The scientific and technological questions underlying the procedure do not become apparent to a patient during a the procedure, and there would be no reason for Dr. Fan to expound *ex parte* on such scientific questions.

Finally, if any waiver is necessary, Diomed assents to the waiver of any potential conflict pursuant to 28 U.S.C. § 455(e). Diomed looks forward to learning whether the defendants will likewise agree to proceed promptly and efficiently with this longstanding litigation before this Court.

## **CONCLUSION**

For these reasons, Diomed requests that the Court (1) not recuse itself from the above-captioned case, and (2) reschedule the pending summary judgment motion hearing for the Court's earliest convenience.

                                                     Respectfully submitted,

                                                     DIOMED, INC.

                                                   By its attorneys,

Dated: June 5, 2006                                /s/ Michael A. Albert
                                                   Michael A. Albert (BBO #558566)
                                                   malbert@wolfgreenfield.com
                                                   Michael N. Rader (BBO #646990)
                                                   mrader@wolfgreenfield.com
                                                   John L. Strand (BBO #654985)
                                                   jstrand@wolfgreenfield.com
                                                   WOLF, GREENFIELD & SACKS, P.C.
                                                   600 Atlantic Avenue
                                                   Boston, MA 02210
                                                   617.646.8000
                                                   Fax 617.646.8646

## CERTIFICATE OF SERVICE

I hereby certify that this document and its supporting papers filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                                   /s/ Michael A. Albert