UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC. | Civil File No. 104-CV-10444-(RGS) |
| Plaintiff, | |
| v. | |
| VASCULAR SOLUTIONS, INC. | |
| Defendant. | |
| **and** | |
| DIOMED, INC., | Civil Action No. 04-CV-10019 (RGS) |
| Plaintiff, | |
| v. | |
| ANGIODYNAMICS, INC., | |
| Defendant. | |

**ANGIODYNAMICS' RESPONSE TO THE COURT'S ORDER REGARDING POTENTIAL RECUSAL AND TO DIOMED'S RESPONSE**

**I.   INTRODUCTION**

Pursuant to the Court's Order dated May 22, 2006, AngioDynamics, Inc. ("AngioDynamics") submits this response to the information provided and the inquiries made by the Court. AngioDynamics also responds to Diomed, Inc.'s ("Diomed") filing of June 5, 2006.

As an initial matter, AngioDynamics appreciates the prompt disclosure by the Court of its consultation with Dr. Fan. AngioDynamics does not believe that the Court's initial consultation with Dr. Fan, as described in the Court's May 22, 2006 Order, is grounds for recusal under 28 U.S.C. § 455(a). To the extent such a waiver is necessary, AngioDynamics hereby waives any argument that the initial consultation described in the Court's Order is a ground for disqualification pursuant to 28 U.S.C. § 455(e).

Unfortunately, AngioDynamics does not believe that it has enough information to either request that the Court recuse itself under § 455(a) or to waive any real or potential conflict pursuant to § 455(e) as to a continuing patient-physician relationship between the Court and Dr. Fan. For example, AngioDynamics does not know the precise nature of the procedure to be performed by Dr. Fan, nor will AngioDynamics know precisely what is communicated between the Court and Dr. Fan during any procedure or further consultation. Given the confidentiality of the patient-physician relationship, AngioDynamics fully appreciates why it cannot insist on or expect to know such information. Nevertheless, this lack of information is a concern to AngioDynamics.

As set forth below, AngioDynamics is particularly concerned about out of court communications between the Court and Dr. Fan and the existence of the patient-physician relationship because AngioDynamics expects Dr. Fan to be a central figure in this matter. Her testimony as an expert will be vigorously contested by AngioDynamics and its experts. Consequently, the Court must consider whether it can confidently put aside its relationship with Dr. Fan when called upon to make judgments about Dr. Fan and her opinions.

Finally, AngioDynamics does not believe that the cases cited by Diomed apply to the unusual situation faced by the Court here. None deal with a relationship as potentially close and unique as that of the physician-patient.

## II.     ANGIODYNAMICS' UNDERSTANDING OF DR. FAN'S ROLE

Diomed claims that Dr. Fan is just one of several technical experts who may testify in this matter. Such a statement understates Dr. Fan's importance to Diomed's case. Dr. Fan is one of only two independent technical experts Diomed has disclosed. Diomed's other independent technical expert, Dr. Rox Anderson, has never performed the type of endovenous laser procedure that is at issue in this case. He has also not performed any experiments or tests to support Diomed's claims of infringement. His opinion is based solely on his understanding of the physics of tissue/laser interaction.

Dr. Fan is Diomed's only independent expert with actual experience with the procedure. She has also performed a number of laboratory experiments to support her opinion that AngioDynamics' endovenous laser procedure infringes the patent in suit. Dr. Fan is also Diomed's only independent expert on the validity of the claims of the patent. Diomed has relied heavily on Dr. Fan in its summary judgment filings, and AngioDynamics expects her to feature prominently in Diomed's case should the matter go to trial.

As set forth in AngioDynamics' summary judgment filings, AngioDynamics not only strongly questions Dr. Fan's opinions, it questions the methodology of her experiments and the conclusions she draws from them. AngioDynamics expects Dr. Fan's work to be the subject of a number of evidentiary challenges, and possibly a pre-trial motion to exclude. In addition,

AngioDynamics expects its experts to testify at length regarding the flaws they see in Dr. Fan's opinions and experiments.

In addition, Diomed's claim notwithstanding, AngioDynamics' expert on invalidity does not agree with Dr. Fan. Thus, AngioDynamics expects, as should the Court, that Dr. Fan will have to testify on this issue. She is Diomed's only independent expert designated to do so.

### III. ANGIODYNAMICS' SPECIFIC CONCERNS REGARDING THE IMPACT OF THE PATIENT-PHYSICIAN RELATIONSHIP ON THIS CASE

AngioDynamics has two primary concerns regarding how the patient-physician relationship between the Court and Dr. Fan could affect this case. First, as noted above, the Court will be called upon to make evidentiary rulings regarding Dr. Fan's work. This will likely entail the Court making determinations of whether Dr. Fan's experiments are scientifically sound and credible enough to be presented to the jury.

In fact, the Court will be required long before trial to consider the impact of Dr. Fan's testimony. As Diomed acknowledges, it has submitted two declarations from Dr. Fan in support of its summary judgment filings.

The Court must determine whether it can put aside whatever feelings of trust, confidence and gratitude are developed through its patient-physician relationship with Dr. Fan in considering her testimony and AngioDynamics' objections thereto. Beyond that, the Court must determine "whether a reasonable member of the public at large, aware of all of the facts, might fairly question the Court's partiality." *United States v. Ferguson,* 550 F. Supp. 1256, 1257

(S.D.N.Y. 1982)(Court granted motion to disqualify where Court had close relationship with and high esteem for witness, even though Court had excluded witness' testimony).

