UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC., <br><br> Plaintiff, <br><br> v. <br><br> VASCULAR SOLUTIONS, INC., <br><br> Defendant. | Civil Action No.: 04-10444-NMG |
| DIOMED, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANGIODYNAMICS, INC., <br><br> Defendant. | Civil Action No.: 04-10019-NMG |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION
*IN LIMINE* TO EXCLUDE EVIDENCE OF ARTICLES AND
ABSTRACTS RELIED ON BY DR. LUIS NAVARRO**

**INTRODUCTION**

In his recently produced expert report, Dr. Luis Navarro opines that contact between the laser-emitting face of the fiber and vein wall necessarily occurs in any endovenous or intraluminal laser therapy ("ILT"). He reaches this conclusion in part because in certain experiments performed by Dr. Navarro carbonization is present on certain vein segments or pieces of liver that Dr. Navarro contacted with the laser fiber. According to Dr. Navarro, only contact between the laser fiber and the vein wall or liver could cause such carbonization. Although his opinions are based on the experiments and analysis he performed, Dr. Navarro then makes reference to several articles or abstracts that included photographs of histological slides of

veins that had been treated by ILT. None of these ILT procedures were performed by Dr. Navarro, nor did he view the actual treated veins or the actual histological slides. Nevertheless, Dr. Navarro concludes that these pictures buttress his conclusion that contact between the laser-emitting face of the fiber and vein wall always occurs during ILT.

In fact, the articles, abstracts and photographs to which Dr. Navarro refer are inadmissible hearsay and they are used not as underlying support for Dr. Navarro's conclusions, but merely as third party corroboration of his opinions. It would be highly prejudicial to allow Diomed artificially to bolster Navarro's credibility by citing the names of several other "experts" in the field when, in reality, their findings are irrelevant to the matter at hand. Pursuant to Federal Rule of Evidence 703, the Court should exclude these articles, abstracts and photographs from trial if offered for this purpose.[1]

## BACKGROUND

Dr. Luis Navarro is a named inventor on the patent-in-suit, US Patent No. 6,398,777 (the "'777 Patent"). Dr. Navarro is a fact witness due to his personal knowledge of the '777 patent and Diomed's exclusive license. Diomed also designated Dr. Navarro as an expert witness, however, but did not provide his expert report by the June 22, 2005 deadline for doing so. Diomed provided Defendants with an expert report setting forth Dr. Navarro's conclusions on December 5, 2006 (Redmond Decl., Ex. A ("Report")), more than three months after this Court ordered it to do so on August 30, 2006.

Dr. Navarro lists several publications he reviewed in connection with preparing his report. (Report at 2-3). After concluding, based on his own experiments and analysis, that

---

[1] It is possible that one or more of the articles or abstracts may be admissible for some other reason, and may be offered for that reason at trial. The defendants do not seek to exclude the articles and abstracts if offered for a proper purpose. For the reasons stated above, the articles and abstracts should simply not be permitted as evidentiary support for Dr. Navarro's opinions.

2

contact between the vein wall and the laser fiber is allegedly necessary for a successful ILT procedure, Dr. Navarro cites to several listed publications. (Report at 16-21). In a section of his report entitled "Literature of Charred and Perforated Veins Proving the Contact Mechanism," Dr. Navarro states that:

> Many physicians have included images of excised veins in their articles concerning ILT. These published images show the same signs of destruction, carbonization, trenching, and perforations that I saw in my experiments.

(Report at 16). Dr. Navarro then proceeds to describe several images taken from various articles and abstracts, and concludes without discussion of potential alternative causes that the evidence of "destruction, carbonization, trenching, and perforations" in the photos corroborates his own conclusion of contact between the vein wall and the laser fiber tip in ILT procedures. (*See* Report at 16-21).

