IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>ANGIODYNAMICS, INC,<br><br>    Defendant. | Civil Action No. 04-10019 NMG |
| DIOMED, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>VASCULAR SOLUTIONS, INC.,<br><br>    Defendant. | Civil Action No. 04-10444 NMG<br>**(CONSOLIDATED UNDER 04-10019 NMG)** |

**MOTION *IN LIMINE* TO LIMIT THE TESTIMONY OF DR. THOMAS PROEBSTLE**

Diomed respectfully requests an order limiting the trial testimony of defendants' consultant Dr. Thomas M. Proebstle to the four corners of (1) his October 2005 rebuttal report (Ex. A to the Declaration of Charles Steenburg), (2) his December 2005 declaration in support of the defendants' motions for summary judgment of non-infringement, and (3) his February 2006 declaration in opposition to Diomed's motion for summary judgment of infringement (D.I. # 132).

At trial, Dr. Proebstle should be precluded from referencing new information and arguments, particularly new experimental testing, disclosed for the first time in a so-called "supplemental rebuttal report" (Steenburg Decl. Ex. B) – served by defendants on February 12, 2007, a full year late and a mere month before trial.

In his new "supplemental rebuttal report," Dr. Proebstle proffers several experiments in response to expert opinions presented by Dr. Luis Navarro, an inventor of the '777 patent-in-suit and expert witness for Diomed, in ***December 2005*** (D.I. # 96). Dr. Proebstle's experiments were apparently performed in direct response to experiments described in Dr. Navarro's December 2005 declaration. (Steenburg Ex. B pp. 10-13). If Dr. Proebstle was going to do any responsive testing, he could have done so then. Yet he did not disclose any such results in his February 13, 2006 responsive declaration (D.I. # 132). Instead, defendants waited a full year, until the eve of trial, to emerge from behind the sandbag and disclose this new testing to Diomed.

Reference at trial to Dr. Proebstle's untimely-presented experiments would be unfair and highly prejudicial to Diomed.

I.   **BACKGROUND**

   A.   **Dr. Proebstle's Original Rebuttal Report**

Pursuant to the parties' joint motion (D.I. # 73), granted by the Court, discovery in this case closed on October 15, 2005, nearly a year and a half ago. On October 14, 2005, the day before the close of discovery, defendants served Dr. Proebstle's original rebuttal report, in which Dr. Proebstle disputed certain analysis and conclusions offered by two of Diomed's technical experts, Drs. Fan and Anderson.

   B.   **Dr. Navarro's Experiments, Declaration, and Report**

Around the same time, Dr. Navarro performed a series of experiments to prepare for a presentation that he had been invited to give at the November 2005 meeting of the American College of Phlebology (ACP). See Jan. 3, 2006 Navarro Decl. (D.I. # 105) ¶ 5.

Dr. Navarro concluded that his ACP experiments were highly relevant to the litigation. Diomed had previously notified defendants that Dr. Navarro might present opinion testimony at trial, and timely produced documentation of Dr. Navarro's experiments to defendants. In October and December 2005, Dr. Navarro made himself available for two additional days of deposition (for a total of three days – by far the longest deposition time of any witness in this case), during which defendants' counsel questioned him in detail about each of his experiments.

Dr. Navarro did not, at that time, produce a formal expert report because counsel concluded that Diomed had not "retained or specifically employed" him for this litigation within the meaning of Rule 26(a)(2)(B). He had, however, provided by then all the details of his experiments, complete with pictures, methods, and results, and was questioned on them extensively by defendants, who had every opportunity to develop a timely rebuttal.

Three days after Dr. Navarro's final deposition, defendants moved to preclude Diomed from relying on the opinions that Dr. Navarro had developed during his Fall 2005 testing. This Court denied the motion. Noting, however, that it was "debatable" whether Diomed should have provided a report from Dr. Navarro under the circumstances, the Court instructed Diomed to do so. Diomed, Inc. v. AngioDynamics, Inc., 450 F. Supp. 2d 130, 138 (D. Mass. 2006).

