UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DIOMED, INC.,

        Plaintiff,

v.

ANGIODYNAMICS, INC.,

        Defendant.

Civil Action No. 04-CV-10019 (NMG)

---

DIOMED, INC.

        Plaintiff,

v.

VASCULAR SOLUTIONS, INC.

        Defendant.

Civil Action No. 04-CV-10444 (NMG)

**DEFENDANTS ANGIODYNAMICS, INC.'S AND VASCULAR SOLUTIONS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR JOINT MOTION *IN LIMINE* TO PRECLUDE STATEMENTS MADE BY THE DEFENDANTS TO THE FOOD AND DRUG ADMINISTRATION**

**I.    PRELIMINARY STATEMENT**

Defendants AngioDynamics, Inc. ("AngioDynamics") and Vascular Solutions, Inc. ("VSI" and with AngioDynamics, "the Defendants") jointly submit this Memorandum of Law in Support of their Motion *In Limine* to preclude statements made by AngioDynamics and VSI to the Food and Drug Administration ("FDA"). Specifically, AngioDynamics and VSI move for an order precluding Plaintiff Diomed, Inc. ("Diomed") from introducing at trial statements made by

AngioDynamics and VSI in certain 510(k) premarket notifications submitted to the FDA identifying Diomed's laser treatment device as a "predicate" or "substantially equivalent" device.

In Diomed's Memorandum of Law in Support of its Motion for Summary Judgment of Infringement, Diomed specifically references 510(k) notifications submitted by VSI and by biolitec, Inc.[1] as evidence that AngioDynamics's and VSI's laser vein treatment kits, or components thereof, are identical to Diomed's laser devices. *See* Memorandum of Law in Support of Diomed, Inc.'s Motion for Summary Judgment of Infringement, at p. 7; Exhibit 25 to Declaration of Michael Rader in Support of Diomed, Inc.'s Motion for Summary Judgment of Infringement; Exhibit A and B attached hereto (summaries of the VSI and biolotec, Inc. 510(k) notifications). Diomed notes in its summary judgment papers that VSI and biolotec, Inc. specifically identify Diomed's Surgical Laser and/or its EVLT laser vein treatment kits as "substantially equivalent" devices to their respective products. Based on these references, AngioDynamics and VSI have reasonable cause to believe that Diomed will try to use 510(k) notifications at trial as evidence that AngioDynamics's and VSI's accused laser treatment devices are the same as Diomed's devices and therefore infringe the patent-in-suit.

As set forth more fully herein, statements made by AngioDynamics (or biolitec, Inc.) and VSI in their respective 510(k) notifications are entirely irrelevant to issues of infringement, either literal or by equivalence. It is well-established law in the Federal Circuit that the Court must compare the accused-infringing device with the patent claims, not the patentee's commercial embodiments. AngioDynamics's and VSI's 510(k) notifications do not compare their laser vein treatment devices to the claims of the patent-in-suit – i.e., the '777 Patent. Rather, the 510(k) notifications only compare the accused devices to Diomed's commercial products. Thus, any

---

[1] biolitec, Inc. is a company that manufactures specialty laser, fiber, and fiber optic-based products for medical, dental and industrial applications. AngioDynamics sells lasers manufactured by biolitec, Inc. as part of its VenaCure product line.

2

statements made by AngioDynamics or VSI identifying Diomed's EVLT laser devices as "predicate" or "substantially equivalent" devices for the purpose of its 510(k) notifications are irrelevant to the issue of infringement and should not used by Diomed at trial.

Furthermore, Diomed knows that a comparison to a "substantially equivalent" device in a 510(k) notification is not evidence of infringement. In its own 510(k) submissions for its EVLT laser products, Diomed identifies vein closure devices manufactured by VNUS Medical Technologies, Inc. ("VNUS"). *See* Exhibit C attached hereto. VNUS has sued Diomed (along with AngioDynamics and VSI) for infringement of four patents related to VNUS's vein closure devices. Diomed has denied infringement of VNUS's patents. Thus, by denying infringement of the VNUS patents, it is clear that Diomed itself does not believe that its identification of VNUS's vein closure devices as a "substantially equivalent" device is evidence of infringement.

For these reasons, and for the reasons set forth in detail below, the Court should grant AngioDynamics's and VSI's Joint Motion *In Limine* and issue an order precluding Diomed from using at trial statements contained in the 510(k) notifications, including those statements made by AngioDynamics/biolitec, Inc. and VSI to the FDA identifying Diomed's EVLT laser device as a "predicate" or "substantially equivalent" device to the devices accused of infringement in this action.

