UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANGIODYNAMICS, INC., <br><br> Defendant. | Civil Action No. 04-CV-10019 (NMG) |
| DIOMED, INC. <br><br> Plaintiff, <br><br> v. <br><br> VASCULAR SOLUTIONS, INC. <br><br> Defendant. | Civil Action No. 04-CV-10444 (NMG) |

**DEFENDANTS ANGIODYNAMICS, INC.'S AND VASCULAR SOLUTIONS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR JOINT MOTION IN LIMINE TO PRECLUDE PLAINTIFF'S TESTIMONY ON ITS SIDE FIRING THEORY OF PATENT INFRINGEMENT**

Defendants AngioDynamics, Inc. ("AngioDynamics") and Vascular Solutions, Inc. ("VSI" and with AngioDynamics, "the Defendants") jointly submit this Memorandum of Law in Support of their Motion In Limine to preclude Plaintiff Diomed, Inc. ("Diomed") from introducing testimony at trial on its side firing theory of patent infringement.

I.  **PRELIMINARY STATEMENT**

In the April 12, 2005 Memorandum And Order On Claims Construction (the "Markman Ruling"), this Court construed the "means for emitting laser energy" limitation of independent claims 9 and 21 of the '777 patent to mean "a fiber optic line with an uncoated tip at its end capable of emitting laser energy", and defined "tip" as "'the extremity or top end of a thing; esp. the pointed or rounded end of anything long and slender; the top, summit, apex, very end.' Shorter Oxford English Dictionary (3d ed. 1944)." (Markman Ruling at 9). The Court further explained that the claims require the "tip-interior surface" of the fiber to be deliberately put in physical contact with the vessel wall, and maintained in physical contact while laser energy is emitted. (Markman Ruling at 11-13).

Because there is no direct evidence of any contact between the uncoated tip of the fiber and the vessel wall when physicians use Defendants' products, Diomed seeks to introduce testimony that the "means for emitting laser energy" includes the coated sidewalls of the fiber and that physicians infringe the patent when the sidewalls of the fiber purportedly touch the vessel wall. In particular, the recently provided expert report of Dr. Luis Navarro, one of the inventors of the '777 patent, espouses the theory that the coating or "cladding" on the *side* of the fiber degrades during the procedure and that the *sidewalls* of the fiber therefore become the laser-emitting section. Dr. Navarro even asserts that the fiber becomes a "laser emitting rod". (Navarro Report at 27, ¶ 7, Exh. A). The Defendants expect Dr. Navarro to offer this theory at trial.

The Markman Ruling is explicit on this issue -- the means for emitting laser energy does not include the sidewalls of the fiber, whether degraded or not, and any contact between the sidewalls of the fiber and the vessel wall cannot give rise to infringement. Diomed's planned

2

testimony on its side firing theory is irrelevant, and will only lead to confusion of the jury and prejudice to Defendants.

## II. ARGUMENT

### A. The Court Rejected In Its Markman Ruling Diomed's Argument That The Uncoated Laser-Emitting Section Can Be Located Anywhere On The Fiber, And Explicitly Limited The Claim To A Fiber Having An Uncoated Section At The Tip.

This Court previously rejected Diomed's argument that the "means for emitting laser energy" should be construed to cover an uncoated section located anywhere on the fiber, such as the sidewalls of the fiber. Because this Court has ruled that the claims do not cover the emission of laser energy from the sidewalls of the fiber, Diomed should not be allowed to introduce evidence purportedly showing that the sidewalls of the fiber emit laser energy and thereby lead to infringement.

Diomed's prior argument on this point is summarized in the Markman Ruling as follows:

> Diomed argues that defendants improperly import limitations from the specification that are not present in the claim language, because the "means for emitting laser energy into the blood vessel" does not "require [that] the means emitting section . . . be located at any particular part of the fiber." Diomed's Claim Construction Memorandum, at 14. In other words, Diomed contends that the structure disclosed in the specification requires only that the optic fiber have an uncoated section in order to "allow emittance of laser energy." According to Diomed, the actual location of the uncoated section is of no significance so long as a section is capable of emitting laser energy."

(Markman Ruling at 7-8, footnote omitted).

In rejecting Diomed's argument, this Court first concluded that the "means for emitting" limitation is a "means plus function" limitation under § 112, ¶ 6 that must be construed as follows: "First, the court must identify the claimed function. Second, the court must identify the corresponding structure (and any equivalent) set out in the written description that is necessary to

3

perform that function." (Markman Ruling at 6). Upon reviewing the '777 specification, the Court concluded: "The only structure disclosed in the specification capable of 'emitting laser energy' is 'fiber optic line 40 [that] has a *tip* 41 that is uncoated so as to allow emittance of laser energy.' (Emphasis added). A 'tip' is defined as the 'extremity or top end of a thing; esp. the pointed or rounded end of anything long and slender; the top, summit, apex, very end.' Shorter Oxford English Dictionary (3d ed. 1944)." (Markman Ruling at 9, emphasis and brackets in original).

