# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

———————————————————————————

| | |
|---|---|
| DIOMED, INC., | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
|     v. | )    **Civil Action No.:  04-10444-NMG** |
| | ) |
| VASCULAR SOLUTIONS, INC., | ) |
| | ) |
|     **Defendant.** | ) |

———————————————————————————)

| | |
|---|---|
| DIOMED, INC., | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
|     v. | )    **Civil Action No.: 04-10019-NMG** |
| | ) |
| ANGIODYNAMICS, INC., | ) |
| | ) |
|     **Defendant.** | ) |

———————————————————————————)

## DEFENDANTS' JOINT PROPOSED JURY INSTRUCTIONS

Pursuant to Fed. R. Civ. P. 51(a)(1), AngioDynamics, Inc. ("AngioDynamics") and

Vascular Solutions, Inc. ("VSI") (collectively "Defendants") respectfully request that the Court

give the following preliminary instructions to the jury prior to the taking of evidence, and final

instructions to the jury at the close of the evidence and the completion of the summations.

Pursuant to Rule 51(a)(2)(A), Defendants reserve the right to file additional proposed

instructions with respect to issues that could not reasonably have been anticipated at an earlier

time, and to conform to the evidence adduced at trial.  Defendants also reserve the right to request

the Court's permission to file additional requests pursuant to Rule 51(a)(2)(B).  Finally, pursuant

to Rule 51(b), Defendants request an opportunity to object to the Court's proposed instructions

prior to summations.

Respectfully submitted,

**VASCULAR SOLUTIONS, INC.**

By its counsel,

/s/ Steven L. Feldman
Steven L. Feldman (BBO #162290)
Ruberto, Israel & Weiner, P.C.
100 North Washington Street
Boston, Massachusetts 02114-2128
Telephone: (617) 742-4200

˜and˜

J. Thomas Vitt MN #183817
Heather D. Redmond MN #313233
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
Telephone:  (612) 340-2600

**ANGIODYNAMICS, INC.**

By its counsel,

/s/ William H. Bright, Jr.
William H. Bright, Jr.
Mark D. Giarratana
McCarter & English, LLP
CityPlace I
185 Asylum Street
Hartford, Connecticut 06103
Telephone (860) 275-6700

˜and˜

Rodney S. Dowell (BBO #629016)
Berman & Dowell
210 Commercial Street
Boston, Massachusetts 02109
Dated: February 26, 2007            Telephone (617) 723-99911

## PRELIMINARY INSTRUCTIONS (BEFORE THE TAKING OF EVIDENCE)

### Preliminary Instruction No. 1:  The Nature of the Action and the Parties

This is a patent infringement case.  The plaintiff is Diomed, Inc. and the defendants are AngioDynamics, Inc. and Vascular Solutions, Inc.  During the trial and in my instructions to you, Diomed, Inc. may be referred to simply as "plaintiff" or "Diomed."  AngioDynamics, Inc. may be referred to simply as "AngioDynamics," and Vascular Solutions, Inc. may be referred to as "VSI."  You also may hear AngioDynamics and VSI collectively referred to as "defendants."

The patent involved in this case is U.S. Patent No. 6,398,777.  Patents are often referred to by their last three digits.  The patent in this case will be referred to as the `777 patent.  Diomed is the owner of  the '777 patent.  The `777 patent is directed to a method for treating varicose veins with a laser device.  During the trial the parties will offer testimony to familiarize you with this technology.

Diomed contends that AngioDynamics and VSI are willfully inducing and contributing to the infringement of the `777 patent in connection with the sale of their Vena-Cure products and Vari-Lase products, respectively.  AngioDynamics and VSI deny that they are inducing and contributing to the infringement of the `777 patent.

**Authority:**  ABA Model Jury Instructions: Patent Litigation (2005), 2.1 (modified).

## <u>Preliminary Instruction No. 2:  The Patent System, Generally</u>

Patents are issued by the United States Patent and Trademark Office, which is part of our government.  The government is authorized by the United States Constitution to enact patent laws and issue patents to protect inventions.  Inventions that are protected by patents may be of products, compositions, or of methods of doing something, or for using or making a product or composition.

The owner of a patent has the right, for the life of the patent, to prevent others from making, using, offering for sale, selling or importing the invention covered by the patent.

