READCHGF.TXT

1

```
 1              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MASSACHUSETTS
 2
                                   Civil Action
 3                                 No. 96-11025-WGY

 4   * * * * * * * * * * * * * * * *
                                    *
 5   THE READ CORPORATION,          *
     F.T. READ & SONS, INC., and    *
 6   NORDBERG-READ, INC.,           *
                                    *
 7            Plaintiffs,           *
                                    *
 8   v.                             *   JURY INSTRUCTIONS
                                    *
 9   POWERSCREEN OF AMERICA, INC.,  *
     POWERSCREEN INTERNATIONAL      *
10   DISTRIBUTION LTD. and POWERSCREEN *
     INTERNATIONAL, PLC,            *
11                                  *
              Defendants.           *
12   * * * * * * * * * * * * * * * *

13
              BEFORE:  The Honorable William G. Young,
14                          District Judge, and a Jury

15   APPEARANCES:

16
              WILLCOX, PIROZZOLO & McCARTHY, PC (By Jack R.
17   Pirozzolo, Esq. and Richard L. Binder, Esq.) 50 Federal
     Street, Boston, Massachusetts 02110, on behalf of the
18   Plaintiffs

19            CHOATE, HALL & STEWART (By Eric J. Marandett,
     Esq.), Exchange Place, 53 State Street, Boston,
20   Massachusetts 02109
                   - and -
21            FROST BROWN TODD LLC (By Arthur S. Beeman, Esq.
     and W. Bruce Baird, Esq.), 400 West Market Street, 32nd
22   Floor, Louisville, Kentucky 40202, on behalf of the
     Defendants
23

24                             1 Courthouse Way
                               Boston, Massachusetts
25
                               February 23, 2001
```

2

```
 1            THE CLERK:  Court is in session, please be seated.

 2            THE COURT:  Well, good morning, ladies and
```

READCHGF.TXT

3    gentlemen, ladies and gentlemen.

4            THE JURY:  Good morning.

5            THE COURT:  I truly want to thank you.  You people

6    have been prompt, you've been alert to everything that's

7    gone on, and we all are deeply, deeply appreciative.

8            Now, the way the lawyers and I have worked this

9    out, the way that we think will make this most intelligible

10   for you is to have me go first and explain to you in detail

11   the law which you must follow in this case.  We've agreed

12   as I sketched it out yesterday.

13           When I'm done explaining the law we'll take a

14   break.  Then the lawyers will get a chance to talk about

15   the evidence and urge you to certain conclusions within the

16   legal framework as I describe it.  When that's done I'll

17   have about five minutes left and I'll just give you some

18   explanation about how you may deliberate together, how

19   juries deliberate together, and then the case is yours.

20           So we start this morning with my explanation as to

21   the law which must govern in this particular case.

22   Understand that just as soon as he can, and he's very

23   quick, Mr. Womack will prepare a transcript of my charge

24   now.  But he can't get to that until after we send you out.

25   So you're going to have to start your deliberations before

3

1    you have the written charge.  But we will send in, without

2    any interruption, just as soon as we have the written

3    charge, we'll send in one copy to you so you actually have

4    the written charge before you.

5            But you must listen carefully now because this is

6    a form of law teaching.  This is like a law class here.

READCHGF.TXT

7    And it's a little stilted because you can't raise your hand

8    now and say, well, you didn't explain that very well,

9    explain that a little better.  But what you can do if you

10   don't understand any aspect of the law, write out your

11   question, write it out, there will be a court security

12   officer outside the door here, come out the door, give the

13   question to the court security officer, we'll set things

14   all up in here, we'll have you back in the courtroom and I

15   will explain it better.  Don't hesitate to do that.  If

16   justice is to be done here you people must understand the

17   law in the case, and I must be good enough to teach it to

18   you.  So if you have any questions about the law be sure to

19   ask them, don't just go ahead without understanding what

20   the law is.

21          I start my charges by a brief explanation of what

22   our separate roles are, and then from there we'll go into

23   what the evidence has been, at least the tools you have to

24   do the job, and then from there we'll go directly into what

25   the law is that governs this case.

