UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

DIOMED, INC.,

          Plaintiff,

v.

ANGIODYNAMICS, INC.,

          Defendant.

Civil Action No. 04-CV-10019 (NMG)

---

DIOMED, INC.

          Plaintiff,

v.

VASCULAR SOLUTIONS, INC.

          Defendant.

Civil Action No. 04-CV-10444 (NMG)

---

**DEFENDANTS ANGIODYNAMICS, INC.'S AND VASCULAR SOLUTIONS, INC.'S
MEMORANDUM OF LAW IN OPPOSITION TO DIOMED, INC.'S MOTION IN
LIMINE TO LIMIT THE TESTIMONY OF DR. THOMAS PROEBSTLE**

Defendants AngioDynamics, Inc. and Vascular Solutions, Inc. ("Defendants") oppose

Diomed, Inc.'s motion in limine seeking to limit the testimony of Dr. Thomas Proebstle offered

to rebut Diomed's late disclosed expert, Dr. Luis Navarro. Defendants produced Dr. Proebstle's

supplemental report about two months after receipt of Dr. Navarro's belated expert report on

December 4, 2006, and Defendants have offered to make Dr. Proebstle available for deposition

prior to his testimony at trial. Through its motion, Diomed is now attempting to benefit from its

own failure to comply with the Federal Rules of Civil Procedure and the discovery schedule in

1

this case.  It seeks to limit the evidence Defendants may offer to rebut the opinions set forth in

Dr. Navarro's report, which was first produced almost a year and a half after the deadline for

expert reports in the discovery schedule, and three months after the Court issued its order

permitting Diomed to belatedly produce an expert report from Dr. Navarro.  Moreover, Dr.

Navarro's report includes new opinions on his "side firing" theory of infringement not provided

in his December 2005 declaration.  It would be unfair to limit the evidence that Defendants may

offer to rebut Dr. Navarro's belated expert report.  There is substantial justification to permit

Defendants to introduce all of the evidence and opinions provided in Dr. Proebstle's

supplemental rebuttal report, and there is no prejudice to Diomed as Dr. Proebstle can be

deposed prior to his testimony at trial.  Diomed's motion to limit Dr. Proebstle's rebuttal

testimony should be denied.

## BACKGROUND

In its memorandum in support of its motion in limine, Diomed ignores its failure to

comply with the Federal Rules of Civil Procedure and the scheduling order in this case.  In fact,

it is Diomed that has repeatedly made eleventh hour disclosures from Dr. Navarro.

The deadline for Diomed's expert disclosures was June 22, 2005.  Diomed served three

expert reports – a damages report from Philip Green and infringement liability reports from Dr.

Chieh-Min Fan and Dr. Richard Anderson.  No report was submitted from Dr. Navarro.  On

October 14, 2005, within the time stipulated to by the parties, Defendants submitted rebuttal

reports, including non-infringement reports from Dr. Russell Samson and Dr. Thomas Proebstle.[1]

---

[1] The parties stipulated that rebuttal reports would be due 30 days after the depositions of each party's primary
experts. Dr. Anderson was deposed on September 23, 2005, and Defendants' rebuttal reports were served 21 days
later.

On May 12, 2005, Dr. Navarro was first deposed in this case as a fact witness. At that deposition, he did not disclose any intention to perform experiments or offer opinions regarding alleged infringement by Defendants. Dr. Navarro was subsequently designated as a witness in response to a Rule 30(b)(6) notice and deposed on October 27, 2005, months after the deadline for Diomed's expert disclosures and after Defendants' rebuttal reports had been served. On October 24, 2005, just three days before Dr. Navarro's deposition, Diomed produced for the first time slides from a series of experiments that Dr. Navarro had performed. Diomed did not produce any expert report from Dr. Navarro prior to the deposition, and Dr. Navarro testified at the deposition that his experiments were not complete. (Ex. 1 to Declaration of Toni Sleith ("Sleith Dec.") at p. 354).

