UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC., | Civil Action No. 04-CV-10019 (NMG) |
| Plaintiff, | |
| v. | |
| ANGIODYNAMICS, INC., | |
| Defendant. | |

| | |
|---|---|
| DIOMED, INC. | Civil Action No. 04-CV-10444 (NMG) |
| Plaintiff, | |
| v. | |
| VASCULAR SOLUTIONS, INC. | |
| Defendant. | |

**DEFENDANTS ANGIODYNAMICS, INC.'S AND VASCULAR SOLUTIONS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR JOINT MOTION TO LIMIT THE JURY CHARGE TO LITERAL INFRINGEMENT**

Defendants AngioDynamics, Inc. ("AngioDynamics") and Vascular Solutions, Inc. ("VSI" and with AngioDynamics, "the Defendants") jointly submit this Memorandum of Law in Support of their Motion to limit the jury charge to literal infringement only, and to exclude any charge on doctrine of equivalents infringement.

I.   **PRELIMINARY STATEMENT**

Throughout the lengthy discovery process in this case, Plaintiff Diomed, Inc. ("Diomed") never asserted doctrine of equivalents infringement. Diomed's answers to contention

1

ME1 6216104v.2

interrogatories, expert witness reports, deposition testimony under Fed. R. Civ. P. 30(b)(6) on infringement, and summary judgment papers, never asserted doctrine of equivalents infringement. Now, Diomed has indicated in its Proposed Jury Instructions that it is asserting doctrine of equivalents infringement. (Diomed's Proposed Jury Instructions, at pp. 7, 33-34, Exh. A, D.I. 197). This is the first time that Diomed has notified Defendants that it intends to assert a doctrine of equivalents infringement claim. Diomed has failed to provide Defendants with any details of its claim. Accordingly, Defendants not only have been deprived of an opportunity to defend against this claim, but have been left guessing as to the bases for the claim. Diomed should not be allowed to ambush Defendants with an unknown doctrine of equivalents claim on the eve of trial.[1]

## II. ARGUMENT

### A. Diomed Failed To Disclose Its Doctrine Of Equivalents Claim During Discovery, And Therefore Should Be Barred From Introducing Testimony On Equivalents At Trial.

Defendants served contention interrogatories seeking basic information on Diomed's infringement contentions. Contention interrogatories are properly used to narrow and define the issues for trial. See Transclean Corp. v. Bridgewood Servs., Inc., 290 F.3d 1364, 1373-74 (Fed. Cir. 2002). Defendants' interrogatories asked Diomed to identify all claims of the '777 patent Diomed contends are infringed; to list the products or methods that are accused of infringement; to specify whether the alleged infringement was direct, contributory, or induced; and to state, on a limitation-by-limitation basis, its claims of infringement. (Diomed's Supplemental and Amended Responses to VSI's First Set of Interrogatories (5/6/05), Interrog. No. 5 (Exh. B); and

---

[1] Defendants have other objections to Diomed's proposed jury instructions that can be addressed later; however, this objection necessarily must be dealt with now because Diomed should not be allowed to introduce testimony on the doctrine of equivalents at trial. Defendants did not file a motion in limine on this issue by the Court's deadline because they had no reason to believe that Plaintiff would be asserting a doctrine of equivalents infringement claim.

2

Diomed's Supplemental and Amended Responses to AngioDynamics' First Set of Interrogatories (5/6/05), Interrog. No. 8(a) (Exh. C)).

Diomed initially objected to the interrogatories as premature. On May 6, 2005, after the Court's claim construction ruling, Diomed supplemented its responses to Defendants' interrogatories. There is no mention of the doctrine of equivalents in Diomed's responses, nor does Diomed disclose any contention that the differences between Defendants' procedures are insubstantial, or that the accused methods perform substantially the same function, in substantially the same way, with substantially the same result as the method claimed in the '777 patent. In the three years since Defendants' first requested the information from Diomed, it never amended or supplemented its responses to include a contention that either Defendant infringed the '777 patent under the doctrine of equivalents.

