*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>VASCULAR SOLUTIONS, INC.,<br><br>　　　　Defendant. | Civil Action No. 04-CV-10444-RGS |

## DIOMED'S SUPPLEMENTAL AND AMENDED RESPONSES TO VSI'S FIRST SET OF INTERROGATORIES

Plaintiff Diomed, Inc. ("Diomed") supplements and amends its responses to Vascular Solutions, Inc.'s ("VSI") First Set of Interrogatories as follows. Diomed is not currently amending or supplementing any interrogatories not addressed in this document.

Diomed's investigations are ongoing and its responses are based on present knowledge and belief. Diomed reserves the right to modify or supplement its responses if additional or different information is discovered at a later time.

Diomed's responses are not to be construed as a waiver of any right or objection, or as an admission of relevance, materiality, or admissibility of any information or document provided.

Diomed reserves the right to designate supplemental responses to these interrogatories as CONFIDENTIAL or CONFIDENTIAL – ATTORNEYS' EYES ONLY after the entry of a protective order by the Court.

### OBJECTIONS TO DEFINITIONS

Diomed objects to VSI's definition of the terms "you," "yours," "Diomed," and "Plaintiff," as overly broad because it purports to include entities other than Diomed.

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

## OBJECTIONS TO INSTRUCTIONS

Diomed objects to the instruction in paragraph 2 of the Instructions regarding Diomed's response when a claim of privilege is made, to the extent the instruction purports to require that Diomed do more than what is required by D. Mass. Local Rule 33.1(e).

## GENERAL OBJECTIONS TO INTERROGATORIES

Diomed objects to VSI's interrogatories to the extent they:

1. Are directed to matters which are not relevant to the subject matter at issue in this action and are not reasonably calculated to lead to the discovery of relevant evidence;

2. Seek information and/or identification of documents that are subject to the attorney-client privilege, constitute work product, or are otherwise immune from discovery (if and to the extent that any documents or information are identified, disclosed, or produced which are so privileged or immune, said identification, disclosure, or production is inadvertent, and is made without waiver of or intent to waive any privilege or immunity, and the return and non-use of said materials is requested);

3. Seek information and/or identification of documents already known to VSI, in VSI's possession, or available from public sources;

4. Seek information not within Diomed's possession, custody or control, or that is not located after a reasonable search (an agreement to produce documents or things is not a representation that such documents or things exist or are within Diomed's possession, custody, or control, but rather only that they will be produced if and to the extent they exist, are within Diomed's possession, custody, or control, and are located after a reasonable search);

5. Are overly broad, unduly burdensome and/or oppressive;

6. Are vague and ambiguous;

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

7. Are premature;

8. Call for information that Diomed requires a reasonable opportunity to discover and analyze before providing a complete response;

9. Call for identification of documents not in existence at the time the suit was initiated or not in Diomed's possession, custody or control as of the time the suit was initiated;

10. Call for identification, in addition to production, of particular documents (pursuant to Fed. R. Civ. P. 33(d) Diomed may respond by producing such documents); and/or

11. Seek information with respect to patent claims that are not being asserted in this lawsuit.

All of the above objections are hereby incorporated into each response as though fully set forth therein. Subject to the above objections as well as those noted below, and without waiver of its objections, Diomed responds as follows:

## INTERROGATORY NO. 1:

For each claim of the '777 Patent: (a) state the date on which the subject matter of the claim was conceived; (b) identify the person or persons who conceived of the subject matter; (c) state the basis for your claim of conception on the asserted date; and (d) identify all documents concerning the conception of the subject matter of each claim.

## ANSWER NO. 1:

Diomed objects to this interrogatory as overly broad to the extent it requests information with respect to patent claims that are not being asserted in this lawsuit. Diomed further objects as the subject matter of this interrogatory is unduly burdensome; the facts concerning the subject matter of conception and reduction to practice could be more completely addressed during a deposition.

Subject to the above objections, Diomed states as follows with respect to asserted claims 9-14, 16-19, and 21:

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

*Claim 19* – The subject matter of claim 19 was conceived and reduced to practice by Dr. Boné, Dr. Nestor Navarro, and Ms. Fructuoso, in collaboration with Dr. Luis Navarro and Dr. Robert J. Min, during an inventive process that began in March 1997 and extended into 1998.

