*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ANGIODYNAMICS, INC,<br><br>Defendant. | Civil Action No. 04-CV-10019 (RGS) |

## DIOMED'S SUPPLEMENTAL AND AMENDED RESPONSES TO ANGIODYNAMICS' FIRST SET OF INTERROGATORIES

Plaintiff Diomed supplements and amends its responses to AngioDynamics' First Set of Interrogatories as follows. Diomed is not currently amending or supplementing any interrogatories not addressed in this document.

Diomed's investigations are ongoing and its responses are based on present knowledge and belief. Diomed reserves the right to modify or supplement its responses if additional or different information is discovered at a later time.

Diomed's responses are not to be construed as a waiver of any right or objection, or as an admission of relevance, materiality, or admissibility of any information or document provided.

Diomed reserves the right to designate supplemental responses to these interrogatories as CONFIDENTIAL or CONFIDENTIAL – ATTORNEYS' EYES ONLY after the entry of a protective order by the Court.

## OBJECTIONS TO DEFINITIONS

Diomed objects to AngioDynamics' definitions of the terms "document," "person," "communication," and "identify" to the extent they exceed the scope provided for those terms in D. Mass. Local Rule 26.5(c).

5-6-05

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

Diomed objects to the definition in Paragraph 9 of "You," "yours," "Diomed" and "Plaintiff" as overly broad because it purports to include entities not under Diomed's control.

## OBJECTIONS TO INSTRUCTIONS

Diomed objects to the instruction in Paragraph 2 regarding Diomed's response when a claim of privilege is made, to the extent the instruction purports to require that Diomed do more than what is required by D. Mass. Local Rule 33.1(e).

## GENERAL OBJECTIONS TO INTERROGATORIES

Diomed objects to AngioDynamics' interrogatories to the extent they:

1. Are directed to matters which are not relevant to the subject matter at issue in this action and are not reasonably calculated to lead to the discovery of relevant evidence;

2. Seek information and/or identification of documents that are subject to the attorney-client privilege, constitute work product, or are otherwise immune from discovery (if and to the extent that any documents or information are identified, disclosed, or produced which are so privileged or immune, said identification, disclosure, or production is inadvertent, and is made without waiver of or intent to waive any privilege or immunity, and the return and non-use of said materials is requested);

3. Seek information and/or identification of documents already known to AngioDynamics, in AngioDynamics' possession, or available from public sources;

4. Seek information not within Diomed's possession, custody or control, or that is not located after a reasonable search (an agreement to produce documents or things is not a representation that such documents or things exist or are within Diomed's possession, custody, or control, but rather only that they will be produced if and to the extent they exist, are within Diomed's possession, custody, or control, and are located after a reasonable search);

5. Are overly broad, unduly burdensome and/or oppressive;

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

    6.    Are vague and ambiguous;

    7.    Are premature;

    8.    Call for information that Diomed requires a reasonable opportunity to discover and analyze before providing a complete response;

    9.    Call for identification of documents not in existence at the time the suit was initiated or not in Diomed's possession, custody or control as of the time the suit was initiated;

    10.    Call for identification, in addition to production, of particular documents (pursuant to Fed. R. Civ. P. 33(d) Diomed may respond by producing such documents); and/or

    11.    Seek information with respect to patent claims that are not being asserted in this lawsuit.

All of the above objections are hereby incorporated into each response as though fully set forth therein. Subject to the above objections as well as those noted below, and without waiver of its objections, Diomed responds as follows:

### Interrogatory No. 2

Separately for each of the claims of the '777 patent, state the date on which the subject matter of the respective claim was conceived, the person or persons who conceived the subject matter, and the facts establishing and otherwise relating to the conception.

### Response:

Diomed objects to this interrogatory as overly broad to the extent it requests information with respect to patent claims that are not being asserted in this lawsuit. Diomed further objects as the subject matter of this interrogatory is unduly burdensome; the facts concerning the subject matter of conception and reduction to practice could be more completely addressed during a deposition.

