N THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>ANGIODYNAMICS, INC,<br><br>        Defendant. | Civil Action No. 04-10019 NMG |
| DIOMED, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>VASCULAR SOLUTIONS, INC.,<br><br>        Defendant. | Civil Action No. 04-10444 NMG<br>**(CONSOLIDATED UNDER<br>04-10019 NMG)** |

## OPPOSITION TO DEFENDANTS' MOTION
## TO LIMIT THE JURY CHARGE TO LITERAL INFRINGEMENT

In the guise of a motion to modify jury instructions, Defendants AngioDynamics, Inc.

("AngioDynamics") and Vascular Solutions, Inc. ("VSI") have in fact filed a belated – and

unfounded – motion in limine (D.I. 216).  To the extent they seek a determination regarding the

appropriate instructions to be given to the jury, such issues can best be addressed at the charging

conference at the end of the case.  As to their belated effort to preclude Plaintiff Diomed, Inc.

("Diomed") from offering expert testimony and other evidence relevant to the doctrine of

equivalents, the motion is baseless.  The doctrine of equivalents is a well-established basis upon

which a plaintiff may seek a jury finding of patent infringement, and Defendants have had the

evidence in question for more than a year.

Defendants' methods infringe Diomed's patent both literally and under the doctrine of equivalents.  Over the lengthy discovery process in this case, Diomed disclosed both the outline and the details of its argument that particular elements of the Defendants' procedures fulfill the same function as the patented method in substantially the same way to achieve substantially the same result, which is the test for infringement under the doctrine of equivalents. E.g., Riles v. Shell Exploration and Prod. Co., 298 F.3d 1302, 1309-11 (Fed. Cir. 2002) (affirming jury verdict that defendant infringed method claim under the doctrine of equivalents).  If Defendants had a dispute with the adequacy of these disclosures, they could long ago have raised the issue through an appropriate motion to compel discovery, or for summary judgment, or at the very latest in a timely-filed motion in limine.  Their effort to do so on the eve of trial is improper.

The supporting evidence is extensive.  For instance, the expert testimony of Dr. Luis Navarro (who was deposed several times and who produced videos, photographs, an expert report, and other materials) and of Dr. Rox Anderson (director of MGH's Wellman Center for Photomedicine and a world-leading expert on laser-tissue interaction) establish that lateral emission of laser energy from the sides of the fiber tip is a substantial cause of the damage caused by contact with the vein wall during laser treatment.  This fact would allow the jury to return a verdict for Diomed under the doctrine of equivalents even if the jurors failed to recognize (as the testimony will also establish) that such contact – as well as the contact between the front face of the tip and the vein well in which it gets embedded during the procedure – constitutes literal infringement.  Dr. Navarro and Dr. Anderson have detailed how heat from the laser immediately begins to degrade the original "cladding" around the fiber, allowing the entire tip (not just its face) to function as a tool of the laser treatment procedure.  E.g., Anderson Decl. (D.I. 94)  ¶ 45 ("During ILA, optical energy emitted from the edges and sides of the rounded-tip

fiber directly enters and heats the vessel wall, during direct contact between the laser-emitting

portions of the fiber and the vessel wall."). They have further recognized that such lateral

emission is enough to cause permanent tissue damage that closes veins for good. See Dec. 20,

2005 Navarro Decl. (D.I. 96) ¶ 42 ("I did an additional series of experiments to demonstrate that

emission from the side of the fiber following breakdown of the cladding is sufficient to cause

severe damage to tissue."); Navarro Report (Ex. C to Steenburg Decl. (D.I. 156)) at 27 ("While

the side wall of the fiber is in contact with the vessel wall, this side wall emission is significant

enough to cause permanent damage to the vein wall, including charring and perforation.").

        The evidence thus supports a finding that the fiber performs the same function (i.e., the

application of laser energy) in substantially the same way (i.e., direct contact between the laser-

emitting portion of the fiber and the vessel tissue) to achieve substantially the same result (i.e.,

permanent closure of the diseased vein).[1] E.g., Riles, 298 F.3d at 1309-11.

        The defendants likewise have long been on notice of Diomed's position that practitioners

using AngioDynamics or VSI products infringe Diomed's patent even if the jury were to

conclude that the laser fiber tip briefly ceases contact with the vein wall in some procedures.

