UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>VASCULAR SOLUTIONS, INC.,<br><br>    Defendant. | Civil Action No.: 04-10444-NMG |
| DIOMED, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>ANGIODYNAMICS, INC.,<br><br>    Defendant. | Civil Action No.: 04-10019-NMG |

### PROPOSED SPECIAL VERDICT FORM OF DEFENDANTS ANGIODYNAMICS, INC. AND VASCULAR SOLUTIONS, INC.

Pursuant to Fed.R.Civ.P. 49(a) and the Court's order of December 8, 2006, Defendants hereby submit their proposed special verdict form.

Respectfully submitted,

VASCULAR SOLUTIONS, INC.

By its counsel,

/s/ Steven L. Feldman
Steven L. Feldman (BBO #162290)
Ruberto, Israel & Weiner, P.C.
100 North Washington Street
Boston, Massachusetts 02114-2128
Telephone: (617) 742-4200

~and~

J. Thomas Vitt MN #183817
Heather D. Redmond MN #313233
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
Telephone: (612) 340-2600

**ANGIODYNAMICS, INC.**

By its counsel,

/s/ William H. Bright, Jr.
William H. Bright, Jr.
Mark D. Giarratana
McCarter & English, LLP
CityPlace I
185 Asylum Street
Hartford, Connecticut 06103
Telephone (860) 275-6700

*-and-*

Rodney S. Dowell (BBO #629016)
Berman & Dowell
210 Commercial Street
Boston, Massachusetts 02109
Telephone (617) 723-99911

Dated: February 26, 2007

2

I.  **QUESTIONS CONCERNING DEFENDANT VASCULAR SOLUTIONS, INC.**

   A.  **Questions concerning Diomed's allegations of direct infringement by VSI customers of the '777 Patent.**

   1.   Has Diomed proven by a preponderance of the evidence that physicians using VSI's Vari-Lase products and following VSI's instructions necessarily and deliberately put the uncoated tip of the laser fiber into physical contact with the wall of the blood vessel?

   Yes _____    No _____

   2.   Has Diomed proven by a preponderance of the evidence that physicians using VSI's Vari-Lase products and following VSI's instructions necessarily maintain the deliberately placed uncoated tip of the laser fiber in physical contact with the wall of the blood vessel while laser energy is being emitted?

   Yes _____    No _____

   3.   Has Diomed proven by a preponderance of the evidence that physicians using VSI's Vari-Lase products and following VSI's instructions necessarily cause a decrease in the diameter of the blood vessel solely by means of deliberate, maintained contact between the uncoated tip of the laser fiber and the wall of the blood vessel?

   Yes _____    No _____

   If you answered "Yes" to all three questions, please proceed to questions 4-6 concerning VSI. If you answered "No" to any one of the three questions, please skip the remaining questions concerning VSI and proceed to the questions concerning AngioDynamics beginning at question 9.

   B.  **Question concerning Diomed's allegations of inducement of infringement by VSI.**

   4.   Has Diomed proven by a preponderance of the evidence that VSI specifically intended to encourage physicians using its Vari-Lase products to infringe the '777 patent, and thereby induced infringement?

   Yes _____    No _____

**C. Questions concerning Diomed's allegations of contributory infringement by VSI.**

5. Has Diomed proven by a preponderance of the evidence that VSI knew that following its instructions for use of its Vari-Lase products would necessarily result in infringement of the '777 patent?

Yes _____   No _____

6. Has Diomed proven by a preponderance of the evidence that VSI's Vari-Lase products have no substantial non-infringing use?

Yes _____   No _____

If you answered "Yes" to question 4, or if you answered "Yes" to both questions 5 AND 6, please answer questions 7-8. If you answered "No" to question 4 AND answered "No" to either question 5 or 6, please skip questions 7-8 and proceed to the questions concerning AngioDynamics beginning at question 9.

**D. Questions concerning Diomed's allegations of damages and willful infringement.**

7. What amount of compensatory damages has Diomed proven by a preponderance of the evidence resulted from VSI's infringement?

_____

8. Has Diomed proven by clear and convincing evidence that VSI's infringement was willful?

Yes _____   No _____

**II. QUESTIONS CONCERNING DEFENDANT ANGIODYNAMICS, INC.**

**A. Questions concerning Diomed's allegations of direct infringement by AngioDynamics' customers of the '777 Patent.**

9. Has Diomed proven by a preponderance of the evidence that physicians using AngioDynamics' VenaCure products and following AngioDynamics' instructions necessarily and deliberately put the uncoated tip of the laser fiber into physical contact with the wall of the blood vessel?

Yes _____   No _____

4

10. Has Diomed proven by a preponderance of the evidence that physicians using AngioDynamics' VenaCure products and following AngioDynamics' instructions necessarily maintain the deliberately placed uncoated tip of the laser fiber in physical contact with the wall of the blood vessel while laser energy is being emitted?

Yes _____   No _____

11. Has Diomed proven by a preponderance of the evidence that physicians using AngioDynamics' VenaCure products and following AngioDynamics' instructions necessarily cause a decrease in the diameter of the blood vessel solely by means of deliberate, maintained contact between the uncoated tip of the laser fiber and the wall of the blood vessel?

Yes _____   No _____

If you answered "Yes" to all three of questions 9-11, please proceed to questions 12-14 concerning AngioDynamics. If you answered "No" to any one of questions 9-11, please skip the remaining questions concerning AngioDynamics.

**B.   Question concerning Diomed's allegations of inducement of infringement by AngioDynamics.**

12. Has Diomed proven by a preponderance of the evidence that AngioDynamics specifically intended to encourage physicians using its VenaCure products to infringe the '777 patent, and thereby induced infringement?

Yes _____   No _____

**C.   Questions concerning Diomed's allegations of contributory infringement by AngioDynamics.**

13. Has Diomed proven by a preponderance of the evidence that AngioDynamics knew that following its instructions for use of its VenaCure products would necessarily result in infringement of the '777 patent?

Yes _____   No _____

14. Has Diomed proven by a preponderance of the evidence that AngioDynamics' VenaCure products have no substantial non-infringing use?

Yes _____   No _____

If you answered "Yes" to question 12, or if you answered "Yes" to both questions 13 AND 14, please answer questions 15-16. If you answered "No" to question 12 AND answered "No" to either question 13 or 14, please skip questions 15-16.

5

**D. Questions concerning Diomed's allegations of damages and willful infringement.**

15. What amount of compensatory damages has Diomed proven by a preponderance of the evidence resulted from AngioDynamics' infringement?

_____

16. Has Diomed proven by clear and convincing evidence that AngioDynamics' infringement was willful?

Yes _____    No _____

_____          Date: _____
Foreperson

6

## CERTIFICATE OF SERVICE

I hereby certify that this document is being filed on this 26th day of February, 2007, through the Court's electronic filing system, which serves electronically counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail, postage prepaid, on this same date.

/s/ Steven L. Feldman, Esq.

U:\CPR\Steven Feldman\Vascular Solutions\Diomed Patent\Trial\VSI - Special Verdict Form.doc