UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC.,<br><br>　　Plaintiff,<br><br>v.<br><br>VASCULAR SOLUTIONS, INC.<br><br>　　Defendant. | Civil Action No.: 04-10444 NMG |
| DIOMED, INC.<br><br>　　Plaintiff,<br><br><br><br>ANGIODYNAMICS, INC.<br><br>　　Defendant. | Civil Action No.: 04-10019-NMG |

### DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO LIMIT THE JURY CHARGE TO LITERAL INFRINGEMENT

Defendants Vascular Solutions, Inc. and AngioDynamics, Inc. respectfully submit this Supplemental Memorandum in Support of Defendants' Motion to Limit the Jury Charge to Literal Infringement. First, as set forth in defendants' March 5, 2007 Memorandum, Diomed is not entitled to make an equivalents claim in this case. Its disclosures were untimely; the Court's claim construction and Diomed's patent preclude Diomed's claim of equivalence by side emission; and equivalents claims are not allowed in the type of means-plus-function limitation at issue here. *See* Document No. 216-1.

Second, even if Diomed were entitled to bring its equivalents claim on the eve of trial, it has produced insufficient evidence to allow the jury to conclude that either defendant infringes the '777 patent under the doctrine of equivalents.

### A. Side-Firing Is Not Equivalent To Deliberate, Maintained Contact With The Uncoated Tip Of The Laser Fiber

Diomed's first equivalents claim apparently is that the escape of laser energy through the side of the laser fiber (at some unidentified time during the procedure when the original cladding has started to degrade) is equivalent to a physician deliberately maintaining the uncoated tip of the laser fiber (defined by the Court as the "very end" of the fiber) in physical contact with the wall of the blood vessel, as required by the '777 patent.

Defendants described in their initial brief the heavy burden Diomed must meet to establish equivalents. *See* Document No. 216-1 at 4-5, *quoting Aquatex Indus., Inc. v. Techniche Solutions*, --- F.3d ---, 2007 WL 582392, at *5 (Fed. Cir. Feb. 27, 2007) (plaintiff must provide particularized testimony and linking argument on a limitation by limitation basis). Diomed did not come close to meeting that burden.

While Dr. Navarro testified that laying the side of the laser fiber against a piece of raw liver leaves a trace of carbon and a trench, *see, e.g.*, March 13, 2007 Tr. at 41-43, he provided no particularized testimony describing the claim limitations; establishing that those skilled in the art would recognize as an equivalent the unintentional escape of laser energy out the side of the cladded fiber; or opining that side-firing has only insubstantial differences with the patented method in terms of function, way, and result. Similarly, the most specific testimony Dr. Min provided was that it doesn't matter which part of the laser emitting section of the laser fiber tip makes contact with the vein wall. *See* March 14, 2007 Tr. at 50-51. No reasonable jury could base a conclusion of equivalents on such vague testimony. *See Aquatex*, 2007 WL 582392, at *5

("Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice.").

In addition, Dr. Anderson – who himself has never performed an endovenous laser procedure – offered the conclusory opinion that there is no qualitative difference between light that is emitted from the flat face and light that is emitted from the sides. *See* March 15, 2007 Tr. at 45-46. However, he offered no testing to confirm his opinion. He provided no analysis of the amount of energy that is emitted from the previously-cladded sidewalls of the laser fiber during defendants' procedures, or that such energy would be sufficient to be the cause of the reduction in diameter of the blood vessel.

In fact, none of Diomed's experts provided any testimony on which the jury could base a decision that light escaping from the formerly-cladded sidewalls performs the same function, in the same way, with the same result, as deliberate physical contact with the flat front face of the laser fiber tip. The jury has not been told that a sufficient amount of energy comes out of the sides at an early enough point in defendants' procedures to be the cause of decreasing the diameter of the blood vessel (as opposed to steam bubbles or heated blood). In fact, Dr. Anderson admitted that he doesn't know when during the procedure the degradation that appears at the end of the procedure occurs. *See* March 15, 2007 Tr. at 78. The jury has not been told how long it would take to decrease the diameter of the vein based soley on sidewall laser emission, the temperature the sidewalls must reach in order to cause the result, or exactly how much energy is necessary to cause the desired result. Diomed also has offered insufficient evidence that any side-firing occurring during procedures based on defendants' instructions for use causes the desired result.

Finally, none of Diomed's experts have testified that the escape of laser energy from the previously-cladded portion of the laser fiber is equivalent to *deliberately* putting and maintaining the *uncoated* tip of the laser fiber in physical contact with the vessel wall. There is nothing deliberate about the process Diomed's experts describe. Dr. Navarro admits that the purpose of the cladding along the side of the laser fiber is "to prevent the laser energy from getting out." March 13, 2007 Tr. at 87. Dr. Anderson agreed. *See* March 15, 2007 Tr. at 73 (purpose of cladding is to keep the optical radiation in the core of the fiber and to get it to come out the front of the fiber). Side-firing – an unintentional by-product of the high temperatures present during the procedure – is, in fact, the opposite of any deliberate action.

### B.  Intermittent or Sporadic Contact Is Not Equivalent To Deliberate Contact Maintained While Laser Energy Is Emitted

Diomed also argues that, even if the fiber tip occasionally ceases contact with the vein wall during the procedure, the jury could find that to be equivalent to the method taught in the '777 patent. Allowing Diomed to make the argument would vitiate numerous limitations of the '777 patent as construed by the Court.

Again, Diomed cannot meet its burden under *Aquatex*. There has been no particularized testimony establishing the amount of time it is acceptable for the uncoated tip to be out of contact with the vessel wall. While Diomed tries to cast a wide net by arguing that "briefly ceasing" contact is still equivalent, there has been no evidence, for example, that one second of contact occurring once during the procedure is sufficient to decrease the diameter of the blood vessel, or that twenty seconds would be sufficient. In addition, there is no evidence in the record to allow the jury to determine in such a hypothetical procedure the amount of damage that would be caused by the intermittent contact with the vessel wall, as opposed to energy reaching the vein wall through steam bubbles or heated blood. By contrast, the '777 patent requires that the tip-

4

interior surface of the fiber maintain physical contact with the vein wall while laser energy is emitted "to decrease the diameter of the blood vessel."

In addition, the Court already held that claim 9 requires **deliberate, maintained** contact with the vessel wall while the laser energy is fired. The type of contact Diomed describes is the *opposite* of deliberate, maintained contact. Diomed's argument would improperly eliminate those requirements.

Accordingly, defendants respectfully request that the Court limit the jury charge to literal infringement.

Respectfully submitted,

Dated: March 22, 2007

**I hereby certify that a true copy of the above document was served upon the attorney of record for the Plaintiff Diomed, Inc. by electronic mail.**

**/s/ William H. Bright, Jr.**

THE DEFENDANT,
ANGIODYNAMICS, INC.

By  /s/ William H. Bright, Jr.
    William H. Bright, Jr.
    *wbright@mccarter.com*
    Mark D. Giarratana
    *mgiarratana@mccarter.com*
    McCARTER & ENGLISH, LLP
    CityPlace I
    Hartford, CT  06103
    Phone:  (860) 275-6700

THE DEFENDANT,
VASCULAR SOLUTIONS, INC.

By  /s/  Thomas Vitt
    Thomas Vitt
    *Vitt.Thomas@Dorsey.com*
    Heather Redmond
    *Redmond.Heather@Dorsey.com*
    DORSEY & WHITNEY LLP
    50 South Sixth Street
    Minneapolis, MN 55402-1498
    Phone:  (612) 340-5675