IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC.,<br><br>     Plaintiff,<br><br>v.<br><br>ANGIODYNAMICS, INC,<br><br>     Defendant. | Civil Action No. 04-10019 NMG |
| DIOMED, INC.,<br><br>     Plaintiff,<br><br>v.<br><br>VASCULAR SOLUTIONS, INC.,<br><br>     Defendant. | Civil Action No. 04-10444 NMG<br>**(CONSOLIDATED UNDER<br>04-10019 NMG)** |

**SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
TO LIMIT THE JURY CHARGE TO LITERAL INFRINGEMENT**

Diomed has adduced expert testimony during trial specifically addressing both (1) the equivalence between the effects of laser energy emitted from the flat face at the end of the laser fiber tip and that emitted from the surrounding uncoated sides of the tip and (2) the equivalence of the function, mechanism, and result of laser vein treatment during constant contact versus procedures in which brief moments of non-contact may arguably occur.  Accordingly, Diomed is entitled to a jury instruction regarding infringement under the doctrine of equivalents.

## ARGUMENT

The evidence presented at trial provides ample evidence from which a jury may find infringement under the doctrine of equivalents.

Indeed, the doctrine is particularly well-suited for the present case, in which defendants are trying to avoid the clear import of the patent by contending to the jury that (1) a laser fiber "tip" consists solely of the flat front face at the very end of the fiber's unjacketed end-portion (rather than that whole end-portion as in common usage)[1] and (2) that the tip is at least occasionally not in contact with the vein wall. Even if the jurors reached such (unfounded) factual conclusions, they should still be entitled to find that the procedure is in all material respects identical to the one that Drs. Min and Navarro and their colleagues developed and patented.

The doctrine of equivalents provides that a claim limitation not literally met may be satisfied by an element of an accused method if the differences between the two are "insubstantial" to persons of ordinary skill in the relevant art. E.g., Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp., 320 F.3d 1339, 1351 (Fed. Cir. 2003) (affirming verdict that method claim was infringed under the doctrine of equivalents). One way to assess this question is to consider whether the relevant element of the accused method performs substantially the same function in substantially the same way to achieve substantially the same result. E.g., Riles v. Shell Exploration & Prod. Co., 298 F.3d 1302, 1309 (Fed. Cir. 2002) (affirming jury verdict that defendant infringed method claim under doctrine of equivalents); Laitram Corp. v. Cambridge Wire Cloth Co., 863 F.2d 855, 857 (Fed. Cir. 1988) (reversing

---

[1] Diomed has presented evidence that the defendants would be liable even if jurors adopted this perspective of "tip" when making their findings of fact. There is no guarantee that the jury will credit this material, however. Accordingly, omitting an instruction regarding the doctrine of equivalents would be prejudicial.

district court and holding that competitor infringed patents under the doctrine of equivalents; noting that the doctrine counterbalances the "unsparing" nature of literal infringement analysis and prevents parties from misappropriating the benefits of inventions on the weight of technicalities).

      Here, the expert testimony of Dr. Rox Anderson and Dr. Luis Navarro allows jurors to conclude that contact between the vein wall and the uncoated sides[2] of the laser fiber achieves substantially the same function as contact with the flat front face – damaging the vein wall tissue – in substantially the same way (direct absorption of light energy) to achieve the same result – fibrosis leading to permanent closure of the varicose vein. The patent in suit itself emphasizes that the object of the invention is to cause "direct endothelial and vein wall damage with subsequent fibrosis." (Col. 3, lines 3-5). Dr. Anderson has testified that there is no "qualitative difference" between light that is emitted from the flat front face of the fiber and light that is emitted from the sides. (March 15, 2007 Trial Transcript, pages 45-46). In both cases, contact between the vein wall and the relevant light-emitting portion of the fiber delivers "more than enough" energy to do the job. (Id. at 46). Dr. Navarro likewise testified about his experiments that revealed the exact same "footprint" of carbonization and trenching regardless of whether he used the extreme end of the fiber or the partially-degraded side to make contact with the tissue. (March 14, 2007 Trial Transcript, page 45).

      Moreover, Dr. Min explained to the jury that making contact between the fiber tip and the vein wall for most of the time while the laser is fired is equivalent to making contact throughout the procedure:

---

[2] As Dr. Navarro and others have testified – and demonstrated through experiments and other evidence – the high temperature of the laser fiber during treatment degrades the cladding that coats the sides of unused fibers, making those sides a laser-emitting portion of the fiber.

> Q. Now, if, for whatever reason, either – for any reason there are moments in which the tip of the fiber comes out of contact for a moment, will that have any substantial impact on the – with respect to the effect of the procedure?
>
> A. If there is a segment, a small segment that was missed but the majority of the vein was in contact with the laser fiber, the procedure, in all likelihood, would still be successful.

(March 14, 2007 Trial Transcript, page 50). In short, keeping the tip of the laser fiber in contact with the vein wall for almost all of the procedure serves the same function in the same way to achieve the same result as maintaining contact for literally the *entire* time when the laser is being fired. Any difference in the amount of energy delivered (and the extent of resultant damage) would be the sort of "trivial" distinction for which the doctrine of equivalents exists. See Ericcson, Inc. v. Harris Corp., 352 F.3d 1369, 1374-75 (Fed. Cir. 2003) (reversing district court and reinstating jury verdict that product infringed patent claim). In Ericcson, the Federal Circuit considered a claim directed to a telephone signal amplifier that supplied power only when the telephone was out of the cradle. Id. at 1374. The Court refused to let a competitor off the hook just because the company's product did not meet this limitation literally all of the time. Id. at 1375. Here, by the same token, testimony amply supports a finding that any moments of non-contact are immaterial to the function, mechanism, or results of the procedure.

## CONCLUSION

For the above reasons and those detailed in Diomed's Opposition to Defendants' Motion to Limit the Jury Charge to Literal Infringement (D.I. 219), the Court should include Diomed's

proposed doctrine of equivalents instruction in the jury charge.

Respectfully submitted,

DIOMED, INC.

By its attorneys,

Dated: <u>March 22, 2007</u>        /s/ Michael A. Albert
                                    Michael A. Albert (BBO #558566)
                                    malbert@wolfgreenfield.com
                                    Michael N. Rader (BBO #646990)
                                    John L. Strand (BBO #654985)
                                    WOLF, GREENFIELD & SACKS, P.C.
                                    600 Atlantic Avenue
                                    Boston, MA 02210
                                    (617) 646-8000

## CERTIFICATE OF SERVICE

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

                                    /s/ Michael A. Albert