IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC.,<br><br>  Plaintiff,<br><br>v.<br><br>ANGIODYNAMICS, INC,<br><br>  Defendant. | Civil Action No. 04-10019 NMG |
| DIOMED, INC.,<br><br>  Plaintiff,<br><br>v.<br><br>VASCULAR SOLUTIONS, INC.,<br><br>  Defendant. | Civil Action No. 04-10444 NMG<br>**(CONSOLIDATED UNDER 04-10019 NMG)** |

**MEMORANDUM IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION**

Plaintiff Diomed, Inc. ("Diomed") respectfully requests that the Court enter a permanent injunction pursuant to 35 U.S.C. § 283 enjoining the defendants AngioDynamics, Inc. ("AngioDynamics") and Vascular Solutions, Inc. ("VSI") from making, using, selling, offering for sale or importing into the United States VSI's Vari-Lase lasers and kits and AngioDynamics' VenaCure lasers and kits, and any products no more than colorably different from those products. Fed. R. Civ. P. 65(d). Filed herewith is a copy of Diomed's proposed Order.

**INTRODUCTION**

On March 28, 2007, the jury returned a verdict finding that both AngioDynamics and VSI induced infringement of and contributed to infringement of claim 9 of U.S. Patent No. 6,398,777 ("the '777 patent") through their sales of Vari-Lase lasers and kits ("Vari-Lase products") and

VenaCure lasers and kits ("VenaCure products").  By prior stipulation of the parties, the jury's verdict also means that AngioDynamics and VSI have been found to induce infringement of, and contributorily infringe, claims 10-14, 16-19, and 21 of the '777 patent.  (D.I. 213).

Diomed requests an injunction to stop sales by the defendants of infringing products.  An injunction is an appropriate remedy, contemplated by the Patent Act (35 U.S.C. § 283), as Diomed clearly meets the traditional "four factor" injunction test: (1) Diomed would suffer irreparable harm without an injunction, (2) any remedies at law are inadequate to compensate Diomed for the defendants' unabated infringement, (3) the balance of hardships tips heavily in Diomed's favor, and (4) the public interest would be served by a permanent injunction.  eBay Inc. v. MercExchange LLC, 126 S.Ct. 1837, 1839 (2006).  For these reasons, explained more fully below, this Court should enjoin AngioDynamics' and VSI's sales of infringing products.

## ARGUMENT

As the Supreme Court recognized in the eBay case, courts historically "have granted injunctive relief upon a finding of infringement in the vast majority of patent cases." eBay, 126 S.Ct. at 1841 (JJ. Roberts, Scalia, Ginsburg concurring).  This long-established practice flows from the fact that patents, by definition, provide a right to exclude others from practicing the invention in the United States.  35 U.S.C. § 154(a)(i) ("Every patent shall contain . . . a grant to the patentee, his heirs or assigns, of the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States . . .").  While eBay explained that district courts have discretion in the granting of grant permanent injunctions in patent cases based on the traditional four-factor test, the Chief Justice noted that "[w]hen it comes to discerning and applying those standards, in this area as others, 'a page of history is worth a volume of logic.'"  Id. at 1842.  In this case, the

Court should follow the "page of history" established by the many courts before it and grant a permanent injunction given that Diomed has established:

(1) that it has suffered an irreparable injury;
(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
(4) that the public interest would not be disserved by a permanent injunction.

eBay, 126 S.Ct. at 1839.  Both before and since eBay, courts routinely grant permanent injunctions after findings of infringement, especially when – as here – the infringers are direct competitors of the patentee in the same market.  See, e.g., O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 2007 WL 869576, at *3 (E.D.Tex. March 21, 2007) (the fact that the infringer was a competitor "weighs heavily in the Court's analysis"); Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp., 2006 WL 3813778, at *3 (S.D. Tex. Dec. 27, 2006) (granting injunction because the infringer was unable to cite "any case in which a continuing infringer in direct competition with a patent holder has not been permanently enjoined from using the patented invention to compete against the patent holder").

I. **DIOMED HAS SUFFERED AND WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION.**

Diomed has suffered and will suffer irreparable harm absent this Court enjoining VSI's and AngioDynamics' infringing activity.  Diomed suffers several types of irreparable harm.

*Presumption of Irreparable Harm.*  The right to exclude lies at the core of the Patent Act. Accordingly, courts routinely apply a presumption of irreparable harm when evaluating the four factor test.  Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368, 1383 n. 9 (Fed. Cir. 2006) (post-eBay) (affirming district court's application of presumption of irreparable harm in preliminary injunction context after finding likelihood of success).  As Diomed has already succeeded at trial,

the Court should apply a presumption that Diomed is and will be irreparably harmed based on the Patent Act's right to exclude.

