THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANGIODYNAMICS, INC, <br><br> Defendant. | Civil Action No. 04-10019 NMG |
| DIOMED, INC., <br><br> Plaintiff, <br><br> v. <br><br> VASCULAR SOLUTIONS, INC., <br><br> Defendant. | Civil Action No. 04-10444 NMG <br> **(CONSOLIDATED UNDER 04-10019 NMG)** |

## DECLARATION OF PHILIP GREEN

1. I, Philip Green, am a founding principal in the consulting firm of Hoffman Alvary & Company LLC. As part of my work, I am regularly involved in the valuation and licensing of intellectual properties – including patents related to consumer products, electronics and pharmaceuticals.

2. I have been retained by Wolf, Greenfield and Sacks, P.C., counsel for Diomed, Inc. ("Diomed") to provide an independent and objective opinion of the damages that Diomed suffered as a result of AngioDynamics, Inc.'s ("AngioDynamics") and Vascular Solutions Inc.'s ("VSI") infringement of U.S. Patent No. 6,398,777. I provided such an opinion during the recent trial in this matter. I have also been asked to provide independent and objective opinions

concerning the post-judgment damages that Diomed has suffered and an appropriate calculation of prejudgment interest.

3. Attached to this declaration as exhibits are several charts that I created that summarize my opinions concerning post-judgment damages and the calculation of prejudgment interest.

4. Exhibit A shows the percentage of Diomed's claims for damages that were awarded by the jury. By my calculations, the jury awarded 100 percent of Diomed's lost profits damages claims against VSI but no price erosion damages. The jury awarded 64.3 percent of Diomed's lost profits damages claims against AngioDynamics.

5. Exhibit B shows Diomed's post-judgment damages that correspond to the jury's award. This summary includes damages on the sales of VSI products not originally part of the judgment ("Dual Clad fibers") and damages on those sales made by both defendants in February and March, 2007. To calculate the damages on sales from February and March, I assumed that AngioDynamics and VSI made the same number of sales in February and March as they did in January 2007. In my opinion, using January's numbers for February and March is a conservative approach because VSI's and AngioDynamics' sales have generally been increasing over the last year and tend to be the lowest in the first month of any calendar quarter.

6. Exhibit C shows the daily rate at which damages from after January 31, 2007 would be calculated in order to apply the rate awarded by the jury. It is my understanding that AngioDynamics and VSI are continuing to infringe the `777 patent by selling the same products they sold prior to judgment. By my calculation, following the rate applied by the jury, Diomed should be awarded daily damages at a rate of $4,946 per day against VSI and $11,045 per day against AngioDynamics until these sales cease. This calculation sets forth simple compensatory

damages only.  Should the Court determine that post-verdict infringement has been willful, my understanding is that these amounts could be trebled in the discretion of the Court.

      7.      Exhibit D sets forth my opinions concerning the prejudgment interest that Diomed should be awarded against VSI.  These calculations were made at the bank prime rate as reported in the Wall Street Journal, compounding the interest quarterly.  These calculations are for all infringing sales through March 31, 2007 (including Dual Clad fibers).

      8.      Exhibit E is a true and accurate summary of my opinions concerning the prejudgment interest that Diomed should be awarded against AngioDynamics.  These calculations were made at the bank prime rate, compounding the interest quarterly.  These calculations include AngioDynamics' infringing sales though March 31, 2007.

      9.      A calculation of a company's "weighted average cost of capital," or WACC, represents the weighted average of those rates at which a company acquires capital, either through equity or debt.  Because Diomed relied heavily on equity financing to fund its operations during the time VSI and AngioDynamics were infringing the `777 patent, Diomed's WACC is relatively high.  I have calculated Diomed's WACC to be approximately 22 percent.  This percentage represents the weighted average rate at which Diomed acquired its debt and equity capital during the past few years.

      10.      I understand that Diomed's actual debt agreements require it to pay interest at the rate of four percentage points above the London Interbank Offered Rate (LIBOR + 4%).  This rate is currently equal to 9.23 percent.

      11.      I understand that one of the objectives of an award of prejudgment interest is to compensate for foregone use of the money the plaintiff would have had absent the infringement.

In Diomed's case, absent the infringement, it would have had additional funds that would have materially reduced its needs for debt and equity financing.

12.     Today, the annual bank prime loan rate is 8.25 percent. Considering that Diomed's actual weighted cost of capital during the time period of the infringement was in the range of 22%, and that its cost of debt alone was higher than the prime rate, using the bank prime rate to calculate prejudgment interest is a conservative approach to awarding prejudgment interest to Diomed.

I swear under the pains and penalties of perjury that the foregoing is true and accurate.

Dated: April 12, 2007

_____
Philip Green