IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>ANGIODYNAMICS, INC,<br><br>    Defendant. | Civil Action No. 04-10019 NMG |
| DIOMED, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>VASCULAR SOLUTIONS, INC.,<br><br>    Defendant. | Civil Action No. 04-10444 NMG<br>**(CONSOLIDATED UNDER<br>04-10019 NMG)** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF DIOMED'S
MOTION TO AMEND JUDGMENT TO INCLUDE POST-JUDGMENT SALES**

Diomed respectfully requests that the Court amend its judgment entered on March 30, 2007 (D.I. 229) and order defendants VSI and AngioDynamics to pay an accounting for their infringing sales made after January 31, 2007 -- the latest date for which financial data was presented to the jury.

An accounting is a standard remedy in a patent case where, as here, the defendants have continued to sell infringing products after the time period covered by the judgment. The accounting provides the patent owner with full compensation through the date that the permanent injunction is entered.

In addition, because the defendants in this case refused to stop infringing even after the jury's verdict and entry of judgment by the Court, their subsequent infringement is willful as a matter of law. As to those sales, Diomed accordingly requests that the Court enter a judgment of willfulness and award Diomed treble damages and attorneys fees. 35 U.S.C. § 285.

## ARGUMENT

**I.    ACCOUNTINGS IN PATENT CASES ARE ROUTINELY AWARDED FOR SALES NOT INCLUDED IN THE ORIGINAL JUDGMENT.**

An accounting of damages incurred after the time period addressed by the jury's verdict is necessary to fully compensate the patent holder for the infringement. See 35 U.S.C. § 284 ("Upon a finding for the claimant the court shall award the claimant damages **adequate to compensate for the infringement**.") (emphasis added). The accounting addresses two different time periods: (a) the period between the sales data presented at trial and the jury's verdict, and (b) post-verdict sales. See, e.g., Technology for Energy Corp. v. Computational Systems, Inc., 1992 WL 535791, *3 (E.D. Tenn., July 29, 1992) (ordering an accounting for time period between the data presented at trial and the date of the verdict because the "parties agreed to try the lawsuit with the latest accounting figures that CSI had available."); National Instruments Corp. v. Mathworks, Inc., 2003 WL 24049230, at *4 (E.D. Tex., June 23, 2003) (awarding an accounting for post-verdict sales because a "failure to award such damages would grant an infringer a windfall by enabling it to infringe without compensating a patentee for the period of time between the jury's verdict and the judgment.").

Amendment of the judgment to provide an accounting covering both time periods is standard practice to compensate the patent owner, contemplated by the Federal Rules of Civil Procedure themselves. See Fed. R. Civ. P. 62(a) (stating that an appeal does not stay certain proceedings pending appeal, including "a judgment or order directing an accounting in an action

for infringement of letters patent"); Mikohn Gaming v. Acres Gaming, Inc., 2001 WL 34778689, at *18 (D. Nev., Aug. 2, 2001) (granting motion under Rule 59(e) to amend judgment and finding that Rule 62 "makes clear that Congress contemplated accountings in patent actions. . . . Congress's provision regarding accountings in patent actions evidences its intent that accountings will at times be ordered.  Given that evidence of intent and the apparently **standard practice of ordering accountings**, the court finds it proper to order an accounting in this case.") (emphasis added); Floe Intern., Inc. v. Newmans' Mfg. Inc., 2006 WL 2472112, at *9 (D. Minn., Aug. 23, 2006) (amending judgment for an accounting) (citing Stryker Corp. v. Davol, Inc., 75 F. Supp. 2d 746, 747 (W.D. Mich. 1999)).

In this case, even after receiving the jury's infringement verdict and entry of judgment by the Court, both defendants have continued to infringe the `777 patent by selling the same kits and lasers for endovenous laser treatments.  See Decl. of John Strand ("Strand Decl.") (D.I. 249) ¶ 2 (attaching defendants' websites showing continued offers to sell).  Of course, because the sales numbers available at trial were limited to the time period up to and including January 31, 2007, the jury's verdict was limited to this same time period..  (Testimony of P. Green, Day 4 (3/15/07), p. 151-154; Strand Decl., ¶ 3).  Thus, the jury's verdict included neither damages for sales between January 31, 2007 and the jury's March 28 verdict, nor damages for sales occurring after the verdict itself.

