IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>ANGIODYNAMICS, INC,<br><br>    Defendant. | Civil Action No. 04-10019 NMG |
| DIOMED, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>VASCULAR SOLUTIONS, INC.,<br><br>    Defendant. | Civil Action No. 04-10444 NMG<br>**(CONSOLIDATED UNDER 04-10019 NMG)** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF DIOMED'S MOTION TO AMEND
THE JUDGMENT FOR AN AWARD OF PREJUDGMENT INTEREST**

Diomed respectfully requests that the Court amend its judgment entered on March 30, 2007 (D.I. 229) to order the defendants, VSI and AngioDynamics, to pay prejudgment interest on the compensatory damages awarded by the jury. Such prejudgment interest is awarded "as a rule" in patent cases.

Though prejudgment interest is routinely awarded, the Court has discretion as to the rate of interest and the manner by which it is calculated. The Court should award interest at the average prime rate for each quarter of infringement. This rate is significantly lower than the rate at which Diomed actually borrowed money during the infringement period, but the use of this pre-determined, published rate makes the calculation of prejudgment interest straightforward and

consistent. For that reason, courts commonly use the prime rate as a basis for calculating prejudgment interest. The award of prejudgment interest should be compounded quarterly, both because that is the common practice of most courts, and because that is the frequency with which the parties pay royalties on their patent license agreements.

Applying the prime rate, Diomed requests that the Court amend the judgment to add an award of prejudgment interest of $557,077 against VSI and $1,192,524 against AngioDynamics.[1]

## BACKGROUND

AngioDynamics began infringing Diomed's `777 patent in June of 2002, and VSI began a year later in June of 2003. (Tr. Ex. 128). Since that time, in order to stay competitive in the market while compensating the inventors and funding this lawsuit, Diomed has had to secure several unanticipated rounds of financing with outside investors. (Decl. of David Swank ("Swank Decl.") ¶ 2 (D.I. 250)). Most of Diomed's capital comes from this equity investment as opposed to debt. Indeed, only 4% of Diomed's capital is currently in the form of debt. (Swank Decl. ¶ 4). Diomed's debt is financed at a rate set at four percentage points above the London Interbank Offered Rate (LIBOR +4%) (currently equal to 9.23 percent). (Id.)

Because Diomed's funding has primarily come from equity rather than debt, its weighted average cost of capital (WACC) is a more accurate representation of the rate at which Diomed actually developed capital than its 9.23 percent debt financing rate. WACC, as its name suggests, is a weighted average of those rates at which Diomed was forced to borrow money during the infringement period. (Decl. of Philip Green ("Green Decl.") ¶ 9 (D.I. 248)). Because

---

[1] These amounts include damages on VSI's sales of kits with so-called "Dual Clad" fibers. (Green Decl. ¶ 7). As discussed more fully in Diomed's Memorandum In Support Of Its Motion To Amend Judgment to Include Post-Judgment Sales filed herewith, VSI violated its discovery obligations by not producing documents relevant to the Dual Clad fibers until the eve of trial (see D.I. 87). It therefore became necessary for the parties to stipulate to defer until post-trial the calculation of damages relating to those sales. Because the fibers are for all material purposes indistinguishable the ones at issue previously, damages and accordingly interest on damages should cover those sales.

Diomed was forced to rely primarily on equity financing in the presence of infringers, which includes a high rate of return, Diomed's WACC for the infringement period is approximately 22 percent. (Green Decl. ¶ 9; Swank Decl. ¶ 3). Moreover, while Diomed would never consider lending a competitor money, if, hypothetically, it did have to lend money to either of the defendants, it would never make the loan at a rate below LIBOR+4%, and would not receive a reasonable return on the loan unless it made the loan at a much higher rate exceeding its WACC. (Swank Decl. ¶ 5).

