UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

DIOMED, INC.,

    Plaintiff,

v.

ANGIODYNAMICS, INC.,

    Defendant.

Civil Action No. 04-CV-10019 (NMG)

---

DIOMED, INC.

    Plaintiff,

v.

VASCULAR SOLUTIONS, INC.

    Defendant.

Civil Action No. 04-CV-10444 (NMG)

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION**

**(ORAL ARGUMENT REQUESTED)**

## Table of Contents

Page

I. PRELIMINARY STATEMENT .................................................................................1

II. ARGUMENT..............................................................................................................3

    A. Diomed Is Not Entitled To A Permanent Injunction. ....................................3

    B. The Defendants Cannot Be Enjoined From Marketing And Selling Laser Fibers With Centering Or Spacer Devices, Including VSI's Bright Tip Fibers, Which, As Diomed Admits, Cannot Infringe The Asserted Patent Claims..............................4

        1. Diomed admitted that fibers with centering or spacer devices, including VSI's Bright Tip laser fibers, do not infringe the asserted claims of the '777 patent. ...................................................................................5

        2. Diomed's proposed permanent injunction cannot enjoin the Defendants from selling devices that are materially different from the accused devices.8

    C. The Defendants Should Not Be Enjoined From Promoting Devices With Instructions To Perform The Claimed Method In A Non-Infringing Manner.........9

    D. Diomed's Permanent Injunction Should Not Enjoin The Defendants From Selling Any Components Of The Adjudged Infringing Kits That Alone Or With Other Products Can Be Used For Non-Infringing Uses...................................................12

    E. Diomed Is Not Entitled To An Injunction Requiring The Defendants To Turn Over All Products In Their Possession To Diomed..............................................13

III. CONCLUSION.........................................................................................................14

I.  **PRELIMINARY STATEMENT**

Plaintiff Diomed, Inc. ("Diomed") moves this Court pursuant to 35 U.S.C. § 283 to permanently enjoin defendants AngioDynamics, Inc. ("AngioDynamics") and Vascular Solutions, Inc. ("VSI," and with AngioDynamics, "the Defendants") from, *inter alia*, making, using, selling, offering for sale or importing into the United States any products "for the endovenous laser treatment of varicose veins." [Proposed] Permanent Injunction Order [Dkt # 232]. For the reasons set forth in the Defendants' Joint Motion for Judgment as a Matter of Law previously filed, [Dkt # 247], this Court should deny Diomed's request for such injunctive relief.

Should the Court deny Defendants' Motion for Judgment as a Matter of Law and allow the jury's verdict to stand, the Court still should not grant the overly broad injunctive relief that Diomed seeks for several reasons. First, because the trial of this matter was limited to the use of bare-tipped laser fibers and whether the uncoated tips were put into and maintained in contact with the vein wall as required by the '777 patent, any injunction must be limited solely to such bare-tipped fibers. Fibers with centering or spacer devices were not litigated in this case and are materially -- i.e., more than colorably -- different than the bare-tipped fibers that the jury found were being used to infringe. Further, Diomed admitted during the course of the litigation that such fibers with centering or spacer devices cannot be used to infringe the patent. On March 19, 2007, VSI received FDA approval for a new "Bright Tip" laser fiber that utilizes a ceramic tip that prevents vein wall contact, and on April 12, 2007 VSI converted all of its Vari-Lase U.S. sales to only Bright Tip fibers. Similarly, AngioDynamics will introduce a new fiber, "NeverTouch," that has a spacer device that further prevents contact between the uncoated tip of the fiber and the vein wall. Under Diomed's proposed permanent injunction, the Defendants would not be allowed to sell their kits with Bright Tip and NeverTouch fibers even though, as

1

Diomed itself admitted, fibers with such centering and spacer devices cannot be used to infringe the patent. Accordingly, the Court should properly limit any injunction awarded to Diomed to the litigated devices so that the Defendants are not enjoined from selling endovenous laser vein treatment devices that utilize these new technologies, or any other technologies, which further prevent contact between the uncoated tip of the fiber and the vein wall.

