IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANGIODYNAMICS, INC. <br><br> Defendant. | Civil Action No.: 04-10019-NMG |
| DIOMED, INC. <br><br> Plaintiff, <br><br> VASCULAR SOLUTIONS, INC. <br><br> Defendant. | Civil Action No.: 04-10444-NMG <br> **(CONSOLIDATED UNDER 04-10019 NMG)** |

## DECLARATION OF WILLIAM APPLING
## IN OPPOSITION TO DIOMED'S MOTION FOR PERMANENT INJUNCTION

I, William Appling, declare:

1. I am the Vice President of Research for AngioDynamics, Inc. ("AngioDynamics"). I offer this declaration in opposition to Plaintiff Diomed, Inc.'s motion for permanent injunction. I make the statements in this declaration based on my own personal knowledge.

2. I am fully familiar with the development of AngioDynamics's VenaCure products that are used by physicians for endovenous laser treatment of varicose veins. I have worked for AngioDynamics or its predecessor, EZM Incorporated, since April of 1988.

ME1 6300510v.1

3. AngioDynamics will be replacing all of its bare-tipped laser fibers included in its VenaCure kits with fibers that use new spacer technology to further prevent contact between the uncoated tip of the fiber and the vein wall. These new fibers will employ a proprietary laser fiber technology called "NeverTouch," which, like VSI's Bright Tip, is designed to provide an enhanced level of perforation protection by further preventing contact between the uncoated tip of the fiber and the vein wall during treatment. AngioDynamics expects to switch to VenaCure kits with NeverTouch laser fibers within the current fiscal quarter.

4. AngioDynamics also will be changing its instructions for the VenaCure treatment device to instruct the physicians to use only enough anesthesia to achieve thermal protection and to do so under ultrasound guidance so as to avoid contact between the uncoated tip of the fiber and the vein wall.

5. Many of the components that are included in the VenaCure kits have uses that do not involve the treatment of varicose veins. For example, the 980nm laser console sold by AngioDynamics has received approval from the Food and Drug Administration pursuant to Section 510(k) of the Federal Food, Drug, and Cosmetic Act for use in many soft tissue surgeries, including, but not limited to, ear, nose and throat surgery, dental procedures, arthroscopy, gastroenterology, general surgery, dermatology, plastic surgery, podiatry, urology, gynecology, neurosurgery, pulmonary surgery, and cardiothoracic surgery. Similarly, the laser fibers, needles, guidewires, sheaths, and catheters included in the VenaCure procedure kits are also sold by AngioDynamics for use in a number of non-infringing procedures, including, but not limited to, dialysis treatments, placement of peripherally inserted central catheters (PICC) lines, and other procedures requiring vascular access.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 13, 2007.

_____
William Appling

# EXHIBIT A

Appendix 2

1/2

AUG 1 3 2002

## 510(k) Summary
## Ceralas Diode Laser System
## (K013691)

**Submitter's Name, Address, Telephone Number, Contact Person and Date Prepared**

biolitec, Inc.
515 Shaker Road
East Longmeadow, Massachusetts 01028
Phone:    (413) 525-0600
Facsimile: (413) 525-0611

Contact Person: Carol J. Morello, V.M.D.
Date prepared: May 29, 2001

**Name of Device and Name/Address of Sponsor**
Ceralas D 980 nm Diode Laser System (Model D50)
biolitec, Inc.
515 Shaker Road
East Longmeadow, Massachusetts 01028

**Classification Name**
Surgical laser

**Predicate Devices**
Ceralas D Diode Laser System
VNUS Medical Technologies' VNUS Closure System
DioMed, Inc.'s 810 nm Surgical Laser and EVLT Procedure Kit Laser

**Intended Use/Indication for Use**
The Ceralas D 980 nm Diode Lasers are intended for endovascular coagulation of blood vessels. The Ceralas D 980 nm Diode Lasers are indicated for use in endovascular coagulation of the greater saphenous vein of the thigh in patients with superficial vein reflux.

**Performance Data**
The device complies with the following voluntary consensus standards: 21 C.F.R. §§ 1040.10 & 1040.11; ANSI/AAMI ES1; IEC 60601-1; IEC 601-2-22; and EN 60825-1.

