UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>VASCULAR SOLUTIONS, INC. )<br>)<br>Defendant. ) | Civil Action No.: 04-10444-NMG |
| DIOMED, INC. )<br>)<br>Plaintiff, )<br>)<br>)<br>)<br>ANGIODYNAMICS, INC. )<br>)<br>Defendant. )<br>) | Civil Action No.: 04-10019-NMG |

### DEFENDANTS' JOINT OPPOSITION TO DIOMED'S MOTION TO AMEND JUDGMENT TO INCLUDE PREJUDGMENT INTEREST

### PRELIMINARY STATEMENT

Plaintiff Diomed, Inc. ("Diomed") has moved this Court to amend the judgment against defendants AngioDynamics, Inc. ("AngioDynamics") and Vascular Solutions, Inc. ("VSI," and with AngioDynamics, "defendants") to award Diomed prejudgment interest based on the prime rate, compounded quarterly. Plaintiff Diomed's Motion to Amend the Judgment for an Award of Prejudgment Interest, dated April 13, 2007 [Dkt # 253] ("Diomed's Motion"). Based on this request Diomed calculates prejudgment interest in the amount of $557,077 against VSI and $1,192,524 against AngioDynamics.

Diomed's request for prejudgment interest is flawed for several reasons. First, it is premature in light of defendants' post-trial motions. Second, even if the Court decided to award prejudgment interest, the rate requested by Diomed is excessive and inconsistent with the general practice of this Court. Third, Diomed incorrectly allocates the jury's damages award over the infringement period resulting in a grossly inflated prejudgment interest calculation. As set forth more fully herein, if Diomed is awarded interest, the amount should be no more than $255,552 in prejudgment interest against VSI and $585,694, against AngioDynamics.

## ARGUMENT

### I. DIOMED'S MOTION IS EITHER MOOT OR PREMATURE IN LIGHT OF DEFENDANTS' POST-TRIAL MOTIONS

For the reasons set forth in defendants' post-trial motions, defendants are entitled to either judgment of non-infringement as a matter of law, or a new trial. Should the Court grant defendants' motion, Diomed's motion for prejudgment interest would be moot. In addition, in connection with the damages award, defendants moved for judgment as a matter of law, a new trial, and remittitur. Until those motions are resolved, any amendment of the judgment to include prejudgment interest is premature and should be denied. If the Court grants remittitur, defendants respectfully request the opportunity to submit to the Court proposed calculations of prejudgment interest based on the amount of damages awarded.

### II. THE APPROPRIATE PREJUDGMENT INTEREST RATE SHOULD BE BASED ON THE THREE-MONTH U.S. TREASURY BILL

"The rate of prejudgment interest and whether it should be compounded or uncompounded are matters left largely to the discretion of the district court." *Allen Archery, Inc. v. Browning Mfg. Co.*, 898 F.2d 787, 789, 791 (Fed. Cir. 1990); *see also Polaroid Corp. v.*

2

*Eastman Kodak Co.*, 16 U.S.P.Q.2d 1481, 1540, 1990 WL 324105, at *83 (D. Mass. 1990) (court has substantial discretion to determine the interest rate in patent infringement cases).

This Court has on numerous occasions based the amount of prejudgment interest in a patent case on the three-month T-bill rate for the secondary market, finding that the interest rate satisfies the compensatory goals of prejudgment interest. *See Bowers v. Baystate Techs., Inc.*, 112 F. Supp. 2d 185, 188 (D. Mass. 2006) (Gorton, J.); *Bose Corp v. JBL, Inc.*, 112 F. Supp. 2d 138, 169 (D. Mass. 2000); *Avco Corp. v. PPG Indus., Inc.*, 867 F. Supp. 84, 99 (D. Mass. 1994); *Polaroid Corp.*, 16 U.S.P.Q.2d at 1541 ("[C]onsider[ing] all the factors and having in mind that the goal to be achieved is fair and adequate compensation, I conclude that an award of prejudgment interest should be based on the Treasury bill rate."). "The Federal Circuit approved of this rate as a 'benchmark as the shortest term, risk-free investment available to ordinary investors' and found it a proper basis upon which to compensate a patent owner." *Bose Corp.*, 112 F. Supp. 2d at 169-70, *quoting Allen Archery*, 898 F.2d at 789.

