UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC., <br><br> Plaintiff, <br><br> v. <br><br> VASCULAR SOLUTIONS, INC. <br><br> Defendant. | Civil Action No.: 04-10444-NMG |
| DIOMED, INC. <br><br> Plaintiff, <br><br> v. <br><br> ANGIODYNAMICS, INC. <br><br> Defendant. | Civil Action No.: 04-10019-NMG |

## DEFENDANT VSI'S OPPOSITION TO DIOMED'S MOTION TO AMEND JUDGMENT TO INCLUDE POST-JUDGMENT SALES

Defendant Vascular Solutions, Inc. ("VSI") submits this Memorandum in Opposition to Plaintiff Diomed, Inc.'s ("Diomed") Motion to Amend Judgment to Include Post-Judgment Sales (Docket No. 251). Through its motion, Diomed attempts to add more than $1.2 million to its damages verdict against VSI for VSI's sales of products that have not been found to infringe the '777 patent.

Diomed's motion should be denied for many reasons. <u>First</u>, Diomed cannot use the mechanism of a post-verdict accounting to recover damages for VSI's sales of a product that was not part of the litigation of this case. VSI's sales of its dual-clad laser fiber have never been found to infringe the '777 patent, and Diomed cannot deprive VSI of its right to a jury trial on

the issue through summary proceedings like a post-trial accounting.  <u>Second</u>, even if Diomed conceivably could circumvent VSI's right to a jury trial in this manner, Diomed's motion is premature.  Post-trial motions, including defendants' motions for judgment as a matter of law and for a new trial, are still pending, and the resolution of those motions will materially impact the issues raised in this motion.  <u>Third</u>, having failed to ask for an accounting in its Complaint, or at any time prior to trial, Diomed is precluded from doing so now.  <u>Fourth</u>, Diomed's calculations are speculative and contrary to the damages claims Diomed presented at trial.  <u>Finally</u>, contrary to Diomed's assertion, VSI's sales of a materially different product after the jury verdict did not constitute willful infringement.  Diomed's premature and overreaching motion should be denied.

## **ARGUMENT**

**I.    DIOMED IS NOT ENTITLED TO AN ACCOUNTING TO RECOVER DAMAGES FOR SALES OF PRODUCTS THAT HAVE NOT BEEN FOUND TO HAVE BEEN USED TO INFRINGE THE '777  PATENT**

In mid-2006, VSI transitioned from selling procedure kits including laser fibers with a single layer of polymer cladding (later found to have been used to infringe the '777 patent), to a fiber with an additional layer of silica cladding (dual-clad fiber).  At the time of the transition, the parties had exchanged expert reports a year earlier; discovery had been closed for almost a year; and summary judgment motions had been pending for several months.  While preparing for trial, on January 29, 2007, VSI's counsel requested that VSI verify that the laser fiber dimensions submitted in connection with summary judgment materials in late 2005 and early 2006 were still accurate.  On January 30, VSI's counsel learned that VSI had introduced the dual-clad laser fiber in connection with its procedure kits.  On January 31, VSI's attorneys produced to Diomed drawings of the dual-clad fiber they received from VSI.  The material difference in the dual-clad

fiber is that the additional layer of silica cladding is less susceptible to thermal degradation. *See* Van Scoy Decl. ¶¶ 4-5.

Although VSI produced the documents nearly six weeks before trial, Diomed made no effort to conduct additional discovery regarding the dual-clad fibers. It did not request a sample of the dual-clad fiber, any documents regarding VSI's testing or analysis of the fiber, or a deposition of VSI.[1] In addition, Diomed never sought a continuance of the trial date or any other appropriate relief that would allow it to conduct additional discovery or testing of VSI's dual-clad fiber.

Instead, Diomed chose to file a motion *in limine*, seeking the exclusion from trial of any evidence regarding VSI's dual-clad fiber. In its response to Diomed's motion, VSI agreed that the dual-clad fibers would not be part of this case, but stated in no uncertain terms that Diomed's position would prevent the very remedy Diomed now seeks:

> To be clear, however, the result of defendants' agreement on that issue means that the jury's verdict cannot be based *in any respect* on the dual-clad fiber. Just as defendants will not be allowed to argue that the dual-clad fiber is materially different and non-infringing, Diomed will not be able to argue that the dual-clad fiber is materially similar and, therefore, infringing. Thus, if the jury finds that the use of single-clad fibers by physicians following defendants' instructions directly infringes one or more claims of the '777 patent, the question of infringement regarding the dual-clad fiber will remain unanswered. Similarly, Diomed will not be allowed to argue that VSI's decision to design a dual-clad fiber to reduce degradation is evidence that the original single-clad fiber infringes the '777 patent. Finally, Diomed will not be allowed to seek injunctive or damages relief concerning kits sold with the dual-clad fiber.

