UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>VASCULAR SOLUTIONS, INC.<br><br>    Defendant. | Civil Action No.: 04-10444-NMG |
| DIOMED, INC.<br><br>    Plaintiff,<br><br>ANGIODYNAMICS, INC.<br><br>    Defendant. | Civil Action No.: 04-10019-NMG |

## DECLARATION OF JAMES HENNEN

I, James Hennen, declare and state as follows:

1.    I am Vascular Solutions, Inc.'s ("VSI") Chief Financial Officer, and I have held my current position since January 1, 2004. I submit this Declaration in Support of Defendant VSI's Memorandum in Opposition to Diomed's Motion to Amend Judgment To Include Damages For Post-Judgment Sales, and Defendants' Joint Memorandum in Opposition to Diomed's Motion to Amend Judgment to Include Prejudgment Interest. I personally performed the calculations described herein, and I have personal knowledge of the matters set forth in this Declaration.

2.    Attached as **Exhibit A** is a true and correct summary of VSI's Vari-Lase Revenue & Cost of Sales from June 2003 through April 10, 2007. These figures previously were

produced to Diomed reflecting sales through January 31, 2007.

**Basis for Jury Award**

3. I performed an analysis of the jury award in light of Diomed's damages claim at trial and AngioDynamics' expert Dr. Hoffman's damages opinion. The calculations I performed are attached as **Exhibit B**.

4. The purpose of the analysis was to determine the likely basis for the jury award of damages against VSI, in order to be able to apply an estimated damages figure to VSI's sales of dual-clad fiber kits and to properly allocate Diomed's damages for purposes of calculating prejudgment interest.

5. For the analysis, I assumed, per Mr. Green's testimony at trial, that Diomed claims recovery of lost profits on 80% of VSI's sales, and a reasonable royalty on 20% of VSI's sales during the time period 2005-present.

6. The figures I used for the analysis were taken directly from Mr. Green's and Dr. Hoffman's trial testimony. For VSI's reasonable royalty figure under Dr. Hoffman's analysis (a figure that Dr. Hoffman did not himself calculate), I applied Dr. Hoffman's opinion that Diomed was entitled to no more than $50 per kit and $1,000 per laser console to VSI's actual sales numbers from 2003-2007.

7. For various reasons, I was able to exclude most of the possible means by which the jury could have reached its verdict. For example, it appears that the jury did not adopt Mr. Green's straight reasonable royalty analysis for 2002-2007, or Dr. Hoffman's straight reasonable royalty analysis for 2002-2007, because the actual jury award was higher than both of those. It also appears that the jury did not adopt Mr. Green's reasonable royalty + price erosion analysis for 2002-2007, because the amount requested by Diomed as to VSI was higher than the jury award, while the amount requested as to AngioDynamics was lower than the jury award. In

addition, the proportion of damages to Diomed's claim was not in proportion between the two defendants. Finally, it is unlikely that the jury adopted Diomed's lost profits/reasonable royalty claim, but rejected Diomed's price erosion claim. Again, Diomed's claim as to VSI in that situation is below the jury's actual award, while the number as to AngioDynamics is well above the jury's actual award.

8. Mr. Green's assumption, as reflected in paragraph 4 of his April 12, 2007 declaration, is that the jury awarded 100% of Diomed's lost profits/reasonable royalty claim against VSI, but no price erosion damages. Mr. Green also assumes that the jury awarded only 64% of Diomed's lost profits/reasonable royalty claim against AngioDynamics. As reflected in my calculations in Exhibit B, and in Mr. Green's calculations at Green Ex. A, the jury award as to VSI ($4,100,000) is <u>more</u> than Diomed's lost profits/reasonable royalty claim ($4,031,041).

9. The more likely assumption, as reflected in my calculations, is that the jury calculated damages as to AngioDynamics approximately half-way between the opinion of Mr. Hoffman and Mr. Green. That number reflects 64% of Diomed's total damages claim against AngioDynamics. The jury likely applied the same approximate percentage to Diomed's total damages calculation against VSI, and rounded to $4.1 million. The actual jury award as a percentage of Diomed's total damages claim against VSI was 63.1%. *See* Exhibit B.

**Calculation of Dual-Clad Damages**

10. I understand that VSI believes it owes no damages for sales of its dual-clad fiber procedure kits from July 2006 through April 10, 2007, when VSI transitioned to its new Bright-Tip fiber, or for laser consoles in February and March 2007. I also understand that VSI believes that the jury's verdict was improper and has filed post-trial motions on those issues. However, in the event the Court awards Diomed damages for those sales based on verdict, I performed an analysis of approximate damages based on the jury's damages verdict and to demonstrate that

Mr. Green's calculations are wrong. My calculation of dual-clad damages through January 31, 2007 is shown in **Exhibit C**. My calculation of dual-clad and laser console damages from February 1, 2007 through April 10, 2007 is shown in **Exhibit D**.