Second, AngioDynamics strongly disputes Dr. Fan's characterization of how the endovenous laser procedure works, particularly when a physician follows AngioDynamics' instructions for use. As set forth in its papers in support of its Motion for Summary Judgment of Non-Infringement, AngioDynamics believes that the undisputed evidence, including that provided by its technical experts, Drs. Proebstle and Samson, clearly establishes that its procedure does not involve deliberate and maintained contact between the laser-emitting face of the fiber and the vein wall. AngioDynamics further believes that there is absolutely no factual support for Dr. Fan's conclusion to the contrary.

As the Court is most likely aware, a patient is awake during such an endovenous laser procedure. Consequently, it is common for the physician to explain to the patient what is happening during the procedure. It is also common for a patient to ask questions about the procedure. AngioDynamics expects that such a discussion may take place between the Court and Dr. Fan during any procedure performed by Dr. Fan, or in follow-up consultations.

In addition, a video screen that shows ultrasound images of what is occurring in and around the vein is typically used and can be seen by the physician and patient during the procedure. In fact, AngioDynamics has submitted a number of ultrasound images taken during endovenous laser procedures in support of its Motion for Summary Judgment. Any discussions by Dr. Fan during a procedure with the Court regarding what the ultrasound images show could affect how the Court views similar ultrasound evidence currently before it, or the Court's

understanding of the procedure.  Obviously, AngioDynamics wants to avoid any such receipt of extrajudicial *ex parte* evidence by the Court, regardless of how well intended Dr. Fan is to avoid such a communication.

As noted above, AngioDynamics does not know the precise procedure to be performed by Dr. Fan, or whether the Court and Dr. Fan believe that communications as set forth above should or can be avoided while still maintaining an effective patient-physician relationship.  In fact, until any procedure is actually performed it may very well be that neither the Court nor Dr. Fan will know what technical discussions will be necessary or desirable for treatment.  Consequently, AngioDynamics is not in a position to say whether these concerns warrant recusal or disqualification.[1]  AngioDynamics, thus leaves the question of recusal or disqualification to the Court's sound judgment, in light of the above issues.

## IV. THE CASES CITED BY DIOMED PROVIDE LITTLE GUIDANCE TO THE FACTS HERE

Diomed cites a number of cases to support its conclusion that recusal is neither required nor appropriate here.  Unfortunately, none of these cases present facts even remotely close to the facts here.  None of the cases involve a special relationship akin to the physician-patient relationship.  The law recognizes such a relationship as especially close, protecting communications that occur during the relationship.  The relationship is a far cry from being in

---

[1] AngioDynamics notes that on a number of occasions in its Response, Diomed suggests that perhaps the Court will be treated by a doctor other than Dr. Fan.  That is not how AngioDynamics understood the Court's Order, and AngioDynamics would never presume to recommend that the Court choose another physician just because of this case.  Nevertheless, if the Court is treated by another physician, even one who practices with Dr. Fan, most of AngioDynamics' concerns would be removed.  Even in that case, AngioDynamics would still hope that communication about how the procedure works or Dr. Fan would be kept to a minimum.

the same bridge tournaments with a party or having attended a university that is a party. The patient-physician relationship involves entrusting one's well-being in the hands of another. Having done so, and presuming that the physician performs the required procedure successfully, the patient is bound to have feelings of gratitude and confidence in his doctor's abilities.

The question for the Court is whether it can put those feelings aside when called upon to resolve evidentiary issues that involve these same or similar abilities, and whether a reasonable member of the public would believe that the Court can put those feelings aside. None of the cases cited by Diomed comes anywhere close to addressing this question. In fact, AngioDynamics has been unable to locate any cases with facts anything like what exist here.

Consequently, AngioDynamics can only ask the Court to use its judgment to determine whether its relationship with Dr. Fan constitutes sufficient grounds to warrant recusal or disqualification under 28 U.S.C. § 455(a). Should the Court conclude that the answer to this question is yes, and that precautions to avoid prejudice (e.g., seeing a different doctor, limiting communications with Dr. Fan) are not workable, AngioDynamics respectfully declines to waive any potential conflict under § 455(e).

| | |
|---|---|
| Dated:  June 19, 2006 | Respectfully Submitted,<br><br>DEFENDANT<br>ANGIODYNAMICS, INC.<br>BY ITS ATTORNEYS |
| **I hereby certify that a true copy of the above document was served upon the attorney of record for the Plaintiff and Counterclaim-Defendant Diomed, Inc. by electronic mail.**<br><br>**/s/ Rodney S. Dowell_____**<br>Rodney S. Dowell | By /s/ Rodney S. Dowell_____<br>    RODNEY S. DOWELL (BBO # 620916)<br>    Berman & Dowell<br>    210 Commercial Street<br>    Boston, MA  02109<br>    (671) 723-9911<br>    (617) 723-6688 (fax)<br>    rdowell@bermandowell.com<br>              -and-<br>    MARK D. GIARRATANA<br>    WILLIAM H. BRIGHT<br>    McCarter & English, LLP<br>    CityPlace I<br>    185 Asylum Street<br>    Hartford, CT  06103<br>    (860) 275-6700<br>    (860) 724-3397 (fax)<br>    mgiarratana@mccarter.com<br>    wbright@mccarter.com |

ME1/5701972.1

8