Dr. Navarro's report is devoid of any discussion of either the results obtained or the methodologies employed by the authors of the cited articles. (*See* Report at 16-21). Indeed, except in one conclusory footnote, he does not even mention the conclusions of these studies. (See Report at 17, n. 26 (citing the abstract from an article written by Dr. Giorgio Spreafico)). A review of the cited articles reveals that none of the authors specifically followed either AngioDynamics' or Vascular Solutions' instructions for use ("IFUs").[2] And none of the articles

---

[2] *See* Proebstle, Thomas M, *Endovenous Laser Treatment of the Lesser Saphenous Vein With a 940-nm Diode Laser: Early Results*, at ANG 2767-2768, attached to Report as Ex. 11; Presentation Materials and Abstracts from Spreafico, Giorgio, *How and why the Endovenous laser works: histopathological observations on the great saphenous vein treated with a 980 nm laser – ELVeS™ technique*, at D31628, attached to Report as Ex. 17; Anastasie, B., *Laser Endoveineux, Endovenous Laser, Phlebologie*, at 369 (remainder in French), attached to Report as Ex. 27; Weiss, Robert, *Comparison of Endovenous Radiofrequency Versus 810 nm Diode Laser Occlusion of Large Veins in an Animal Model*, attached to Report as Ex. 17; Proebstle, Thomas M, *Thermal Damage of the Inner Vein Wall During Endovenous Laser Treatment: Key Role of Energy Absorption by Intravascular Blood*, at D4407, attached to Report as Ex. 15.

3

presents its own discussion of the likelihood that vessel contact causes the damage, perforation, or carbonization visible in the photographs.[3]

## ARGUMENT

Federal Rule of Evidence 703 governs whether inadmissible evidence relied on by an expert witness may be disclosed to the jury:

> *If of a type reasonably relied upon* by experts in the particular field in forming opinions or inferences upon the subject, the facts or data [upon which an expert bases an opinion] need not be admissible in evidence in order for the opinion or inference to be admitted. *Facts or data that are otherwise inadmissible shall not be disclosed to the jury* by the proponent of the opinion or inference *unless the court determines that their probative value* in assisting the jury to evaluate the expert's opinion *substantially outweighs their prejudicial effect.* (emphasis added).

Under Rule 703, neither the histological photos displayed in Dr. Navarro's report, nor any mention of the articles or abstracts from which the photos were taken should be disclosed to the jury. This evidence is inadmissible hearsay; it was unreasonable for Dr. Navarro to rely on the evidence to bolster his opinions; and the probative value of the evidence does not substantially outweigh its prejudicial effect.

**A.     The Articles and Abstracts Discussed by Dr. Navarro Are Inadmissible Hearsay.**

The articles and abstracts referenced by Dr. Navarro are inadmissible hearsay, and do not fall within any exception to the hearsay rule. *See* Fed. R. Ev. 801, 802, 803. The articles are out of court statements being offered by Diomed for the truth of the matter asserted, i.e., contact is necessary to cause carbonization of the vein wall and is present during ILT. Thus, the articles

---

[3] *See* note 1, *supra*. An article abstract by Dr. Giorgio Spreafico does ambiguously conclude that "it is important to find a contact of the fibre optic with the venous wall, with various degrees of penetration in the wall itself," but the article explaining this conclusion is not provided by Dr. Navarro, nor is it clear whether this conclusion was based on an examination of the histologies presented by Dr. Spreafico in the presentation attached as Exhibit 17 to Dr. Navarro's Report. Nor does the abstract explain whether contact is a good thing or something to be avoided because it is what causes perforation of the vein wall. Nor is there any indication of whether this is what Dr. Spreafico, an Italian physician, actually wrote or if it is someone else's translation, and if so, if the translation is accurate.

and abstracts are only admissible if they fall under one of the exceptions to the hearsay rule. They do not.