Diomed produced Dr. Navarro's report (Steenburg Decl. Ex. C) on December 4, 2006. The report compiled into a single package the results and conclusions that Dr. Navarro had disclosed (1) in the documents produced during the Fall of 2005 and (2) during his depositions in October and December 2005, then later summarized (3) in the December 20, 2005 declaration (D.I. # 95) submitted in connection with Diomed's summary judgment motion on infringement.[1]

---

[1] Dr. Proebstle likewise prepared a December 2005 declaration in support of the defendants' cross motions. (Steenburg Ex. B at 3). Diomed does not question a party's right to present expert testimony at trial based on the contents of a declaration timely filed in connection with summary judgment proceedings. This motion thus does not seek to preclude Dr. Proebstle's testimony regarding subjects addressed in his summary judgment declaration.

Dr. Navarro's December 2006 report merely reiterates discussion of the experiments and conclusions previously set forth in his December 2005 declaration. (See Appendix).

   **C.**  **Dr. Proesbtle's February 2006 Declaration Responding to Dr. Navarro's Experiments**

In response to Dr. Navarro's December 2005 declaration (describing Dr. Navarro's experiments) as well as materials that other expert witnesses had submitted in connection with Diomed's summary judgment motions, Dr. Proebstle prepared a 66-paragraph responsive declaration that defendants filed with the Court on February 13, 2006. (D.I. # 132). Diomed does not seek to strike this declaration and does not dispute defendants' right to elicit at trial Dr. Proebstle's testimony based on its contents.

   **D.**  **Dr. Proebstle's "Supplemental Rebuttal Report"**

On the afternoon of February 12, 2007 – almost a year to the day after serving Dr. Proebstle's original responsive declaration – defendants served another document from Dr. Proebstle. This document purports to be his fourth report on the issues in the case. Certain video exhibits referenced in the document were not produced until several days later. Other crucial materials referenced by Dr. Proebstle's latest report, such as the new laser fibers used in his testing, were not produced at all – Diomed *still* has not seen them to this day. Moreover, even if they had been produced, it would take months for Diomed's experts to test them and evaluate Dr. Proebstle's contentions.

Styled as a "supplemental rebuttal report," Dr. Proebstle's new submission purports to address the very same opinions that Dr. Navarro detailed in his *December 2005* declaration. Yet Dr. Proebstle acknowledged that he "previously addressed Dr. Navarro's analysis and experiments" in his own February 2006 declaration. (Steenburg Ex. B at 2). In other words, he had, and already availed himself of, a timely opportunity to rebut Dr. Navarro's 2005 tests.

Not content with what Dr. Proebstle timely disclosed, however, defendants now seek, through this new report, to ambush Diomed on the eve of trial. Dr. Proebstle documents eleven (11) "counter experiments" that he says he performed in response to Dr. Navarro's 2005 testing. He offers no explanation as to why these were not disclosed in the appropriate and timely declaration that he filed in February 2006, which was specifically designed to be his response to Dr. Navarro's testing. Dr. Proebstle's new report, moreover, relies on testing of laser fibers that defendants have *never* produced to Diomed.[2]

### E. The Impending Trial

Trial in this case is set to begin on March 12, 2007 – four weeks after defendants served Dr. Proebstle's new report (which as noted above was unaccompanied by the underlying materials on which it is purportedly based). Evaluating the new theories and experiments about which Dr. Proebstle seeks to testify at trial would require extensive consultations with Diomed's experts, further fact depositions to establish the details of the product's design, bench testing, construction, sale, and use, and further testing, experimentation and analysis. Even after obtaining laser fibers like those that Dr. Proebstle used, Diomed's experts (who are physicians with full-time medical practices) would need to carve out time, formulate appropriate protocols, and obtain materials like the human veins that Dr. Proebstle employed in his tests. (Steenburg Ex. B at 11), in order even to *start* the evaluation process necessary to get reliable information about defendant's eleventh hour theories.

---

[2] Diomed is concurrently filing another motion *in limine* related to this critical failure.