## II.  ARGUMENT

### A.  Statements Made By AngioDynamics/biolitec, Inc. and VSI To The FDA In Their 510(k) Submissions Are Irrelevant To The Issue Of Infringement.

As manufacturers and sellers of medical devices intended for human use, AngioDynamics and VSI are required to submit 510(k) premarket notifications to the FDA for any medical device that they want to market in the United States. The purpose of a 510(k) submission is to demonstrate to the FDA that the device to be marketed is at least as safe and

3

effective as an existing, legally marketed device.  21 CFR 807.92(a)(3); *see also Sunrise Medical HHG, Inc. v. AirSep Corp.*, 95 F. Supp. 2d 348, 405 (W.D. Pa. 2000) ("510(k) notifications are submittals of engineering and clinical information which are provided to the FDA to permit that agency to assess the safety and effectiveness of a new product with regard to a predicate product which is already on the market.")  The legally marketed device is often referred to as a "predicate" or "substantially equivalent" device.  In the 510(k), the company must compare their device to one or more predicates and must make and support its substantial equivalency claims.

Under the regulations governing the 510(k) submissions, a device is substantially equivalent if, in comparison to a predicate it:

    (a) has the same intended use as the predicate; and

    (b) has the same technological characteristics as the predicate;

**or**

    (a) has the same intended use as the predicate; and

    (b) has different technical characteristics and the information submitted in the 510(k) does not raise new questions of safety and effectiveness and demonstrates that the device is at least as safe and effective as the predicate.

21 CFR 807.92(a)(5)-(6).  After submitting the 510(k), the company must wait to receive an order from the FDA declaring the device substantially equivalent to a predicate before proceeding to market with the device.

AngioDynamics, VSI, and their component suppliers, including biolitec, Inc., have submitted numerous 510(k) notifications for their respective laser vein treatment devices, and for each device, have received an order from the FDA declaring the device to be substantially equivalent to a legally marketed predicate device.  The predicate devices listed by AngioDynamics/biolitec, Inc. and VSI have varied depending on the device that is the subject of

the 510(k). In some cases, AngioDynamics or VSI will list their own existing legally marketed devices as predicates for a new or improved device. In other cases, they will list as predicates devices marketed by their competitors, including Diomed. For example, in the 510(k) identified by Diomed in its summary judgment papers, VSI lists Diomed's EVLT laser kit as a legally marketed predicate device to VSI's Vari-Lase Endovenous Laser Procedure Kit. Exhibit A.

The 510(k) identification of Diomed's laser treatment device as a "substantially equivalent" predicate to the accused-infringing devices sold by AngioDynamics and VSI is entirely irrelevant to the issue of infringement, either literal or by equivalence. It is well-established law in the Federal Circuit that a court must not "compare in its infringement analysis the accused product . . . with the patentee's commercial embodiment." *Zenith Labs. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994); *see also Martin v. Balber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985) ("Infringement, either literal or by equivalence, is determined by comparing the accused device with the claims in suit, not with the preferred or commercial embodiment of the patentee's claimed invention."); *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 880, 902 (Fed. Cir. 1984) (stating that infringement is determined by comparison with the claimed invention, not the patentee's marketed product).

Adopting the Federal Circuit's holding in *Zenith Labs*, several courts in other jurisdictions have held that statements of substantial equivalence in 510(k) notifications are not admissible as evidence of infringement. In *Clintec Nutrition Co. v. Baxa Corp.*, 988 F. Supp. 1109 (N.D. Ill. 1997), for example, the plaintiff argued that the defendant's identification in its 510(k) submission of plaintiff's compounding liquid device as a "substantially equivalent" device was relevant to the court's infringement analysis. The court disagreed stating that "it is error for a court to compare in its infringement analysis the accused product with the patentee's

5

commercial embodiment." *Clintec*, 988 F. Supp. 2d at 1116 n.8 (quoting *Zenith Labs*, 19 F.3d at 123).