Accordingly, the Court held that "the 'means for emitting laser energy' must be construed as a fiber optic line with an uncoated tip at its end capable of emitting laser energy". (Markman Ruling at 9). The Court rejected Diomed's argument that the disclosed structure was only a "preferred embodiment", and that the uncoated section could be located anywhere on the fiber, stating: "it still remains that the only structure disclosed in the patent that performs the 'means plus function' limitation of Step 1 is 'fiber optic line 40 [that] has a tip 41 that is uncoated so as to allow emittance of laser energy.'" (Id.).

With respect to Step 2 of the claims, the Court rejected Diomed's argument that the claimed "intraluminal contact" could be between any part of the fiber and the vessel wall, stating: "Thus, 'placing said laser emitting section of said emitting means into intraluminal contact with the blood vessel' must, as defendants contend, be construed to mean '**deliberately putting the uncoated tip** of the fiber optic line **in physical contact** with the wall of the blood vessel, which requires drainage of blood and compression of the vein.'" (Markman Ruling at 11, emphasis added). Similarly, the Court held that Step 3 of the claims requires "maintaining the

**tip-interior surface** in physical contact with the vessel wall while laser energy is emitted to decrease the diameter of the blood vessel." (Markman Ruling at 12-13, emphasis added).[1]

The Court's ruling is supported by, and entirely consistent with, the description of the claimed invention in the '777 patent. The '777 specification explicitly disclaims any possibility that the coated sidewalls of the fiber can perform the claimed function of "emitting laser energy into the blood vessel", and therefore excludes any such structure from the scope of the claim. The '777 specification states: "The coated portion of the fiber optic line 40 will **not** emit laser energy". ('777 patent at col. 4, lines 55-56, emphasis added). This point was reinforced to the Court by Diomed in its Memorandum on Claim Construction. Diomed stated: "The non-emitting portion of the fiber optic line is coated with a known substance for mechanical protection and **to prevent emission of the laser energy in undesired locations**." (Diomed's Claim Construction Memorandum, at 5, emphasis added).

It is axiomatic that when a patent specification says that a particular structure cannot perform the function of a means-plus-function limitation, that such structure cannot be included within the scope of the claim. In Signtech USA, Ltd. v. Vutek, Inc., 174 F.3d 1352, 1357 (Fed. Cir. 1999), the court held that a means-plus-function limitation could not be extended to cover a structure described in the specification as unable to perform the function. The court stated: "by stating that the accused structure was 'incapable' of achieving the desired results of the invention, the patentee expressly excluded it as an equivalent of the disclosed structure." 174 F.3d at 1357. See also J & M Corp. v. Harley-Davidson, Inc., 269 F.3d 1360, 1368 (Fed. Cir. 2001) (means-plus-function claim scope cannot as a matter of law be extended to include structure disclaimed in the specification); and Asyst Techs., Inc. v. Emtrak, Inc., 402 F.3d 1188,

---

[1] The asserted dependent claims also require all of these limitations.

1195 (Fed.Cir.2005) (holding that, under the "specific exclusion" principle, "the term 'mounted' can fairly be said to specifically exclude objects that are 'unmounted' "). The '777 specification explicitly states that the coated sidewalls of the fiber cannot perform the function of emitting laser energy, and therefore this Court properly limited the "means for emitting" limitation strictly to the uncoated or tip-interior surface at the very end of the fiber.[2]

Further, Diomed cannot introduce expert testimony to contradict the '777 specification's unambiguous statement, acknowledged by Diomed in its Claim Construction Memorandum, that the coated sidewalls cannot perform the claimed function of emitting laser energy. Claim construction is a question of law for the Court to be conducted based on the intrinsic record, i.e., the patent specification and its prosecution history. Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005). That record, as this Court has already found, is clear. The laser-emitting section of the fiber must be the uncoated section at its "top, summit, apex, very end". To allow expert testimony to support a theory of infringement that is incorrect as a matter of law in view of the Court's Markman Ruling would invite legal error. Liquid Dynamics Corp. v. Vaughan Co., Inc., 2004 WL 2260626 at 3-5 (N.D. Ill. Oct 01, 2004) (motion in limine to exclude defendant's expert's testimony granted because expert's opinion on infringement was based

---

[2]   Nor can Diomed argue that its side firing theory is relevant to infringement under the doctrine of equivalents. Diomed is not entitled to assert doctrine of equivalents infringement because this case does not involve a "later-developed" technology. Rather, the Defendants are using coated fibers which is a technology described in the '777 patent itself. Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc., 145 F.3d 1303, 1311 (Fed. Cir. 1998) (for cases that do not involve later-developed technologies, a finding of non-equivalence under § 112, ¶ 6 precludes a contrary finding under the doctrine of equivalents); and Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc., 389 F.3d 1370, 1379 (Fed. Cir. 2004) (if the technology of the proposed equivalent arose before the patent filing date, any analysis for equivalent structure under the doctrine of equivalents collapses into the § 112, ¶ 6 analysis).