A patent is granted for a set period of time.  Once a patent expires, anyone is free to use the invention covered by the patent.

<u>**Authority**</u>:  ABA Model Jury Instructions: Patent Litigation (2005), 2.2 (modified).

### Preliminary Instruction No. 3:  The Issues In This Case

Diomed accuses AngioDynamics and VSI of two types of infringement:  (1) inducement of infringement, and (2) contributory infringement.  At the end of the case, I will give you more detailed instructions as to the legal requirements for proving inducement of infringement and contributory infringement.

But, to prove its claims, Diomed first has the burden of proving by a preponderance of the evidence that customers of the defendants perform the specific method of the '777 patent.  This is called direct infringement.

You will hear the parties and me refer to the patent "claims" throughout this case. The claims define what the patent owner may exclude others from doing during the term of the patent.  Under the law, it is my obligation to interpret the claims of the '777 patent.  I have interpreted the claims of the '777 patent, and you will be required to follow my instructions concerning what Diomed must prove to establish direct infringement.

To prove direct infringement, Diomed must prove, by a preponderance of the evidence, that all three of the following statements are true:

1) That physicians using defendants' products and following defendants' instructions necessarily and deliberately put the uncoated tip of the laser fiber into physical contact with the wall of the blood vessel;

2) That physicians using defendants' products and following defendants' instructions necessarily maintain the deliberately placed uncoated tip of the laser fiber in physical contact with the wall of the blood vessel while laser energy is being emitted; and

3) That physicians using defendants' products and following defendants' instructions

necessarily cause a decrease in the diameter of the blood vessel solely by means of deliberate, maintained contact between the uncoated tip of the laser fiber and the wall of the blood vessel.

The "uncoated tip" of the laser fiber is the top or very end of the laser fiber. You may also hear it referred to during trial as the flat face of the fiber or the fiber's tip-interior surface. The "uncoated tip" does not include the sidewalls or lateral surface of the laser fiber.

**Authority:** ABA Model Jury Instructions: Patent Litigation (2005), 2.4 (modified), 6.1 (modified), 7.12 (modified), 7.1 (modified), 7.3 (modified); 35 U.S.C. §§ 271-281 (1984 & Supp. 2001); April 12, 2005 Order on Claim Construction.

**Preliminary Instruction No. 4:  Burdens of Proof**

In any legal action, facts must be proven by a specified standard, known as the "burden of proof."  In this patent case, one of two different burdens of proof will be used, depending on the issue being decided.

The first burden of proof requires that, in order for a party to prevail, you must be persuaded that what the party seeks to prove is more probably true than not true.  This is called the "preponderance of the evidence" standard.  Diomed has the burden of establishing infringement and its damages by a preponderance of the evidence.

The second burden of proof standard is a higher standard, called "clear and convincing evidence."  It requires that you must be persuaded that it is highly probable that what the party seeks to prove is true.  Clear and convincing proof leaves no substantial doubt in your mind.  Diomed has the burden of establishing its claim that the defendants willfully infringed Diomed's patent by clear and convincing evidence.

At the end of the trial I will review for you which burden of proof, either the preponderance of the evidence standard or the clear and convincing standard, to apply to each issue in the case.

**Authority:**  ABA Model Jury Instructions: Patent Litigation (2005), 1 (modified).

## FINAL INSTRUCTIONS

I will now explain to you the rules of law that you must follow and apply in deciding this case. When I have finished, you will go to the jury room and begin your deliberations. If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

**<u>Instruction No. 1:  Evidence That May Be Considered</u>**

In deciding these matters, no one may invade your function as jurors.  In order for you to find the facts, you must rely upon your collective recollection of the evidence.  What the lawyers have said in their opening statements, in their closing arguments, in their objections or in their questions is not evidence.

Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your decision concerning the facts.  Anything you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded.

The evidence in the case consists of the sworn testimony of the witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.  You are to consider all of the evidence in the case.  By saying that, I do not mean that you must accept all of the evidence as true or accurate.  You should decide whether you believe what each witness had to say and how important that testimony was.  In making that decision you may believe or disbelieve any witness, in whole or in part.  Also, the number of witnesses testifying concerning any particular dispute is not controlling.