4

1          First your role.  You are the judges of the facts.

2    The only judges of the facts.  Though I will necessarily

3    have to make mention of evidence and make mention of

4    particular witnesses, that's only to remind you of

5    testimony or evidence that may, it's entirely up to you,

6    bear on certain aspects of the case.  You're the judges of

7    the evidence.  I have nothing to say about the evidence.

8          Now, you're going to judge the evidence as I said

9    at the beginning of the case fairly and impartially without

10   any bias or prejudice, without any sympathy for anyone,

READCHGF.TXT

11    without any desire that anyone be punished or have revenge.

12    Carefully and coolly sifting through this evidence -- an

13    appropriate term in this case -- sifting through this

14    evidence to see that justice may be done.

15        Your verdict must be unanimous.  We're going to

16    ask you certain questions that can be answered like yes or

17    no.  So you must be unanimous as to a yes, you must be

18    unanimous as to a no.  And unanimous means that you all

19    come genuinely to agree.  And you'll all deliberate.  Not

20    that ten of you think this and the other couple go along

21    with it.  It must be a genuinely unanimous verdict.

22        And your verdict must be concentrated entirely on

23    the evidence.  You can, and I know how carefully you will

24    listen to the lawyers the better to understand the

25    evidence.  You may look at the demonstrative aids the

5

1    better to understand the evidence.  But the evidence is

2    what governs and you, and you alone, decide what you

3    believe about the evidence.

4        Now, I'm the judge of the law.  I've said that a

5    number of times.  I simply mean to point out to you that in

6    this courtroom I'm the one who has the responsibility of

7    teaching you the law.  We make a careful record of what

8    I've said.  And that's the fair way.

9        You cannot quarrel with the law as I explain it to

10    you.  I'm going to tell you who has to prove what in this

11    case.  I'm going to tell you the burden of proof that that

12    side bears.  And there's no dispute here who has to prove

13    what.  Read has to prove, do the proving here.

14        But you can't add to their burden.  You can't say,

Page 4

READCHGF.TXT

15    gee, I, I really want them to show us this or that.  But
16    likewise you can't subtract from their burden.  When I say
17    they've got to prove something, then they have to prove
18    that.  You can't say, well, forget about that because this
19    or that, something else is proved.  I'll tell you what has
20    to be proved and what the burden, what the standard of
21    proof is.
22         Listen to my whole charge start to finish.  Don't
23    seize on one part of it and say, "Aha, the case turns on
24    this or that."  Listen to the whole charge and consider all
25    aspects of the charge together.

6

1         Likewise, don't think that because I charge you as
2    to all aspects of the case that I think anything is proved
3    or not proved.  I have nothing to say about that.  I simply
4    am trying to build for you a complete mental framework so
5    that you will understand the law which you have to follow.
6    That's my role.
7         Now, I've emphasized that you must confine your
8    analysis to the evidence.  So let's take a moment and go
9    over the evidence in this case, not witness by witness but
10    rather type by type, and so you know what tools you have.
11         The first thing I think of is the testimony of the
12    witnesses.  You have the power to believe everything that
13    any witness said to you here from the witness stand.  To
14    believe it all.  Equally, you have the power to disbelieve
15    and disregard everything a witness said as though that
16    witness never testified.  Between those two extremes you
17    have the power to believe some things a witness says but to
18    disbelieve other things the witness says.  You are not

Page 5

READCHGF.TXT

19    prevented from reaching a verdict because one witness has

20    testified to one version of an event and another witness

21    has testified to another version of the same event and both

22    witnesses were under oath.  You can believe one or believe

23    the other.  You can decide where the truth lies.

24         How do you do it?  You use your common sense as

25    you are reasonable men and women.  You may use everything

7

1    you know about the witness.  How did the witness impress

2    you testifying on the witness stand?  How did the witness

3    respond to questions both on direct and on

4    cross-examination?  What was the opportunity of the witness

5    to observe, to comprehend, to understand, to recall those

6    matters about which the witness testified?  Does the

7    witness stand to gain or lose anything depending upon how

8    the case comes out?  Is the witness allied with, employed

9    by one side or the other in the case?  Do those things

10    affect the witness's testimony?  Is the testimony of the

11    witness backed up -- lawyers say corroborated -- by other

12    evidence in the case?  The exhibits or depositions or any

13    other evidence in the case.  Or, does the other evidence in

14    the case undercut, take away from, make less believable the

15    testimony of the witness who is before you.