Dr. Navarro was scheduled for another day of deposition on December 5, 2005. Shortly before this deposition, on November 17 and November 30, 2005, Diomed produced two additional disks containing hundreds of photographic images and videos of experiments performed by Dr. Navarro. Diomed still did not produce an expert report explaining his tests or setting forth his opinions regarding infringement.

All of Dr. Navarro's test and opinions were first produced *after* Defendants had produced their rebuttal reports responding to Diomed's timely-disclosed experts. The scheduling order contemplated that Diomed would provide its expert opinions supporting its claims, and Defendants would then have the opportunity to rebut those opinions. By holding back and springing Dr. Navarro upon Defendants after the rebuttal reports were provided, Diomed unfairly seeks to have the first and the last word, which violates the purpose of the scheduling order in this case and is contrary to Federal Rule of Civil Procedure 26(a)(2).

On December 9, 2005, Defendants filed a Motion to Exclude Untimely Expert Opinions, including Dr. Navarro's opinions related to the experiments disclosed to Defendants a few days before his depositions. (Docket No. 76). In their memorandum in support of the motion at pages 2 and 16, Defendants pointed out that if Dr. Navarro were permitted to belatedly submit an expert report and offer opinions, Defendants would be required to rebut any opinions expressed in that report. On August 30, 2006, the Court denied Defendants' motion to exclude Dr. Navarro's opinions, but required that Diomed produce an expert report from Dr. Navarro that complied with Fed. R. Civ. P. 26(a)(2). Diomed, Inc. v. Angiodymanics, Inc., 450 F.Supp.2d 130, 137-38 (D. Mass. 2006).

More than three months later, on December 4, 2006, Diomed finally served Dr. Navarro's expert report. (Sleith Dec. Ex. 2). The report went beyond the opinions that Dr. Navarro had expressed in his depositions and December 2005 declaration. For example, Dr. Navarro for the first time suggested that it is not necessary for the uncoated tip of the laser fiber to make contact with the vein wall, but rather that contact between only the sidewalls of the fiber and the vein wall would be sufficient to infringe the '777 patent.

On February 12, 2007, Defendants served a supplemental rebuttal report from Dr. Proebstle addressing the evidence and opinions set forth in Dr. Navarro's belated expert report.[2] (Sleith Dec. Ex. 3). Defendants have also offered to make Dr. Proebstle available for his deposition on the supplemental rebuttal report at a mutually agreeable time.

Dr. Proebstle's supplemental rebuttal report largely restates the opinions expressed in his original rebuttal report and Declarations in connection with the parties' summary judgment

---

[2] Diomed incorrectly states that the supplemental rebuttal report is Dr. Proebstle's fourth report in this case. In fact, it is his second report. Diomed would like to cast the Declarations submitted by Dr. Navarro and Dr. Proebstle related to summary judgment motions as expert reports, as the submission of the Navarro Declaration was at least

motions. There are only two new items in his supplemental report: (1) reference to an article on the action of steam on vein walls which was published in 2006, after Dr. Proebstle's initial rebuttal report in this case, and (2) the results of some additional tests performed by Dr. Proebstle. These tests are not novel. In fact, they are similar to tests performed by Diomed's experts, they are easy to understand, and will not take months to review. Diomed has more than ample time to prepare for Dr. Proebstle's testimony in this case.

## ARGUMENT

As noted by the Court in its ruling denying the Defendants' motion to exclude Dr. Navarro's opinions, "[i]n ruling upon a motion to exclude expert testimony, the trial court must bear in mind the intent of the disclosure rules 'to facilitate a fair contest with the basic issues and facts disclosed to the fullest practical extent.'" Diomed, Inc., 450 F.Supp.2d at 136 (quoting Poulis-Minott v. Smith, 388 F.2d 354, 358 (1st Cir. 2004)). Factors to be considered include the "'history of the litigation, the proponent's need for the challenged evidence, the justification (if any) for the late disclosure, and the opponent's ability to overcome its adverse effects.'" Id. at 136-37 (quoting Macauley v. Anas, 321 F.3d 45, 51 (1st Cir. 2003)).