In Transclean, the court affirmed the district court's ruling that, as a result of a failure to disclose its noninfringement theory, the defendant was precluded from asserting that the patent was not infringed. Transclean, 290 F.3d at 1373-74. Transclean involved a plaintiff's effort to discover the basis for defendant's claim of noninfringement:

> Transclean legitimately sought to discover Bridgewood's grounds for its defense of noninfringement and was entitled to a reply to its interrogatory. When Bridgewood chose not to respond . . ., the court was within its discretion to impose a sanction. The court found clear prejudice to Transclean as it was precluded from conducting discovery on the infringement issues. To hold that the district court abused its discretion would be to disarm the court of its important power to police its proceedings to ensure transparency and predictability and to discourage mischievous conduct by litigants.

Transclean, 290 F.3d at 1373-74 (citations omitted). See also Powell v. Storz Ophthalmics, Inc., 34 U.S.P.Q.2d 1136, 1139-40 (M.D. Fla. 1994), aff'd, 53 F.3d 347 (Fed. Cir. 1995) (holding that patentee could not assert infringement under the doctrine of equivalents, where patentee did not

submit an interrogatory answer on the doctrine until after the defendant had moved for summary judgment).

Diomed has failed to provide any prior notice, much less any discovery on its doctrine of equivalents infringement claim. Defendants would be clearly prejudiced if Diomed were allowed to introduce testimony on this issue, and therefore the proposed jury instruction and any testimony on equivalents should be prohibited.

> **B.     The Doctrine Of Equivalents Is a Difficult And Complex Doctrine, Requiring Particularized Testimony By Expert Witnesses On A Limitation-By-Limitation Basis. Diomed's Experts Have Not Provided Any Such Analysis And Therefore Cannot Testify On Equivalents Infringement At Trial. Nor Can Diomed Introduce Only Generalized Testimony On The Issue.**

"A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product or method." Aquatex Industries, Inc. v. Techniche Solutions, 2007 WL 582392 at 5 (Fed. Cir. Feb. 27, 2007). A patentee must prove doctrine of equivalents by a preponderance of the evidence and must do so with "particularized testimony and linking argument on a limitation by limitation basis." Id. The Court of Appeals for the Federal Circuit has set forth the patentee's evidentiary burden under the doctrine of equivalents as follows:

> 'Pursuant to our precedent, <u>a patentee must . . . provide particularized testimony and linking argument</u> as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents. <u>Such evidence must be presented on a limitation-by-limitation basis.</u> Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice.'

Id. (emphasis in original), quoting Texas Instruments, Inc. v. Cypress Semiconductor Corp., 90 F.3d 1558 (Fed. Cir. 1996). Further, in a case like this, such particularized testimony must be introduced by a technical person of skill in the relevant art, such as an expert witness:

> Both the Supreme Court and this court have made clear that the evidence of equivalents must be from the perspective of someone skilled in the art, for example 'through testimony of experts or others versed in the technology; by documents, including texts and treatises; and, of course, by the disclosure of the prior art.' * * * [W]hen the patent holder relies on the doctrine of equivalents, as opposed to literal infringement, the difficulties and complexities of the doctrine require that evidence be presented to the jury or other fact-finder through the particularized testimony of a person of ordinary skill in the art, typically a qualified expert, who (on a limitation-by-limitation basis) describes the claim limitations and establishes that those skilled in the art would recognize the equivalents.

Id. (citations and footnotes omitted, emphasis added).

Diomed's technical experts have not made any assertions of doctrine of equivalents infringement, let alone provided any explanation on a limitation-by-limitation basis establishing that those skilled in the art would recognize the asserted equivalents. Diomed's failure to introduce any such evidence in its expert reports necessarily precludes its experts from testifying on this issue at trial. Further, Diomed has failed to provide any prior notice of its doctrine of equivalents claim, Defendants are left guessing as to the bases for the claim, and have not had any opportunity to prepare defenses or otherwise address the recognized "difficulties and complexities of the doctrine" in this case. Id. To allow Diomed to first introduce a doctrine of equivalents claim in its proposed jury charge would turn the litigation process on its head.