*Claim 21* – The subject matter of claim 10 was conceived and reduced to practice by Dr. Luis Navarro and Dr. Robert J. Min, who realized the importance of drainage of the vein as a way to ensure contact between the vessel wall and the fiber tip, and who emphasized this aspect in their collaboration with Dr. Boné, Dr. Nestor Navarro, and Ms. Fructuoso.

**INTERROGATORY NO. 2:**

For each claim of the '777 Patent: (a) state the date on which the subject matter of the claim was reduced to practice; (b) identify the person or persons who reduced the subject matter of the claim to practice; (c) state the basis for your claim of reduction to practice on the asserted date; and (d) identify all documents concerning the reduction to practice of each claim.

**ANSWER NO. 2:**

Diomed restates its objections and response from Answer No. 1 as if fully restated herein.

**INTERROGATORY NO. 5:**

For each claim of the '777 Patent identified in answer to Interrogatory No. 3, state the basis in detail supporting your claim that VSI has directly infringed, is contributing to the infringement of, or is inducing the infringement of the particular claim. Include in your answer a claim chart that states the basis for your claim that each limitation of a particular claim is met by any VSI product or by any user of a VSI product.

**ANSWER NO. 5:**

Diomed objects to this interrogatory as overly broad to the extent it requests information with respect to patent claims that are not being asserted in this lawsuit.

Diomed objects to the extent this interrogatory calls for scientific or technical conclusions that may be addressed by Diomed's experts. To that extent, this interrogatory is premature as Diomed is not yet required by the scheduling order to disclose its experts or their reports.

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

Moreover, Diomed states that its answer shall not limit its reliance on other theories of infringement or other facts as they may arise during the remainder of discovery. In addition, Diomed's identification of certain documents below shall not limit Diomed's right to rely on other documents to prove its case of infringement.

Subject to the above objections, Diomed supplements its original response as follows:

A doctor using VSI's VARI-LASE kit infringes the `777 patent when following the procedure described in any of VSI's instructions for use, when the doctor uses the kit in any procedure for which VSI teaches the kit should be used, or when the doctor uses the kit for a procedure for which VSI knows and expects the kit to be used.

Though other procedures infringe the `777 patent, Diomed sets forth here one example of a procedure that infringes the `777 patent: When a user follows the procedure set forth in VSI's instructions for use P/N 42-0397 Rev J 01/04 (VSI 021179-82), that user infringes the `777 patent for the following reasons:

| Construed Claim | Infringement |
|---|---|
| *Claim 9 – Part A[1]*<br><br>[a] method of treating a blood vessel using laser energy, comprising the steps of:<br><br>inserting means for emitting laser energy [*a fiber optic line with an uncoated tip at its end capable of emitting laser energy*] into the blood vessel at a puncture site, wherein said emitting means has a laser emitting section; | VSI's instructions specify that the VARI-LASE "procedure kit is indicated for the treatment of varicose veins and varicosities associated with superficial reflux of the Great Saphenous Vein." The instructions further specify that the kit shall be used "in conjunction with a solid state diode laser console . . . ."<br><br>The kit contains a "600μ core laser fiber." This laser fiber is a "fiber optic line" and has an uncoated tip at its end capable of emitting laser energy. VSI's instructions further instruct the doctor to insert the laser fiber into the vein. |

---

[1] The Court's construction of certain claim language in its Memorandum and Order on Claims Construction, dated April 12, 2005, has been added hereto in [*brackets and italics*].