Subject to the above objections, Diomed states as follows with respect to asserted claims 9-14, 16-19, and 21:

*Claim 19* – The subject matter of claim 19 was conceived and reduced to practice by Dr. Boné, Dr. Nestor Navarro, and Ms. Fructuoso, in collaboration with Dr. Luis Navarro and Dr. Robert J. Min, during an inventive process that began in March 1997 and extended into 1998.

*Claim 21* – The subject matter of claim 10 was conceived and reduced to practice by Dr. Luis Navarro and Dr. Robert J. Min, who realized the importance of drainage of the vein as a way to ensure contact between the vessel wall and the fiber tip, and who emphasized this aspect in their collaboration with Dr. Boné, Dr. Nestor Navarro, and Ms. Fructuoso.

### Interrogatory No. 3

Separately for each of the claims of the '777 patent, state the date when the subject matter of the respective claim was reduced to practice, when that reduction to practice began, and where the reduction to practice took place.

### Response:

Diomed restates its objections and response from Answer No. 2 as if fully restated herein.

### Interrogatory No. 8

(a) For each claim of the '777 patent, state whether the claim is infringed by any of Defendant's products or by anyone that uses any of Defendant's products, and if so, identify each product, by specific model number or similar designation, made, used or sold by Defendant which Plaintiff alleges infringes such claim, the use of which Plaintiff alleges infringes such claim, or that Plaintiff has ever considered comes within the scope of the respective claim but which Plaintiff does not now contend infringes, and state when Plaintiff, any inventor of the '777 patent, or anyone involved in the prosecution of the '777 patent application, and/or any predecessor in interest of Plaintiff with respect to the '777 patent, first became aware of each product identified in response to this interrogatory.

(b) For each claim of the '777 patent, state whether the claim is contributorily infringed by any of Defendant's products or whether Defendant has induced infringement of such claim, and if so, identify by specific example each product and/or activity Plaintiff alleges contributorily infringes or induces infringement of such claim, or has ever considered to come within the scope of the respective claim but which Plaintiff does not now contend contributorily infringes or induces infringement of such claim, and state when Plaintiff, any inventor of the '777 patent, or anyone involved in the prosecution of the '777 patent application, and/or any predecessor in interest of Plaintiff with respect to the '777 patent, first became aware of each product and/or activity identified in response to this interrogatory.

(c) For each of the claims of the '777 patent, state whether the claim has been infringed by a third party, and if so, identify each product and/or activity, by specific example or other appropriate designation, made, used or sold by a third party which Plaintiff alleges infringes such claim, or has ever considered comes within the scope of the respective claim, but

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

which Plaintiff does not now contend infringes, and state when Plaintiff, any inventor of the '777 patent, anyone involved in the prosecution of the '777 patent application, and/or any predecessor in interest of Plaintiff with respect to the '777 patent, first became aware of each third-party product and/or activity identified in response to this interrogatory.

**Response:**

Diomed objects to this interrogatory as overly broad to the extent it requests information with respect to patent claims that are not being asserted in this lawsuit.

Diomed objects to the extent this interrogatory calls for scientific or technical conclusions that may be addressed by Diomed's experts. To that extent, this interrogatory is premature as Diomed is not yet required by the scheduling order to disclose its experts or their reports.

Moreover, Diomed states that its answer shall not limit its reliance on other theories of infringement or other facts as they may arise during the remainder of discovery. In addition, Diomed's identification of certain documents below shall not limit Diomed's right to rely on other documents to prove its case of infringement.

Subject to the above objections, Diomed supplements its original response as follows:

A doctor using AngioDynamics' VenaCure (previously elvs, though both terms are used interchangeably throughout this document) kit infringes the '777 patent when following the procedure described in any of AngioDynamics' instructions for use, when the doctor uses the kit in any procedure for which AngioDynamics teaches the kit should be used, or when the doctor uses the kit for a procedure for which AngioDynamics knows and expects the kit to be used.