This theory was explained in detail in Diomed's summary judgment briefing, D.I. 92 at 16

("[E]ven if there were moments when the fiber tip were not in contact with the vein wall, doctors

following the AngioDynamics or VSI instructions would still necessarily infringe the '777

patent."), and the Court concluded that the matter was for the jury to decide. Defendants'

eleventh-hour attempt to preclude such evidence is little more than a second bite at the summary

---

[1] Since this discovery occurred after Dr. Navarro and his fellow inventors filed their patent
application, the defendants' arguments (D.I. 216 at 6 n.2) regarding "means plus function"
limitations are misplaced. Indeed, the inventors could not have incorporated a relevant
description into the specification. The degradation phenomenon nevertheless makes an excellent
procedure even more reliable. The doctrine of equivalents accordingly has particular
applicability here.

judgment apple.  Even if there were moments in some procedures when the fiber tip did not

remain in contact with the vein wall, such moments would have no bearing on the function,

method of action, or result of the procedure.  The method still does sufficient damage to the vein

wall to close the vessel.  Id.  The jurors would thus be entitled to find infringement under the

doctrine of equivalents even if they did not credit the compelling evidentiary and histological

evidence (including lines of carbonization on explanted veins) showing that such contact is

maintained throughout the procedure.

Given the substantive content of Diomed's briefing, expert reports, and discovery

responses like the excerpts discussed above, the defendants cannot realistically claim to have

been surprised that Diomed's proposed jury charge (D.I. 197) includes instructions regarding the

doctrine of equivalents.  Indeed, the law is clear that it does not take much of a record to allow a

finding of infringement under the doctrine of equivalents, and Diomed has considerably more

evidence than necessary to meet this burden.  In one case, for example, the Federal Circuit

reversed a summary judgment decision that a particular product did not infringe under the

doctrine of equivalents. Wright Med. Tech., Inc. v. Osteoinics Corp., 122 F.3d 1440, 1445 (Fed.

Cir. 1997).  The Court found that one snippet of testimony – which did not even reference the

doctrine by name – was enough for jurors to have found infringement under the doctrine of

equivalents. Id.; see also Thorn EMI N. Am., Inc. v. Intel Corp, 936 F. Supp. 1186, 1192 (D.

Del. 1996) (allowing plaintiff to pursue a doctrine of equivalents theory on the basis of one

sentence in the pre-trial order summarizing a particular factual issue that the trial would resolve).

As Judge Young has emphasized, moreover, parties need not "particularize" evidence

related to the doctrine of equivalents. MIT v. Lockheed Martin Global Telecommc'ns, Inc., 251

F. Supp. 2d 1006, 1011-12 (D. Mass. 2003) (holding that it took an express waiver of the

equivalents argument, by letter, after inquiry on this subject at the summary judgment hearing, for the matter to be deemed waived).  See also Nat'l Presto Indus., W. Bend Co., 76 F.3d 1185, 1191 (Fed. Cir. 1996) (affirming infringement verdict under doctrine of equivalents and rejecting argument that the foundation for the function, way, and result test required any "formulaic exposition").

Here, AngioDynamics and VSI ground their motion on the irrelevant (and demonstrably false) theory that Diomed had never previously "notified" them about the doctrine of equivalents argument.  (D.I. 216 at 2)  Defendants have had such notice for years – at least since Diomed served interrogatories on both AngioDynamics and VSI requesting that the defendants explain their positions that they did not infringe "literally [or] under the doctrine of equivalents." (Interrogatory 16 to AngioDynamics; Interrogatory 12 to VSI, attached as Exs. A and B) (emphasis added).  It should have been clear to defendants that equivalents was an issue.  Any doubt could have been resolved at the summary judgment stage, had defendants chosen to do so. In any event, as decisions like Wright and MIT make clear, Diomed's only duty is to provide the underlying evidence – not to highlight it as relevant to some particular theory of infringement. Diomed has disclosed such evidence and the testimony discussed above, as well as that of Dr. Robert Min (a leading researcher and practitioner in this field, as well as co-inventor on the patent), will provide any linkage the jury may need.  If Diomed fails to so establish, then after the parties have rested, any issues regarding appropriate jury instructions may be raised at the charging conference.

## CONCLUSION

For the above reasons, the Court should deny the defendants' belated motion in limine and premature motion to limit the jury charge.

Respectfully submitted,

DIOMED, INC.

By its attorneys,

Dated: March 6, 2007

/s/ Michael A. Albert
Michael A. Albert (BBO #558566)
malbert@wolfgreenfield.com
Michael N. Rader (BBO #646990)
John L. Strand (BBO #654985)
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
(617) 646-8000

## CERTIFICATE OF SERVICE

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

/s/ Michael A. Albert