*Continued Infringement Deprives Diomed of the Right to Exclude*. A patent is a property right allowing its owner the right to exclude others. Schenck v. Norton Corp., 713 F.2d 782, 786 n. 3 (Fed. Cir. 1983) (noting that a patent is property and that "the patent right is but the right to exclude others, the very definition of 'property'"). In this case, a jury has found that AngioDynamics and VSI infringed the '777 patent in two distinct ways (inducing infringement and contributory infringement), thus depriving Diomed of its right to exclude. The defendants will continue to irreparably deprive Diomed of the right to exclude unless enjoined. As extensively documented at trial, Diomed's entire business is built around this pioneering technology. It invested not only in acquiring the patent rights but in educating the medical community about this novel technique and otherwise developing the market. It did so based on the expectation that its property rights would be respected and that others would be excluded from free-riding on its proprietary technology.

*Defendants' Continued Infringement Would Cause Diomed to Continue to Lose Market Share and Customers.* Diomed currently occupies about 35 percent of the endovenous laser ablation market, while AngioDynamics occupies about 27 percent and VSI about 10 percent. (Tr. Ex. 1183, 2006 Millennium Report, p. 65). Diomed's share of this market will continue to erode if the defendants are allowed to continue to infringe the '777 patent. Market share erosion is irreparable harm to a patent holder. Purdue Pharma L.P. v. Boehringer Ingelheim Gmbh, 237 F.3d 1359, 1367 (Fed. Cir. 2001) (upholding finding of irreparable harm based on loss of market position). Moreover, the harm is especially egregious in the "razor" and "razor blade" type of market in which Diomed operates: if Diomed is deprived of its ability to make the sale of a laser (a razor) because of the presence of the infringers, it is virtually guaranteed likewise to lose the

subsequent fiber kit (razor blade) sale. (Testimony of J. Wylie, (Day 3, p. 55, ll. 5-20)). Therefore, Diomed irreparably loses that customer to an infringing competitor. Diomed is not able to serve its share of the market given the presence of the infringers.

*Defendants' Continued Infringement Will Encourage Others to Infringe*. Since Diomed launched the innovative endovenous laser procedure in the United States in January of 2002, several other companies, including the defendants, have attempted to enter the market without properly and fairly compensating the patent-holder. (Tr. Ex. 1183, Millennium Research Report 2006, p. 65 (setting forth competitors in endovenous laser ablation market)). These infringers will continue to enter the market, undercut Diomed's prices (which include compensation to the inventors), and cause Diomed irreparable harm unless an injunction is granted. P.N.A. Const. Tech., Inc. v. McTech Group, Inc., 414 F. Supp. 2d 1228, 1242 (N.D. Ga. 2006) (recognizing that the "failure to enjoin will encourage other infringers" as part of irreparable harm analysis) (citing Hybritech Inc. v. Abbott Labs., 849 F.2d 1446, 1456 (Fed. Cir. 1988)).

*Diomed's Practice is to Not Grant Licenses*. Diomed purchased the rights to the '777 patent as part of the company's core technology. It has never granted a license to the patent to others, and has no intention ever to license the patent in the future. (Testimony of J. Wylie (Day 3, p. 81, ll. 25 – p. 82, ll. 8)). In granting permanent injunctions, courts have recognized that such a history and practice indicates that Diomed has made a legitimate business judgment that no monetary award can adequately compensate Diomed for the defendants' infringing activities. 3M Innovative Properties Co. v. Avery Dennison Corp., 2006 WL 2735499, at *1 (D. Minn. Sept. 25, 2006) (granting a permanent injunction because "[t]he Court will not disturb [the patentee's] determination that its business interests will not be served by the licensing of this product.")

*Defendants' Continued Infringement Trades on Diomed's and the Inventors' Investment and Goodwill in the Patented Method.*  Diomed has made substantial investments in developing the endovenous laser vein treatment market and educating doctors about the technology. (Testimony of J. Wylie (Day 3, p. 55, ll. 21 – p. 56, ll. 2); Testimony of J. Welch (Day 3, p. 131, ll. 20 – p. 133, ll. 5)).  If AngioDynamics and VSI were allowed to continue to infringe the '777 patent, they would be trading improperly on Diomed's goodwill and the investment that Diomed has made in creating and developing this market.  Diomed's goodwill has been and will be irreparably harmed by the defendants' continued infringing sales.

For these reasons, Diomed has been and will be irreparably harmed by AngioDynamics' and VSI's continued infringement absent entry of an injunction.