When current information is not available during trial, an accounting is appropriate to compensate the patentee for the entire infringement period.  See Technology for Energy Corp, 1992 WL 535791, *3 (E.D. Tenn., July 29, 1992).

Accordingly, the Court should update the damages figures to reflect (a) the time period for which defendants' sales information was not available prior to trial (i.e. February and March), and (b) the time period between the March 28 jury verdict and the date upon which a permanent injunction is entered to stop the infringement.

Because of the importance of an accounting to bring current the damages figures and thus make a patent owner whole after infringement is found, courts generally set the accounting award at a figure determined by the jury's verdict. E.g, Oscar Mayer Foods Corp. v. Conagra, Inc., 869 F. Supp. 656, 668 (W.D. Wis. 1994) (awarding accounting on lost profits award by approximating the award "based upon the ratio of damages to sales determined from the jury's verdict."); Padco, Inc. v. Newell Companies, Inc., 1988 WL 187504, at *10 (E.D. Wis., July 27, 1988) (reaffirming award of post-judgment accounting based on infringer's profits). As discussed below, Diomed accordingly requests that the Court use the jury's award as a guide in this case.

## II.    CALCULATION OF AMOUNTS DUE.

Diomed requests the Court award an accounting, based on the jury's award of lost profits,[1] in the amount of $4,946 per day against VSI and $11,045 per day against AngioDynamics.[2] (Decl. of Philip Green ("Green Decl.")(D.I. 248) ¶ 6). These figures total $286,847 against VSI and $640,628 against AngioDynamics for February and March, 2007. (Id.

---

[1] The defendants agree that the jury awarded Diomed its lost profits, as opposed to a reasonable royalty. (See D.I. 247, p. 23 n. 12 ("There is no question that the jury awarded Diomed lost profit damages.").

[2] In the alternative, Diomed requests the Court order the defendants to produce updated financial documents reflecting all infringing sales through the date upon which the defendants stop making infringing sales (either because of an injunction or of their own accord), so that a calculation of damages may be made based on those numbers.

and Ex. C[3]). They should be increased by the above-stated daily amount until such date as a permanent injunction enters.

As noted above, these numbers are based on the jury's award of lost profits. The jury awarded a percentage of the damages requested by Diomed against each defendant, and those same percentages should be applied to determine the damages Diomed is now requesting in the accounting. See Oscar Mayer Foods Corp., 869 F. Supp. at 668 (awarding accounting on lost profits award by approximating the award "based upon the ratio of damages to sales determined from the jury's verdict.").

In particular, the jury awarded 100 percent of Diomed's lost profits damages[4] claim against VSI and 64.3 percent of Diomed's lost profits damages claim against AngioDynamics. (Green Decl. ¶ 4; Ex. A). For post verdict damages, Diomed is seeking $286,847 in lost profits damages from VSI and $996,311 in lost profits damages from AngioDynamics.[5] (Green Decl. ¶ 5; Ex. B). Applying the jury's percentages to Diomed's post-judgment lost profits claims, yields $286,847 additional damages against VSI (100% of $286,847) and $640,628 additional damages against AngioDynamics (64.3% of $996,311). (Id.).

Dividing the above amounts by the number of days in February and March yields daily damages rates of $4,946 per day against VSI and $11,045 per day against AngioDynamics. (Green Decl. ¶ 6; Ex. C).

The above figures represent a fair, indeed conservative, calculation of the amounts that will compensate Diomed for the defendants' continued infringement. (Green Decl. ¶ 5).

---

[3] All lettered exhibits (e.g., Ex. A) are attached to the April 12, 2007 declaration of Philip Green (D.I. 248).

[4] Diomed's "lost profits damages" claims include a reasonable royalty on those sales that Diomed would not have made.

[5] To arrive at these total numbers, Diomed has assumed that the defendants made the same number of sales in February and March as they did in January (a conservative assumption considering sales tend to be low in the first month of any quarter). (Green Decl. ¶ 5; Ex. B)

It should be noted that these amounts include damages on VSI's sales of so-called "Dual Clad" laser fibers (Id.), which are simply 600 micron fibers that are virtually identical to those VSI used to sell, with a slight modification that does not impact infringement (a thin additional layer of cladding). VSI's sales of the Dual Clad fibers were not included in the original jury verdict because VSI violated its discovery obligations by not producing documents relevant to the Dual Clad fibers until the eve of trial. (See D.I. 87). The Court granted Diomed's motion to exclude evidence or reference to the fibers during trial. (Pre-Trial Hearing (3/7/07), p. 8). There is no reasonable basis, however, to exclude these fibers from the judgment. Indeed, this type of fiber was tested by defendants' own technical consultant, Dr. Proebstle, and those tests resulted in the same "footprint" of carbonization and trenching that Diomed successfully relied upon to demonstrate contact and infringement to the jury. (See Tr. Ex. 1121 and photos from Tr. Ex. 1119).