To compensate Diomed for the infringement of its patent, the jury awarded Diomed damages against AngioDynamics in the amount of $8,360,000 and against VSI in the amount of $4,100,000. (D.I. 229). These amounts, however, do not adequately compensate Diomed for the fact that it has not been able to use that money to build its business, or even simply earn interest, over the past five years. Diomed now seeks prejudgment interest to compensate it for the foregone use of its money.

**ARGUMENT**

**I.     THE COURT SHOULD AMEND THE JUDGMENT
        TO INCLUDE PREJUDGMENT INTEREST.**

   **A.     Courts Routinely Amend Judgments to Include Prejudgment Interest.**

The jury's damages award, embodied in the Court's judgment (D.I. 229) does not include the interest to which Diomed is entitled under 35 U.S.C. § 284:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

35 U.S.C. § 284 (emphasis added). Courts commonly amend judgments pursuant to Federal Rule of Civil Procedure 59(e). See, e.g., IMX, Inc. v. LendingTree, LLC, 469 F.Supp.2d 203,

227-228 (D. Del. 2007) (awarding prejudgment interest after Rule 59(e) motion); O2 Micro Intern. Ltd. v. Monolithic Power Systems, Inc., 420 F. Supp. 2d 1070, 1076 (N.D. Cal. 2006) (finding Rule 59(e) proper means by which to seek prejudgment interest). The Court should amend the judgment in this case to adequately compensate Diomed and award prejudgment interest.

### B. Prejudgment Interest is Awarded as a "Rule" in Patent Cases.

The Supreme Court has held that "prejudgment interest should be awarded under § 284 absent some justification for withholding such an award.". General Motors Corp. v. Devex Corp., 461 U.S. 648, 655-57 (1983). The award of prejudgment interest is part of the compensatory system established by the Patent Act to afford patentees complete compensation if their patent is infringed. General Motors Corp., 461 U.S. at 655-56 (1983) ("The standard governing the award of prejudgment interest under § 284 should be consistent with Congress' overriding purpose of affording patent owners complete compensation."). In other words, the award must place the patent owner in as good a position as it would have been absent the infringement and further compensate the patent owner for the "foregone use of the money between the time of the infringement and the date of the judgment." Id.

Thus, even though the award remains within the Court's discretion, "[t]he allowance of prejudgment interest is the rule in patent infringement cases." Ristevedt-Johnson, Inc. v. Brandt, Inc., 805 F. Supp. 557, 568 (N.D. Ill. 1992). See also Richardson v. Suzuki Motor Co. Ltd., 868 F.2d 1226, 1250 (Fed. Cir. 1989) ("Prejudgment interest is the rule governing this class of award.").

- 5 -

In the instant case, it is undisputed that the jury awarded Diomed lost profits. (See Defs' Memo. In Supp. Of Their Motion for Judgment As A Matter Of Law, D.I. 247, p. 23 n. 12 ("There is no question that the jury awarded Diomed lost profit damages.")). This amount, however, should be supplemented with due compensation for the fact that Diomed did not have access to this money to invest, earn interest, or fund other portions of its business, because the monies were misappropriated by the defendants over a multi-year period. Moreover, Diomed had to pursue several rounds of financing in the time leading up to and during the three years of litigation in order to fund the litigation and its own business because it was losing profits to the infringers. (Swank Decl. ¶ 2). This resulting loss of capital forced Diomed to scale back operations and promotions that could otherwise have further grown Diomed's sales in the endovenous laser treatment market. (Id.). Moreover, the infringement diverted substantial management time to pursue the financing and forced Diomed into costly financial restructurings that diluted shareholder value. (Id.). Prejudgment interest is thus appropriate to account for the fact that the defendants' lost profits payment is coming only at the end of five years of infringement, rather than at the time the damage occurred.