Similarly, the Defendants should not be enjoined from selling their endovenous laser products if physicians are instructed to use them in a non-infringing manner. The '777 patent is a method patent, which can only be infringed when the method is performed. Thus, the sale of the product should only be enjoined where it is being sold to be used in an infringing manner as defined at trial.

The Court also should not grant the portion of Diomed's permanent injunction that seeks to enjoin the Defendants from selling any components of the procedure kits that alone or with other products can be used for non-infringing uses. For example, the laser fibers, needles, guidewires, sheaths, and catheters contained in each Defendant's procedure kits are standard products that can be used in a multitude of other procedures. Similarly, the 980nm laser console sold by AngioDynamics is approved for use in other soft tissue surgical procedures that do not involve the treatment of varicose veins. Thus, Defendants request that any permanent injunction order allow the Defendants to continue to make, use, sell, and offer for sale components of their endovenous laser treatment devices for other non-infringing uses.

Finally, Diomed is not entitled to an injunction that requires the Defendants to deliver all accused products in their possession to Diomed. See [Proposed] Permanent Injunction Order at ¶ 3 (emphasis added). As set forth more fully below, this request is overbroad and inconsistent with the jury's verdict because AngioDynamics and VSI cannot induce or contribute to

infringement of the '777 patent unless the kits and their components are actually sold to physicians who will use them in the United States to practice the methods taught in the '777 patent. The Defendants should be allowed to maintain possession of the accused products so long as they are not sold for an infringing use in the United States. Similarly, the Defendants should not be enjoined from selling any accused product for use outside the United States, or from selling any component for a non-infringing use. These non-infringing activities should be allowed and justify the Defendants' continued possession of their rightful property.

For all of the foregoing reasons, and as more fully set forth below, the Defendants respectfully request that the Court deny Diomed's Motion for Permanent Injunction or, alternatively, enter a permanent injunction in the form of Defendants' Proposed Permanent Injunction filed herewith.

## II.     ARGUMENT

### A.     <u>Diomed Is Not Entitled To A Permanent Injunction.</u>

For the reasons set forth in their Joint Motion for Judgment as a Matter of Law, the Defendants are entitled to either entry of judgment of non-infringement in their favor because no reasonable jury could have found that the Defendants induced and contributed to infringement of claim 9 of the '777 patent or to a new trial. Should this Court grant either of the Defendants' requests, set aside the jury's verdict, and enter a judgment of non-infringement in the Defendants' favor or order a new trial, Diomed's motion for permanent injunction will be moot and, accordingly, must be denied.

B. **The Defendants Cannot Be Enjoined From Marketing And Selling Laser Fibers With Centering Or Spacer Devices, Including VSI's Bright Tip Fibers, Which, As Diomed Admits, Cannot Infringe The Asserted Patent Claims.**

Should the Court deny Defendants' Motion for Judgment as a Matter of Law and allow the jury's verdict to stand, the Court should not grant the full array of injunctive relief that Diomed seeks. As discussed more fully below, the Defendants do not disagree that Diomed is entitled to some degree of permanent injunctive relief if the jury's verdict is allowed to stand. However, as currently worded, Diomed's proposed injunction is overly broad and would impermissibly expand the claims of the '777 patent and prevent the Defendants from engaging in a number of non-infringing activities, including, for example, the sale of endovenous laser treatment devices with fibers that use centering or spacer devices to prevent any contact, which Diomed admitted in the litigation are non-infringing alternatives.

Federal Rule of Civil Procedure 65(d), which governs the proper scope and form of permanent injunctions, provides:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

In accordance with Rule 65(d), the Federal Circuit "has stressed that a trial court . . . must narrowly tailor an injunction to fit the specific adjudged violations." Riles v. Shell Exploration and Prod. Co., 298 F.3d 1302, 1311-12 (Fed. Cir. 2002); see also International Rectifier Corp. v. IXYS Corp., 383 F.3d 1312, 1316 (Fed.Cir.2004)(recognizing that "the Supreme Court has denounced broad injunctions that merely instruct the enjoined party not to violate a statute," and

4

noted the concern that such overbroad injunctions increase the likelihood of unwarranted contempt proceedings for "acts unlike or unrelated to those originally judged unlawful." (citing NLRB v. Express Publ'g Co., 312 U.S. 426, 435-36 (1941))). Unnecessary restraints on lawful activity are not permitted. Id. Thus, "[a]lthough a trial court is given broad discretionary powers in shaping equitable decrees, injunctive relief should be narrowly tailored to fit the specific legal violations." Gemveto Jewelry Co. v. Jeff Cooper Inc., 800 F.2d 256, 259 (Fed. Cir. 1986).