In addition, biolitec performed a single arm, open study at a single site with two clinical investigators to determine the ability of the Ceralas D Laser System to treat

K013691   2/2

superficial vein reflux of the greater saphenous vein. Ninety-six percent of the patients enrolled in the study achieved complete closure of the vein. All adverse events were of limited duration and resolved completely.

**Substantial Equivalence**
The Varicose Vein Ceralas D has the same intended use and indications for use as VNUS Medical Technologies' VNUS Closure System and Diomed, Inc.'s 810 nm Surgical Laser and EVLT Procedure Kit laser. In addition, the superficial vein reflux Ceralas D is the exact same device as the cleared Ceralas D. Furthermore, clinical data demonstrate that the superficial vein reflux Ceralas D is substantially equivalent for endovascular coagulation of blood vessels in patients with superficial vein reflux.



DEPARTMENT OF HEALTH & HUMAN SERVICES

Public Health Service

Food and Drug Administration
9200 Corporate Boulevard
Rockville MD 20850

AUG 1 3 2002

Biolitec, Inc.
c/o Jonathan S. Kahan
Hogan & Hartson, L.L.P.
555 Thirteenth Street, N.W.
Washington, D.C. 20004-5910

Re: K013691
    Trade/Device Name:  Ceralas D 980nm Diode Laser Systems
    Regulation Number:  878.4810
    Regulation Name:  Laser surgical instrument for use in general and plastic surgery and in dermatology
    Regulatory Class:  Class II
    Product Code:  GEX
    Dated:  May 29, 2002
    Received:  May 29, 2002

Dear Mr. Kahan:

We have reviewed your Section 510(k) premarket notification of intent to market the device referenced above and have determined the device is substantially equivalent (for the indications for use stated in the enclosure) to legally marketed predicate devices marketed in interstate commerce prior to May 28, 1976, the enactment date of the Medical Device Amendments, or to devices that have been reclassified in accordance with the provisions of the Federal Food, Drug, and Cosmetic Act (Act) that do not require approval of a premarket approval application (PMA). You may, therefore, market the device, subject to the general controls provisions of the Act. The general controls provisions of the Act include requirements for annual registration, listing of devices, good manufacturing practice, labeling, and prohibitions against misbranding and adulteration.

If your device is classified (see above) into either class II (Special Controls) or class III (PMA), it may be subject to such additional controls. Existing major regulations affecting your device can be found in the Code of Federal Regulations, Title 21, Parts 800 to 898. In addition, FDA may publish further announcements concerning your device in the Federal Register.

Please be advised that FDA's issuance of a substantial equivalence determination does not mean that FDA has made a determination that your device complies with other requirements of the Act or any Federal statutes and regulations administered by other Federal agencies. You must comply with all the Act's requirements, including, but not limited to: registration and listing (21 CFR Part 807); labeling (21 CFR Part 801); good manufacturing practice requirements as set forth in the quality systems (QS) regulation (21 CFR Part 820); and if applicable, the electronic product radiation control provisions (Sections 531-542 of the Act); 21 CFR 1000-1050.

Page 2 – Mr. Jonathan Kahan

This letter will allow you to begin marketing your device as described in your Section 510(k) premarket notification. The FDA finding of substantial equivalence of your device to a legally marketed predicate device results in a classification for your device and thus, permits your device to proceed to the market.

If you desire specific advice for your device on our labeling regulation (21 CFR Part 801 and additionally 21 CFR Part 809.10 for in vitro diagnostic devices), please contact the Office of Compliance at (301) 594-4659. Additionally, for questions on the promotion and advertising of your device, please contact the Office of Compliance at (301) 594-4639. Also, please note the regulation entitled, "Misbranding by reference to premarket notification" (21 CFR Part 807.97). Other general information on your responsibilities under the Act may be obtained from the Division of Small Manufacturers, International and Consumer Assistance at its toll-free number (800) 638-2041 or (301) 443-6597 or at its Internet address http://www.fda.gov/cdrh/dsma/dsmamain.html

Sincerely yours,

Celia M. Witten, Ph.D., M.D.
Director
Division of General, Restorative
  and Neurological Devices
Office of Device Evaluation
Center for Devices and Radiological Health

Enclosure