In arguing that the Court should award prejudgment interest at the prime rate, Diomed addresses none of those cases. The cases it cites provide neither binding authority for use of the prime rate, nor compelling reasons why the Court should depart from the T-bill rate in this case. *See, e.g., Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1552 (Fed. Cir. 1991) (without discussion, declining to reverse award of prime rate); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) (use of prime rate was not an abuse of discretion); *Beckson Marine, Inc. v. NFM, Inc.*, 2007 WL 951706, at *3 (W.D. Wash. March 17, 2007) (without discussion, noting that award based on prime rate was "appropriate"); *Cargill, Inc. v. Sears Petroleum & Trans.*

*Corp.*, 388 F. Supp. 2d 37, 64 n.17 (N.D.N.Y. 2005) (without discussion, stating that prime rate was within court's discretion).

Although Diomed had ample opportunity during three years of litigation and in two expert damages reports to assert and support an appropriate rate of prejudgment interest, it waited until after judgment was entered to produce evidence that Diomed contends entitles it to a prejudgment interest rate well above the standard rate applied in patent cases in this District. By doing so, Diomed deprived defendants of the opportunity to test Mr. Swank's and Mr. Green's conclusions. A greater return on investment comes with a greater risk, and it is sheer speculation (particularly when no discovery will be allowed) to assert that Diomed could have realized a greater rate of return than the three-month T-bill rate. Diomed has provided no compelling reason to depart from the Court's standard prejudgment interest rate in patent cases.

### III. DIOMED'S EXPERT PHILIP GREEN INCORRECTLY CALCULATED PREJUDGMENT INTEREST

In calculating prejudgment interest, Diomed improperly shifted lost profit damages from later years of the infringement period to earlier years when only reasonable royalty damages were awarded. *See* Green Ex. E. This misallocation of lost profit damages to earlier years of the infringement period increases prejudgment interest by improperly exposing the higher lost profit damages award to more years of compounded interest. The result is a drastically inflated prejudgment interest calculation that should be rejected by this Court.

Diomed sought approximately $1.9 Million in reasonable royalty damages against AngioDynamics for the years 2002-2004. *See* Green Ex. A. In addition, Diomed sought

4

approximately $11.1 Million in lost profit damages for the years 2005-2007.[1] *See* Green Ex. A. Stated in terms of percentages, Diomed sought 15% of its damages for the 2002-2004 reasonable royalty period and 85% of its damages at the higher lost profit rate for the 2005-2007 timeframe. *See* Decl. of D. Joseph Gersuk at Ex. A. The jury ultimately awarded Diomed $8.36 Million in total damages against AngioDynamics, but it was not asked to detail the amount of damages it awarded Diomed for each year of the infringement period or distinguish whether the damages were calculated based on reasonable royalties or lost profit. Instead, the jury returned a general black box verdict.

In allocating the jury's damages award over the infringement period, Diomed distributes the total amount of damages awarded in proportion to the number of AngioDynamics' sales that the jury found to infringe per quarter without taking into account the fact that certain sales that the jury found to infringe were subject to the lower reasonable royalty rate (2002-2004 sales), while other sales were subject to the higher lost profit rate (2005-2007 sales). Green Ex. E. As a result, Diomed allocates $3,072,047 of the damages award against AngioDynamics to the 2002-2004 timeframe -- $1,127,647 more than Diomed even requested for that same period at trial. In terms of percentages, Diomed requested 15% of its damages against AngioDynamics between 2002-2004, but now allocates 37% of the damages that the jury awarded to that same period for the purpose of calculating prejudgment interest. That result is inconsistent with the damages evidence Diomed presented at trial and is nothing more than an attempt by Diomed to expose more of the jury's damages award to more years of compounded interest.

---

[1] Diomed's lost profits claim for 2005-2007 included a claim for reasonable royalties for sales on which Diomed did not claim lost profits. For ease of reference, defendants will refer to the claim as Diomed's "lost profits" claim.