---

[1] Although Diomed's counsel already was scheduled to travel to Minneapolis to depose Howard Root, VSI's CEO, on February 9, Diomed did not request that Mr. Root be prepared to answer questions regarding the new fiber or that VSI produce someone who could provide such testimony.

Docket No. 191 at 3-4 (emphasis in original); *see also id*. at 2. After VSI's response, the Court granted Diomed's motion. In addition, although VSI produced to Diomed its dual-clad sales figures from July 2006 through January 2007, Diomed voluntarily excluded from its expert's damages calculation VSI's sales of procedure kits including the dual-clad fiber. As Diomed requested, no evidence regarding dual-clad laser fibers was introduced at trial, and VSI's dual-clad fiber played no part in the jury's finding of infringement.

Now, Diomed seeks to use the infringement verdict as to the original laser fibers to request an additional $1.2 million in damages for dual-clad fiber and kit sales. Diomed's attempt to avoid its burden of proving infringement and deny VSI its right to a jury trial should be rejected.

### A.    Diomed Must Establish That The Dual-Clad Fibers Have Been Used To Infringe The '777 Patent Before It Is Entitled To Damages

Diomed asks the Court to award it $1.2 million in damages before anyone has determined that the dual-clad product has been used to infringe the '777 patent. Diomed has provided the Court with no testing, no expert opinions, and no other evidence that procedures performed with the dual-clad fiber infringe the '777 patent. Even if Diomed had submitted such evidence, a post-trial accounting is not an appropriate mechanism to determine infringement by a product that is materially different from the subject of the trial.

Diomed cites no authority for its argument that it can recover through an accounting damages for a product other than that adjudged to infringe. In fact, no court in <u>any</u> case VSI has been able to find has <u>ever</u> reached the result Diomed urges. In one similar case, the court rejected the plaintiff's request to take post-verdict discovery and recover through a post-verdict accounting damages for sales of a new product that the defendant claimed was made from a non-

4

infringing process. *Syndia Corp. v. The Gillette Co.*, 2002 WL 2012473 (N.D. Ill. Aug. 30, 2002).

Even "contempt proceedings . . . are available only with respect to devices previously admitted or adjudged to infringe, and to other devices which are no more than colorably different therefrom and which clearly are infringements of the patent." *KSM Fastening Sys., Inc. v. H.A. Jones Co., Inc.*, 776 F.2d 1522, 1526 (Fed. Cir. 1985). In *KSM Fastening*, the Federal Circuit noted that "courts have been uniform in exercising restraint in affording the patent owner the benefit of contempt proceedings," and that this type of summary proceeding should not be used where there is a "fair ground of doubt" about infringement because of differences between the adjudged and accused products. *Id*. at 1525. A movant for contempt "bears the heavy burden of proving violation by clear and convincing evidence." *Id*. at 1524. If contempt proceedings – where parties have the opportunity to present testimony, expert opinions, and other evidence – are to be used with restraint and only when there is clearly an infringement, a mere request for accounting cannot plausibly be an appropriate mechanism to decide the same issue.

If Diomed believes that VSI's eight months of sales of the dual-clad fiber infringed the '777 patent,[2] the appropriate mechanism for it to seek damages is through a separate infringement lawsuit.[3] *See Syndia Corp.*, 2002 WL 2012473, at *4 (plaintiff had the option of bringing a separate infringement action or, if appropriate, an action for contempt), *citing KSM Fastening Sys.*, 776 F.2d at 1524. Allowing Diomed to recover such a substantial damages

---

[2] As discussed more fully in Section V, on April 11, 2007, VSI ceased all sales of the dual-clad fiber. VSI now sells its Bright-Tip fibers – fibers that cannot physically contact the vein wall during the procedure – as part of its Vari-Lase procedure kits.