11.  For both calculations, I used Mr. Green's assumption that Diomed is entitled to recover lost profits on 80% of VSI's sales, and a reasonable royalty for 20% of its sales. In addition, based on the calculation shown in Exhibit B and described in detail above, I assumed that the jury would have awarded Diomed 63.1% of its total damages claim. Diomed's total damages claim for the products was calculated using Mr. Green's opinions at trial ($133/kit and $17,506/laser console lost profits; $80/kit and $5,000 per laser console reasonable royalty).

12.  VSI sold 7,775 dual-clad kits as of January 31, 2007. At $133/kit, and assuming an 80% capture rate, I estimate that Diomed's damages claim for 6,220 kits would total $827,260. Applying the jury's 63.1% discount yields a total of $522,001 in lost profits damages. At $80 per kit, I estimate that Diomed's damages claim for the remaining 1,555 kits would total $124,400. Applying the jury's 63.1% discount yields a total of $78,496 in reasonable royalties. Thus, I estimate that, based on the jury's damages award, Diomed's damages for dual-clad sales through January 31, 2007 would total $600,497. *See* Exhibit C.

13.  VSI sold 3,029 dual-clad kits and 9 laser consoles from February 1, 2007 through April 10, 2007. VSI transitioned to its new Bright-Tip fiber design on April 11, 2007. At $133/kit and $17,506/laser console, and assuming an 80% capture rate, I estimate that Diomed's damages claim for 2,423 kits would total $322,286 and for 7.2 laser consoles would total $126,043. Applying the jury's 63.1% discount yields a total of $282,895 in lost profits damages. At $80 per kit and $5,000 per laser console, I estimate that Diomed's damages claim for the remaining 606 kits would total $48,464 and 1.8 laser consoles would total $9,000. Applying the jury's 63.1% discount yields a total of $36,260 in reasonable royalties. Thus, assuming the

Court were to award damages based on the jury's award, Diomed's damages for dual-clad and laser console sales from February 1, 2007 through April 10, 2007 would total $319,155. *See* Exhibit D.

### **Calculation of Prejudgment Interest**

14.  Again, I understand that VSI has challenged the jury verdict and that post-trial motions are pending. However, in the event that the Court awards prejudgment interest to Diomed on either or both of the $4.1 million damages verdict or VSI's dual-clad fiber sales, I performed an analysis of prejudgment interest that would be due on each amount as of the end of the first quarter of 2007. My calculation of prejudgment interest on the jury's damages verdict is shown in **Exhibit E**. My calculation of prejudgment interest on dual-clad fiber sales from July 2006 through January 31, 2007 is shown in **Exhibit F**. My calculation of prejudgment interest on dual-clad fiber and laser console sales from February 1, 2007 through April 10, 2007 is shown in **Exhibit G**.

15.  I understand that courts in the District of Massachusetts have in the past used the 3 month treasury bill (secondary market) rate to calculate prejudgment interest on patent damages awards, and I therefore used that rate for my calculations. In addition, interest was compounded quarterly.

16.  To calculate prejudgment interest on the jury's $4.1 million verdict (Ex. E), I first needed to allocate damages to the appropriate quarter. Simply allocating damages based on the proportion of total sales in any given quarter, as Mr. Green did, will artificially inflate the prejudgment interest in this case, because from 2003-2004, Diomed requested only a reasonable royalty on VSI's sales. Attached as **Exhibit H** is my analysis of the difference in allocation.

Thus, I first divided the jury's award into four categories to reflect Diomed's damages claim at trial: reasonable royalty (2003-2004), lost profits (2005-2007), reasonable royalty on

sales not captured (2005-2007), and price erosion (2003-2007). I then applied the jury's 63.1% discount to each category to reach the total amount of damages awarded in each category. Finally, I allocated each category of damages in proportion to VSI's sales in each quarter of the applicable period.

For example, Diomed claimed $538,160 in reasonable royalties on VSI's sales in 2003-2004. Applying the jury's 63.1% discount yields $339,520 in damages. Based on the number of sales in each quarter, I allocated damages to each quarter of 2003-2004. I performed the same analysis for lost profits/reasonable royalties (2005-2007) and price erosion (2003-2007).

17. To calculate interest, I applied the applicable three-month treasury bill rate for the secondary market and compounded quarterly. I calculated that a total of $255,552 in prejudgment interest would accrue on the jury's verdict award. *See* Exhibit E.

18. I also calculated $8,996 in interest on dual-clad sales from July 2006 through January 31, 2007. *See* Ex. F. Because no interest on sales of dual-clad fibers and laser consoles in February and March 2007 would begin to accrue until after the first quarter of 2007, I concluded that no prejudgment interest would be due on those sales. *See* Exhibit G.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: April 27, 2007.

_/s/ James Hennen_
James Hennen