The only possible exception that might apply is the "learned treatise" exception. The First Circuit has ruled though that parties must provide specific evidence of the reliability of scholarly medical articles for the articles to be considered admissible as "learned treatises." *See Meschino v. North American Drager, Inc.*, 841 F.2d 429, 434 (1st Cir. 1988); Fed. R. Ev. 803(18). The *Meschino* Court explained that:

> [W]e would not accept plaintiff's argument that the contents of all issues of a periodical may be qualified wholesale under Rule 803(18) by testimony that the magazine was highly regarded. In these days of quantified research, and pressure to publish, an article does not reach the dignity of a "reliable authority" merely because some editor, even a most reputable one, sees fit to circulate it. Physicians engaged in research may write dozens of papers during a lifetime. Mere publication cannot make them automatically reliable authority.

*Id.* at 434.

But Dr. Navarro and Diomed fail to provide any foundation for the articles to support a finding that they are "reliable authority" independently admissible in evidence. Recognizing this, Diomed is apparently attempting to admit these articles, with Dr. Navarro's spin on them, under Rule 703. Diomed and Dr. Navarro should not be permitted to do so.

**B.    Navarro's Reliance on Histologies is Unreasonable.**

Rule 703 allows expert witnesses to rely on inadmissible evidence only where such reliance is reasonable: i.e. where the evidence is *both* "of a type reasonably relied upon by experts in the particular field" (Fed. R. Ev. 703) *and* the putative expert's actual reliance on the evidence is reasonable *under the circumstances. See University of Rhode Island v. A.W. Chesterton Co.*, 2 F.3d 1200, 1218 (1st Cir.1993) ("Rule 703 requires the trial court to give careful consideration to any inadmissible facts upon which the expert will rely in order to determine whether reliance is reasonable."); *In re TMI Litigation*, 193 F.3d 613, 697 (3rd Cir.

5

1999) ("when a trial judge analyzes whether an expert's data is of a type reasonably relied on by experts in the field, he or she should assess whether there are good grounds to rely on this data to draw the conclusion reached by the expert...[t]he key inquiry is reasonable reliance and that inquiry dictates that the trial judge must conduct an independent evaluation into reasonableness.") (internal quotations omitted).

Reliance on inadmissible hearsay is unreasonable where the expert's conclusions are the product of a "logical leap" from the evidence. *See Allison v. McGhan Medical Corporation*, 184 F.3d 1300, 1313-14 (11th Cir. 1999) (upholding trial court's exclusion of expert testimony that did not convincingly extrapolate conclusions from cited studies and listing other "*Daubert* decisions" that "warn against leaping from an accepted scientific premise to an unsupported one."). Similarly, it is unreasonable for an expert to use data in a manner that amounts to an "apples and oranges" comparison. *See Shatkin v. McDonnell Douglas Corporation*, 727 F.2d 202, 208 (2nd Cir. 1984). It is also improper for an expert to attempt to bolster his opinion by comparing it to the hearsay opinions of other scientists "who [are] not even qualified as experts, nor present at the trial." *See Mike's Train House v. Lionel, LLC*, 472 F.3d 398, 409 (6th Cir. 2006) (internal citation omitted).

Thus, in a situation factually similar to this one, the court in *Turner v. Burlington Northern Santa Fe Railroad Co.*, 338 F.3d 1058, 1061-2 (9th Cir. 2003) excluded expert testimony regarding a hearsay study relied on by the expert solely to corroborate his conclusion. In *Turner*, a putative expert fire investigator intended to testify regarding a lab report, which stated that debris from the scene of a fire contained "a mixture of petroleum distillate consistent with gasoline." *Id.* at 1060. But the expert "used the report not as data upon which an expert in his field would reasonably rely in forming an opinion, but rather intended to use it as substantive

evidence of his ultimate conclusions that the fire was intentionally created by pouring gasoline into the soil." *Id.* at 1062.

Here, as in *Turner*, Dr. Navarro's use of hearsay to corroborate his ultimate conclusion is unreasonable. Dr. Navarro was not present for any of the procedures discussed in the articles and abstracts. He did not actually view the histology slides that are copied in the articles and abstracts. He cannot say if the photos accurately depict the conditions of the veins immediately after treatment. Nor does he claim that he discussed any of these procedures or the conclusions that he draws from the photographs with the physicians who actually performed the procedures. Furthermore, the photos he references were not included in the cited articles and abstracts for the purpose of illustrating the effect of contact with vessel walls, and it is not even clear that any of the depicted veins were actually in contact with laser fibers. Finally, none of the procedures discussed in the articles and abstracts employed either of Defendants' IFU's, and therefore none are evidence that contact with the vein wall occurs during procedures using Defendants' kits and following Defendants' IFUs.