**II.    ARGUMENT**

Allowing Dr. Proebstle to testify about his untimely-disclosed experiments would severely prejudice Diomed while rewarding defendants for flouting the requirements of Rule 26. The Court should therefore limit Dr. Proesbtle's testimony to the four corners of his October 2005 rebuttal report as well as his December 2005 and February 2006 declarations.

**A.    The "Supplemental Rebuttal Report" is Untimely.**

When this Court instructed Diomed "to produce an expert report concerning [Dr. Navarro's] opinions" (which, as noted above, had already been described in previous written submissions and depositions) and to "treat Dr. Navarro as an expert witness subject to Rule 26(a)(2)," the decision said nothing about allowing defendants another bite of the apple to inject new expert opinions into the case. See 450 F. Supp. 2d at 138.[3]  There was no need for a rebuttal to Dr. Navarro's report because that report simply consolidated his previous opinions and analysis into one document. (See Appendix).

Even if defendants could demonstrate a right to produce a rebuttal in response to Dr. Navarro's report, they waived that right by failing to make the disclosure within the 30 days required under Federal Rule 26(a)(2)(C). E.g., Congressional Air, Ltd. v. Beech Aircraft Corp., 176 F.R.D. 513 (D. Md. 1997) (striking late rebuttal report under Rule 26(a)(2)(C))).  Here, that original disclosure came, at the latest, on December 4, 2006, when Diomed produced Dr. Navarro's expert report (and in fact had been made, in all substantive respects, a year earlier). Rather than seeking an extension, defendants kept Diomed in the dark about the possibility of a rebuttal report, missed their Rule 26(a)(2)(C) deadline by more than a month, and thereby "court[ed] exclusion." See Finley v. Marathon Oil Co., 75 F.3d 1225, 1230 (7th Cir. 1996)

---

[3] By contrast, the Court expressly authorized defendants to submit a rebuttal report on the issue of lost profits. Id. at 137 ("Defendants will … be given leave to identify a rebuttal expert, if desired, and to produce a rebuttal report [to Mr. Phil Green's damages report]").

(affirming exclusion of experts' charts disclosed after the Rule 26(a)(2)(C) deadline). See also Cook v. Rockwell Int'l Corp., 233 F.R.D. 598, 599-60 (D. Colo. 2005) (excluding rebuttal testimony: "Plaintiff … provided [the] expert report to Defendants in November, 1996 … Defendants did not disclose an expert to rebut [the] expert testimony in December, 1996, as required, and did not request any extension of time to do so.").

Defendants may suggest that Dr. Proebstle was "supplementing" his earlier rebuttal report rather than preparing a new one, but this argument would make it even clearer why the new document is untimely. Under Rule 26(e)(1), defendants had a duty to supplement "at appropriate intervals" the information contained in Dr. Proebstle's original rebuttal report to the extent that the defendants learned that it was "incomplete or incorrect." This duty, however, "permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information" not previously available. Minebea Co. v. Papst, 231 F.R.D. 3, 6 (D.D.C. 2005). It does not allow defendants to introduce a whole new set of experiments into the record that could have been conducted in a timely manner over a year earlier during the Court-ordered discovery phase of the case. Here, as described above, Dr. Navarro described all of his testing and conclusions in his December 2005 declaration and Dr. Proebstle admitted that he addressed the same in his February 2006 Declaration. (Steenburg Ex. B at 2, 15). There was no need, let alone right, to supplement.

Defendants do not claim that anything has changed in the intervening year to render Dr. Proebstle's earlier rebuttal "incomplete or incorrect." See Macaulay v. Anas, 321 F.3d 45, 50-53 (1st Cir. 2003) (affirming refusal to allow expert testimony beyond the scope of the original report, as the new theory "was not based on any newly discovered evidence"). Indeed, Dr. Proebstle's ostensible "supplementation" would be untimely even if the clock did not begin running until Diomed served Dr. Navarro's formal expert report on December 4, 2006. As the

trial date approaches, parties must supplement "with special promptness." See Fed. R. Civ. P. 26 Advisory Committee's Note (1993). The First Circuit has explained that disclosing materials around two weeks after they were prepared and a month before trial did not suffice. Fusco v. General Motors Corp., 11 F.3d 259, 264 (1st Cir. 1993). See also Minebea, 231 F.R.D. at 7 (supplemental report was untimely because it was submitted more than 30 days after the original report). Here, defendants submitted Dr. Proebstle's supposed "supplemental report" more than two months after receiving Dr. Navarro's report and only one month before trial – an even more egregious situation than the First Circuit faced in Fusco. Worse yet, the experiments are based on materials that defendants have withheld from Diomed in violation of discovery obligations.