Similarly, in *University of Florida Research Foundation, Inc. v. Orthovita, Inc.*, 1998 WL 34007129 (N.D. Fla. April 20, 1998), the plaintiff argued that defendant's identification of plaintiff's periodontal glass particle product as an "equivalent" was evidence of infringement under the doctrine of equivalents. That court also disagreed, holding that the 510(k) submission was "fatally deficient in that [it compared] the accused BioGran(R) product, not to the patent claims, but to the commercial embodiment of the patentee's invention in contravention of [*Zenith Labs*] . . . . [A]n accused device should be compared with the patent claims." *Id.* at *23. The court also stated in a footnote that "the Court cannot use the FDA 510(k) notification in considering infringement by equivalence, since in addition to comparing the commercial embodiment of the [patent-in-suit] instead of the patent claims . . . the FDA filing is controlled by a separate regulatory scheme." *Id.* at *23 n.23 (citing *Mahurkar v. C.R. Bard, Inc.*, 1993 WL 259446, at *9, n.16 (N.D. Ill. July 6, 1993)).

Like the *Clintec* and *University of Florida* cases, the Federal Circuit's holding in *Zenith Labs* has direct application here. The 510(k) notifications identified by Diomed in its summary judgment papers compare certain of VSI's and AngioDynamics's accused-infringing devices with Diomed's laser vein treatment device. Neither VSI nor AngioDynamics/biolitec, Inc. compare their products to, or claim that their products are equivalent to, any of the claims of the '777 Patent. Moreover, the fact that this case involves a method patent, not a device patent, makes AngioDynamics's and VSI's 510(k) device comparisons even less relevant. Indeed, if courts are unwilling to consider 510(k) device comparisons as evidence of infringement of a device patent, *see, e.g., Clintec,* supra, and *University of Florida*, supra, certainly this Court

should not consider such device comparisons as evidence of infringement of the '777 Patent – a method patent.

For these reasons, this Court should not permit such statements to be introduced at trial as evidence or an admission of infringement.

    **B.    Diomed Agrees That 510(k) Submissions Identifying A Competitor's Product As Being "Substantially Equivalent" Are Not Relevant To Infringement.**

Diomed's own regulatory history further confirms that statements made in 510(k) filings are not relevant to the issue of infringement. In a 510(k) for its 810 nm Surgical Laser and EVLT Procedure Kit (510(k) No. K012398), Diomed lists VNUS Medical Technologies, Inc.'s Closure System as the legally marketed predicate device. Exhibit C. Diomed affirmatively states in the 510(k) submission that its 810 nm Surgical Laser and EVLT Procedure Kit are "substantially equivalent" to the VNUS Closure System. VNUS, a competitor of Diomed, AngioDynamics, and VSI, has sued all three companies in the United States District Court for the Northern District of California for infringement of four of its patents. *VNUS Medical Technologies, Inc. v. Diomed, Inc. et al.*, Civil Action No. C05-02972 MMC (N.D. Cal.). Diomed's 810 nm Surgical Laser and EVLT Procedure Kit have been identified by VNUS as accused-infringing devices in that litigation. In response, Diomed has denied that its products, including its EVLT laser vein treatment devices, infringe VNUS's patents. Clearly, Diomed disputes in the VNUS matter that its 510(k) submissions constitute evidence relevant to the issue of infringement. It cannot take the opposite position in this case as to AngioDynamics's and VSI's 510(k) filings.

## III. CONCLUSION

For all of the foregoing reasons, the Court should grant AngioDynamics's and VSI's Joint Motion *In Limine* and issue an order precluding Diomed from using at trial statements contained in AngioDynamics's 510(k) notifications, including those statements made by AngioDynamics to the FDA identifying Diomed's EVLT laser device as a "predicate" or "substantially equivalent" device.

Dated: February 20, 2007

**I hereby certify that a true copy of the above document was served upon the attorney of record for the Plaintiff and Counterclaim-Defendant Diomed, Inc. by electronic mail.**

**/s/ William H. Bright, Jr.**

THE DEFENDANT,
ANGIODYNAMICS, INC.


By  /s/ William H. Bright, Jr.
    William H. Bright, Jr.
    *wbright@mccarter.com*
    Mark D. Giarratana
    *mgiarratana@mccarter.com*
    McCARTER & ENGLISH, LLP
    CityPlace I
    Hartford, CT  06103
    Phone:  (860) 275-6700


THE DEFENDANT,
VASCULAR SOLUTIONS, INC.


By  /s/ Thomas Vitt
    Thomas Vitt
    *Vitt.Thomas@Dorsey.com*
    Heather Redmond
    *Redmond.Heather@Dorsey.com*
    DORSEY & WHITNEY LLP
    50 South Sixth Street
    Minneapolis, MN 55402-1498
    Phone:  (612) 340-5675