upon a claim construction rejected by the court, and any probative value of the opinion was outweighed by the danger of unfair prejudice and jury confusion).[3]

**B.      Diomed's Experts Plan To Testify That The Means For Emitting Laser Energy Is The Coated Sidewalls Of The Fiber. This Testimony Will Contradict The Markman Ruling, Be Irrelevant, Unfairly Prejudice Defendants, and Confuse the Jury.**

Despite the Court's Markman Ruling, the description of the invention in the '777 patent, and Diomed's statements that the coating on the laser fiber prevents the emission of laser energy through the side of the fiber, Diomed's technical expert Dr. Navarro submitted an expert report on December 4, 2006 describing in detail Diomed's side firing theory of infringement. (Navarro Report at 22-28, Exh. A). Dr. Navarro claims that during an endovenous laser procedure the coating (or "cladding") on the sidewalls of the fiber degrades, and that this purportedly "allows laser energy to emit not only through the very end of the fiber, but also through the unjacketed sidewalls, turning the laser fiber into a laser emitting rod." (Navarro Report at 27, Exh. A). Dr. Navarro states elsewhere in his report "that almost the entire unjacketed portion of the fiber, if not the entire unjacketed portion, becomes a light-emitting section." (Id. at 24, Exh. A). Dr. Navarro further asserts: "While the side wall of the fiber is in contact with the vessel wall, this side wall emission is significant enough to cause permanent damage to the vein wall, including charring and perforation." (Id.).

Dr. Navarro demonstrates his new theory in experiments by touching the sidewalls of used fibers to liver or human vein flaps, *while claiming to keep the tip of the fiber away from the substance he is treating.* Several photographs from Dr. Navarro's experiments showing this technique are attached hereto as Exhibit B. Thus, Dr. Navarro goes so far as to suggest that

---

[3]    Subsequent to the decision on the motion in limine, judgment was entered for the plaintiff and affirmed in the case as follows: 2005 WL 711993 (N.D. Ill. Mar. 22, 2005), aff'd 449 F.3d 1209 (Fed. Cir. 2006).

contact with the actual tip of the fiber is not necessary for the procedure to work so long as there is contact with the sidewalls. Such a position is not only inconsistent with, but flatly contradicts the '777 patent and the Markman Ruling, both of which state that contact between the uncoated tip of the fiber and the vein wall is absolutely essential.

Defendants believe that Diomed plans to introduce the same or similar testimony through its technical expert Dr. Rox Anderson and other fact witnesses.

The "unjacketed sidewalls" that Dr. Navarro says become the claimed laser-emitting section is in reality what Diomed and the '777 patent identify as the coated portion of the fiber. This is the same coated portion of the fiber that the '777 patent says cannot emit laser energy, and thus cannot be covered by the "means for emitting laser energy" limitation. Further, this Court properly excluded this portion of the fiber from the "means for emitting laser energy" limitation in the Markman Ruling. Accordingly, any contact between the sidewalls (or unjacketed portion) of the fiber cannot give rise to an infringement, and therefore is irrelevant to this case. Consequently, any such testimony would only confuse the jury on the infringement issues, and prejudice Defendants. It is therefore respectfully requested that Diomed be precluded from introducing at trial any testimony on its side firing theory of infringement.

### III.  CONCLUSION

For all the foregoing reasons, it is respectfully requested that the Court grant Defendants' motion in limine and preclude Diomed from introducing at trial any testimony on its side firing theory of patent infringement.

Dated: February 20, 2007

**I hereby certify that a true copy of the above document was served upon the attorney of record for the Plaintiff and Counterclaim-Defendant Diomed, Inc. by electronic mail.**

**/s/ William H. Bright, Jr.**

THE DEFENDANT,
ANGIODYNAMICS, INC.


By  /s/ William H. Bright, Jr.
    William H. Bright, Jr.
    *wbright@mccarter.com*
    Mark D. Giarratana
    *mgiarratana@mccarter.com*
    McCARTER & ENGLISH, LLP
    CityPlace I
    Hartford, CT  06103
    Phone:  (860) 275-6700


THE DEFENDANT,
VASCULAR SOLUTIONS, INC.


By  /s/ Thomas Vitt
    Thomas Vitt
    *Vitt.Thomas@Dorsey.com*
    Heather Redmond
    *Redmond.Heather@Dorsey.com*
    DORSEY & WHITNEY LLP
    50 South Sixth Street
    Minneapolis, MN 55402-1498
    Phone:  (612) 340-5675

ME1\6184568.3