**<u>Instruction No. 2:  Reasonable Inferences</u>**

You are to consider only the evidence in the case, but in your consideration of the evidence, you are not limited to the bald statements of the witnesses.  In other words, you are not limited solely to what you see and hear as the witnesses testify.  You are permitted to draw from facts, which you find to have been proved, such reasonable inferences as you feel are justified in the light of your own collective experience.  What are inferences?  Inferences are deductions, which reason and common sense lead you, the jury, to draw from the facts, which you find to have been established by the evidence in the case.

**Instruction No. 3:  Credibility of Witnesses**

You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves.  You may be guided by the appearance and conduct of the witness or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence which is contrary to the testimony given.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief.  Consider each witness's intelligence, motive and state of mind, and demeanor or manner while on the stand.  Consider the witness's ability to observe the matters as to which the witness is testifying, and whether the witness impresses you as having an accurate recollection of these matters.  Consider also any relation each witness may bear to either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

After making your own judgment, you will give the testimony of each witness such weight, if any, as you, the jury, may think it deserves.  You may, in short, accept or reject the testimony of any witness, in whole or in part.

The testimony of a witness may be discredited or impeached by showing that a witness previously made statements which are inconsistent with that witness's present trial testimony.  The earlier contradictory statements, if any, are admissible to impeach the credibility of the witness.

Evidence of a prior inconsistent statement may have been placed before you for the

purpose of helping you decide whether to believe the trial testimony of a witness, who may

have contradicted himself or herself.  If you find that any witness made an earlier statement

that conflicts with the witness's trial testimony, you may consider that fact in deciding how

much of that witness's trial testimony, if any, to believe.

### Instruction No. 4:  Direct Infringement

As I explained at the beginning of the case, Diomed accuses AngioDynamics and VSI of two types of infringement: (1) inducement of infringement, and (2) contributory infringement.  To prove these claims, Diomed first has the burden of proving by a preponderance of the evidence that customers of the defendants perform the specific method of the '777 Patent.  This is called direct infringement.

Diomed also has the burden of proving by a preponderance of the evidence that defendants induced or contributed to acts of direct infringement by their customers.  I will instruct you later concerning the issues of inducement of infringement and contributory infringement.  I will instruct you now concerning the issue of direct infringement.

Under the law, it is my obligation to interpret the claims of the '777 Patent and to instruct you regarding what must be proven to prove that defendants' customers have performed the specific method claimed in Diomed's '777 Patent.  I have interpreted the claims of the '777 Patent, and you are required to follow my instructions concerning what must be proven to prove direct infringement.

In addition, as you have heard, Diomed has not offered any direct evidence of what physicians using AngioDynamics' and VSI's products actually do during endovenous laser procedures.  Instead, Diomed has offered circumstantial evidence to try to prove that any physician performing endovenous laser therapy and following AngioDynamics' or VSI's instructions is necessarily performing the method of Diomed's '777 Patent.  As you have also heard, AngioDynamics and VSI have offered evidence disputing Diomed's evidence

on that point.  It will be up to you to determine which side is correct, and whether Diomed

has proven its claim of direct infringement.

To prove direct infringement, Diomed must prove by a preponderance of the

evidence that all three of the following statements are true:

1)  That physicians using defendants' products and following defendants'

instructions necessarily and deliberately put the uncoated tip of the laser fiber into physical

contact with the wall of the blood vessel;

2)  That physicians using defendants' products and following defendants'

instructions necessarily maintain the deliberately placed uncoated tip of the laser fiber in

physical contact with the wall of the blood vessel while laser energy is being emitted; and

3)  That physicians using defendants' products and following defendants'

instructions necessarily cause a decrease in the diameter of the blood vessel solely by

means of deliberate, maintained contact between the uncoated tip of the laser fiber and the

wall of the blood vessel.

The "uncoated tip" of the laser fiber is the top or very end of the laser fiber.  It has

also been referred to during this trial as the flat face of the fiber or the fiber's tip-interior

surface.  The "uncoated tip" does not include the sidewalls or lateral surface of the laser

fiber.

You will see that these three issues are the first three questions on the special

verdict form for each defendant.

**Authority:**   ABA Model Jury Instructions: Patent Litigation (2005), 6.1. (modified), 7.12
(modified), 7.1 and 7.3 (modified); 35 U.S.C. §§ 271-281 (1984 & Supp. 2001); April 12,
2005 Order on Claim Construction.