16         In short, you can sum up a witness's testimony and

17    as reasonable men and women you can decide what you

18    believe.

19         Some witnesses have been allowed to give their

20    opinion about certain things.  The law provides that when a

21    witness has background, experience, training that the mine

22    run of judges and juries don't have, we'll let that witness

Page 6

READCHGF.TXT

23  render his opinion to the jury to aid the jury in doing

24  their function.

25          Like any other witness, your powers with respect

8

1  to opinions given by witnesses are no different.  That is,

2  if I've allowed you to hear an opinion you may believe it;

3  but equally you may disregard it.  You may decide that

4  that's just not believable, that's not credible.  Or you

5  could believe part of what a witness says and disbelieve

6  other parts of an opinion given by a witness.  It's left to

7  your good judgment.

8          I suggest to you that in evaluating opinions given

9  by witnesses you want to look at what undergirds them or

10  underlies them, what was the witness relying on.  How did

11  the witness come to that opinion?  Both by their

12  experience, generally having nothing to do with this case,

13  but also what do they know about things having to do with

14  this case upon which their opinion rests.

15          You're the judge of that.  So with respect to

16  opinions you may believe them, but you may disbelieve them

17  or believe them in part.

18          Now, not all the witnesses in this case testified

19  live, that is, were here in court.  Some witnesses, because

20  of the geographical distances here, or for whatever other

21  legal reasons, testified by way of deposition.  And we had

22  a lawyer read the answers or we had the lawyer read both

23  the questions and answers.  The technique used makes no

24  difference.  And the fact that a witness testifies by way

25  of deposition doesn't make that witness anymore believable

Page 7

9

READCHGF.TXT

1    or less believable than a witness testifying in court.

2    That testimony as matter of law starts even.  And like any

3    other testimony in the case, you may believe it, disbelieve

4    it, believe parts of it.

5         Now, with respect to witnesses who testified by

6    way of deposition, you didn't see them.  But you listened

7    very carefully to their testimony, and you want to compare

8    that testimony with the testimony of other witnesses, with

9    other depositions.  It's evidence in the case.  You may

10   believe it, disbelieve it, believe parts of it.

11        Now, in this case also there are a large number of

12   exhibits.  Ms. Smith and the lawyers spent time yesterday

13   afternoon gathering all these exhibits by number.  And

14   shortly after we send you out, once the arguments are over,

15   when we send you out to begin your deliberations, she will

16   come into the jury room, it may take her more than one

17   trip, and she'll bring all those exhibits into the jury

18   room.  And she'll bring in, I think we've got those videos,

19   we've got them on a VCR, we've got a camera, and if you

20   know how to run a VCR you'll be okay, if you want to see

21   them, but they're exhibits and you'll have the facility to

22   review them in the jury room.

23        Well, they're evidence.  Now, I'm talking about

24   the exhibits that are evidence, not the charts that are not

25   evidence, though some charts are evidence.

0                                                            10


1         Exhibits are like the testimony of witnesses and

2    your powers are exactly the same.  That is, you may read,

3    look at, view an exhibit, and if it persuades you of some

READCHGF.TXT

4    aspect of the case that's perfectly appropriate because

5    it's evidence.

6         But equally, if you don't find an exhibit

7    believable, either because you don't, because you think

8    it's a fake, I'm not suggesting anything is a fake, but if

9    you don't think it's genuine, or if you come to believe

10   that even though this may be genuine, it's either

11   inaccurate or it doesn't help you, disregard it.  That's

12   your power.  You're the judges of the facts.  And as with

13   any other evidence in the case you could take part of an

14   exhibit and say, well, this is persuasive, but another part

15   is not persuasive.

16        Lastly, you have some stipulations in this case.

17   I read one.  The lawyers read them.  And they're designed

18   to shorten the time and make things clear to you.

19   Stipulations are agreements among the lawyers, as they

20   represent their clients.  That's evidence.  But that is

21   special.  That evidence is not disputed.  So you don't have

22   the right just to disregard it.  You take that as given.

23   Lawyers have agreed to that so we'll start out with that

24   taken as given.  It's evidence.

25        Now, that's the body of evidence that you have in

                                                    11

1    this case.  A few words about what you do with it, how you

2    analyze it.