In this case, all of these factors compel the denial of Diomed's motion to limit Dr. Proebstle's rebuttal testimony.

## A. The Timing of Dr. Proebstle's Rebuttal Report Is a Result of Diomed's Late Expert Disclosures

Dr. Proebstle's supplemental rebuttal report was produced about two months after Defendants received Dr. Navarro's expert report – a month more quickly than Diomed prepared and served Dr. Navarro's report. Diomed did not provide *any* expert report or test results from

---

somewhat closer in time to the deadlines in the scheduling order. The Declarations are clearly not expert reports as defined by Fed. R. Civ. P. 26(a)(2).

Dr. Navarro until after the deadline for all expert reports, including Defendants' rebuttal reports.

Instead, Diomed sprung Dr. Navarro's test results upon Defendants just a few days prior to

scheduled depositions, and without any expert reports. Thus, Defendants were forced to depose

Dr. Navarro regarding these late disclosures without a report complying with Fed. R. Civ. P.

26(a)(2) and with little time to review them or consult with their own experts.[3]

In view of the late and incomplete disclosures by Diomed, Defendants filed a motion to

exclude Dr. Navarro's opinions just four days after his last deposition. (Docket Nos. 75, 76). In

the absence of any expert report from Dr. Navarro, and in view of its pending motion to exclude

Dr. Navarro's opinions, Defendants did not have their experts prepare a report rebutting Dr.

Navarro's late disclosed tests. Indeed, there was no report from Dr. Navarro setting forth his

complete opinions for Defendants' experts to rebut, leaving Defendants to guess which

experiments and opinions Dr. Navarro would rely on.

When the Court denied Defendants' motion to exclude Dr. Navarro's expert opinions on

August 30, 2006, and ordered Diomed to produce a report from Dr. Navarro that complied with

Fed. R. Civ. P. 26(a)(2), Diomed inexplicably waited over three months before complying with

the order on December 4, 2006. Defendants promptly set Dr. Proebstle to work on a

supplemental rebuttal report, which was produced about two months later on February 12, 2007.

Because Diomed decided for itself when it would comply with the Court's order, Defendants

could not ask Dr. Proebstle to set aside any specific time to work on his report, and Dr. Proebstle

prepared his supplemental rebuttal report as quickly as he could in view of the holidays and other

commitments.

---

[3] Because Dr. Navarro had not been disclosed as an expert and the depositions had been scheduled to address topics in a Rule 30(b)(6) notice, Defendants proceeded with Dr. Navarro's deposition as scheduled.

In view of the fact that it took Dr. Navarro more than three months to complete a report detailing experiments he already performed, it is disingenuous for Diomed to argue that it was unreasonable for Dr. Proebstle to take two months to design and perform experiments and complete a report to rebut Dr. Navarro's experiments. In view of the history described above, Defendants' disclosure of Dr. Proebstle's supplemental rebuttal report was timely, and was justified in view of Diomed's late disclosures from Dr. Navarro.

**B.  Dr. Proebstle's Report Contains Information That is Needed to Rebut Dr. Navarro**

In large part, Dr. Proebstle's supplemental report summarizes and restates opinions that he has previously given in this case, and it simply organizes this information to correspond to Dr. Navarro's report. There is no reason to limit Dr. Proebstle's testimony or exclude any portion of Dr. Proebstle's supplemental rebuttal report on any of these topics. To the extent that Dr. Proebstle's supplemental report presents any new information or data, the information and data were provided to rebut matters raised in Dr. Navarro's report.

There are only two parts of Dr. Proebstle's supplemental report that were not presented in his previous rebuttal report and Declarations. First, at pages 14-15 of his supplemental report, Dr. Proebstle discusses a 2006 paper presented at the American College of Phlebology Meeting titled "Water: The Ultimate Sclerosing Agent?  Occlusion of Varicose Veins By In-Situ Superheated Steam." (Proebstle Supplemental Report (Sleith Dec. Ex. 3) at 14-15 and Ex. B). This article was not available when Dr. Proebstle prepared his initial report, and the paper provides information that directly contradicts statements in Dr. Navarro's report that steam is incapable of causing sufficient damage to the vein wall. It is a simple matter for Diomed to have its experts review the article in preparation for trial.