### C. The Markman Ruling Precludes Any Doctrine Of Equivalents Infringement Claim By Diomed.

Diomed could not assert that Defendants infringe under the doctrine of equivalents because to do so would expand the scope of the claims to cover that which the Court specifically

5

ME1 6216104v.2

excluded from the claims in its Markman Ruling. The Court held that the claims do not cover emitting laser energy "merely into the vein's interior or the blood within it", as practiced by Defendants. Rather, the Court held that Diomed disclaimed this in distinguishing over the prior art Goldman patent (which taught inserting a fiber optic line to heat the blood and close the vein) (Markman Ruling, p. 3), and because the sequential steps of the claim required maintaining the deliberately placed uncoated tip in physical contact with the vessel wall while the laser energy is emitted. (Markman Ruling, p. 12). If the claims were expanded under the doctrine of equivalents to cover emitting laser energy into the blood without deliberate, maintained contact between the uncoated tip and vessel wall, as practiced by Defendants, the claims would cover that which was specifically excluded from the claims in the Markman Ruling. See Spring Window Fashions LP v. Novo Indus, L.P., 323 F.3d 989, 995 (Fed. Cir. 2003) (claim cannot be construed to cover a device similar to the prior art that was distinguished to obtain the patent); and Novartis Pharmaceuticals Corp. v. Abbott Labs., 375 F.3d 1328, 1339 (Fed. Cir. 2004) (court's claim construction precluded patentee from asserting that one element could be substituted for another because it would bring the accused product outside the scope of the recited claim element).[2]

---

[2]  In addition, as set forth in Defendants Memorandum in support of their Motion in Limine to preclude Diomed from introducing testimony on its "side firing" theory of infringement (D.I., 163), Diomed cannot assert doctrine of equivalents infringement with respect to the "means for emitting laser energy limitation" (step 1) because this case does not involve "later-developed" technology. This is a "means plus function" limitation under 35 U.S.C. § 112, ¶ 6, is not entitled to doctrine of equivalents infringement unless the case involves a "later developed" technology, and Diomed does not dispute that Defendants are using coated fibers which is a technology described in the '777 patent itself. See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc., 145 F.3d 1303, 1311 (Fed. Cir. 1998) (for cases that do not involve later-developed technologies, a finding of non-equivalence under § 112, ¶ 6 precludes a contrary finding under the doctrine of equivalents); and Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc., 389 F.3d 1370, 1379 (Fed. Cir. 2004) (if the technology of the proposed equivalent arose before the patent filing date, any analysis for equivalent structure under the doctrine of equivalents collapses into the § 112, ¶ 6 analysis).

...

## III.  CONCLUSION

For all the foregoing reasons, it is respectfully requested that the Court grant Defendants' motion to limit the jury charge to literal infringement only, and to exclude any charge on doctrine of equivalents infringement.

Dated: March 5, 2007

**I hereby certify that a true copy of the above document was served upon the attorney of record for the Plaintiff and Counterclaim-Defendant Diomed, Inc. by electronic mail.**

**/s/ Mark D. Giarratana**

THE DEFENDANT,
ANGIODYNAMICS, INC.


By  /s/ Mark D. Giarratana
    William H. Bright, Jr.
    *wbright@mccarter.com*
    Mark D. Giarratana
    *mgiarratana@mccarter.com*
    McCARTER & ENGLISH, LLP
    CityPlace I
    Hartford, CT  06103
    Phone:  (860) 275-6700


THE DEFENDANT,
VASCULAR SOLUTIONS, INC.


By  /s/ Thomas Vitt
    Thomas Vitt
    *Vitt.Thomas@Dorsey.com*
    Heather Redmond
    *Redmond.Heather@Dorsey.com*
    DORSEY & WHITNEY LLP
    50 South Sixth Street
    Minneapolis, MN 55402-1498
    Phone:  (612) 340-5675