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

| | |
|---|---|
| *Claim 9 – Part B*<br><br>placing said laser emitting section of the said emitting means into intraluminal contact with the blood vessel at a treatment site [*deliberately putting the uncoated tip of the fiber optic line in physical contact with the wall of the blood vessel, which requires the drainage of blood and compression of the vein*]; and | After insertion of the fiber optic line, VSI's instructions indicate to "[d]eliver local anesthetic (between 100 and 200 ml, depending on the treatment area) perivenously throughout the entire treatment area . . . ." VSI further instructs that this local anesthesia should consist of "0.3% - 0.5% lidocaine (minimum of 30 ml)." This technique, including the use of the defined amount of dilute lidocaine, commonly known as "tumescent anesthesia," causes the vessel being treated to compress onto the fiber optic line and its uncoated tip, placing the uncoated tip into contact with the wall of the blood vessel. This compression is physically caused by the volume of the tumescent anesthesia fluid around the vein including the increase in pressure around the venous tissue, and chemically, in some cases, by agents in the tumescent anesthesia.<br><br>Compression resulting from the tumescent anesthesia also causes blood in the vessel being treated to be drained from the vessel.<br><br>Through its instructions for use, including by instructing the use of tumescent anesthesia, VSI instructs a physician to deliberately put the uncoated tip of the fiber optic line in physical contact with the wall of the blood vessel, including compression of the vein and drainage of the blood.<br><br>Moreover, VSI instructs the treating physician to "[p]lace the patient in the Trendelenberg position (head down)" before firing the laser. By placing the patient in the Trendelenberg position, the physician further drains the blood from the vessel (in addition to the drainage effect already caused by the compression achieved through tumescent anesthesia) and that the uncoated tip of the fiber optic line is in physical contact with the vessel wall.<br><br>Through its instructions for use, including by instructing the use of tumescent anesthesia, VSI instructs a physician to deliberately put the uncoated tip of the fiber optic line in physical contact with the wall of the blood vessel, including compression of the vein and drainage of blood. |
| *Claim 9 – Part C*<br><br>emitting said laser energy into the blood vessel through said laser emitting section of said emitting means [*maintaining of the tip-interior surface in* | VSI then instructs the physician to fire the laser ("[p]lace the laser console in the "Fire" mode. . . [and] [f]ire the laser and simultaneously withdraw" the fiber optic line), thus instructing the physician to cause the laser energy to emit from the tip of the fiber optic line while the tip-interior surface contact is |

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

| | |
|---|---|
| *physical contact with the vessel wall while laser energy is emitted to decrease the diameter of the blood vessel]*. | maintained. The tumescent anesthesia used throughout the "entire treatment area," maintains the physical contact between the tip of the fiber optic line and the vessel wall while laser energy is emitted from the fiber optic line (i.e., while the laser is fired), to treat the vein as described and claimed in the patent. |
| *Claim 10*<br><br>The method of claim 9, further comprising emptying [*emptying most, but necessarily all of the blood from*] the blood vessel prior to emitting said laser energy. | VSI instructs physicians to use tumescent anesthesia throughout the "entire treatment area." This process causes the physician to empty most of the blood from the blood vessel as the tumescent causes the vessel to compress, forcing the blood out of the vessel.<br><br>VSI further instructs the physician to place the patient in the Trendelenberg position. By using this process, the physician further drains the blood from the vessel (in addition to the drainage effect already caused by the compression achieved through tumescent anesthesia) and that the uncoated tip of the fiber optic line is in physical contact with the vessel wall. |
| *Claim 11*<br><br>The method of claim 9, wherein said emitting means [*fiber optic line with an uncoated tip at its end capable of emitting laser energy*] is inserted into the blood vessel through the use of an angiocatheter. | VSI instructs physicians to use an angiocatheter to gain access to the vein. |
| *Claim 12*<br><br>The method of claim 9, wherein said emitting means [*fiber optic line with an uncoated tip at its end capable of emitting laser energy*] is about 200 microns to about 600 microns in diameter. | VSI instructs physicians to use the "600μ core laser fiber" provided in the VARI-LASE kit. |
| *Claim 13*<br><br>The method of claim 9, wherein said emitting means [*fiber optic line with an uncoated tip at its end capable of emitting laser energy*] is a fiber optic line. | VSI instructs physicians to use the "600μ core laser fiber" provided in the VARI-LASE kit, which is a fiber optic line with an uncoated tip at its end. |