Though other procedures infringe the '777 patent, Diomed sets forth here one example of a procedure that infringes the '777 patent: When a user follows the procedure set forth in AngioDynamics' instructions for use IC 173 Rev. D (ANG2171-2174), that user infringes the '777 patent for the following reasons:

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

| Construed Claim | Infringement |
|---|---|
| *Claim 9 – Part A*[1]<br><br>[a] method of treating a blood vessel using laser energy, comprising the steps of:<br><br>inserting means for emitting laser energy [*a fiber optic line with an uncoated tip at its end capable of emitting laser energy*] into the blood vessel at a puncture site, wherein said emitting means has a laser emitting section; | AngioDynamics' instructions specify that the VenaCure "procedure kit is intended for use in endovascular occlusion of the Greater Saphenous Vein (GSV)." The instructions further specify that the kit is "indicated for use with 810 nm and 980 nm Diode Lasers. . . ."<br><br>The kit contains a "600 micron core, bare flat tip laser fiber," capable of emitting laser energy. This is a fiber optic line with an uncoated tip at its end capable of emitting laser energy. The uncoated tip is a laser emitting section. AngioDynamics' instructions further instruct to "obtain percutaneous entry" and insert the fiber optic line into the blood vessel at the puncture site so created. |
| *Claim 9 – Part B*<br><br>placing said laser emitting section of the said emitting means into intraluminal contact with the blood vessel at a treatment site [*deliberately putting the uncoated tip of the fiber optic line in physical contact with the wall of the blood vessel, which requires the drainage of blood and compression of the vein*]; and | After insertion of the fiber optic line, AngioDynamics' instructions indicate to "administer perivenous local anesthesia along the Greater Saphenous Vein." AngioDynamics further instructs that this perivenous anesthesia should consist of "100-150cc's of 0.3% Lidocaine with or without Epinephrine." This technique, including the use of the defined amount of dilute lidocaine, commonly known as "tumescent anesthesia," is intended to, and does, cause the vessel being treated to compress around the fiber optic line and its uncoated tip, placing the uncoated tip into contact with the wall of the inner blood vessel. This compression is physically caused by the volume of the tumescent anesthesia fluid around the vein including the increase in pressure around the venous tissue, and chemically, in some cases, by agents in the tumescent anesthesia.<br><br>Compression resulting from the tumescent anesthesia also causes blood in the vessel being treated to be drained from the vessel.<br><br>Through its instructions for use, including by instructing the use of tumescent anesthesia, AngioDynamics instructs a physician to deliberately put the uncoated tip of the fiber optic line in physical contact with the wall of the blood vessel, including compression of the vein and drainage of blood. |

---

[1] The Court's construction of certain claim language in its Memorandum and Order on Claims Construction, dated April 12, 2005, has been added hereto in [*brackets and italics*].

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

| | |
|---|---|
| *Claim 9 – Part C*<br><br>emitting said laser energy into the blood vessel through said laser emitting section of said emitting means [*maintaining of the tip-interior surface in physical contact with the vessel wall while laser energy is emitted to decrease the diameter of the blood vessel*]. | AngioDynamics then instructs the physician to fire the laser ("[a]ctivate the laser by depressing the foot pedal"), thus instructing the physician to cause the laser energy to emit from the tip of the fiber optic line while the tip-interior surface contact is maintained. The tumescent anesthesia used "along the Greater Saphenous Vein" maintains the physical contact between the tip of the fiber optic line and the vessel wall while laser energy is emitted from the fiber optic line (i.e., while the laser is fired), to treat the vein as described and claimed in the patent. |
| *Claim 10*<br><br>The method of claim 9, further comprising emptying [*emptying most, but necessarily all of the blood from*] the blood vessel prior to emitting said laser energy. | AngioDynamics instructs physicians to use tumescent anesthesia "along the Greater Saphenous Vein" This process causes the physician to empty most of the blood from the blood vessel as the tumescent anesthesia compresses the vessel. |
| *Claim 11*<br><br>The method of claim 9, wherein said emitting means [*fiber optic line with an uncoated tip at its end capable of emitting laser energy*] is inserted into the blood vessel through the use of an angiocatheter. | AngioDynamics instructs physicians to use an angiocatheter to gain access to the vein. |
| *Claim 12*<br><br>The method of claim 9, wherein said emitting means [*fiber optic line with an uncoated tip at its end capable of emitting laser energy*] is about 200 microns to about 600 microns in diameter. | AngioDynamics instructs physicians to use the "600 micron core, bare flat tip laser fiber" provided in the AngioDynamics' kit. |