## II.     MONETARY DAMAGES ARE INSUFFICIENT TO COMPENSATE DIOMED FOR THE DEFENDANTS' CONTINUED INFRINGEMENT.

As set forth above, AngioDynamics and VSI have injured Diomed, and the endovenous laser vein ablation market, in multiple ways by their continued infringement.  These injuries cannot be compensated by a monetary award alone.  Indeed, the injuries, especially the market injuries, may never be quantified.  To prevent further injury, the Court should issue an injunction as is routine in such cases.

Absent an injunction, Diomed likely would never be able to quantify how many infringers have entered the market due to the defendants' continued flouting of Diomed's patent rights and the jury's verdict.  In addition, it would be virtually impossible for Diomed to quantify how large the market might have been if Diomed, free from the pressure of infringers, had been permitted to pursue its business plan of growing the market, instead of expending marketing resources competing with the infringers.  (Testimony of J. Welch (Day 3, p. 149, ll. 22 – p. 150, ll. 6).  Nor will monetary damages ever compensate Diomed for the market share it has already

lost, and will continue to lose, if no injunction is granted. Without an injunction, other infringers are also likely to enter the market, further eroding Diomed's share, and likely forcing market prices down. Injunctions are commonly issued in patent cases in an attempt to redress precisely these types of injuries. MPT, Inc. v. Marathon Labels, Inc., -- F.3d --, 2007 WL 184747, at *15 (Fed. Cir., Jan. 19, 2007) (upholding grant of permanent injunction; finding that monetary damages were not adequate to compensate for the erosion of market share, the entry of other infringers, and the likely subsequent drop in prices).

### III. DEFENDANTS WILL SUFFER NO COGNIZABLE HARM BY THE ISSUANCE OF AN INJUNCTION.

The balance of hardships tips heavily in Diomed's favor in this case: if an injunction is not granted, Diomed's market share will continue to erode and other infringers will enter the market, depriving Diomed of the value of its investment in the patent and decimating its core business. If injunctive relief is granted, AngioDynamics and VSI will no longer be able to sell VenaCure and Vari-Lase products, which make up only a relatively small percentage of those companies' total sales.

Diomed's entire business is built around its endovenous laser vein treatment products. (Testimony of J. Wylie (Day 3, p. 55, ll. 21 – p. 56, ll. 1)). On the other hand, only about 15 percent of AngioDynamics' sales in 2006 were of VenaCure products and only about 16 percent of VSI's sales in 2006 were of Vari-Lase products. (AngioDynamics' June 3, 2006 10-K, p. 11; VSI's December 31, 2006 10-k, p. 26 (excerpts of each attached as Exhibit A). Therefore, if the defendants are forced to stop selling infringing products, they will suffer comparatively little hardship. On the other hand, if Diomed's property rights are trespassed on, and a portion of its market turned over to the infringers, Diomed would be deprived of the fundamental right that a patent grants: the right to exclude. The balance of hardships tips powerfully in Diomed's favor.

- 7 -

**IV.     AN INJUNCTION WILL SERVE THE PUBLIC INTEREST.**

One of the primary purposes of the patent system is to encourage innovation. The Federal Circuit has found that the "encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude." Patlex Corp. v. Mossinghoff, 758 F.2d 594, 599 (Fed. Cir. 1985). The inventive procedure described and claimed in the '777 patent is relegating the painful physical stripping of varicose veins to its proper place as a historical relic. The U.S. patent system helped foster the development of this procedure and other companies should not now be able to abuse Diomed's patent rights just because Diomed is trying to protect and properly compensate the inventors for their invention. The public interest is served by continuing to encourage other doctors and companies to come up with better ways to serve the public's medical needs. See Sanofi-Synthelabo, 470 F.3d at 1383-84 (affirming grant of injunction when district court found public interest served by promoting innovation of patented drugs, even despite risk of increased costs to patients).

## CONCLUSION

For the reasons set forth above, Diomed respectfully requests the Court enter a permanent injunction in the form filed along with this memorandum.

                              Respectfully submitted,
                              DIOMED, INC.
                              By its attorneys,

Dated: March 30, 2007              /s/ Michael A. Albert
                              Michael A. Albert (BBO #558566)
                              malbert@wolfgreenfield.com
                              Michael N. Rader (BBO #646990)
                              John L. Strand (BBO #654985)
                              WOLF, GREENFIELD & SACKS, P.C.
                              600 Atlantic Avenue
                              Boston, MA 02210
                              (617) 646-8000

- 9 -

## CERTIFICATE OF SERVICE

      I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF).  Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

                                        /s/ Michael A. Albert