VSI began selling the Dual Clad fibers as part of its kits in July of 2006 and Mr. Green has calculated the additional damages to which Diomed is entitled based on those additional sales. (Green Dec. ¶ 5; Ex. B). These additional damages from July 2006 until January 31, 2007 [6] against VSI for its sales of kits including Dual Clad fibers total $918,594. Diomed further requests the judgment be amended to add this additional amount to complete Diomed's compensation.

---

[6] The February and March damages are included in the calculation at the beginning of Section II.

### III. SALES MADE AFTER THE JURY VERDICT CONSTITUTE WILLFUL INFRINGEMENT.

Infringing sales made after a jury verdict to whenever the sales cease constitute willful infringement.  See Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GMBH, 408 F.3d 1374, 1378-79 (Fed. Cir. 2005) (affirming decision awarding fees for infringing sales made after jury verdict because the verdict "placed defendants on notice of the patent, and that they were likely infringing it"); TA Instruments, Inc. v. Perkin-Elmer Corp., 277 F. Supp. 2d 367, 378 (D. Del. 2003) (defendant stipulated that manufacturing done after jury verdict constituted willful infringement); Stryker Corp. v. Davol, Inc., 75 F. Supp. 2d 746, 748 (W.D. Mich. 1999) (finding continued infringement between jury verdict and the injunction to be willful; "The hypothetical possibility that one [post-trial motion] might be granted was clearly insufficient to support a good faith belief that continuing sales of the [infringing devices] were not infringing.").

Defendants should have stopped selling as soon as the jury came back with its verdict. While it may be true that continued infringement prior to entry of an injunction did not violate any Court order subjecting defendants to a contempt sanction, it is equally plain that such a deliberate decision to continue selling product even after a finding of infringement was **willful**. See Imonex, TA Instruments, Stryker (supra).  After the verdict, the defendants were certainly well aware of the patent, that patent had been found valid and enforceable on summary judgment, and that the jury had rejected each of the defendants' noninfringement theories. A clearer example of willful infringement would be difficult to imagine. Nor can Defendants fall back on the non-infringement opinions they had obtained prior to trial, as the theories set forth in those opinions were rejected by the jury at trial. Under these circumstances, as the above-cited cases hold, the defendants could not have a good faith belief that their sales are non-infringing, and thus their deliberate, ongoing infringement is willful as a matter of law. Diomed accordingly

requests that the Court so find, and award Diomed treble damages and attorneys' fees for such post-verdict sales. Padco, Inc. v. Newell Companies, Inc., 1988 WL 187504, at *2 (E.D. Wis., July 27, 1988) (awarding treble damages on accounting because post-verdict sales were found to be willful).

## CONCLUSION

For the foregoing reasons, Diomed requests that the Court amend the judgment to award, in addition to the compensatory damages found by the jury, (1) an accounting of damages for February and March, 2007 of $286,847 against VSI and $640,628 against AngioDynamics, (2) a further accounting for all damages suffered after March 31, 2007 until the defendants stop infringing at a rate of $4,946 per day against VSI and $11,045 per day against AngioDynamics, (3) an addition of damages covering the period from July 2006 until January 31, 2007 against VSI for its sales of kits including Dual Clad fibers totaling $918,594, and (4) a finding that the defendants' infringement after the jury verdict was willful and that Diomed is entitled to treble damages and attorneys' fees.

Respectfully submitted,

DIOMED, INC.

By its attorneys,

Dated: April 13, 2007

/s/ Michael A. Albert
Michael A. Albert (BBO #558566)
malbert@wolfgreenfield.com
Michael N. Rader (BBO #646990)
mrader@wolfgreenfield.com
John L. Strand (BBO #654985)
jstrand@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
(617) 646-8000

- 9 -

**CERTIFICATE OF SERVICE**

    I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

                                               /s/ Michael A. Albert