## II. PREJUDGMENT INTEREST SHOULD BE AWARDED AT THE PRIME RATE, COMPOUNDED QUARTERLY.

### A. Prejudgment Interest Should be Awarded at the Prime Rate.

The rate of interest at which a prejudgment interest award is calculated is within the discretion of the Court, Kaufman Co. v. Lantech, Inc., 926 F.2d 1136, 1144 (Fed. Cir. 1991), but Courts commonly use the prime rate for prejudgment interest in patent cases. E.g., Kearns v. Chrysler Corp., 32 F.3d 1541, 1552 (Fed. Cir. 1994); Uniroyal, Inc. v. Rudkin-Wiley Corp., 939 F.2d 1540, 1545 (Fed. Cir. 1991); Beckson Marine, Inc. v. NFM, Inc., 2007 WL 951706, at *3 (W.D. Wash., Mar. 27, 2007); IMX, Inc., 469 F. Supp. 2d at 228; Tristrata Tech., Inc. v. Mary Kay, Inc., 423 F. Supp. 2d 456, 471-72 (D. Del. 2006); Cargill, Inc. v. Sears Petroleum & Trans. Corp., 388 F. Supp. 2d 37, 64 n. 17 (N.D.N.Y. 2005); TA Instr., Inc. v. Perkin-Elmer Corp., 277 F. Supp. 2d 367, 380-381 (D. Del. 2003); NTP Inc., 270 F. Supp. 2d at 763; and Atmel Corp. v. Silicon Storage Tech., Inc., 202 F. Supp. 2d 1096, 1101 (N.D. Cal. 2002). When arriving at an appropriate rate, the Court should consider that the purpose of the prejudgment interest award is to fully compensate the patentee for the loss of the use of the money to which it was entitled. General Motors Corp., 461 U.S. at 655-56 (1983). The "prime rate" is a rate of interest that will adequately compensate Diomed for the loss of its money.

In order to arrive at an appropriate rate of interest, courts often consider the actual rate at which the patent owner was forced to borrow money during the infringement period. E.g., Lam, Inc. v. Johns-Manveille Corp., 718 F.2d 1056, 1066 (Fed. Cir. 1983) (affirming award of prejudgment interest higher than prime because patentee borrowed money at that higher rate to continue its operations during the infringement period); Rocket Jewelry Box, Inc. v. Quality Intern. Packaging, Inc., 403 F. Supp. 2d 288, 291 (S.D.N.Y. 2005) (awarding prejudgment

interest at actual rate at which patentee borrowed money); Promega Corp. v. Lifecodes Corp., 53 U.S.P.Q.2d 1463, 1478 (D. Utah 1999) (awarding prejudgment at prime rate because closely approximated the patentee's borrowing rate); Mars, Inc. v. Conlux USA Corp., 818 F. Supp. 707 (D. Del. 1993) (awarding prime rate because approximated cost of borrowing money by patentee); and Goodwall Const. Co. v. Beers Const. Co., 26 U.S.P.Q.2d 1401, 1412 (N.D. Ga. 1992) (considering the loans and investment income patentee would have made during the infringement period). If the Court did take such an approach, focusing on the rate at which Diomed actually borrowed money, it would award Diomed damages equaling its WACC: the actual weighted rate at which Diomed was forced to borrow money during the infringement period. Because Diomed was forced to rely primarily on equity financing, which includes a high rate of return, Diomed's WACC for the infringement period is approximately 22 percent. (Green Decl. ¶ 9; Swank Decl. ¶ 3).

Even if the Court focused only on Diomed's debt borrowing, it would still award prejudgment interest at over 9 percent. A component of Diomed's WACC includes the rate at which Diomed incurred debt (as opposed to equity), which is measured by the LIBOR schedule plus 4 percentage points. (Green Decl. ¶ 10; Swank Decl. ¶ 4). Today, this rate is equal to 9.23 percent. (Id.).