In patent cases, the scope of the injunction must be limited to only the accused devices or devices that are no more than colorably different from the accused devices. Indeed, the Federal Circuit has held that

> contempt proceedings . . . are available only with respect to devices previously admitted or adjudged to infringe, and to other devices which are no more than colorably different therefrom and which clearly are infringements of the patent. An enjoined party is entitled to design around the claims of a patent without the threat of contempt proceedings with respect to every modified device although he bears the risk that the enjoining court may find changes to be too insubstantial to avoid contempt.

KSM Fastening Systems, Inc. v. H.A. Jones Co., 776 F.2d 1522, 1526 (Fed. Cir. 1985). Thus, in order to comply with Rule 65(d), the only acts that Diomed's injunction may prohibit are infringement of the asserted method claims by the adjudicated devices and instructions for use, or by devices not more than colorably different from the adjudicated devices. International Rectifier, 383 F.3d at 1312.

### 1. Diomed admitted that fibers with centering or spacer devices, including VSI's Bright Tip laser fibers, do not infringe the asserted claims of the '777 patent.

VSI no longer sells bare-tipped laser fibers with its Vari-Lase procedure kits. Effective April 12, 2007, VSI equips all of its kits with laser fibers that use VSI's new spacer device

5

technology known as "Bright Tip." Declaration of Howard Root at ¶ 6. These Bright Tip fibers utilize a high-temperature resistant ceramic cylinder that is bonded on the fiber to completely encircle and extend beyond the distal edge of the laser-emitting core and cladding thereby preventing any contact, deliberate or otherwise, between the fiber tip and the vein wall. Declaration of Jonathan Hammond at ¶ 3. VSI received approval to market the Vari-Lase Bright Tip product from the U.S. Food & Drug Administration ("FDA") on March 19, 2007. Root Decl. at ¶ 2.

Similarly, AngioDynamics has announced that it will be replacing all of its bare-tipped laser fibers included in its VenaCure kits with fibers that use new spacer technology to further prevent contact between the uncoated tip of the fiber and the vein wall. Declaration of William Appling ("Appling Decl.") at ¶ 3. These new fibers will employ a proprietary laser fiber technology called "NeverTouch," which, like VSI's Bright Tip, is designed to provide an enhanced level of perforation protection by further preventing contact between the uncoated tip of the fiber and the vein wall during treatment. Id. AngioDynamics expects to switch to VenaCure kits with NeverTouch laser fibers within the current fiscal quarter. Id.

Diomed was aware during the litigation of both VSI's and AngioDynamics' patent applications pertaining to these new devices, and was aware of VSI's development of its Bright Tip fiber. Further, Diomed and its experts admitted throughout the trial that such centering and spacer devices do not infringe the asserted claims of the patent. For example, Dr. Luis Navarro, one of the named inventors of the '777 patent testified at trial as follows:

> Q. You said that if you wanted to avoid contact, you could do some things to the fiber that's inside the vein in order to prevent contact?
>
> A. Yes, sir.

6

> Q. And those include a set of spacer device?
>
> A. A spacer device.
>
> Q. What does that mean?
>
> A. A balloon or something around the laser fiber tip, which will avoid complete collapse of the vein wall, along to the fiber tip, or you can encase the laser fiber tip in a wire case -- a wire cage, so that even if the walls collapse, because once you have to tumescent anesthesia you have complete collapse of the vein, but you could put it -- you could put that laser fiber tip.

3-13 Tr., p. 37. Dr. Navarro further testified:

> Q. So if you use a fiber with that type of spacer device, what happens?
>
> A. You will not have contact, and you will not infringe on our -- infringe on our patent. You could use it always.