A proper allocation of the damages award would allocate to the 2005-2007 lost profit period a greater percentage of the damages award, thereby decreasing the number of years of compounded interest to which the lost profit damages are exposed and lessening the overall amount of prejudgment interest. If the Court were to apply the percentages set forth above to the jury award, as defendants suggest in AngioDynamics' case, it would allocate approximately $1.2 Million (15%) in awarded damages to the 2002-2004 timeframe and approximately $7.1 Million (85%) in awarded damages to 2005-2007. Allocating the jury award in this way is consistent with Diomed's request at trial and results in reallocating $1,826,982 of the damages against AngioDynamics that Diomed improperly placed in the 2002-2004 timeframe, to the 2005-2007 lost profit period where they belong.

Diomed similarly shifted the jury's 2005-2007 lost profit damages against VSI to the earlier 2003-2004 timeframe resulting in a similarly improper inflation of prejudgment interest. *See* Hennen Decl. ¶ 16. Diomed sought $6,498,453 in damages against VSI at trial, broken down by damages for: (1) reasonable royalties (2003-2004), in the amount of $538,160; (2) lost profits (2005-2007), in the amount of $3,492,881;[2] and (3) price erosion (2003-2007), in the amount of $2,467,712. Hennen Ex. E. As such, Diomed's damage request at trial was in the form of 8% reasonable royalty, 54% lost profit, and 38% price erosion. When price erosion damages are allocated to each period on the basis of VSI's sales during that period, the proper allocation of damages against VSI – based on Diomed's own damages claim – is 17.6 % to the 2003-2004 period and 82.4% to the 2005-2007 period.

---

[2] As with AngioDynamics, Diomed sought lost profits on 80% of VSI's sales, with a reasonable royalty on the remaining 20% of sales for 2005-2007.

The jury awarded Diomed $4.1 Million in damages against VSI. Thus, $721,257 (17.6%) of the total jury award against VSI should be allocated to the 2003-2004 period, and $3,378,743 (82.4%) should be allocated to the 2005-2007 period. *See* Hennen Ex. H.

Diomed, however, attributes $1,042,059, or 26%, of the jury's damage award to the 2003-2004 timeframe and $3,004,315, or 74%, to the 2005-2007 timeframe.[3] Thus, as to VSI, Diomed improperly shifts approximately $320,802 of the jury's damage award from the 2005-2007 timeframe to 2003-2004, thereby exposing more damages to a longer period of compounded interest.

As Diomed accurately points out, "the award must place the patent owner in <u>as good a position</u> as it would have been absent the infringement and further compensate the patent owner for the 'foregone use of the money between the time of the infringement and the date of the judgment.'" Diomed Mem. at 4 (emphasis added), *quoting General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-57 (1983). Mr. Green's method of calculating prejudgment interest puts Diomed in a <u>better</u> position than it would have been absent infringement by improperly shifting more of the jury's damages award to an earlier period of time and compounding interest on more damages over a longer period of time. The Court should reject Diomed's calculation of prejudgment interest in favor of a calculation that properly, according to the evidence Diomed presented at trial, allocates damages over the infringement period.

---

[3] Diomed also improperly applies prejudgment interest to damages for VSI's dual clad sales. *See* Green Ex. D. The Court has not yet, and should never, award Diomed damages for VSI's dual clad sales. For this reason, Diomed's calculation of prejudgment interest related to these sales is premature, and damages attributable to dual clad sales have been removed from Diomed's calculation for purposes of determining Diomed's allocation during the relevant time periods.