[3] VSI remains willing to explore the possibility that the parties can resolve the issue without having to expend substantial resources in an entirely new lawsuit. That willingness, however, does not deprive VSI of its right to a jury trial in the event the parties cannot reach an agreement.

5

award with no actual evidence that the product infringes violates VSI's Seventh Amendment right to a jury trial on the separate issue of dual-clad infringement.

### B.    Diomed Has Presented No Evidence That The Dual-Clad Fibers Are Materially The Same As The Adjudged Fibers Or That They Infringe The '777 Patent

If an accounting could ever be an appropriate mechanism to award damages for infringement based on a product never adjudged to infringe a patent, the burden of proof in such a motion could not be less than that in a contempt proceeding. Thus, as set forth above, Diomed would bear the burden of establishing infringement by VSI's dual-clad fibers by clear and convincing evidence.

Diomed devotes exactly two paragraphs of its entire Memorandum to the issue. *See* Diomed Mem. at 6. Aside from conclusory assertions that the dual-clad fiber has only slight modifications (which are neither described or analyzed) and that the product infringes, the only evidence Diomed cites are photographs of carbonization occurring in experiments performed by Dr. Proebstle. *Id*., *citing* Trial Exs. 1121 and 1119. Dr. Proebstle's testing, however, proves little with regard to infringement while using dual-clad fibers in actual Vari-Lase procedure, and certainly is insufficient to establish, by clear and convincing evidence, the deliberate and maintained contact necessary for infringement of the '777 patent. Neither Dr. Proebstle, nor any of Diomed's experts, offered an opinion at trial that procedures performed with dual-clad fibers would infringe. In fact, much of Diomed's evidence was aimed at establishing that infringement occurred during use of single-clad fibers, because the single layer of polymer cladding burned back during the procedure. Finally, if dual-clad infringement had been an issue at trial and was to be decided by this jury, VSI would have mounted a full defense to the claims Diomed now makes. Diomed simply has offered no proof that the product subject to its motion for accounting

6

infringes the '777 patents, and it would be unfair to deprive VSI of the ability to defend against Diomed's claims at trial.

VSI's dual-clad laser fibers are, in fact, materially different from the laser fibers found to infringe the '777 patent. *See* Van Scoy Decl. ¶ 3. The dual-clad fiber has a layer of silica cladding coating the laser fiber core, and then a layer of polymer cladding on top of the silica cladding, whereas the fibers found to infringe the '777 patent did not have the layer of silica protecting the core. *Id*. ¶ 4. The silica cladding is able to withstand very high temperatures and has a transition temperature of 1,800-2,000 degrees Celsius. VSI started using the dual-clad fiber with the silica cladding layer in order to better protect against thermal degradation of the laser fiber during clinical use, and to make the fiber less susceptible to emission from the side of the laser fiber, as opposed to the flat front face. *Id*.

Although an accounting should always be rejected as a mechanism to seek damages for materially different products, Diomed would have a stronger argument if the jury had specifically found that the flat front face of the laser fiber tip was in deliberate, maintained contact with the vessel wall during VSI's procedure. However, there is no way to determine the basis for the jury's general verdict of infringement and, accordingly, no way to apply the verdict to the dual-clad fibers. It is possible – likely, even – that the jury accepted Diomed's side-firing theory of infringement, and either decided that the side of the fiber constituted part of the uncoated "tip" (literal infringement) or that contact with the side of the fiber was equivalent to contact with the flat front face of the fiber (doctrine of equivalents). Either way, the properties of the dual-clad fiber described above make it substantially less likely that laser energy could escape from the cladded portion of the fiber during the procedure, or that such emission could cause sufficient damage to render the procedure successful. Given the strong possibility that the

7

sole basis for the jury's infringement finding was side-firing, the jury's verdict cannot support a finding that the dual-clad fiber has been used to infringe the '777 patent.

It is also important to remember that it was <u>Diomed</u> that requested that no evidence regarding dual-clad fibers be presented to the jury. In addition, the impossibility of applying the jury's verdict to VSI's redesigned product is a problem that <u>Diomed</u> created.[4] Diomed never asked for a separate verdict question regarding infringement under the doctrine of equivalents. In fact, Diomed <u>opposed</u> defendants' request for a verdict form that required the jury to determine if VSI's method "put the *uncoated tip* of the laser fiber into physical contact with the wall of the blood vessel." Docket No. 193 (emphasis added).