Dr. Navarro does nothing to establish that his use of the histologies is a reliable method, instead using his own *ipse dixit* to assert that the vessel damage depicted in the photos could only have been caused by contact with the laser fiber. Under these circumstances, it is unreasonable for Navarro (and would be unreasonable for any expert in the field) to contend that the cited histologies support his conclusions regarding vessel-fiber tip contact. Therefore, no evidence concerning the histologies should be disclosed to the jury.

**C.    The Probative Value of the Photos Does Not Substantially Outweigh Their Prejudicial Effect.**

The 2000 amendment to Rule 703 established that "facts or data that are otherwise inadmissible shall not be disclosed to the jury…unless…their probative value…substantially

7

outweighs their prejudicial effect." Under the amended rule, there is a presumption that inadmissible evidence relied on by experts should remain inadmissible and undisclosed to the jury. *See id.* at 1062. Accordingly, in *Turner*, the Ninth Circuit found that the lab report's probative value did not outweigh the potential prejudice that would be caused by allowing the expert to use the report to bolster his opinions. *Id.* at 1062. Similarly, in *Mike's Train House*, the Sixth Circuit prevented an expert from prejudicially attempting to bolster his own testimony by favorably comparing his conclusions to those of another scientist. 472 F.3d at 409.

The histologies cited by Dr. Navarro have little probative value for reasons already discussed—in short, the studies were neither based on the facts presented in this case nor aimed at reaching conclusions relevant to this case's resolution. However, allowing Dr. Navarro to testify that he relied on these studies will have a significant prejudicial effect. First, all of the reliability concerns inherent in hearsay evidence will still exist—the jury will be unable to assess the methodologies of the cited studies by hearing testimony from their authors. Additionally, Dr. Navarro's citations to articles or abstracts written by other physicians may mislead the jury to believe that his opinions are held by several other reputable doctors in the field, when in actuality, the writings do not support his opinion. Finally, the photographs cited by Dr. Navarro show perforations, discoloration, and deformation of veins without any attendant explanation in the articles as to what caused them. These photos, together with Dr. Navarro's testimony that the photos corroborate his opinion, may cause the jury to unjustifiably leap to the conclusion that the damage in the photos could only have been caused by contact with the vessel wall. To avoid this substantial prejudice, evidence of the histologies should be excluded.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request an Order excluding from trial all evidence and testimony related to the articles, abstracts and histology photos referenced by

Dr. Navarro as evidence of his ultimate conclusion that vessel contact is required for successful ILT procedures.

          Respectfully submitted,

          **VASCULAR SOLUTIONS, INC.**

          By its counsel,

          Steven L. Feldman (BBO #162290)
          Ruberto, Israel & Weiner, P.C.
          100 North Washington Street
          Boston, Massachusetts 02114-2128
          Telephone: (617) 742-4200

          ~and~

          J. Thomas Vitt MN #183817
          Heather D. Redmond MN #313233
          Dorsey & Whitney LLP
          50 South Sixth Street, Suite 1500
          Minneapolis, Minnesota 55402-1498
          Telephone: (612) 340-2600

          **ANGIODYNAMICS, INC.**

          By its counsel,

          William H. Bright, Jr.
          Mark D. Giarratana
          McCarter & English, LLP
          CityPlace I
          185 Asylum Street
          Hartford, Connecticut 06103
          Telephone (860) 275-6700

          ~and~

          Rodney S. Dowell (BBO #629016)
          Berman & Dowell
          210 Commercial Street
          Boston, Massachusetts 02109
Dated: February 20, 2007          Telephone (617) 723-99911

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail by hand on electronically February 20, 2007
Christopher P. Roberts