      **B.**     **Preclusion is the Only Appropriate Remedy.**

Under Rule 37(c)(1), exclusion of the relevant evidence is the standard sanction both for failing to submit a rebuttal expert report within the time specified under Rule 26(a)(2)(C) and failing to supplement in a timely fashion as required under Rule 26(e). Klonoski v. Mahlab, 156 F.3d 255, 269 (1st Cir. 1998) (reversing district court decision because of improperly admitted evidence: "[T]he required sanction in the ordinary case is mandatory preclusion."); Finley, 75 F.3d at 1230.

Rule 37(c)(1) does provide for exceptions in the event that a failure to disclose material in a timely manner was "substantially justified" and/or "harmless," but neither is true here. Instead, responding to Dr. Proebstle's new experiments and analysis would require the sort of "frantic, last-minute scramble" that the First Circuit described when affirming the district court's refusal to allow "tardy supplementation" in Thiebeault v. Square D. Co., 960 F.2d 239, 247 (1st Cir. 1992). Already preparing for trial, it would be unreasonable to expect Diomed and its experts to respond to a last-minute ambush of this sort on the eve of trial. See Finley, 75 F.3d at 1230-31 (noting the "heavy burden of meeting the new [rebuttal] evidence at trial").

The possibility of deposing Dr. Proebstle (who in any event is located in Germany) is insufficient to cure this prejudice, as addressing his new tests would require Diomed's experts to conduct additional testing as well. Fritter v. Dafina, Inc., 181 F.R.D. 215, 217 (N.D.N.Y. 1998) (rejecting defendant's offer to permit depositions: "[I]n order to prevent prejudice to plaintiffs, time should be permitted for their expert to perform additional testing."). One month simply is not long enough to complete such tests, particularly considering that Dr. Proebstle used laser fibers that Diomed has never even seen. Id. ("Only one month is insufficient time for plaintiffs to complete such tests.").[4]

## III.  CONCLUSION

For the above reasons, the Court should limit the testimony of Dr. Thomas Proebstle to the four corners of his October 2005 rebuttal expert report, his December 2005 declaration, and his February 2006 declaration.

Respectfully submitted,
DIOMED, INC.
By its attorneys,

Dated: February 20, 2007

/s/ Michael A. Albert
Michael A. Albert (BBO #558566)
malbert@wolfgreenfield.com
Michael N. Rader (BBO #646990)
John L. Strand (BBO #654985)
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
(617) 646-8000

---

[4] Nor is the possibility of a continuance appropriate or sufficient to remedy the problem. The First Circuit has made clear that granting continuances as a matter of course when parties violate Rule 26(e) would allow parties to disregard the rule with "impunity." Klonoski. 156 F.3d at 273 (quoting Thibeault, 960 F.2d at 246). Offering a continuance on the eve of trial presents nothing but "a Hobson's choice of inadequate preparation or costly delay." Freund v. Fleetwood Enterprises, Inc., 956 F.2d 354, 358 (1st Cir. 1992). This case in particular has been pending for more than three years, and the previous delays have already caused Diomed irreparable harm for the reasons described in its Request for Early Trial Date (D.I. # 149).

## LOCAL RULE 7.1(a)(2) CERTIFICATION

The undersigned certifies that counsel for Diomed consulted with counsel for AngioDynamics and VSI to advise them of the present motion.

/s/ Michael A. Albert

## CERTIFICATE OF SERVICE

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

/s/ Michael A. Albert