**<u>Instruction No. 5:  Inducement of Infringement</u>**

If you determine that Diomed has proven direct infringement, you should consider the issue of inducement of infringement.  To prove inducement of infringement, Diomed has to prove by a preponderance of the evidence that AngioDynamics or VSI specifically intended to encourage physicians using their products to directly infringe the '777 Patent. It is not enough for Diomed to prove that AngioDynamics or VSI had knowledge of their customers' activities that are alleged to infringe the '777 Patent.

**<u>Authority:</u>** <u>DSU Medical Corporation v. JMS Co., Ltd.</u>, 2006 WL 3615056 (Fed. Cir. Dec. 13, 2006)(*en banc*).

**Instruction No. 6:  Contributory Infringement**

Contributory infringement can occur when a company provides a product for use in practicing a patented method.  In order for there to be contributory infringement, the person who received the product must directly infringe the patent.  In addition, the product must be a material part of the claimed invention.  Second, the product must be especially made or adapted for use in a manner that infringes the patent, and the company must know that the product was especially made for that use.  Third, the product must not have a substantial use that does not infringe the patent.  Here, AngioDynamics and VSI claim that a substantial noninfringing use exists because physicians can use their kits without deliberate and maintained contact between the uncoated tip  of the laser fiber and the vein wall.  Diomed asserts that AngioDynamics and VSI, through selling their products, are contributing to the infringement of the '777 patent.  To prevail on contributory infringement, Diomed then must prove by a preponderance of the evidence that all three of the following statements are true:

(1)      AngioDynamics' or VSI's customers directly infringed the '777 Patent;

(2)      AngioDynamics or VSI knew that their products were especially adapted for use in a manner that infringed the '777 Patent; and

(3)      AngioDynamics' or VSI's products have no substantial non-infringing use, meaning that the products cannot be used without deliberately putting the uncoated tip of the laser fiber into contact with the wall of the blood vessel, and maintaining contact of the deliberately placed uncoated tip with the vessel wall during the emission of laser energy.

**Authority:**  ABA Model Jury Instructions: Patent Litigation (2005), 7.12.2 (modified); 35 U.S.C.  §§271(c)(Supp. 2001); DSU Medical Corp., v. JMS Co., 2006 WL 3615056 at **5-7 (Fed. Cir. Dec. 13, 2006); Dynacore Holdings Corp. v. U.S. Phillips Corp., 363 F.3d 1263, 1274 (Fed. Cir. 2004); Joy Techs., v. Flakt, Inc., 6 F.3d 770, 774 (Fed. Cir. 1993); Metabolite Laboratories, Inc. v. Laboratory Corp. of American Holdings, 370 F.3d 1354, 1365 (Fed. Cir. 2004);  Warner-Lambert Co. v. Apotex Corp., 316 F.3d 1348, 1363 (Fed. Cir. 2003); Epcon Gas Sys., Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 1033 (Fed. Cir. 2002); Manville Sales Corp. v. Paramount Systems, Inc., 917 F.2d 544, 553 (Fed. Cir. 1990); Water Techs. Corp. v. Calco, Ltd., 850 F.2d 660, 668 (Fed. Cir. 1988); Trustees of Columbia Univ. v. Roche Diagnostics, 272 F. Supp. 2d 90, 115 (D. Mass 2002).

**<u>Instruction No. 7:  Damages</u>**

I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that AngioDynamics or VSI has infringed the '777 patent, then you must determine what damages AngioDynamics or VSI must pay to Diomed for that infringement.  If, on the other hand, you find that AngioDynamics or VSI has not infringed the '777 patent, then Diomed is not entitled to any damages.

Diomed has the burden of proving each element of its damages (i.e., lost profits and reasonable royalties) by a preponderance of the evidence.

**<u>Authority:</u>** ABA Model Jury Instructions: Patent Litigation (2005), 11.1, 11.4 (modified).

## **Instruction No. 8:  Lost Profits – in General**

Diomed is seeking its lost profits as part of its patent damages.  Diomed must prove the amount, if any, of its lost profits.  Simply stated, lost profit damages are the profits Diomed lost because of the infringement.  They are not the profits AngioDynamics and VSI made.