3         You use your common sense.  You don't check your

4    common sense at the door to the jury room.  Rather I charge

5    you to apply your common sense to the evidence in this case

6    to the end that justice may be done.

7         At the same time, you don't go in there and guess

                         Page 9

READCHGF.TXT

8    or speculate or maybe or perhaps or even probably.  What we
9    need is, as to most of the case, Read's going to have to
10   prove it by what I call, what the law calls a fair
11   preponderance of the evidence.  And as to one part of the
12   case, if your verdict was to be for Read, it would have to
13   be by clear and convincing evidence.  And I will tell you
14   the two parts.
15        But my point is you don't guess.  You don't
16   speculate.  But you can use your common sense as you are
17   reasonable men and women and you can draw what are called
18   reasonable inferences.
19        Now, a reasonable inference is a logical
20   deduction.  It's common sense.  And I'm going to give you
21   an example that has nothing to do with this case better to
22   illustrate what a reasonable inference is and also to
23   illustrate how far you can take it.
24        Let's say we have a witness and she testifies that
25   she's walking along a road and she looks out and there's a

□                                                           12

1    field of tall grass -- notice I'm getting ready for spring
2    here -- and she sees through the grass the grass is all
3    knocked down in an irregular course through the field.  And
4    suppose you believe that testimony.  From that alone you
5    could infer something went through the field.  I mean, it
6    just doesn't happen that grass falls down along a path
7    unless something knocks it down.  It isn't all fallen down
8    in a windstorm, it's fallen down in a course through the
9    field.  So it's a reasonable inference that something went
10   through that field.  We don't have a witness who saw the
11   something, but there's a reasonable inference something

Page 10

READCHGF.TXT

12    went through that field.

13         Now, that's the reasonable inference. But unless

14    you had other evidence from some other source in the case

15    you wouldn't know what went through the field. A child.

16    An adult. A big animal. A small animal. You just

17    wouldn't know. That would be guessing.

18         Now, there might be other evidence and you can

19    draw inferences from it. But the reasonable inference, if

20    you believe the witness I gave you as an example, is

21    something went through the field. But you can't guess

22    about it unless there's other evidence. That's reasonable

23    inferences.

24         Okay. We've talked about our roles. We've talked

25    about the tools that you have to resolve this case. I want

                                                              13

1     to say just a very few words about what's not evidence in

2     the case, not to emphasize it but just point out to you

3     what's not evidence in the case.

4          And first I want to say, and I say most genuinely,

5     I compliment the lawyers in this case. It's hard to try

6     one of these cases. The matters are technical and complex,

7     and this case has been very well-tried. And I appreciate

8     it and it's a privilege to preside over a case that is

9     well-tried.

10         Now, you disregard it. I mean that what I told

11    them. But you disregard it. You're not going to judge

12    this case in any way, shape or form based upon how you

13    react to the lawyers as human beings. They've done their

14    job, and they will later on this morning keep on doing it

15    for their respective clients, and so far they've done a
                              Page 11

READCHGF.TXT

16  fine job.  I mean that.  But it plays no role in what you

17  do.  You've got to focus on the evidence.  The lawyers are

18  not sources of the evidence.  And your reaction to them

19  plays no role.

20          Equally important.  If you somehow think that I

21  think something about this case based upon the manner in

22  which I have presided over it, I most earnestly instruct

23  you to disregard it.  I don't.  And I tell you candidly I

24  have no idea how this case will come out, nor is it my

25  business.  My business is to teach you the law.  I do not

                                                        14

1  discuss the substance of the case with Ms. Smith,

2  Mr. Womack.  I've had students in here seeing how cases are

3  to be tried, because this is a good example.  I'm not

4  discussing the substance of the case, the pieces of

5  equipment with anybody.  And I have no idea.

6          This, however, I tell you and this I believe

7  passionately.  I believe in the jury system.  I believe

8  that you will do justice in this case.  But I, clear as I

9  am about constantly saying, oh, yes, I'm the judge of the

10  law, I have nothing to say about the facts in this case.  I

11  believe that you will justly and impartially decide the

12  facts in this case.  Now let's get to it.