At pages 10-13 of his supplemental report, Dr. Proebstle presents results of tests that he performed after receiving Dr. Navarro's report. Dr. Proebstle's tests were performed to address experiments described in detail by Dr. Navarro in his December 4, 2006 report. Dr. Proebstle's test results demonstrate that Dr. Navarro's opinions regarding contact of the laser fiber with the vein wall are incorrect. Therefore, presentation of this data is important for the jury to be able to evaluate Dr. Navarro's tests and opinions.

## C. **Diomed Will Not Be Prejudiced If Dr. Proebstle Presents His Complete Opinions**

Dr. Proebstle's supplemental report and the photographs and videos produced with it provide a full explanation of the experiments performed by Dr. Proebstle. Furthermore, Defendants have offered to make Dr. Proebstle available to Diomed for deposition at a mutually convenient time prior to his testimony in this case. Therefore, Diomed will not be prejudiced in any way by allowing Dr. Proebstle to testify regarding the full scope of his opinions as set forth in his supplemental report. Indeed, Diomed's complaints that it will be prejudiced ring hollow when viewed in light of its own conduct regarding Dr. Navarro and his opinions.

Defendants produced Dr. Proebstle's results along with a detailed report a full month before the date of the trial in this case. This is more time and information than Diomed saw fit to provide Defendants regarding Dr. Navarro's testing and opinions prior to his previously scheduled depositions. Under the circumstances, Diomed's claim that it could not possibly prepare to depose Dr. Proebstle cannot be taken seriously.

Similarly, Diomed's claim that Defendants waited more than a year to address Dr. Navarro's opinions is not true. After receiving Dr. Navarro's report on December 4, 2006, Defendants promptly prepared a rebuttal report and provided it about two months later. Indeed, because Defendants maintained, and the Court agreed, that Dr. Navarro had not properly been

8

disclosed as an expert, there was no need for the Defendants to prepare a rebuttal report prior to Diomed's compliance with Federal Rule 26(a)(2). It was well understood by all parties that Defendants did not plan to undertake rebuttal testing unless the Court denied Defendants' motion to exclude. Although Diomed claims that Dr. Navarro's expert opinions were provided in his depositions, the deposition questioning was done based upon eleventh hour disclosure of the test results and without the benefit of an expert report. Until Dr. Navarro's report was produced, Defendants had no way to know whether Dr. Navarro's opinions had been fully elucidated at his deposition. Indeed, the description of his testing and opinions is more comprehensive in his report than the answers provided at his deposition.

Diomed's argument that Dr. Navarro's December 2006 report provides "the very same opinions" as those in his December 2005 declaration is not correct. To the contrary, the December 2006 report includes opinions on Dr. Navarro's "side firing" theory of patent infringement not presented in his prior testimony or in his December 2005 declaration. For example, pages 24-26 of the December 2006 report further detail Dr. Navarro's "carbonization experiment" and conclude that after only a brief use (e.g., "five or six pulses"), "the energy emitted from the front face of the fiber is not necessary to char and destroy tissue; the energy emitted from the sidewall is sufficient to have that effect." (Navarro Report (Sleith Dec. Ex. 2) at 24-26). Dr. Navarro further concludes "[w]hile the side wall of the fiber is in contact with the vessel wall, this side wall emission is significant enough to cause permanent damage to the vein wall, including charring and perforation." (Id. at 27). Accordingly, Dr. Navarro's December 2006 report asserts for the first time that it is not necessary to place the uncoated or tip-interior surface of the fiber into contact with the vessel wall to infringe the '777 patent, as required by the Court's Markman Ruling. Rather, Dr. Navarro now asserts that it is only necessary to place

the sidewalls of the fiber into contact with the vessel wall to infringe the patent.[4] Defendants

necessarily were entitled to rebut these new opinions through Dr. Proebstle's supplemental

report.[5]

In addition, Dr. Proebstle's experiments are not difficult to understand.  The tests

performed by Dr. Proebstle and described in his supplemental rebuttal report are similar to the

tests performed by Diomed's experts.  Explanted human vein segments were horizontally

mounted in boxes, stabilized in gelatin and filled with an amount of blood as would typically be

present in an actual endovenous laser procedure.  Diomed's expert, Dr. Fan, mounted pig arteries

which were filled with blood for some of her tests.  (Fan Report dated June 22, 2005 (Sleith Dec.