| | |
|---|---|
| *Claim 14*<br><br>The method of claim 9, wherein said laser emitting section of said emitting means [*fiber optic line with an uncoated tip at its end capable of emitting laser energy*] is located at a tip of said emitting means [*fiber optic line with an uncoated tip at its end capable of emitting laser energy*]. | The VARI-LASE kit contains a "600μ core laser fiber." This laser fiber is a "fiber optic line" and has an uncoated tip at its end capable of emitting laser energy. VSI instructs to use this fiber optic line during the procedure set forth in its instructions for use. |
| *Claim 16*<br><br>The method of claim 14, wherein said tip of said emitting means [*fiber optic line with an uncoated tip at its end capable of emitting laser energy*] is located at the treatment site through the use of a guidance means. | VSI instructs that the fiber optic line "should be manipulated only under ultrasound visualization," and that the position of that the fiber optic line is confirmed by "using ultrasound." The instructions also specify to use an "aiming beam and [to] observe the location of the red aiming beam. . . ." The ultrasound and aiming beam are both "guidance means." |
| *Claim 17*<br><br>The method of claim 9, further comprising applying compression externally to the blood vessel prior to applying said laser energy, thereby ensuring contact of said tip of said emitting means [*fiber optic line with an uncoated tip at its end capable of emitting laser energy*] with the blood vessel. | Through its instructions for use, including by instructing the use of tumescent anesthesia, VSI instructs physicians to compress the vessel being treated onto the fiber optic line and its uncoated tip, placing the uncoated tip into contact with the wall of the blood vessel. This compression is physically caused by the volume of the tumescent anesthesia fluid around the vein including the increase in pressure around the venous tissue, and chemically, in some cases, by agents in the tumescent anesthesia. |
| *Claim 18*<br><br>The method of claim 9, wherein said laser energy is applied in the range of about 500 nanometers to about 1100 nanometers. | VSI's instructions specify that the VARI-LASE kit should be used "in conjunction with a solid state diode laser console operating at wavelengths of 810nm, 940nm, or 980nm. . . ." |

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

| Claim 19 | |
|---|---|
| The method of claim 9, wherein said laser energy is delivered in bursts. | VSI's instructions specify to "[f]ire the laser and simultaneously withdraw the" fiber optic line "at the rate of 2mm per second." These instructions cause the doctor to pull the fiber optic line at 2mm per second, then stop the laser when it becomes physically impossible because of the limited dexterity of the physician's hands to maintain the 2mm per second rate. Once the doctor repositions his or her hands, the doctor again fires the laser. This process delivers the laser energy in bursts. |
| **Claim 21**<br><br>A method of treating a blood vessel using laser energy, comprising the steps of:<br><br>inserting means for emitting laser energy [*fiber optic line with an uncoated tip at its end capable of emitting laser energy*] into the blood vessel at a puncture site, wherein said emitting means has a laser emitting section;<br><br>placing said laser emitting section of said emitting means into intraluminal contact with the blood vessel at a treatment site [*deliberately putting the uncoated tip of the fiber optic line in physical contact with the wall of the blood vessel, which requires the drainage of blood and compression of the vein*];<br><br>emptying the blood vessel [*emptying most, but necessarily all of the blood from*]; and<br><br>emitting said laser energy into the blood vessel through said laser emitting section of said emitting means, thereby decreasing the diameter of said | VSI's instructions specify that the VARI-LASE "procedure kit is indicated for the treatment of varicose veins and varicosities associated with superficial reflux of the Great Saphenous Vein." The instructions further specify that the kit shall be used "in conjunction with a solid state diode laser console . . . ."<br><br>The kit contains a "600μ core laser fiber." This laser fiber is a "fiber optic line" and has an uncoated tip at its end capable of emitting laser energy. VSI's instructions further instruct the doctor to insert the laser fiber into the vein.<br><br>After insertion of the fiber optic line, VSI's instructions indicate to "[d]eliver local anesthetic (between 100 and 200 ml, depending on the treatment area) perivenously throughout the entire treatment area . . . ." VSI further instructs that this local anesthesia should consist of "0.3% - 0.5% lidocaine (minimum of 30 ml)." This technique, including the use of the defined amount of dilute lidocaine, commonly known as "tumescent anesthesia," causes the vessel being treated to compress onto the fiber optic line and its uncoated tip, placing the uncoated tip into contact with the wall of the blood vessel. This compression is physically caused by the volume of the tumescent anesthesia fluid around the vein including the increase in pressure around the venous tissue, and chemically, in some cases, by agents in the tumescent anesthesia.<br><br>Compression resulting from the tumescent anesthesia also causes most of the blood in the vessel being treated to be drained from the vessel.<br><br>Through its instructions for use, including by instructing the use of tumescent anesthesia, VSI instructs a physician to deliberately put the uncoated tip of the fiber optic line in physical contact |