| | |
|---|---|
| *Claim 13*<br><br>The method of claim 9, wherein said emitting means [*fiber optic line with an uncoated tip at its end capable of emitting laser energy*] is a fiber optic line. | AngioDynamics instructs physicians to use the "600 micron core, bare flat tip laser fiber" provided in the AngioDynamics kit. |
| *Claim 14*<br><br>The method of claim 9, wherein said laser emitting section of said emitting means [*fiber optic line with an uncoated tip at its end capable of emitting laser energy*] is located at a tip of said emitting means [*fiber optic line with an uncoated tip at its end capable of emitting laser energy*]. | The VenaCure kit contains a "600 micron core, bare flat tip laser fiber." This is a fiber optic line with an uncoated tip at its end capable of emitting laser energy. AngioDynamics instructs to use this fiber optic line during the procedure set forth in its instructions for use. |
| *Claim 16*<br><br>The method of claim 14, wherein said tip of said emitting means [*fiber optic line with an uncoated tip at its end capable of emitting laser energy*] is located at the treatment site through the use of a guidance means. | AngioDynamics' instructions specify that the tip of fiber optic line should be checked "via [the] aiming beam," which is a guidance means. |
| *Claim 17*<br><br>The method of claim 9, further comprising applying compression externally to the blood vessel prior to applying said laser energy, thereby ensuring contact of said tip of said emitting means [*fiber optic line with an uncoated tip at its end capable of emitting laser energy*] with the blood vessel. | Through its instructions for use, including by instructing the use of tumescent anesthesia, AngioDynamics instructs physicians to compress the vessel being treated onto the fiber optic line and its uncoated tip, placing the uncoated tip into contact with the wall of the blood vessel. This compression is physically caused by the volume of the tumescent anesthesia fluid around the vein including the increase in pressure around the venous tissue, and chemically, in some cases, by agents in the tumescent anesthesia. |

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

| | |
|---|---|
| *Claim 18*<br><br>The method of claim 9, wherein said laser energy is applied in the range of about 500 nanometers to about 1100 nanometers. | AngioDynamics' instructions specify that the VenaCure kit is "indicated for use with 810 nm and 980 nm Diode Lasers...." |
| *Claim 19*<br><br>The method of claim 9, wherein said laser energy is delivered in bursts. | AngioDynamics' instructions specify to "activate the laser ... while slowly withdrawing the fiber and sheath together, at a rate of 12 to 14 cm per minute...." These instructions cause the doctor to pull back the fiber optic line at approximately 12 to 14 cm per minute, then stop the laser when it becomes physically impossible because of the limited dexterity of the physician's hands to maintain the stated rate. Once the doctor repositions his or her hands, the doctor again fires the laser. This process delivers the laser energy in bursts. |
| *Claim 21*<br><br>A method of treating a blood vessel using laser energy, comprising the steps of:<br><br>inserting means for emitting laser energy [*fiber optic line with an uncoated tip at its end capable of emitting laser energy*] into the blood vessel at a puncture site, wherein said emitting means has a laser emitting section;<br><br>placing said laser emitting section of said emitting means into intraluminal contact with the blood vessel at a treatment site [*deliberately putting the uncoated tip of the fiber optic line in physical contact with the wall of the blood vessel, which requires the drainage of blood and compression of the vein*];<br><br>emptying the blood vessel | AngioDynamics' instructions specify that the VenaCure "procedure kit is intended for use in endovascular occlusion of the Greater Saphenous Vein (GSV)." The instructions further specify that the kit is "indicated for use with 810 nm and 980 nm Diode Lasers...."<br><br>The kit contains a "600 micron core, bare flat tip laser fiber," capable of emitting laser energy. This is a fiber optic line with an uncoated tip at its end capable of emitting laser energy. The uncoated tip is a laser emitting section. AngioDynamics' instructions further instruct to "obtain percutaneous entry" and insert the fiber optic line into the blood vessel at the puncture site so created.<br><br>After insertion of the fiber optic line, AngioDynamics' instructions indicate to "administer perivenous local anesthesia along the Greater Saphenous Vein." AngioDynamics further instructs that this perivenous anesthesia should consist of "100-150cc's of 0.3% Lidocaine with or without Epinephrine." This technique, including the use of the defined amount of dilute lidocaine, commonly known as "tumescent anesthesia," is intended to, and does, cause the vessel being treated to compress around the fiber optic line and its uncoated tip, placing the uncoated tip into contact with the wall of the inner blood vessel. This compression is physically caused by the volume of the tumescent anesthesia fluid around the vein |