Diomed is thus taking a conservative position on requesting that the Court award prejudgment interest at the prime rate. Today, the prime rate is equal to 8.25 percent. (Green Decl. ¶ 12). Historically, "the prime rate is the interest rate charged by banks to their most credit-worthy customers," and is usually the same among major banks. NTP Inc. v. Research in Motion, Ltd., 270 F. Supp. 2d 751, 762-63 (E.D. Va. 2003). The fact that the prime rate is the actual rate banks charge to many corporations, courts across the country commonly use the

prime rate as conservative approach to calculating prejudgment interest. E.g., Kearns, 32 F.3d at 1552 (affirming prejudgment interest award based on prime rate); Uniroyal, Inc., 939 F.2d at 1545 (affirming prejudgment interest award based on prime rate; "it is not necessary that a patentee demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate") (citation omitted); Beckson Marine, Inc., 2007 WL 951706, at *3 (awarding prejudgment interest at prime rate); IMX, Inc., 469 F. Supp. 2d at 228 ("Courts have recognized that the prime rate best compensate[s] a patentee for lost revenues during the period of infringement because the prime rate represents the cost of borrowing money. . . ."); Tristrata Tech., Inc., 423 F. Supp. 2d at 471-72 (awarding prejudgment interest at prime rate); Cargill, Inc., 388 F. Supp. 2d at 64 n. 17 (adopting prime rate for prejudgment interest award); TA Instr., Inc., 277 F. Supp. 2d at 380-381 (D. Del. 2003) (same); NTP Inc., 270 F. Supp. 2d at 763 ("The prime rate, compounded quarterly, is a **conservative, middle-of-the road approach** that takes into account normal market fluctuations.") (emphasis added); and Atmel Corp., 202 F. Supp. 2d at 1101 (N.D. Cal. 2002) (adopting prime rate for prejudgment interest award).

As many courts have adopted the prime rate for awards of prejudgment interest, and as that rate is lower than either of the two benchmark rates that reflect Diomed's cost of capital or cost of debt, using prime is a conservative, and fully justified, approach to compensation in this case.

    **B.**    **The Prejudgment Interest Should be Compounded Quarterly.**

Like the prejudgment interest rate, the method of calculating the interest (i.e., how often the interest should be compounded) is within the discretion of the Court. Studiengesellschaft Kohle, m.b.H. v. Dart Industries, Inc., 862 F.2d 1564, 1579 (Fed. Cir. 1988) (affirming award of prejudgment interest set at prime rate, compounded quarterly). Courts typically consider the

frequency at which the parties make patent license payments to determine how prejudgment interest should be compounded and commonly arrive at the conclusion that compounding should be quarterly. E.g., Tristrata Tech., Inc., 423 F. Supp. 2d at 471 (awarding prejudgment at prime rate, compounded quarterly, based on prior agreements of the parties) and NTP Inc., 270 F. Supp. 2d at 762 (compounding interest quarterly based on hypothetical patent license); IMX, Inc., 469 F. Supp. 2d at 227 (awarding prejudgment interest at prime rate, compounded quarterly); and Applera Corp. v. Micromass UK Ltd., 204 F. Supp. 2d 724, 783 (D. Del. 2002) (same).

Here, Diomed requests that the Court follow established case law and compound the prejudgment interest quarterly. This method is also consistent with the parties' actual licensing practices, as both Diomed and AngioDynamics make payments on patent licenses on a quarterly basis. (See Tr. Exs. 1125-26; 1128-1155). This factor alone is enough to justify an award of prejudgment interest compounded quarterly.

## CONCLUSION

For the forgoing reasons, Diomed requests that the Court amend its judgment to award Diomed prejudgment interest based on the prime rate, compounded quarterly. Based on this request, Diomed specifically requests that the Court amend its judgment to add $557,077 against VSI and $1,192,524 against AngioDynamics, each amount representing the prejudgment interest on the existing judgment.

Respectfully submitted,

DIOMED, INC.

By its attorneys,

Dated: April 13, 2007

/s/ Michael A. Albert
Michael A. Albert (BBO #558566)
malbert@wolfgreenfield.com
Michael N. Rader (BBO #646990)
mrader@wolfgreenfield.com
John L. Strand (BBO #654985)
jstrand@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
(617) 646-8000

## CERTIFICATE OF SERVICE

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

/s/ Michael A. Albert