3-13 Tr., p. 66. Dr. Rox Anderson testified that:

> I suppose you could make a catheter with a little spacer that would keep the tip of the fiber from ever touching the vessel wall.

3-15 Tr., p. 42. Dr. Chieh-Min Fan similarly testified that:

> Q. But with the centering device, you're confident that there's no contact, right?
>
> A. Well, we hoped that with the centering device that contact would be -- the risk of contact would be minimized, yes.

3-19 Tr., p. 79.

In addition to Diomed's general admissions that centering and spacer devices prevent contact between the uncoated tip of the fiber and the vein wall, Diomed's counsel reviewed the patent applications, took depositions of the inventors, and specifically acknowledged that spacer

7

devices like VSI's Bright Tip and similar devices on which AngioDynamics was working cannot be used to infringe the '777 patent. In his opening argument, Diomed's counsel stated:

> You'll also hear how the defendants considered designing a type of fiber that has a spacer device to prevent contact, but they have never actually used that device in the market. What they sell is the original fiber setup which comes into contact with the vein wall. You can ask yourselves why they came up with the device if they're not actually using it. Why are they using the contact device instead of the spacer device?

3-12 Tr., p. 138. Similarly, in its closing argument, Diomed's counsel stated:

> Finally, I'd like to ask in your willfulness verdict, to find that the defendants' infringement was willful. They deliberately and knowingly trampled in the patent rights of the inventors. They shouldn't have done it. All their internal memos show that they knew they were going to infringe if they came out with this product. They could have gotten a license but didn't. <u>They could have switched to a new procedure with a spacer device but they didn't</u>. . . .

3-26 Tr., p. 93-94 (emphasis added).

By Diomed's own admissions, laser fibers with centering or spacer devices, like VSI's Bright Tip and AngioDynamics' NeverTouch fibers, cannot infringe the '777 patent. Accordingly, the Defendants should not be precluded from selling such non-infringing devices.

### 2. Diomed's proposed permanent injunction cannot enjoin the Defendants from selling devices that are materially different from the accused devices.

Diomed's proposed permanent injunction also oversteps the boundaries of Rule 65(d) insofar as it seeks to prevent the Defendants from selling devices such as VSI's Bright Tip and AngioDynamics' NeverTouch, which were not accused of infringing the asserted patent claims. As discussed above, injunctions in patent cases "are available only with respect to devices previously admitted or adjudged to infringe, and to other devices which are no more than

8

colorably different therefrom and which clearly are infringements of the patent." KSM Fastening Systems, 776 F.2d at 1526.

The jury's verdict is limited to only those products accused by Diomed of being used to infringe the asserted method claims of the '777 patent. Only kits sold with bare-tipped laser fibers were at issue at trial. Fibers with spacers that prevent any contact between the uncoated tip of the fiber and the vein wall were not at issue at trial. In fact, as discussed above, Diomed admitted that fibers with such spacers are materially different from the bare-tipped fibers and cannot be used to infringe the '777 patent. Thus, the Court should limit Diomed's proposed injunction to enjoin the sale of only those products that were the subject of the trial and allow the Defendants to sell fibers like VSI's Bright Tip fibers and AngioDynamics' NeverTouch fibers.

### C. The Defendants Should Not Be Enjoined From Promoting Devices With Instructions To Perform The Claimed Method In A Non-Infringing Manner.

Where, as here, the patent-in-suit is a method patent and liability is founded on inducement of or contributory infringement and not direct infringement, the permanent injunction should be tailored accordingly. Indeed, "a patented method or process is fundamentally different from the use of a patented system or device." NTP Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1317 (Fed. Cir. 2005). A method claim is directly infringed only when the method is performed. Joy Technologies, Inc. v. Flakt, Inc., 6 F.3d 770, 773 (Fed. Cir. 1993). Thus, any injunction based on a finding of inducement of or contributory infringement of a method patent must be limited to the specific acts adjudged to induce infringement of, or to devices that can only be used to infringe, the claimed method. Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 986 F.2d 476, 479-80 (Fed. Cir. 1993)(permanent injunction violates Rule 65(d) if it fails to "use specific terms or describe in reasonable detail the

9

acts" which are infringing); see also Mickowski v. Visi-Trak Corp., 36 F. Supp. 2d 171, 182 (S.D.N.Y. 1999)(enjoining only the distribution of literature describing how accused product could be used to practice the claimed method where accused product was capable of other non-infringing uses); Allergan Sales, Inc. v. Pharmacia & Upjohn, Inc., 41 U.S.P.Q.2d 1283, 1287-90 (S.D. Cal. 1996)(declining to enjoin sales of surgical implant based on method patent where evidence showed both infringing and non-infringing methods of use).