## IV. APPROPRIATE CALCULATION OF PREJUDGMENT INTEREST

### A. An Appropriate Calculation Of Prejudgment Interest As To VSI

As described in greater detail in VSI's Memorandum in Opposition to Diomed's Motion To Amend Judgment To Include Post-Judgment Sales, the most likely assumption as to the jury's thought process is that the jury simply picked a damages figure for AngioDynamics that was roughly half-way between Diomed's expert Mr. Green's opinion and AngioDynamics' expert Hoffman's opinion, and then applied the same percentage to Diomed's damages claim against VSI. *See* Hennen Decl. ¶¶ 3-9; Ex. B. Thus, to calculate an appropriate amount of prejudgment interest on the jury verdict of $4.1 million, VSI's Chief Financial Officer James Hennen applied the jury's 63.1 percent discount rate to Diomed's claim for a reasonable royalty, price erosion, and lost profits for the relevant time periods, yielding a total reasonable royalty award (2003-2004) of $339,520; a total lost profits & reasonable royalty award (2005-2007) of $2,203,625; and a total price erosion award (2003-2007) of $1,556,855. *See* Hennen Ex. E. Mr. Hennen then allocated those damages by quarter from 2003-2007, based on the proportion of sales in each quarter. *See* Hennen Decl. ¶ 16; Ex. E. Applying interest at the three-month treasury bill rate, and compounding interest quarterly, yields $255,552 in interest owed to Diomed on $4.1 million in damages through the end of March 2007 if the jury's damage award stands. *Id.* ¶¶ 16-17; Ex. E.

Similarly, Mr. Hennen calculated prejudgment interest on dual-clad sales using VSI's calculation of damages in the event the Court grants Diomed's motion for an accounting. *See* Hennen ¶18; Ex. F, G. That calculation yields an additional $8,996 in prejudgment interest if the Court awards damages for dual-clad sales. *See id.*

8

### B. An Appropriate Calculation Of Prejudgment Interest As To AngioDynamics

At trial, Diomed requested $13,055,691 in total damages against AngioDynamics. Of that approximately $13 Million in total damages, Diomed sought $1,944,400 in reasonable royalty damages for the 2002-2004 timeframe and $11,111,291 in lost profit damages for 2005-2007. Put a different way, Diomed sought damages in the form of 15% reasonable royalties (2002-2004) and 85% lost profits (2005-2007). Decl. of D. Joseph Gersuk at Ex. A. Ultimately, the jury returned a verdict of $8.36 Million against AngioDynamics.

To calculate an appropriate amount of prejudgment interest on the jury verdict of $8.36 Million, AngioDynamics first allocated 15% of the jury's damage award to the reasonable royalty period ($1,245,065), and 85% of the damage award to the lost profit period ($7,114,935), in accordance with the damages evidence Diomed presented at trial. Decl. of D. Joseph Gersuk at Ex. A. For each year within those two periods, AngioDynamics proportioned the damages awarded for that period to the amount of AngioDynamics' infringing sales for each year during that period. Decl. of D. Joseph Gersuk at Ex. A. AngioDynamics then made the same calculation for each quarter of each year. The result is an allocation of damages proportional to Diomed's actual request for damages against AngioDynamics at trial and the amount of AngioDynamics' infringing sales on a quarterly basis. Applying interest at the three-month treasury bill rate, and compounding interest quarterly, yields $585,694 in interest owed to Diomed on $8.36 Million in damages through the end of March, 2007. Decl. of D. Joseph Gersuk at Ex. B.

9

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court find that an award of prejudgment interest at this time is premature in light of the parties' pending post-trial motions. If the Court decides to amend the judgment to include prejudgment interest, it should accept VSI's and AngioDynamics' allocation of damages and apply the 3-month treasury bill rate of interest, compounded quarterly.

Dated: April 27, 2007

**I hereby certify that a true copy of the above document was served upon the attorney of record for the Plaintiff and Counterclaim-Defendant Diomed, Inc. by electronic mail.**

**/s/ William H. Bright, Jr.**

THE DEFENDANT,
ANGIODYNAMICS, INC.

By  /s/ William H. Bright, Jr.
    William H. Bright, Jr.
    *wbright@mccarter.com*
    Mark D. Giarratana
    *mgiarratana@mccarter.com*
    McCARTER & ENGLISH, LLP
    CityPlace I
    Hartford, CT  06103
    Phone:  (860) 275-6700

THE DEFENDANT,
VASCULAR SOLUTIONS, INC.

By  /s/ Thomas Vitt
    Thomas Vitt
    *Vitt.Thomas@Dorsey.com*
    Heather Redmond
    *Redmond.Heather@Dorsey.com*
    DORSEY & WHITNEY LLP
    50 South Sixth Street
    Minneapolis, MN 55402-1498
    Phone:  (612) 340-5675