Accordingly, the same logic that prevents Diomed from receiving an injunction encompassing products or methods that have not been found to infringe the '777 patent, prevents Diomed from claiming – through a post-judgment accounting – damages for VSI's sales of a product that were not a part of the trial in this case.

> **C.     The Damage Award Diomed Requests Is Not An Appropriate Discovery Sanction**

Diomed suggests that the Court might award the $1.2 million in additional damages simply because VSI waited too long to produce documents relating to the new fiber to Diomed. In essence, Diomed suggests that it is entitled to a sort of "default" judgment against VSI. However difficult it is to imagine <u>any</u> discovery violation that would justify a $1.2 million discovery sanction, such circumstances clearly are not present here.

First, there was no discovery violation here. The discovery period had long passed when VSI transitioned to its dual-clad fiber, and the parties already had completed their expert reports on the issue of infringement. Even once it learned of VSI's dual-clad fiber, Diomed did not

---

[4] The general verdict form provided to the jury was nearly identical to the one Diomed requested.

8

request additional discovery. If discovery did not end at some point, a trial in this type of case would never occur, because the parties would be engaged in a continuous circle of discovery, expert reports, expert depositions, and discovery again.

Second, even if Diomed had established a violation, default and dismissal are the "most severe in the spectrum of sanctions provided by statute or rule." *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). Default is a sanction permitted under Fed. R. Civ. P. 37(b); however, before a Rule 37(b) sanction can be imposed, there must be a violation, not simply of the discovery rules, but of a Court order. *R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 14-15 (1st Cir. 1991). VSI violated no discovery order in the case. Nor has Diomed established any conduct on VSI's part that would justify such a severe sanction. Diomed does not suggest that VSI or its counsel intentionally withheld evidence that should have been produced during the discovery period in this case. Diomed does not claim that, after VSI produced the dual-clad fiber drawings, it refused to produce additional documents requested by Diomed. Diomed never requested a continuance. Instead, Diomed simply requested an order precluding VSI from presenting evidence regarding the dual-clad fibers at trial, and it voluntarily excluded from its own damages calculation any claim to damages from the dual-clad fiber procedure kits. If Diomed believes that a discovery violation occurred, it had numerous less draconian ways to deal with the issue.

Diomed has not established that any discovery violation occurred, and it cannot now – weeks after the jury returned its verdict in the case – suggest that it be awarded an additional $1.2 million based on the conclusory assertion that "VSI violated its discovery obligations."

Accordingly, Diomed's motion for supplemental damages for VSI's sales of dual-clad laser fibers should be denied.

## II.    DIOMED'S MOTION IS EITHER MOOT OR PREMATURE IN LIGHT OF DEFENDANTS' POST-TRIAL MOTIONS

For the reasons set forth in defendants' post-trial motions, defendants are entitled to either judgment of non-infringement as a matter of law, or a new trial. Should the Court grant defendants' motion, Diomed's motion for an accounting would be moot. In addition, in connection with the damages award, defendants moved for judgment as a matter of law, a new trial, and remittitur, and the resolution of those motions may have a substantial impact on the accounting Diomed requests. Until defendants' post-trial motions are resolved, any amendment of the judgment to include VSI's dual-clad sales or post-verdict sales is premature and should be denied. *See Syndia Corp.*, 2002 WL 2102473, at *3 (denying accounting and noting that post-trial motions and plaintiff's motion for a permanent injunction were still pending and had not even been fully briefed).

## III.    DIOMED WAIVED ITS ABILITY TO SEEK AN ACCOUNTING FROM DEFENDANTS

As set forth in Section I above, an accounting is not an appropriate mechanism for Diomed's request as to VSI, because the supplemental damages Diomed claims are for a materially different product. Even if an accounting were appropriate, however, Diomed waived its claim for an accounting for <u>any</u> damages Diomed could have asserted prior to the jury verdict, including damages arising from VSI's sales of dual-clad fiber kits from July 2006 through March 2007, and laser console sales from February and March, 2007. Diomed failed to preserve its claim prior to trial and presented no evidence of damages arising from those sales to the jury.