Diomed says that it lost profits because AngioDynamics' and VSI's infringement took away sales that Diomed would have made.  This is called lost profits due to lost sales. Diomed also says that it lost profits because VSI's infringement caused it to lower its prices.  This is called lost profits due to price erosion.

Diomed has the burden to show by a preponderance of the evidence that it would have made additional profits if AngioDynamics or VSI had not contributed to or induced infringement.  As I will describe in more detail later, Diomed must also show with a reasonable degree of probability the amount of lost profits suffered.

Remember, if you find Diomed did not prove infringement, there can be no damages of any kind.

**Authority:**  ABA Model Jury Instructions: Patent Litigation (2005), 11.5 (modified); Grain Processing Corp. v. Am Maize-Prods. Co., 185 F.3d 1341, 1349 (Fed. Cir. 1999); Fonar Corp. v. Gen. Elec. Co., 107 F.3d 1543, 1553 (Fed. Cir. 1997); Zygo Corp. v. Wyko Corp., 79 F.3d 1563, 1571 (Fed. Cir. 1996); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1545 (Fed. Cir. 1995)(en banc); BIC Leisure Products, Inc. v. Windsurfing Int'l., 1 F.3d 1214 (Fed. Cir. 1993); Smith Kline Diagnostics, Inc. v. Helena Labs., Corp., 926 F.2d 1161, 1164 (Fed. Cir. 1991); State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1576-77 (Fed. Cir. 1988); Water Techs. Corp. v. Calco, Ltd., 850 F. 2d 660, 672 (Fed. Cir. 1988); Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156 (6th Cir. 1978).

**Instruction No. 9:  Lost Profits due to Lost Sales and the Ability to get those Sales**

Lost sales are those sales the patent owner lost because of the infringement.  To recover lost profits for some or all of the infringing sales, Diomed must prove by a preponderance of the evidence that if defendants had not infringed, Diomed would have made those sales or a portion of those sales that defendants made.  You must determine what the customers who purchased the infringing products would have done if the infringement had not occurred.  Diomed need not eliminate every possibility that purchasers might not have purchased its products.  Rather, Diomed must show by a preponderance of the evidence that Diomed would have made some or all of the sales that defendants made of the infringing products.

You may decide that Diomed has proven its lost profits if you find that Diomed has proven each of the following factors by a preponderance of the evidence:

(1)  that there was a demand for the patented product;

(2)  the absence of acceptable noninfringing alternatives;

(3)  that Diomed had the manufacturing and marketing capacity to make the infringing sales, or a certain portion thereof, actually made by defendants; and

(4)  the amount of profit Diomed would have made had defendants not infringed.

I will now explain each of these factors.

**Demand**

Demand for the patented product can be proven by significant sales of Diomed's product or by significant sales of defendants' infringing product.

**No Acceptable Noninfringing Alternatives**

Diomed must prove by a preponderance of the evidence that there were no acceptable noninfringing alternatives to its product. In order to be an acceptable noninfringing alternative, the product must have the advantages of the patented invention that were important to consumers. If the realities of the marketplace are that competitors other than Diomed would likely have captured the sales made by defendants, even despite a difference in the products, then Diomed is not entitled to lost profits.

It is not necessary for Diomed to prove that there are no alternatives in the market. If the realities of the marketplace are such that noninfringing alternatives were available from suppliers who would have made only some, but not all, of the sales that were made by defendants, then Diomed may be entitled to lost profits for the portion of the infringing sales represented by its share of the market. The burden is on Diomed, however, to show a reasonable probability that it would have sold that percentage if defendants' products had never existed. By the same token, even if you find that there were no acceptable noninfringing alternatives, it does not necessarily mean that Diomed would have made all of defendants' sales. The burden is on Diomed to show that it would have made those sales if the infringement had not occurred.

**Capacity**

Diomed is only entitled to lost profits for sales it could have made. Diomed must prove that it would have had the ability to manufacture or otherwise obtain its product and the capability to sell the amount of product for which Diomed is now claiming lost profits.

**Amount of Lost Profits**

Diomed may calculate its lost profits on lost sales by computing the lost net sales for its patented product and deducting from that figure the amount of additional costs that it would have incurred in making those sales. Certain fixed costs such as property taxes, insurance, rent and administrative overhead may not vary with increases in production or sale. On the other hand, other manufacturing, selling, and operating costs may increase with an increase in sales.