13          For simplicity sake I'm grouping the various Read,

14  Read plaintiffs and Nordberg, and there are three of them,

15  the Read Corporation, F.T. Read & Sons, and Nordberg-Read

16  Incorporated, I'm grouping them all together, and so can

17  you.  In one aspect of the case they may have to be

18  separated out, but everyone agrees that I'll do that.  You

19  don't have to worry about it.  So I'm taking those three

READCHGF.TXT

20  plaintiff corporations and I'm just going to call them

21  Read.  And I'm doing the same thing with respect to the

22  three defendant corporations:  Powerscreen of America

23  Incorporated, Powerscreen International Distribution

24  Limited, and Powerscreen International PLC.  For our

25  purposes, Powerscreen.  Treat them all the same.  And if

☐                                                            15

1   there needs to be some sorting out at the end I'll handle

2   it.

3          Read brings this case.  Read is the plaintiff in

4   this case.  So Read has to prove the case.  And for most of

5   the case the burden of proof on Read is what we call proof

6   by a fair preponderance of the evidence.  There's one part

7   where the burden's different, but I'll hold that off until

8   I get there.

9          Proof -- this is not a criminal case where proof

10  is proof beyond a reasonable doubt.  This is a civil case

11  where the burden of proof is proof by a fair preponderance

12  of the evidence.  And in such a case that simply means that

13  on those things that I'm going to tell you that Read has to

14  prove they've got to prove those things are more likely

15  true than not true.  More likely to be the case than

16  something else.  It's not a question of how much evidence

17  there is on one side or the other, it's a question of what

18  you believe about the evidence which you've seen and heard,

19  and does that convince you unanimously that it's more

20  likely, by a fair preponderance, those things that Read has

21  to prove is the truth.  Now, if something else is more

22  likely the truth Read hasn't proved it.  If on all the

23  evidence that you do believe that evidence tends equally to

READCHGF.TXT

24    two equal but opposite conclusions, Read hasn't proved it.
25    But so long as on the evidence you believe that's more

16

1     likely to be true than something else, you may take it that
2     that point is proved by a fair preponderance of the
3     evidence.
4           This is a patent case.  Patents are mentioned in
5     the Constitution of the United States.  A patent gives to
6     the inventor or inventors, or to their successors in
7     interest, a period of exclusivity for the use of their
8     invention.  And that simply means that no one may use the
9     patented invention without first getting permission from
10    the people who hold the patent.  The period of exclusivity
11    extends for 20 years from the date of the filing of the
12    patent.  And the patent owner is entitled to refuse to give
13    anyone else permission to practice the invention.
14          This case involves two patents.  One is United
15    States Patent 4,256,572.  We're calling it the '572 patent.
16    And I'm referring to it in the verdict slip as, it involves
17    the wheels part of that patent.  That's just so we're clear
18    there.
19          The other patent is United States Patent
20    4,237,000.  237, the triple zero patent.  That patent I'm
21    referring to in the verdict slip as the longitudinal center
22    plate patent.
23          Now, there's other things in those patents.  But
24    here's why I'm using that nomenclature.  Let's narrow this
25    down now.

17

READCHGF.TXT

1          Some things are not really disputed in this case.

2     And let me just explain those.  Though they're evidentiary,

3     there's no real dispute.

4          There's no real dispute here but what Read really

5     does own these patents.  They're Read's patents.  Second,

6     there's no real dispute, whatever I may have thought going

7     in in the case, now that I've heard all the evidence,

8     there's no real dispute but what these are valid patents.

9     They're valid.  And Read owns them.  And now there's no

10    real dispute, I think it's stipulated, that the '000 patent

11    expired, it ended, its 20 years of exclusivity ended on

12    March 5th, 1999.  And the '572 patent, that expired on

13    December 11th, 1999.

14         Likewise, there is no real dispute here about any

15    aspect of this patent, and about whether the Powergrid

16    things are the same as what is claimed in the Read patent

17    as to claims other than, I'm just narrowing down our focus,

18    in the '572 the wheels claim, and in the '000 patent the

19    longitudinal center plate claim.  That's the dispute as to

20    these two patents.

21         In other respects, in other respects you may take

22    it that the Powergrid machines are the same as what is

23    claimed in those two patents.  But remember if there is a

24    difference even as to the claims that we're talking about

25    here, then there can be no infringement.  And so that's

18

1     what our focus is.