Ex. 4) at 25-26).  Dr. Navarro mounted vein segments between two glass tubes and filled them

with blood.  (Navarro Report (Sleith Dec. Ex. 2) at 10).  While Dr. Proebstle's use of the gelatin

to stabilize the vein segments differs from the procedures used by Diomed's experts, this was

done to more closely mimic *in vivo* conditions.  (Proebstle Supplemental Report (Sleith Dec. Ex.

3) at 10).

Dr. Proebstle introduced different types of laser fibers into the vein segments, fired the

lasers and moved the fibers as he would in an actual endovenous laser procedure.  (Proebstle

Supplemental Report (Sleith Dec. Ex. 3) at 10).  Drs. Fan and Navarro claim to have done the

same thing.  (Fan Report (Sleith Dec. Ex. 4) at 26; Navarro Report (Sleith Dec. Ex. 2) at 15).  Dr.

---

[4]    Although Dr. Navarro asserted in his December 2005 declaration (Docket No. 96) that "[d]egradation of the laser fiber and cladding is an important phenomenon that helps to ensure continued contact between the vein wall and the laser-emitting portion of the laser fiber . . .", and that "damage is done by the side of the fiber alone", he never asserted that it is not necessary to place the uncoated tip into physical contact with the vessel wall, or that contact between only the sidewalls of the fiber and the vessel wall would be sufficient to infringe the patent, as now asserted in his December 2006 report.

[5]    For the reasons set forth in Defendants' Memorandum Of Law In Support Of Their Motion In Limine To Preclude Plaintiff's Testimony On Its Side Firing Theory Of Patent Infringement, filed February 20, 2007, Dr. Navarro's opinions on side firing are contrary to this Court's Markman Ruling and irrelevant to the question of patent infringement, and therefore will only lead to confusion of the jury and prejudice to Defendants.

Proebstle used fibers that were designed to mechanically prevent contact between the fiber and the vein wall, or that had a cladding material more resistant to thermal degradation. These fibers were used to demonstrate that, contrary to Dr. Navarro's opinion, the vein wall is sufficiently heated to occlude the vein without any contact between the fiber and the vein wall. The fibers used by Dr. Proebstle were (1) silica bare tip fibers provided by VSI and Biolitec of the same size and shape used by Drs. Fan and Navarro in their experiments, which had silica claddings even more resistant to thermal degradation than the claddings discussed in Dr. Navarro's Report; (2) sapphire tipped silica fibers provided by New Star Lasers in which the sapphire tip further prevents any contact between the laser-emitting section of the fiber and the vein wall; (3) a capped end silica fiber provided by New Star Lasers, which had a silica cap on the end that further prevented any contact between the laser-emitting section of the fiber and the vein wall. (Proebstle Supplemental Report (Sleith Dec. Ex. 3) at 10-11).

The process for treating the vein segments was virtually identical to the process used by Diomed's experts. The vein segments were cannulated by perforating the box from the outside through cellophane covered holes. The catheter was advanced into the vein segment before the laser fiber was introduced. The fiber was then connected to a laser generator from VSI or Biolitec after power settings and pulse mode had been set. The laser fibers were drawn through vein segments and fired. After treatment, the veins were examined for damage. (Preobstle Supplemental Report (Sleith Dec. Ex. 3) at 11-13).

The only differences in Dr. Proebstle's tests and those performed by Diomed's experts are (1) Dr. Proebstle set the vein segments in gelatin to maintain their shape, and (2) the tests were recorded using ultrasound to observe the process inside the vein segments as Dr. Proebstle

had done in the tests described in his original report. It will not take Diomed months to review and understand these straight-forward tests.