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

| | |
|---|---|
| blood vessel [*maintaining of the tip-interior surface in physical contact with the vessel wall while laser energy is emitted to decrease the diameter of the blood vessel*]. | with the wall of the blood vessel, including compression of the vein and drainage of most of the blood.<br><br>Moreover, VSI instructs the treating physician to "[p]lace the patient in the Trendelenberg position (head down)" before firing the laser. By placing the patient in the Trendelenberg position, the physician further drains most of the blood from the vessel (in addition to the drainage effect already caused by the compression achieved through tumescent anesthesia) and that the uncoated tip of the fiber optic line is in physical contact with the vessel wall.<br><br>Through its instructions for use, including by instructing the use of tumescent anesthesia, VSI instructs a physician to deliberately put the uncoated tip of the fiber optic line in physical contact with the wall of the blood vessel, including compression of the vein and drainage of blood.<br><br>VSI then instructs the physician to fire the laser ("[p]lace the laser console in the "Fire" mode. . . [and] [f]ire the laser and simultaneously withdraw" the fiber optic line), thus instructing the physician to cause the laser energy to emit from the tip of the fiber optic line while the tip-interior surface contact is maintained. The tumescent anesthesia used throughout the "entire treatment area," maintains the physical contact between the tip of the fiber optic line and the vessel wall while laser energy is emitted from the fiber optic line (i.e., while the laser is fired), to treat the vein as described and claimed in the patent. |

VSI is liable for inducement under 35 U.S.C. § 271(b) as it has been knowledgeable at all relevant times of the '777 patent; has been aware of the actions taken by the doctors that buy its kits, specifically, that the doctors perform the procedure as set forth in VSI's instructions for use or in another infringing manner; and, VSI has had at all relevant times an actual intent to cause the doctors' acts, which constitute, and which VSI knows constitute, actual infringement.

VSI is liable for contributory infringement under 35 U.S.C. § 271(c) as it sells the VARI-LASE kit, which is especially assembled for use in practicing the patented method claimed in the

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

'777 patent. This kit is not a staple article or commodity of commerce suitable for substantial non-infringing use.

## INTERROGATORY NO. 6:

State the basis for any claim by you that the tip of the laser fiber is in contact with the vein wall when used in VSI's Vari-Lase treatment procedure.

### ANSWER NO. 6:

Diomed objects to this interrogatory as it calls for scientific or technical conclusions that will be addressed by Diomed's experts. To that extent, this interrogatory is premature as Diomed is not yet required by the scheduling order to disclose its experts or their reports.

Subject to the above objections, Diomed states as follows:

Tumescent anesthesia causes a blood vessel to compress to the point, depending on the inner diameter of the vein, where there is no lumen. This compression is physically caused by the volume of the tumescent anesthesia fluid around the vein including the increase in pressure around the venous tissue, and chemically, in some cases, by agents in the tumescent anesthesia. When the compression occurs, the laser fiber tip is in contact with the wall as the walls of the vesssel compress down on the laser fiber and its tip, leaving no space between the laser fiber tip and the vessel wall (i.e., contact).

## INTERROGATORY NO. 7:

Identify all persons with knowledge or information relevant to the claims and defenses in this matter, and describe briefly the subject matter of each person's knowledge or information.

### ANSWER NO. 7:

Diomed objects to this interrogatory to the extent Diomed has already provided this information in its Initial Disclosures.

Subject to the above objections, Diomed responds as follows:

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

## JURAT

On behalf of the Plaintiff, I have read the foregoing responses to interrogatories. Said responses were prepared by or with the assistance of agents, employees, and/or representatives of Plaintiff and/or others believed to have relevant information, and with the assistance and advice of counsel, upon which I have relied. The responses set forth herein, subject to inadvertent or undiscovered errors or omissions, are based on and therefore necessarily limited by the records and information still in existence, presently recollected, thus far discovered in the course of the preparation of these responses, and currently available to Plaintiff. Consequently, Plaintiff reserves the right to make any changes in or additions to any of these responses if it appears at any time that errors or omissions have been made therein or that more accurate or complete information has become available. Subject to the limitations set forth herein, the said responses are true to the best of my present knowledge, information and belief. I certify under penalty of perjury on behalf of Plaintiff that the foregoing is true and correct.

Dated: May __, 2005                     _____


                                        As to objections and reservations of rights:

Dated: May 6, 2005                      _____
                                        Michael A. Albert (BBO #558566)
                                        malbert@wolfgreenfield.com
                                        James J. Foster (BBO #553285)
                                        jfoster@wolfgreenfield.com
                                        Michael N. Rader (BBO #646990)
                                        mrader@wolfgreenfield.com
                                        John L. Strand (BBO #654985)
                                        WOLF, GREENFIELD & SACKS, P.C.
                                        600 Atlantic Avenue
                                        Boston, MA 02210
                                        (617) 720-3500

                                        COUNSEL FOR DIOMED, INC.