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

| | |
|---|---|
| [*emptying most, but necessarily all of the blood from*]; and<br><br>emitting said laser energy into the blood vessel through said laser emitting section of said emitting means, thereby decreasing the diameter of said blood vessel [*maintaining of the tip-interior surface in physical contact with the vessel wall while laser energy is emitted to decrease the diameter of the blood vessel*]. | including the increase in pressure around the venous tissue, and chemically, in some cases, by agents in the tumescent anesthesia. This process causes the physician to empty most of the blood from the blood vessel as the tumescent anesthesia compresses the vessel.<br><br>Through its instructions for use, including by instructing the use of tumescent anesthesia, AngioDynamics instructs a physician to deliberately put the uncoated tip of the fiber optic line in physical contact with the wall of the blood vessel, including compression of the vein and drainage of blood.<br><br>AngioDynamics then instructs the physician to fire the laser ("[a]ctivate the laser by depressing the foot pedal"), thus instructing the physician to cause the laser energy to emit from the tip of the fiber optic line while the tip-interior surface contact is maintained. The tumescent anesthesia used "along the Greater Saphenous Vein" maintains the physical contact between the tip of the fiber optic line and the vessel wall while laser energy is emitted from the fiber optic line (i.e., while the laser is fired), to treat the vein as described and claimed in the patent. |

AngioDynamics is liable for inducing infringement under 35 U.S.C. § 271(b) as it has known at all relevant times of the `777 patent; has been aware of the actions taken by the doctors that buy its kits, specifically, that the doctors perform the procedure as set forth in AngioDynamics' instructions for use or in another infringing manner some of which are described above; and AngioDynamics has had at all relevant times an actual intent to cause the doctors' acts, which constitute, and which AngioDynamics knows constitute, actual infringement.

AngioDynamics is liable for contributory infringement under 35 U.S.C. § 271(c) as it sells the VenaCure kit, which is especially assembled for use in practicing the patented method claimed in the `777 patent. This kit is not a staple article or commodity of commerce suitable for substantial non-infringing use.

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

As for part (c) of the interrogatory, third parties besides the physicians who practice the infringing AngioDynamics procedure who are described above, there are also infringing physicians who practice laser vein treatments using at least the following Vascular Solutions, Inc. products whose use also infringes the '777 patent:

- Model No. 7500 Vari-Lase 810 Laser Console
- Vari-Lase Procedure Kits

Vascular Solutions, Inc. contributorily infringes the '777 patent at least by selling, offering to sell and/or importing the above Vari-Lase Procedure Kits.