Diomed's injunction should also be limited in such a manner so as to allow the Defendants to continue selling their kits, including those kits in their current configuration, where the instructions for use have been changed such that the physician will conduct the vein treatment procedure in a way that does not infringe the '777 patent. Courts have held that an adjudged infringer cannot be enjoined from selling a device where there is evidence of both infringing and non-infringing methods of use. Mickowski, 36 F. Supp. 2d at 182; Allergan Sales, 41 U.S.P.Q.2d at 1287-90. For example, in Allergan Sales, supra, the asserted claims covered a method for implanting deformable intraocular devices -- a method that the accused infringer did not directly infringe because it was not in the business of actually implanting such lenses. The court preliminarily enjoined certain instructions and promotional materials found to induce infringement of the claimed method. Id. at 1285. The court declined, however, to enjoin the sales of the implant itself, or the distribution of other instructional material not covered by the asserted method claims, because the implant could be, and was, implanted in various non-infringing ways. Id.

The Defendants could make several changes to their instructions that would allow the physician to conduct the procedure without infringing Diomed's patent. For example, the Defendants could instruct their physicians to not use any tumescent anesthesia or to control the

10

amount of tumescent anesthesia they use and to stop applying it before there is any compression or contact between the uncoated tip of the fiber and the vein wall. In fact, VSI does just that. In its most recent instructions for the Vari-Lase Bright Tip treatment device, VSI instructs the physician to:

> [b]athe the surrounding tissue with dilute anesthetic to provide thermal protection <u>without causing vessel compression or vein wall apposition</u>.

Root Decl., Ex. 5 at p. 5 (emphasis added). AngioDynamics also will be changing its instructions for the VenaCure treatment device to instruct the physicians to use only enough anesthesia to achieve thermal protection and to do so under ultrasound guidance so as to avoid contact between the uncoated tip of the fiber and the vein wall. Appling Decl. at ¶ 4. Drs. Chieh Min Fan and Rox Anderson, both experts for Diomed, testified that a doctor can control the amount of tumescent anesthetic that they use in the procedure. 3-19 Tr., p. 62-63; 3-15 Tr., p. 53-54. In fact, Dr. Fan specifically testified that a doctor can "choose to stop applying tumescent" and that it is possible to stop applying tumescent before the fiber tip is in contact. 3-19 Tr., p. 62-63.

The Defendants should therefore only be enjoined from selling their endovenous laser vein treatment devices and any other products that employ the methods claimed in the '777 patent. The Defendants should not be enjoined from selling their products with new instructions for use that allow the physicians to perform the procedure in such a way that does not infringe Diomed's method and any injunction entered by the Court should be limited accordingly.

11

**D.   Diomed's Permanent Injunction Should Not Enjoin The Defendants From Selling Any Components Of The Adjudged Infringing Kits That Alone Or With Other Products Can Be Used For Non-Infringing Uses.**

Diomed's permanent injunction should also be limited in scope to allow Defendants to continue manufacturing and selling components of the VenaCure and Vari-Lase kits that alone or with other products can be used for non-infringing uses. As discussed above, courts have held that an adjudged infringer cannot be enjoined from selling a device where there is evidence of both infringing and non-infringing methods of use. Mickowski, 36 F. Supp. 2d at 182; Allergan Sales, 41 U.S.P.Q.2d at 1287-90. Here, many of the components that are included in the Defendants' VenaCure and Vari-Lase product lines have non-infringing uses. For example, the laser fibers, introducer needles, guidewires, sheaths, and catheters that are packaged with Defendants' procedure kits are sold for use in a number of non-infringing procedures, including, but not limited to, dialysis treatments, placement of peripherally inserted central catheters (PICC) lines, and other procedures requiring vascular access. Appling Decl. at ¶ 5. Similarly, the 980nm laser console sold by AngioDynamics has received premarket approval from the FDA pursuant to Section 510(k) of the Federal Food, Drug, and Cosmetic Act for use in many soft tissue surgeries, including, but not limited to, ear, nose and throat surgery, dental procedures, arthroscopy, gastroenterology, general surgery, dermatology, plastic surgery, podiatry, urology, gynecology, neurosurgery, pulmonary surgery, and cardiothoracic surgery. Id.