A request for an accounting is "a significant claim for relief and not a mere clerical exercise which would routinely and readily follow from a verdict in plaintiff's favor. Failure to so preserve the request for an accounting acts as a waiver and closes the door on further inquiry." *Braintree Labs., Inc. v. Nephro-Tech, Inc.*, 81 F. Supp. 2d. 1122, 1140 (D. Kan. 2000); *Lucent*

10

*Techs., Inc. v. Newbridge Networks Corp.*, 168 F. Supp. 2d 269 (D. Del. 2001) ("Given [the patentee's] lack of clarity regarding the damages it sought to pursue, its failure to preserve its request for an accounting in either the Amended Complaint or the Final Joint Pre-Trial Order, the fact that the [infringer] opposes an accounting, and the lack of any case law supporting an accounting in these circumstances, the Court declines to grant [the patentee's] request for an adjustment of damages.").

Diomed could have asked for an accounting in its Complaint or at some other time prior to the trial, but it did not. In addition, Diomed could have asked the jury to award damages for dual-clad sales through January 2007, and even for sales through March 2007 based on a projection from VSI's prior sales. When it failed to do so, Diomed waived its claim for an accounting of pre-judgment sales. *See Oscar Mayer Foods Corp. v. Conagra, Inc.*, 869 F. Supp. 656, 668 (W.D. Wis. 1994) (There is "no justification for awarding additional damages for that period of time prior to trial for which plaintiff offered no evidence of lost profits. Plaintiff was entitled to establish damages for the entire period or to urge the jury to accept a projection from past sales, but chose not to present such evidence"). The court in *Oscar Mayer Foods* allowed post-judgment accounting, but denied the patentee's request for an accounting of infringing sales that could have been evidenced at trial, even if only by projections. *Id*.

In addition, the more complicated the accounting, the less likely a court is to order an accounting when the patentee failed to preserve its request. *Braintree Labs.*, 81 F. Supp. 2d at 1140 (distinguishing situation where fact-finder awards damages based on a reasonable royalty, from situation where the jury's award is a combination of royalties and lost profits). Other courts have applied the *Braintree Labs.* distinction between applying lost profit as opposed to reasonable royalty damages in the accounting context. *See, e.g.*, *Mikohn Gaming Corp. v. Acres*

11

*Gaming Inc.*, No. CV-S-97-1383, 2001 WL 34778689, at \*\*18-20 (D. Nev. Aug. 2, 2001). In *Mikohn*, the court granted the patentee's motion for an order allowing an accounting of infringing sales post-judgment, in part because the patentee sought only a reasonable royalty. *Id.* at \*18. While Diomed relies on the *Mikohn* decision in support of its request for an accounting, *see* Diomed Mem. at 3, the *Mikohn* court explicitly distinguished the *Braintree Labs.* decision on the basis that the *Mikohn* patentee requested the application of reasonable royalty percentages found by the jury to post-verdict infringing sales rather than lost profits. *Mikohn*, 2001 WL 34778689, at \*20.

As to VSI, the jury's damage award was based on a combination of reasonable royalties, lost profits, and price erosion damages. *See* Hennen Decl. ¶¶ 3-9; Ex. B. The general verdict that the jury provided (at Diomed's request) did not set forth how the jury allocated damages or at what rate. An accounting here, as in *Braintree Labs.*, is not as simple as applying a reasonable royalty rate determined by the jury.

The cases cited by Diomed also are distinguishable. In many of the cases, the defendant did not oppose the request for an accounting. *See Technology for Energy Corp. v. Computational Sys., Inc.*, 1992 WL 535791, at \*3 (E.D. Tenn. July 29, 1992); *Floe Int'l, Inc. v. Newmans' Mfg. Inc.*, 2006 WL 2472112, at \* 9 (D. Minn. Aug. 23, 2006); *Stryker Corp. v. Davol, Inc.*, 75 F. Supp. 2d. 746, 747 (W.D. Mich. 1999); *Oscar Mayer Foods*, 869 F. Supp. at 668; *Padco, Inc. v. Newell Cos.*, 1988 WL 187504, at \*10 (E.D. Wisc. July 27, 1988). In another case cited by Diomed, the court awarded an accounting only for those post-verdict damages that could not have been asserted at trial. *See Nat'l Instruments Corp. v. Mathworks, Inc.*, 2003 WL 24049230, at \*4 (E.D. Tex. June 23, 2003).