Diomed must prove the amount of its lost profits to a reasonable probability. That is, the amount of lost profits damages must be based on sound economic proof of the nature of the market and likely outcomes with infringement out of the picture.

**Authority:** AIPLA's Guide to Model Patent Jury Instructions (modified); ABA Model Jury Instructions: Patent Litigation (2005), 11.6, 11.6.1, 11.8 (modified); DSU Medical Corp., v. JMS Co., 2006 WL 3615056 at **11-12 (Fed. Cir. Dec. 13, 2006); Tate Access Floors, Inc. v. Maxcess Techs., Inc., 222 F. 3d 958, 971 (Fed. Cir. 2000); Grain Processing Corp. v. Am Maize-Prods. Co., 185 F.3d 1341, 1349-50 (Fed. Cir. 1999); Tec Air, Inc. v. Denso Mfg. Mich., Inc., 192 F.3d 1353, 1362 (Fed. Cir. 1999); Gargoyles, Inc. v. United States, 113 F.3d 1572, 1574-77 (Fed. Cir. 1997); Oiness v. Walgreen Co., 88 F.3d 1025, 1029-32 (Fed. Cir. 1996); King Instruments Corp. v. Perego, 65 F.3d 941, 952-53 (Fed. Cir. 1995); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1550 (Fed. Cir. 1995)(en banc); Slimfold Mfg. Co. v. Kinkead, Inc., 932 F.2d 1453, 1458 (Fed. Cir. 1991); State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1578 (Fed. Cir. 1988); Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156-58 (6th Cir. 1978).

**Instruction No. 10:  Lost Profits due to Price Erosion**

Diomed claims that it also lost profits because it had to lower its prices or was unable to raise its prices, because of VSI's contributory and inducement of infringement. Diomed does not claim lost profits due to price erosion because of AngioDynamics' infringement.

In order to prove its price erosion damages, Diomed must prove that it lowered its prices, or did not raise them, because of VSI's infringement, and not for some other reason. If you find that Diomed is entitled to price erosion damages, then you may award as additional damages the amount represented by the difference between the amount of profits that Diomed would have made selling its kit at the higher price and the amount of profits Diomed actually made by selling its product at the lower price Diomed actually charged.

In making your determination, you must consider whether the increased price would likely have resulted in decreased sales for Diomed.  To do so, you may consider the nature or definition of the market, and similarities between any benchmark market and the market in which the price erosion is alleged.

**Authority:**  ABA Model Jury Instructions: Patent Litigation (2005), 11.7 (modified); AIPLA Model Patent Jury Instructions (2005), 12.10 (modified); Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc., 246 F.3d 1336, 1357-60 (Fed. Cir. 2001); Fiskars, Inc. v. Hunt Mfg. Co., 221 F.3d 1318, 1324-25 (Fed. Cir. 2000); Minco, Inc. v. Combustion Eng'g Inc., 95 F. 3d 1109, 1120 (Fed. Cir. 1996).

**Instruction No. 11:  Reasonable Royalty**

If you find that Diomed has not proven its claim for lost profits, or if you find that Diomed has proven its claim for lost profits for only a portion of the infringer's sales, you must then determine what a reasonable royalty would be for that portion of the infringing sales for which you did not award lost profits damages.  Diomed is entitled to a reasonable royalty for all infringing sales for which it is not entitled to lost profits.

A reasonable royalty is the amount of money that would be agreed to in a hypothetical negotiation between the owner of the patent at the time of the negotiation and the infringer, with both operating under the assumption that the negotiated patent is valid and is being infringed.  A reasonable royalty is the amount that two free, uncompelled, and uncoerced bargainers would agree upon after an arms-length negotiation.

In determining the reasonable royalty, you should place yourself at the point in time at which the arms-length negotiation would have taken place.  This is just before the infringement began.  In this case, you should assume that AngioDynamics' hypothetical negotiation would have taken place just prior to November 2002, and VSI's hypothetical negotiation would have taken place just prior to June 2003.  You should disregard any effect of events subsequent to this period in the negotiation, because the parties could not have relied on such events during the negotiation.