2          A few more words about patents.  Why do we give

3     the inventor this right, this exclusivity right to practice

READCHGF.TXT

4      the patent for a period of years?  It's a trade-off.

5              The federal government says to the inventor under

6      the law we'll give you the exclusive right, the exclusive

7      use of this invention for a period of years.  But, in

8      return you have to teach the world how to make this

9      invention, how to use this invention.

10             And why do we want that?  We want that as a matter

11     of social policy because we want inventions.  We give the

12     period of exclusivity as a reward.  The inventor is

13     entitled to the reward whether or not the inventor uses,

14     practices its own invention.

15             Now, a patent, and I've shown you them and the

16     lawyers have shown you them, is a document.  And it's

17     divided into parts.  It may have drawings.  It has

18     specifications.  And the specifications teach you a way, at

19     least teach you a way to practice the invention.  And at

20     the end of each patent there are claims.  And it is the

21     claim of the patent that describes the area of exclusivity.

22     It's not how the patent holder chooses to practice the

23     patent.

24             So be very clear.  The comparisons -- because in

25     your infringement analysis you're going to have to make

▯                                                                19

1      comparisons.  The comparison is between the written claim

2      of the patent and the devices alleged, the Powerscreen

3      devices here, alleged to violate, to infringe that claim.

4      That's the comparison.

5              Now, in making that comparison you're of course

6      entitled to look at what the patent holder itself

7      manufactures.  Look at the machinery and compare that

Page 16

READCHGF.TXT

8   machinery with the Powerscreen machinery.  But that doesn't

9   end your analysis.  You've got to look at the claim.

10  Because under the law it's the claim compared to the

11  allegedly infringing device.

12          And this is the time to make mention of something

13  else here and something that, I'll explain to you how I

14  drew the line where I drew it.

15          Mention may be made, mention has been made in

16  testimony, about other devices manufactured by other

17  people, not Powerscreen, and what happened to those

18  devices.  We've heard about other lawsuits.  We've heard

19  about other lawsuits, maybe they were settled.  Maybe some

20  other court decided some other lawsuit.  And we've heard

21  that other machines were withdrawn from the market.  Taken

22  off the market.

23          Well, that's some evidence.  You may look at those

24  other machines and compare them to the Powerscreen machine,

25  compare them to the Read machines.  But ultimately compare

0                                                          20


1   them to the claims of the patent.  And why are you allowed

2   to do that?  Having looked over the machines themselves, to

3   get a better idea as to whether the Powerscreen machine,

4   whether they violate the claim of the patent.  That's the

5   only reason we got into other lawsuits and other machines

6   by other people, to give you a fuller picture.

7           I didn't let you hear what those other judges had

8   to say.  Not because I'm any better than those other

9   judges.  Some are courts that are higher than this court.

10  But you can't try a case that way.  It's got to be one

11  teacher of the law, in this case it's me.

Page 17

READCHGF.TXT

12          But, the fact of that other litigation, if you
13    believe that actually took place, that's a fact, that's for
14    you, and you may consider it.
15          Okay.  Let me go, before I pass out the verdict
16    slip, let me go back over some things that I mentioned at
17    the very beginning of the case.  This patent claim, this
18    patent given by the government, is similar to a, to a
19    statute passed by congress.  It's a government grant of
20    exclusivity.  It's a government grant by the patent holder
21    to Read saying you have the exclusive right to practice the
22    invention set forth in your claim.  And so when there
23    arises a dispute about what's claimed, because it's like a
24    law, and because judges are skilled, are expected to be
25    skilled in interpreting the law and explaining the law, I

                                                        21

1     am given the responsibility to explain to you what the
2     claim means.  And I've exercised that responsibility in
3     this case, and I want to go back over it because I'm
4     focusing on the claims that are really in dispute here.
5           And let me call to your attention the claims that
6     are really in dispute here.  And I'm going to start with
7     the '572 patent.  In this case we have been specifically
8     concerned with a portion of claim number 1.  You find it in
9     Column Number 5 of that patent, the '572.  Down at the
10    bottom of Column 5, going over to Column 6.  And the key
11    language that we are concerned with here is language which
12    reads like this:  A set of wheels mounted to one of said
13    sides and movable relative to the frame from an operative
14    position for transporting said apparatus to an inoperative
15    position for lifting the frame flush on the ground.