Moreover, Diomed's statement that it is not familiar with the laser fibers used by Dr. Proebstle is disingenuous. Diomed received samples of the New Star sapphire lasers used by Dr. Proebstle in other litigation in May 2006, and received additional sapphire laser fibers in October and November 2006, ostensibly for testing and analysis.[6] Regarding the other fibers tested by Dr. Proebstle, one was a "capped" fiber that was intended to mechanically prevent any possible contact of the tip with the vein wall. The purpose of using this fiber was to demonstrate that vein occlusion is achieved without contact between the fiber and the vein wall, and the ultrasound images obtained by Dr. Proebstle confirmed that there was no contact. Dr. Proebstle also used a laser fiber with a silica cladding that was even more resistant to thermal degradation than the claddings on the fibers used by Drs. Fan and Navarro for their experiments. Other than the different cladding material, these fibers are the same as those used by Drs. Fan and Navarro. This testing demonstrates, again contrary to Dr. Navarro's opinion, that vein heating occurs without any purported "side firing". Although different types of fibers were used, the test methods were the same and the results reported by Dr. Proebstle demonstrate that there is damage to the vein wall, including carbonization, without contact between the laser emitting face of the fiber and the vein wall. This test information is important to Defendants' rebuttal of Dr. Navarro's opinions.

Finally, the cases cited by Diomed all had very different circumstances than those present in this case, and they do not support limiting Dr. Proebstle's testimony on the facts here. In

---

[6] The undersigned have been informed by counsel for New Star Lasers that Diomed was provided several sapphire laser fibers in discovery in Diomed, Inc. v. New Star Lasers, Inc., Civil Action No. 04-12157 (D. Mass.). One fiber, Bates No. NSL 1-14703 was produced to counsel for Diomed on May 19, 2006, and five additional sapphire laser

Congressional Air, Ltd. v. Beech Aircraft Corp., 176 F.R.D. 513 (D. Md. 1997), the court refused to allow the plaintiff to serve a report to rebut defendant's expert report without warning more than six months after the close of discovery.  Here, by contrast, the Court permitted Diomed to serve an expert report after the close of discovery, Diomed waited more than three months after the Court's order to serve the report, and Defendants responded two months later.

Diomed's reliance on Finley v. Marathon Oil Co., 75 F.3d 1225 (7th Cir. 1996) for the proposition that Defendants should have produced Dr. Proebstle's report within 30 days of Dr. Navarro's report is also misplaced.  The Finley court noted that rebuttal reports are required within 30 days under Rule 26(a)(2)(C) "unless the district court otherwise directs or the parties otherwise stipulate." Id. at 1230.  Compliance with that rule would have required that Diomed have produce Dr. Navarro's report in November 2005.  Moreover, the Finley court noted that exclusion was not proper if the later disclosure is "justified or harmless." Id.  As explained in detail above, the timing of Dr. Proebstle's supplemental rebuttal report is *both* justified and harmless.[7]

Diomed's claim that Dr. Proebstle's supplemental report is somehow "untimely" because it was not produced within 30 days of Dr. Navarro's report is the height of hubris.  Dr. Navarro's report was provided to Defendants a *year* after Dr. Navarro's deposition and more than *three months* after the Court ordered Diomed to produce a report complying with Rule 26(a)(2).  In view of the timing of Diomed's release of Dr. Navarro's report, just a few weeks before the holidays, the production of Dr. Proebstle's report within about two months is reasonable.

---

fibers were provided to Diomed on October 24, 2006.  Presumably, Diomed's expert have examined and tested these laser fibers.

[7] Another case cited by Diomed, Cook v. Rockwell International Corp., 233 F.R.D. 598 (D. Col. 2005), is not even in the same ballpark as the present case.  In Cook, the plaintiffs disclosed their experts and provided a report in November 1996.  The defendant did not disclose its rebuttal expert until the start of trial on October 7, 2005, after the court denied its Daubert motion seeking to exclude plaintiffs' expert.