Vascular Solutions induces infringement of the '777 patent at least through its sales of the above lasers and Vari-Lase Procedure Kits, and/or through its sales, marketing and physician training efforts.

Diomed became aware that Vascular Solutions was selling products for laser vein treatments in or about Summer 2003.

In addition, physicians practicing laser vein treatments using at least the following Total Vein Solutions, LLC products are also infringing the '777 patent:

- TVS#4002A – Endovenous (Laser) Percutaneous Entry Pack
- TVS#4003 – Endovenous procedure with Laser or Radiofrequency
- TVS#4004 – Endovenous Pack Special for procedure with Laser
- TVS#4005 – Endovenous Pack for Laser or Radiofrequency
- #P0012 – Surgical Laser Fiber with SMA-905 connector for Diomed lasers

Total Vein Solutions contributorily infringes the '777 patent at least by selling, offering to sell and/or importing the above items.

Total Vein Solutions induces infringement of the '777 patent at least through its sales of the above items, and/or through its sales, marketing and physician training efforts.

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

Diomed became aware that Total Vein Solutions was selling products for endovenous laser treatments in or about the second half of 2003.

Diomed also is also aware that New Star Lasers, Inc. is inducing infringement of the `777 patent, and contributorily infringing the `777 patent, at least through its sales of a product called CTEV and laser fiber kits to be used with that product, and physicians practicing laser vein treatments using at least these New Star Lasers' products and procedure are also believed to be infringing the `777 patent.

### Interrogatory No. 11

Separately for each of the claims of the '777 patent, state the date on which the subject matter of the respective claim was first disclosed to a third party, identify all documents that refer or relate to such disclosure and identify the person or persons to whom the disclosure was made.

### Response:

Diomed objects to this interrogatory as overly broad to the extent it requests information with respect to patent claims that are not being asserted in this lawsuit.

Diomed further objects to the extent that the interrogatory requests information concerning disclosures made outside of the United States to third parties. Such information is not relevant to the claims or defenses of any party in this action, nor will it lead to the discovery of such information.

Diomed further objects to the extent it seeks information that is subject to attorney-client privilege or attorney work product protection, or is otherwise immune from discovery.

Diomed further objects to this interrogatory as the term "subject matter of the respective claim" is vague, ambiguous, and imprecise. In addition, the term "third party" is ambiguous. Subject to the above objections, Diomed states as follows:

Dr. Carlos Boné Salat performed the procedure described in response to Interrogatory No. 2 in approximately March 1997, in Spain, in front of third parties.

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

## JURAT

      On behalf of the Plaintiff, I have read the foregoing responses to interrogatories. Said responses were prepared by or with the assistance of agents, employees, and/or representatives of Plaintiff and/or others believed to have relevant information, and with the assistance and advice of counsel, upon which I have relied. The responses set forth herein, subject to inadvertent or undiscovered errors or omissions, are based on and therefore necessarily limited by the records and information still in existence, presently recollected, thus far discovered in the course of the preparation of these responses, and currently available to Plaintiff. Consequently, Plaintiff reserves the right to make any changes in or additions to any of these responses if it appears at any time that errors or omissions have been made therein or that more accurate or complete information has become available. Subject to the limitations set forth herein, the said responses are true to the best of my present knowledge, information and belief. I certify under penalty of perjury on behalf of Plaintiff that the foregoing is true and correct.

Dated: May     , 2005

                                                As to objections and reservations of rights:

Dated: May 6, 2005

                                              Michael A. Albert (BBO #558566)
                                              malbert@wolfgreenfield.com
                                              James J. Foster (BBO #553285)
                                              jfoster@wolfgreenfield.com
                                              Michael N. Rader (BBO #646990)
                                              mrader@wolfgreenfield.com
                                              John L. Strand (BBO #654985)
                                              WOLF, GREENFIELD & SACKS, P.C.
                                              600 Atlantic Avenue
                                              Boston, MA 02210
                                              (617) 720-3500

                                              COUNSEL FOR DIOMED, INC.