For the foregoing reasons, the Court should properly limit the scope of Diomed's proposed permanent injunction to ensure that the Defendants are permitted to manufacture, use, sell, and offer to sell components of the VenaCure and Vari-Lase kits for non-infringing uses.

### E. Diomed Is Not Entitled To An Injunction Requiring The Defendants To Turn Over All Products In Their Possession To Diomed.

Paragraph 3 of Diomed's [Proposed] Permanent Injunction Order requires the Defendants, "within five days of this Order, to retrieve from all sales representatives, distributors, or other intermediaries all infringing products and deliver them to Diomed, Inc." Such relief is highly improper and should not be granted. First, as discussed above, a method claim is directly infringed only when the method is performed in the United States. Joy Tech., 6 F.3d at 773. The Defendants, therefore, can only be liable for inducement of or contributorily infringing the '777 patent if they sell the VenaCure or Vari-Lase kits, in the configurations and with the instructions accused to infringe, to physicians who will use those kits in the United States according to the method claimed in the patent. It is undisputed that the Defendants are free to sell any of their products outside the United States, and that the Defendants' mere possession of the devices anywhere in the world cannot induce or contribute to infringement of the patent if they are not sold for that purpose in the United States.[1]

The Defendants should also not be precluded from selling kit components for non-infringing uses. As currently worded, Paragraph 3 of Diomed's [Proposed] Permanent Injunction Order would require the Defendants to deliver to Diomed components of the devices that, when used alone or with other products, do not infringe Diomed's patent. As discussed above, the laser fiber, introducer needles, guidewires, sheaths, and catheters found in the VenaCure and Vari-Lase kits all have separate, non-infringing uses. The Defendants should not be required to turn over those products in its possession that can be used in ways that do not infringe the '777 patent.

---

[1] AngioDynamics and VSI both directly sell their respective products to the end users and do not use third-party distributors.

13

## III. CONCLUSION

For the reasons set forth in the Defendants' Joint Motion for Judgment as a Matter of Law, this Court should deny Diomed's Motion for Permanent Injunction. Alternatively, should the Court deny Defendants' Motion for Judgment as a Matter of Law and allow the jury's verdict to stand, the Court should not grant the overly broad injunctive relief that Diomed seeks. The Defendants respectfully request that, as required by Rule 65(d), any injunction be appropriately narrowed to prohibit only that behavior that would induce infringement or contribute to infringement of the asserted claims of the '777 patent. Accordingly, the Defendants propose that, should the Court award injunctive relief to Diomed, such injunction enter in the form of the Defendants' Proposed Permanent Injunction Order filed along with this memorandum.

THE DEFENDANTS REQUEST ORAL ARGUMENT.

Dated: April 13, 2007

**I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.**

**/s/ Mark D. Giarratana**

THE DEFENDANT,
ANGIODYNAMICS, INC.

By  /s/ Mark D. Giarratana
    William H. Bright, Jr.
    *wbright@mccarter.com*
    Mark D. Giarratana
    *mgiarratana@mccarter.com*
    McCARTER & ENGLISH, LLP
    CityPlace I
    Hartford, CT  06103
    Phone:  (860) 275-6700

THE DEFENDANT,
VASCULAR SOLUTIONS, INC.

By  /s/ Thomas Vitt
    Thomas Vitt
    *Vitt.Thomas@Dorsey.com*
    Heather Redmond
    *Redmond.Heather@Dorsey.com*
    DORSEY & WHITNEY LLP
    50 South Sixth Street
    Minneapolis, MN 55402-1498
    Phone:  (612) 340-5675