Following the reasoning of *Braintree Labs.* and *Oscar Mayer Foods*, the Court should find that Diomed waived its request for an accounting for VSI's dual-clad sales from July 2006 through March 2007, as well as laser console sales in February and March 2007.

IV.   **THE AMOUNT OF DUAL-CLAD AND POST-VERDICT DAMAGES DIOMED REQUESTS IS NOT SUPPORTED BY THE JURY'S VERDICT**

The basis for Diomed's request for $1.2 million in supplemental damages from VSI is Mr. Green's opinion that the jury awarded Diomed 100 percent of its lost profits claim against VSI (but no price erosion damages), while it awarded only 64 percent of its claim against AngioDynamics.  *See* Green Decl. ¶ 4.  Mr. Green's assumption violates both common sense and concepts of basic math.

No party at any time in this case argued that Diomed was entitled to recover a greater percentage of VSI's sales than those of AngioDynamics.  Nor is there sufficient evidence in the record to support such a conclusion.  Diomed never attempted to distinguish the two defendants by geography, sales force, or customer.  Certainly, there is no difference in the market in which the parties compete.  In addition, Diomed's cost structure would remain the same whether Diomed was making a sale to a VSI or AngioDynamics customer.

Mr. Green's calculation ignores the basic math as well.  According to Green, the jury awarded Diomed 101.7% of Diomed's lost profits claim against VSI.  *See* Green Ex. A.  Without explanation or support, Green concludes that he can simply "SAY 100%" based on those numbers.  *Id*.  Simple rounding does not support Green's conclusion either.[5]  Despite the inconsistency, Green uses his unsupported conclusion that the jury awarded Diomed 100% of its lost profits claim to inflate Diomed's alleged supplemental damages.

---

[5] Rounding Green's $4,031,041 lost profits claim would have yielded an even $4 million verdict.

13

Because the jury award was greater than Diomed's own claim for lost profits, the most reasonable assumption is that the jury awarded Diomed some price erosion damages. The jury likely calculated damages against both defendants as a percentage of Diomed's entire damages claim. *See* Hennen Decl. ¶¶ 3-9; Ex. B. The $8.4 million damages verdict as to AngioDynamics is very close to the half-way point between Green's damages opinion ($13,055,691) and Hoffman's opinion ($4,182,446), and represents approximately 64 percent of Diomed's claim. *See* Green Ex. A; Hennen Ex. B. It appears that the jury applied a similar percentage (63.1 percent)[6] to Diomed's claim against VSI ($6,498,753), reaching a damages amount of $4.1 million. *See* Hennen Decl. ¶ 9; Ex. B. All other possibilities yield either an inconsistent verdict or a number that is above or below the jury's actual award. *See* Hennen Decl. ¶¶ 7-8; Ex. B.

If the Court finds that Diomed is entitled to damages for dual-clad fibers, it should not use Mr. Green's flawed and speculative calculations. The 63.1% discount figure can be used to calculate an appropriate award of damages based on the jury's verdict.[7] Those calculations result in supplemental damages of $919,652. *See* Hennen Decl. ¶¶ 10-13; Exs. C, D.

## V.     VSI'S POST-VERDICT SALES ARE NOT WILLFUL

VSI has not sold since July 2006 the product the jury found has been used to infringe the '777 patent. Ignoring that fact, Diomed makes the extraordinary request that the Court find VSI's sales in the days following the verdict to be willful. Diomed also requests that the Court treble any damages it awards for post-verdict sales and award its attorney fees. Diomed's frivolous request should be denied.

---

[6] It appears that the jury applied the 64 percent, and then rounded the result to $4.1 million.

[7] VSI transitioned to its new Bright-Tip fiber on April 11, 2007. Because VSI has now provided sales figures for all of its dual clad sales through April 10, 2007, there is no need to calculate a daily damages amount as Green did. *See* Hennen Ex. A.

"Willfulness of infringement is a question of fact to be determined by looking at the totality of the circumstances." *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1580 (Fed. Cir.1986). "[W]illful infringement arises upon deliberate disregard for the property rights of the patentee. . . . When it is found that the infringer acted <u>without a reasonable belief</u> that its actions would avoid infringement, the patentee has established willful infringement." *Talarico v. Marathon Shoe Co.*, 221 F. Supp. 2d. 35, 44 (D. Me. 2002) (emphasis added). Diomed must prove willfulness "by clear and convincing evidence." *Trustees of Columbia Univ. of New York v. Roche Diagnostics GmbH*, 272 F. Supp. 2d. 90, 118 (D. Mass. 2002), *citing Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1221 (Fed. Cir. 1995).