In determining a reasonable royalty, some of the factors that should be considered are:

1.      Whether the patent owner had established a royalty for the patented invention, for example, by granting or offering to others licenses at that royalty.

2.      Royalties paid by AngioDynamics and VSI or by others for patents comparable to the '777 patent.

3.      The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.      Whether or not the patent owner had a policy of licensing or not licensing the patent.

5.      Whether or not the patent owner and defendants are competitors, operating in the same territories or different territories.

6.      Whether being able to use the patented invention helps in making sales of other products or services.

7.      The established profitability of the process attributed to a physician's use of the patent, and whether or not it is commercially successful or popular.

8.      The duration of the '777 patent and the term of the license.

9.      The advantages and benefits of using the patented invention over other methods not claimed in the '777 patent.

10.     The extent of AngioDynamics' and VSI's use of the patented invention and the value of that use that is attributed to the sale of AngioDynamics' and VSI's kits.

11.     Whether or not there is a portion or percentage of the profit or selling price that is customarily paid in the endovascular laser industry for use of patented inventions comparable to the inventions claimed in the '777 patent.

12.     The portion of the profits of AngioDynamics' and VSI's products that is due to the use of the patented methods by physicians using their kits as compared to the profits due to other factors, such as unpatented uses or methods or features or improvements developed by AngioDynamics and VSI.

13.     Expert opinions as to what would be a reasonable royalty.

In addition, the parties are permitted to express their opinions as to a reasonable royalty, and such testimony is to be weighed and considered by you in accordance with the instructions that I have given you.

**Authority:**  Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc., 246 F.3d 1336, 1357-60 (Fed. Cir. 2001); Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y.), modified and aff'd sub. nom., Georgia-Pacific Corp. v. United States Plywood Champion Papers, Inc., 446 F.2d 295 (2d Cir.), cert. denied, 404 U.S.

870 (1971); Model Jury Instructions, United States District Court for the District of Delaware § 6.10; AIPLA's Guide to Model Patent Jury Instructions.

**Instruction No. 12:  Total Damages**

After making your findings concerning lost profits damages, price erosion damages, and reasonable royalty damages, you should arrive at a total damages amount to Diomed for each defendant.  Note that Diomed may not be awarded both lost profits and reasonable royalties for the same sales.

**Authority:**  ABA Model Jury Instructions: Patent Litigation (2005), 11.10 (modified).

**Instruction No. 13:  Willful Infringement**

If you find by a preponderance of the evidence that AngioDynamics or VSI infringed one or more of the claims of the '777 patent, then you must further determine if the infringement was willful.

Infringement becomes willful when, upon consideration of all of the facts and circumstances, clear and convincing evidence establishes that:

(1)     AngioDynamics or VSI had actual knowledge of Diomed's '777 patent; and

(2)     AngioDynamics or VSI had no reasonable basis for believing that the use of its products would infringe the '777 patent.

In making your determination as to willfulness, you must consider the totality of the circumstances.  The totality of the circumstances comprises a number of factors, which include, but are not limited to whether AngioDynamics or VSI intentionally copied the method covered by the '777 patent, and whether AngioDynamics or VSI exercised due care to avoid infringing the patent.

**Authority:**  AIPLA's Guide to Model Patent Jury Instructions; ABA Model Jury Instructions: Patent Litigation (2005), 8 (modified); 35 U.S.C.  §284 (Supp. 2001); Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 2004 U.S. App. LEXIS 19185 (Fed. Cir. Sept. 13, 2004).

**Instruction No. 14:  Deliberation and Verdict**

That concludes the part of my instructions explaining the rules for considering the evidence.  Now, let me explain some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Upon retiring to the jury room, you will select one of your number to act as your foreperson.  The foreperson will be your spokesperson here in court.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

## Instruction No. 15:  Unanimous Verdict

Your verdict must represent the considered judgment of each juror.  For you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in your answers to all the questions on the form, date, and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said here in these instructions and nothing in the form of the verdict is meant to suggest or convey in any way or manner any limitation as to what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document is being filed on this 26th day of February, 2007, through the Court's electronic filing system, which serves electronically counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF).  Any counsel for other parties who are not registered participants are being served by first class mail, postage prepaid, on this same date.

/s/  Steven L. Feldman, Esq.