READCHGF.TXT

16          Now, I said it before, but now of course you

17     understand why that's an important aspect of this dispute.

18     Here's what that means legally.

19          The language means that the wheels retract so as

20     to allow for the machine to be in two positions, a position

21     for transporting the machine behind a trailer in which the

22     heavy weight of the machine is on the wheels, and a stable

23     position for screening in which the weight is taken off the

24     wheels and the frame is flush to the ground.

25          Now, I must add one thing to that deposition -- to

                                                              22

1      that description.  This claim does not require that all the

2      weight be taken off the wheels.  It's enough that the bulk

3      of the weight be shifted from the wheels.

4          Now, while we're still doing definitions let's go

5      over to the '000 patent and we'll come to what's key there.

6      The specific claim that we're most concerned with there is

7      a claim that begins in Column 5 at Line 7 of that patent,

8      and I'll read it:  At least one rigid longitudinal center

9      plate generally parallel to and between the side plates

10     joining the upper and lower levels of structural cross

11     beams such that forces applied to the screen assembly are

12     transmitted through the center plate to the joined cross

13     beams.

14          Now, here's what that means.  This simply means

15     that the rigid center plate or center plates must run the

16     entire length of the machine from front to back with, as

17     the words clearly state, with the idea of giving it

18     structural integrity so that the weight, the things you're

19     sifting when put down on the screens to be sifted out, so

                            Page 19

READCHGF.TXT

20    that the screens will hold themselves and actually sift

21    through won't bend or won't break.

22          I must add a little bit to that definition, though

23    I think that's accurate and I stand on it.  As has been

24    explained, I add to that definition, one reason for this

25    longitudinal center plate is to have the screens vibrate in

                                                        23

1    unison, not vibrate apart.  I originally thought that it

2    was just to give it structural integrity so the screens

3    wouldn't bend and separate.  But I'm satisfied that it's

4    more than that.

5          All right.  Now, those are the key definitions at

6    issue and now I think it's time to pass out the verdict

7    slip.

8          (Whereupon copies of the verdict slip were passed

9    to the jurors.)

10          THE COURT:  We've made this verdict slip just as

11    simple as humanly we can make it and nevertheless get from

12    you the answers we need for me to enter judgment in this

13    case.

14          I'm going to ask you to look at Questions 1 and 2.

15    Question 2 goes over to the second page.  But look

16    together, if you would, at Questions 1 and 2.

17          Now, there's two separate patents that Read owns,

18    and I've said that the key definitions here, and I've given

19    them to you in the '572 have to do with the wheels claim,

20    and the key definitions with respect to the '000 have to do

21    with that longitudinal center plate claim.

22          Now, I think the intelligent way to explain this

23    is to deal with Questions 1 and 2 together, but I'm going

                              Page 20

READCHGF.TXT

24  to have to go from one patent over to the other.  But I
25  think you can follow.

                                                                    24


1           As to the '000 claim Read has three different
2   theories of liability, three different ways to win.  Now,
3   of course, Powerscreen disputes all three.  But I need to
4   explain each of the three.  And I've called out the three
5   there at the top of Page 2.
6           They claim, now as to this longitudinal center
7   plate, they claim that the Powerscreen device literally
8   infringes.  And they say, well, if it doesn't literally
9   infringe it infringes by the doctrine of equivalents.  And
10  they say, and what's more, the way Powerscreen was making
11  the thing it was an inducement to other people to infringe.
12  And I need to explain each one.
13          Jump back to Question 1.  As to Question 1 Read
14  has only one theory of liability.  And as to Question 1,
15  this wheels issue, it's not disputed that there isn't --
16  well, it may be disputed, but I've ruled as matter of law
17  that it doesn't literally infringe.  But it may, and this
18  is entirely up to you, infringe under the doctrine of
19  equivalents.  And so since there's only one theory I didn't
20  spell out the theory, but now I'm explaining it to you.
21          Under Question 1, Read's theory is that the
22  Powerscreen devices infringe under the doctrine of
23  equivalents.
24          Now, having told you that I'm going to skip back
25  to Question 2 and I'm going to go through each of the three