Having themselves ignored the requirements of Rule 26(a)(2) until ordered to comply with the rule by the Court, Diomed should not be heard to invoke the rule to exclude Dr. Proebstle's supplemental rebuttal report.

The remaining cases cited by Diomed address one party unilaterally introducing new or supplementary information after the deadline for expert reports.[8] None of those cases address a case like the present one, where one party is permitted to provide its expert report more than a year after the deadline and the other party produces a report in response.[9]

Any difficulty Diomed may have regarding Dr. Proebstle's supplemental report is of its own making. Diomed could have produced Dr. Navarro's report within the deadlines of the Scheduling Order, in which case Dr. Proebstle could have addressed it in his rebuttal report. Even when the Court gave Diomed the opportunity to belatedly produce a report, Diomed waited over three more months to do so. Having itself flouted the rules, Diomed should not now be rewarded by limiting Dr. Proebstle's rebuttal testimony. Diomed's Motion to Limit the Testimony of Dr. Thomas Proebstle should be denied.

---

[8] See Minebea Co. v. Papst, 231 F.R.D. 3 (D.D.C. 2005)(plaintiff attempted to introduce supplemental expert report one week into trial); Fusco v. General Motors Corp., 11 F.3d 259 (1st Cir. 1993)(defendant precluded from introducing expert videotape produced after first trial and provided to plaintiff one month before second trial); Fritter v. Dafina, Inc., 181 F.R.D. 215 (N.D.N.Y. 1998)(defendant offered results of testing and report after a Court ordered deadline on all submissions).

[9] Diomed cites Klonoski v. Mahlab, 156 F.3d 255, 269 (1st Cir. 1998) to support its argument that exclusion is a "standard sanction" for failure to submit a rebuttal expert report within the time specified in Fed. R. Civ. P. 26(a)(2)(c). Klonoski had nothing to do with expert reports, but involved exclusion of certain letters that were not produced as required by the initial disclosure provision of Fed. R. Civ. P. 26(a)(3). 156 F.3d at 269-71. Diomed's citation to Thibeault v. Square D Co., 960 F.2d 239 (1st Cir. 1992) is likewise not on point. In Thibeault, the defendant served interrogatories on the plaintiff in April 1989 requesting the names of experts to be called at trial and their opinions. The opinion does not mention any scheduling order with expert disclosure deadlines. The plaintiff responded to the interrogatory stating that he had not yet selected experts, but would supplement the interrogatory response before trial. Thibeault, 960 F.2d at 241. On September 12, 1991, four days before trial was to begin, plaintiff supplemented his interrogatory answer, naming seven experts who would testify at trial. Id. at 241-42. Under those circumstances, nothing like those present in this case, the court affirmed the exclusion of the expert evidence.

15

## REQUEST FOR ORAL ARGUMENT

Defendants AngioDynamics, Inc. and Vascular Solutions, Inc. respectfully request oral argument on all issues presented in Diomed, Inc.'s Motion in Limine to Limit the Testimony of Dr. Thomas Proebstle and this opposition to that motion.

Dated: February 26, 2007

**I hereby certify that a true copy of the above document was served upon the attorney of record for the Plaintiff and Counterclaim-Defendant Diomed, Inc. by electronic mail.**

**/s/ William H. Bright, Jr.**

THE DEFENDANT,
ANGIODYNAMICS, INC.


By  /s/ William H. Bright, Jr.
    William H. Bright, Jr.
    *wbright@mccarter.com*
    Mark D. Giarratana
    *mgiarratana@mccarter.com*
    McCARTER & ENGLISH, LLP
    CityPlace I
    Hartford, CT  06103
    Phone:  (860) 275-6700


THE DEFENDANT,
VASCULAR SOLUTIONS, INC.


By  /s/  Thomas Vitt
    Thomas Vitt
    *Vitt.Thomas@Dorsey.com*
    Heather Redmond
    *Redmond.Heather@Dorsey.com*
    DORSEY & WHITNEY LLP
    50 South Sixth Street
    Minneapolis, MN 55402-1498
    Phone:  (612) 340-5675