As set forth in greater detail above, VSI was not selling the laser fibers found to infringe the '777 patent at the time the jury rendered its verdict. Eight months earlier, VSI had transitioned to a dual-clad fiber that is materially different. Diomed cannot establish as a matter of law that VSI willfully infringed the '777 patent based on a verdict relating to a different product. In addition, VSI stopped selling even its dual-clad laser fibers just two weeks after the jury verdict. By April 12, 2007, VSI had entirely transitioned to the new Bright-Tip design. None of the cases Diomed cites support a finding of willfulness under such circumstances.

In addition, VSI's reasonable belief that it does not infringe Diomed's patent is supported by the strength of defendants' arguments in their motion for judgment as a matter of law. In their JMOL Motion, defendants argue, in part, that no reasonable jury could have found direct infringement and that Diomed failed to evidence the requisite intent necessary to support a finding of inducement. The jury had no legally sufficient evidentiary basis for its verdict. In addition to the fact that VSI was not selling the product that was found to infringe at the time of the verdict or after, VSI maintains a reasonable belief that its sales of the original laser fibers did

not infringe, either.  Given the totality of these circumstances, a finding of willfulness would be improper.

Diomed cites to three decisions in support of its argument that defendants' post-verdict sales constitute willful infringement.  <u>See</u> Diomed Mem. at 7-8, *citing Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1376 (Fed. Cir. 2005); *Stryker Corp. v. Davol, Inc.*, 75 F. Supp. 2d. 746, 747 (W.D. Mich. 1999); *TA Instruments, Inc. v. Perkin-Elmer Corp.*, 277 F. Supp. 2d. 367, 378 (D. Del 2003)).  Even aside from the fact that none of the cases dealt with post-verdict sales of a <u>different</u> product, each case is distinguishable from this one.

In *Imonex Services* and *Stryker Corp.*, the finding of willful infringement for *post*-verdict sales was supported by the jury's finding of willful infringement in connection with the defendants' *pre*-verdict sales.  *See Imonex Services*, 408 F.3d at 1376; *Stryker Corp.*, 75 F. Supp. 2d at 747.  It would be contradictory for the jury to find willful infringement for pre-verdict sales but find that the defendants' post-verdict sales of the same product were not willful.  Here, the jury specifically found that defendants' actions did not constitute willful infringement.  As such, *Imonex Services* and *Stryker Corp.* are inapplicable.

In *TA Instruments*, the defendant continued its post-verdict infringement even after the court issued an injunction against further infringement.  *TA Instruments*, 277 F. Supp. 2d at 378.  Throwing itself at the mercy of the court, the defendant stipulated that its post-injunction infringing sales constituted willful infringement.  *Id.*[8]  There is no injunction here.

VSI stopped selling products found to infringe the '777 patent long before the verdict in this case.  The jury found that even those sales were not willful.  VSI has violated no injunction.

---

[8] Even in *TA Instruments*, the court did not award enhanced damages for infringing sales that occurred post-judgment, but prior to the injunction.  277 F. Supp. 2d at 379, n.7.

16

Diomed cannot come close to meeting its burden of establishing, as a matter of law, that VSI's post-verdict sales have been willful.

## **CONCLUSION**

For all of the foregoing reasons, VSI respectfully requests that the Court deny Diomed's request for an accounting of VSI's dual-clad fiber sales from July 2006 through March 2007, for an accounting of laser console sales from February 2007 through the present, and for a finding of willfulness, treble damages, and attorneys' fees.

Respectfully submitted,

**VASCULAR SOLUTIONS, INC.**

By its counsel,

/s/ Steven L. Feldman
Steven L. Feldman (BBO #162290)
Ruberto, Israel & Weiner, P.C.
100 North Washington Street
Boston, Massachusetts 02114-2128
Telephone: (617) 742-4200

J. Thomas Vitt MN #183817
Heather D. Redmond MN #313233
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
Telephone: (612) 340-2600