                                                                    25

READCHGF.TXT

1   theories that Read has as to the longitudinal center plate,
2   but you'll understand that when I get to explaining the
3   doctrine of equivalents that applies to Question 1, too.
4   That applies to Question 1 also.
5           Okay.  What does it mean to infringe the claim of
6   a patent?  It means that the infringing device, you look at
7   the claim of the patent and you look to see whether the
8   infringing device, the actual thing, not plans or
9   something, though you can look at plans because they tell
10  you what the actual thing looks like, but in order for
11  there to be infringement the, the device has to be sold or
12  offered for sale in the United States of America.
13          I should pause and make that a point.  These
14  patents are good in the United States of America.
15  Powerscreen's over there in Northern Ireland.  Now, what
16  happens in Europe we are not concerned with.  So
17  Powerscreen can make whatever it wants, it can make the
18  identical thing in Europe to the Read claim and we don't
19  have a problem.  But, if they make the identical thing to
20  the Read claim and offer it for sale or sell it in the
21  United States that's infringement.
22          Now, of course it's disputed that it's identical.
23  So let's focus on infringement.  Literal infringement now.
24          In order for there to be literal infringement the
25  alleged offending device must have present in its

                                                              26

1   configuration each and every element or aspect of the claim
2   in the Read patent.  And you take the claim that we're
3   talking about, you take it separately.  You can look at all
4   the other claims, but each claim is a separate grant of
                        Page 22

READCHGF.TXT

5    exclusivity.  So you focus on the claim and then you say

6    does the Powerscreen device, if you find that it was sold

7    or offered for sale in the United States, does that have

8    each and every element of that claim present in it?  If it

9    does it's infringement.  It infringes.  If only one element

10   of the claim is missing there's no infringement, even if

11   all the others are present.  If there are other things

12   added, made more sophisticated, made better, it still

13   infringes so long as it has every element of what's

14   claimed.  Miss an element and there's no infringement.  But

15   add to the elements, make the elements better, still

16   infringement so long as it has every element of the claim.

17           It's possible that you could have a machine that

18   isn't as good, it's inefficient, doesn't work as well, but

19   it has every element of the claim.  Inefficient

20   infringement is still infringement.

21           So you ask yourself is every element of the claim,

22   the claim now, you can look at everything, look at the

23   machines, look at the machines of other manufacturers, look

24   at all the evidence, but your comparison is the claim

25   versus the Powerscreen allegedly infringing device.  If

0                                                        27


1    every element of that claim is present in the infringing

2    device then what you have is literal infringement.

3           Now, the only alleged -- well, the only literal

4    infringement that I'm allowing you to consider here is

5    literal infringement of the longitudinal center plate and

6    then the only evidence of that is found here in this

7    Exhibit 106.

8           Now, I have nothing to say about what these photos
                              Page 23

READCHGF.TXT

9  show.  But it's going to be argued to you that they show a
10  longitudinal center plate, and you listen to all the
11  evidence, you make up your own mind, and that this machine
12  in this configuration literally infringes.
13      You understand that -- well, you may draw your own
14  conclusions about that.  I have nothing to say about it.
15  But what I'm pointing out to you is that this is the only
16  evidence in this case of literal infringement if you
17  believe that the Powerscreen device literally infringes.
18      So that's the first theory.  The second theory is
19  infringement by the doctrine of equivalents.  Now, what do
20  we mean by that?
21      Remember that I've already said that if you build
22  a device that's very similar to the patented device, but
23  you omit an element, you leave an element out entirely,
24  there's no infringement.
25      Likewise, it is perfectly legal to design around a

28

1  patent.  You read the patent and you learn from the patent.
2  This is the idea, you learn from the patent.  You say,
3  well, this is a good idea.  But I can build a better
4  mousetrap, one that's different, better.  It doesn't even
5  have to be better.  Different, different than the patented
6  device.  The law encourages that.  The only thing that Read
7  is protected on, the only thing that it has exclusivity on
8  is the patented device specifically claimed in the claims.
9      Yet the law says this.  An unscrupulous copier who
10  changes the device a bit may still be guilty of
11  infringement.  And that's known as infringement by the
12  doctrine of equivalents.  Build a different device, the law

Page 24