UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

DIOMED, INC.,

                Plaintiff,

v.

ANGIODYNAMICS, INC.,

                Defendant.

Civil Action No. 04-CV-10019 (NMG)

---

DIOMED, INC.

                Plaintiff,

v.

VASCULAR SOLUTIONS, INC.

                Defendant.

Civil Action No. 04-CV-10444 (NMG)
**(CONSOLIDATED UNDER
04-10019 NMG)**

---

## DEFENDANT ANGIODYNAMICS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF DIOMED'S MOTION TO AMEND JUDGMENT TO INCLUDE POST-JUDGMENT SALES

### I.    PRELIMINARY STATEMENT

Plaintiff Diomed, Inc. ("Diomed") has moved this Court to amend the judgment against Defendants AngioDynamics, Inc. ("AngioDynamics") and Vascular Solutions, Inc. ("VSI," and with AngioDynamics, "the Defendants") to include an accounting of additional sales that the jury found to infringe and a finding of willfulness. Plaintiff Diomed's Motion to Amend Judgment to Include Post-Judgment Sales, dated April 13, 2007 [Dkt # 251] ("Diomed's Motion"). In particular, Diomed requests:  (1) an accounting of damages for February and March, 2007; (2) a

further accounting of damages for the period after March 31, 2007; (3) additional damages against VSI for sales of kits with dual clad fibers between July, 2006, and January 31, 2007; and (4) a finding that the Defendants' post-judgment infringement was willful and that Diomed is entitled to treble damages and attorneys' fees. Id. AngioDynamics sets forth its response herein.[1]

AngioDynamics opposes Diomed's claim for an accounting of sales the jury found to infringe during February and March, 2007, on the ground that Diomed waived this claim. Diomed is asking the Court to award damages for this two month period based on a projection of AngioDynamics' January, 2007 sales. Diomed could have very easily done this same projection during trial. Diomed chose not to and is, instead, asking the Court to speculate as to the damages the jury would have awarded for February and March, 2007. Diomed's actions, or lack thereof, are consistent with federal court precedent finding that a party has waived its claim for an accounting.

AngioDynamics does not oppose Diomed's request for an accounting of AngioDynamics' post-judgment sales that the jury found to infringe, which covers a period the jury could not have considered. However, AngioDynamics opposes Diomed's application of a speculative lost profit rate of damages. Because the jury award does not indicate how it arrived at its damages award, any application of a lost profit extrapolation is necessarily speculative. Nor does the Court know what royalty rate the jury found or would have found to be reasonable. Consequently, this Court should award nothing more than a reasonable royalty equal to the evidence AngioDynamics' damages expert presented at trial.

---

[1] Due to VSI's sales of dual clad fibers since sometime in mid to late 2006, VSI is filing its own opposition brief.

Lastly, this Court should reject Diomed's request for a finding of willful infringement for AngioDynamics' post-judgment sales and Diomed's claim for treble damages and attorneys' fees based thereon. AngioDynamics maintains a reasonable belief that its products do not infringe based on the strength of its arguments in the Defendants' joint motion for judgment as a matter of law. The Court has yet to rule on that motion or order an injunction. AngioDynamics' continued sales in the context of this procedural posture, and in light of the strength of its arguments in the Defendants' joint motion for judgment as a matter of law, mitigate against a finding of willfulness and an award of treble damages or attorneys' fees.

For the foregoing reasons, and as more fully set forth herein, this Court should: (1) deny Diomed's request for an accounting for the period of February and March, 2007; (2) order an accounting of damages for AngioDynamics' post-judgment sales based on the reasonable royalty rate determined by AngioDynamics' damages expert; and (3) deny Diomed's request for a finding of willful infringement, treble damages, and attorneys' fees.

## II.    ARGUMENT

### A.    Diomed's Motion Is Either Moot Or Premature In Light Of Defendants' Post-Trial Motions.

For the reasons set forth in Defendants' post-trial motions, Defendants are entitled to either judgment of non-infringement as a matter of law, or a new trial. Should the Court grant Defendants' motion, Diomed's motion for an accounting would be moot. In addition, in connection with the damages award, Defendants moved for judgment as a matter of law, a new trial, and remittitur, and the resolution of those motions may have a substantial impact on the accounting Diomed requests. Until Defendants' post-trial motions are resolved, any amendment of the judgment to include AngioDynamics' post-judgment sales is premature and should be

denied. See Syndia Corp. v. The Gillette Co., 2002 WL 2012473, at *3 (N.D. Ill. Aug. 30, 2002) (denying accounting and noting that post-trial motions and plaintiff's motion for a permanent injunction were still pending and had not even been fully briefed).

 **B. Diomed Waived Its Claim For An Accounting For The February And March, 2007 Timeframe.**

  Diomed waived its claim for an accounting for the February and March, 2007 prejudgment timeframe when it failed to preserve its claim prior to trial and failed to present evidence of AngioDynamics' February and March, 2007 sales at trial. A request for an accounting is "a significant claim for relief and not a mere clerical exercise which would routinely and readily follow from a verdict in plaintiff's favor. Failure to so preserve the request for an accounting acts as a waiver and closes the door on further inquiry." Braintree Labs., Inc. v. Nephro-Tech, Inc., 81 F. Supp. 2d 1122, 1140 (D. Kan. 2000) (emphasis added). Courts look to the complaint and the pre-trial order to determine whether the patentee preserved its claim for supplemental damages based on an accounting. In its Complaint, Diomed did not request an accounting or supplemental damages. See Complaint, dated January 6, 2005, [Dkt #1] (the "Complaint").

  In addition, the more complicated the accounting is, the less likely a court is to order an accounting when the patentee failed to preserve its request. See Braintree Labs., Inc., 81 F. Supp. 2d at 1140. The finding of the court in Braintree Labs., illustrates the point:

> Even a cursory look at the substance of the request demonstrates why the court should deny relief here. This case is unlike the situation in which the fact-finder has awarded damages based on a reasonable royalty. If the damages awarded were based on a reasonable royalty in this case, the court could, after an accounting, simply reference the reasonable royalty percentage decided upon by the jury and apply that to any sales revealed by the accounting. Here, however, it would be wholly speculative for the court to attempt to award damages based on the outcome of the requested

accounting because it would be unclear just how much of the
profits had been generated from infringing sales. Moreover, it is
not just a matter of extrapolating damages from the jury's lost
profits award because we do not know how the jury arrived at the
$300,000 damages figure, and simplistically multiplying by the
ratio to which the amount of the jury's award bears to plaintiff's
demand would be arbitrary and speculative. Thus, it would be
impossible for the court to determine whether any further damages
awarded in light of the requested accounting would accurately
correspond to the damages awarded by the jury in this case without
establishing a detailed process to facilitate the inquiry, and it is too
late to raise such a request for the first time at this juncture.

Id. (denying the plaintiff's motion for an accounting).

Here, the jury's damages award was based on a combination of reasonable royalties and

lost profits. Diomed also presented different damages analyses for different periods of time --

seeking just reasonable royalties through 2004 and a mix of lost profits and reasonable royalties

thereafter. The general verdict that the jury provided, and Diomed requested, did not set forth

how the jury allocated damages either by type or time period. An accounting here, as in

Braintree Labs., is not as simple as applying a reasonable royalty rate determined by the jury.

Rather, Diomed seeks an accounting "based on the jury's award of lost profits" similar to the

patentee in Braintree Labs. Diomed's Memo at 4. Only here, Diomed is taking complication

and speculation to another level, by requesting that this Court extrapolate damages based on a

hybrid, reasonable royalty and lost profit, general jury damage award, without any sense as to

how the jury calculated damages. This exceeds the type of speculative accounting the court

rejected in Braintree Labs. and that this Court should reject here. See also Lucent Techs., Inc. v.

Newbridge Networks Corp., 168 F. Supp. 2d 269, 273 (D. Del. 2001) ("Given [the patentee's]

lack of clarity regarding the damages it sought to pursue, its failure to preserve its request for an

accounting in either the Amended Complaint or the Final Joint Pre-Trial Order, the fact that the

[infringer] opposes an accounting, and the lack of any case law supporting an accounting in these circumstances, the Court declines to grant Lucent's request for an adjustment of damages.").

Diomed could have presented to the jury the exact same argument for damages for February and March, 2007 that it has made to the Court in its Motion. Diomed has asked the Court to award damages for February and March, 2007 by projecting AngioDynamics' January sales numbers. It could have asked the jury to do the same thing, but chose not to. As such, Diomed has waived its claim for an accounting of prejudgment sales at this time. See Oscar Mayer Foods Corp. v. Conagra, Inc., 869 F. Supp. 656, 668 (W.D. Wisc. 1994), aff'd, 45 F3d 443 (1995), cert. denied, 516 U.S. 812 (1995) (finding "no justification for awarding additional damages for that period of time prior to trial for which plaintiff offered no evidence of lost profits. Plaintiff was entitled to establish damages for the entire period or to urge the jury to accept a projection from past sales, but chose not to present such evidence") (emphasis added). The court in Oscar Mayer Foods granted a post-judgment accounting but denied the patentee's request for an accounting of infringing sales that could have been evidenced at trial, even if only by projections. Id.

Diomed's reliance on the Mikohn Gaming decision to support its request for an accounting is misplaced.[2] Further, Mikohn Gaming is entirely consistent with AngioDynamics position that a reasonable royalty rate be applied to determine damages on post-judgment sales. In Mikohn Gaming, the court granted the patentee's request for an accounting of post-judgment sales because the patentee was not seeking lost profits but was only seeking a reasonable royalty. Mikohn Gaming Corp., 2001 WL 34778689, at **18-20. Diomed is not requesting an accounting based on a reasonable royalty like the patentee in Mikohn Gaming, but rather seeks

---

[2] Memorandum in Support of Plaintiff Diomed's Motion to Amend Judgment to Include Post-Judgment Sales, dated April 13, 2007, [Dkt # 252] ("Diomed's Memorandum"), at 3 (citing Mikohn Gaming Corp. v. Acres Gaming Inc., No. CV-S-97-1383, 2001 WL 34778689, at **18-20 (D. Nev. Aug. 2, 2001)).

an accounting based on lost profits like the patentee in <u>Braintree Labs</u>.  As such, this Court

should find that Diomed waived its claim for an accounting of AngioDynamics' prejudgment

sales consistent with <u>Braintree Labs.</u> or, at most, order an accounting based on reasonable

royalties consistent with the holding in <u>Mikohn Gaming</u>.  <u>See</u> <u>infra</u>, Section II.C.

    The cases cited by Diomed do not support its requested accounting of prejudgment sales

either because the infringer agreed to an accounting, the accounting was based on a reasonable

royalty rate, or the accounting concerned post-judgment sales of an infringing product.

Diomed's Memorandum at 2-3 (citing <u>Technology for Energy Corp. v. Computational Systems,</u>

<u>Inc.</u>, 1992 WL 535791, at *3 (E.D. Tenn., July 29, 1992) (parties agreed to supplement

infringing sales figures); <u>National Instruments Corp. v. Mathworks, Inc.</u>, 2003 WL 24049230, at

*4 (E.D. Tex. June 23, 2003) (accounting granted for post-verdict infringement); <u>Mikohn</u>

<u>Gaming v. Acres Gaming, Inc.</u>, 2001 WL 34778689, at *18 (D. Nev. Aug. 2, 2001) (accounting

based on a reasonable royalty rate); <u>Floe Intern., Inc. v. Newmans' Mfg. Inc.</u>, 2006 WL

2472112, at * 9 (D. Minn. Aug. 23, 2006) (defendant agreed to an accounting); <u>Stryker Corp. v.</u>

<u>Davol, Inc.</u>, 75 F. Supp. 2d 746, 747 (W.D. Mich. 1999) (accounting granted for post-judgment

infringement); <u>Oscar Mayer Foods Corp.</u>, 869 F. Supp. at 668 (accounting granted only for post-

judgment infringing sales).  None of these circumstances are present here related to Diomed's

request for prejudgment accounting.

    Pursuant to the findings in <u>Braintree Labs.</u> and <u>Oscar Mayer Foods</u>, the Court should find

that Diomed failed to preserve its request for an accounting for February and March, 2007, by

neglecting to request an accounting in its Complaint and by failing to present evidence of

damages for this timeframe at trial.

**C.    In The Alternative, Diomed Should Only Be Awarded A Reasonable Royalty For AngioDynamics' February and March, 2007 Sales.**

For the foregoing reasons, this Court should not award Diomed any damages for AngioDynamics' February and March, 2007 sales. However, should the Court determine that Diomed is entitled to additional damages for AngioDynamics' February and March, 2007 sales, those damages should be set at the reasonable royalty rate set forth by AngioDynamics' damages expert. See supra, Section II.B.

Again, Diomed's calculation of lost profits on AngioDynamics' post-judgment sales that the jury found to infringe is based on a general jury verdict that did not distinguish between lost profit and reasonable royalty damages. Still, Diomed's trial expert seems confident in proclaiming that he simply "follow[ed] the rate applied by the jury." Decl. of Philip Green [Dkt #248], at ¶ 6. "[T]he rate applied by the jury" is mere speculation on Mr. Green's part to the extent that the jury returned only a general black box jury award. Diomed's request for lost profit supplemental damages based on an accounting of post-judgment sales necessarily requires a complicated and unreliable extrapolation of the jury's damage award. Such an inquiry, based on a claim for accounting raised for the first time post-judgment, would be inconsistent with the holding in Braintree Labs.

In the absence of any detail about how the jury allocated and applied damages, this Court should, at most, apply the minimum damages for patent infringement required by law, i.e., reasonable royalty. To avoid the prejudice to AngioDynamics that would necessarily result from a speculative extrapolation of a reasonable royalty rate that the jury might have applied, this Court should apply the reasonable royalty rate presented by AngioDynamics' damage expert, Dr. Hoffman. Dr. Hoffman opined at trial that Diomed's reasonable royalty should be set at 15%, capped at $50.00 per kit and $1,000.00 per laser. Tr. 03/21/07 at p. 217. If this Court is to

account for the damages that Diomed incurred between February and March, 2007, but failed to

evidence at trial, it should do so at Dr. Hoffman's reasonable royalty rates.

**D.    Dr. Hoffman's Reasonable Royalty Rate Should Apply to AngioDynamics' Post-Judgment Sales.**

The holding in <u>Braintree Labs.</u> is equally applicable to post-judgment sales of accused

products.  For the same reasons set forth <u>supra</u>, Section II.C, AngioDynamics requests that this

Court apply no more than a reasonable royalty rate of 15%, capped at $50.00 per kit and

$1,000.00 per laser to Diomed's estimate of AngioDynamics' post-judgment sales that the jury

found to infringe.  Tr. 03/21/07 at p. 217.

**E.    Defendants' Post-Judgment Sales Do Not Constitute Willful Infringement.**

**(1)    AngioDynamics' Post-Judgment Sales Are Based On A Reasonable Belief Of Non-Infringement.**

AngioDynamics' reasonable belief that it does not infringe Diomed's patent, supported

by the strength of its arguments in Defendants' Joint Motion for Judgment as a Matter of Law, or

in the Alternative, for a New Trial, dated April 11, 2007 [Dkt #246] ("JMOL Motion"), preclude

a finding of willful infringement in connection with AngioDynamics' post-judgment sales.

"Willfulness of infringement is a question of fact to be determined by looking at the totality of

the circumstances." <u>Orthokinetics, Inc. v. Safety Travel Chairs, Inc.</u>, 806 F.2d 1565, 1580 (Fed.

Cir.1986); <u>Graco, Inc. v. Binks Mfg. Co.</u>, 60 F.3d 785, 792 (Fed. Cir. 1995) (finding that there is

no *per se* rule for determining willful infringement).  "[W]illful infringement arises upon

deliberate disregard for the property rights of the patentee.   . . . When it is found that the

infringer acted <u>without a reasonable belief</u> that its actions would avoid infringement, the patentee

has established willful infringement." <u>Talarico v. Marathon Shoe Co.</u>,  221 F. Supp. 2d 35, 44

(D. Me. 2002) (emphasis added).  "The primary focus of the willfulness determination is the

defendant's intent and reasonable beliefs." <u>Trustees of Columbia Univ. of New York v. Roche Diagnostics GmbH</u>, 272 F. Supp. 2d 90, 118 (D. Mass. 2002) (citing <u>Ortho Pharmaceutical Corp. v. Smith</u>, 959 F.2d 936, 944 (Fed. Cir. 1992)). The movant must prove willfulness "by clear and convincing evidence." <u>Trustees of Columbia Univ. of New York</u>, 272 F. Supp. 2d. at 118 (citing <u>Pall Corp. v. Micron Separations, Inc.</u>, 66 F.3d 1211, 1221 (Fed. Cir. 1995)).

In their JMOL Motion, Defendants argue, in part, that no reasonable jury could have found direct infringement and that Diomed failed to evidence the requisite intent necessary to support a finding of inducement. JMOL Motion Section II.B-C. These issues, in addition to the Defendants' other substantial challenges to the jury verdict found in the JMOL Motion, demostrate that the jury had no legally sufficient evidentiary basis for its verdict. For this reason, AngioDynamics maintains a reasonable belief that its post-judgment sales do not infringe. In addition, AngioDynamics has ceased selling its infringing kits as of April 27, 2007. <u>See</u> Decl. of David Doster. Other than AngioDynamics' limited post-judgment sales, Diomed has not pointed to any other evidence that would support a finding of willful infringement here. Given the totality of these circumstances, Diomed is unable to show that AngioDynamics has willfully infringed by clear and convincing evidence. As such, a finding of willfulness would be improper.

The cases cited by Diomed do not support a finding of willfulness here. <u>See</u> Diomed's Memorandum at 7-8 (citing <u>Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GMBH</u>, 408 F.3d 1374, 1376 (Fed. Cir. 2005); <u>Stryker Corp. v. Davol, Inc.</u>, 75 F. Supp. 2d. 746, 747 (W.D. Mich. 1999); <u>TA Instruments, Inc. v. Perkin-Elmer Corp.</u>, 277 F. Supp. 2d. 367, 378 (D. Del 2003)).

In <u>Imonex Services</u> and <u>Stryker Corp.</u>, the finding of willful infringement for post-verdict sales was supported by the fact that, in both cases, the jury found willful infringement in connection with the defendants' pre-verdict sales. See <u>Imonex Services, Inc.</u>, 408 F.3d at 1376; <u>Stryker Corp.</u>, 75 F. Supp. 2d at 747. It would be contradictory for the jury to find willful infringement for pre-verdict sales but then for the court to find that the defendants' post-judgment sales did not willfully infringe. Here, the jury specifically found that the Defendants' actions <u>did not</u> constitute willful infringement. As such, <u>Imonex Services</u> and <u>Stryker Corp.</u> are inapplicable to this case.

In <u>TA Instruments</u>, the defendant continued its post-verdict infringement even after the court issued an injunction against further infringement. <u>TA Instruments, Inc.</u>, 277 F. Supp. 2d at 378. Throwing itself at the mercy of the court, the defendant stipulated that its post-injunction infringing sales constituted willful infringement. <u>Id.</u> In stark contrast to the facts in <u>TA Instruments</u>, AngioDynamics' post-judgment sales all occurred prior to the resolution of Defendants' JMOL Motion and prior to any injunction. In that context, AngioDynamics maintains its reasonable belief that its post-verdict sales do not infringe for the reasons set forth in the Defendants' JMOL Motion. In fact, the court in <u>TA Instruments</u> specifically declined to award any enhanced damages for sales that occurred before it entered an injunction. 277 F. Supp. 2d at 379, n. 7.

Similarly, in <u>Oscar Mayer Foods</u> the plaintiff, like Diomed does here, asked the court to award multiple damages and attorneys' fees for infringing sales that occurred post-judgment. 869 F. Supp. at 667. The court refused to do so despite the fact that the jury had found the defendant's infringement to be willful. <u>Id.</u>

11

In this case, where there was an explicit finding rejecting Diomed's willfulness claim, the Court should reach the same conclusion.

### (2)    The Court Should Not Treble Damages Even If It Finds Willful Infringement.

Even if this Court finds that AngioDynamics' post-verdict sales willfully infringe, trebling damages would be improper.  "It is for the Court to determine whether and to what extent to increase the damages award, considering the totality of the circumstances." Jurgens v. CBK, Ltd., 80 F.3d 1566, 1570 (Fed. Cir. 1996).  "[A] finding of willful infringement does not mandate that damages be enhanced, much less mandate treble damages." Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank, 527 U.S. 627, 664, n. 15 (1999).  "The principal considerations in enhancement of damages are the same as those of the willfulness determination, but in greater nuance as may affect the degree of enhancement.  Thus [sic] egregiousness of the infringer's conduct may receive greater emphasis, as may any mitigating factors." SRI Int'l Inc. v. Advanced Tech. Labs., Inc., 127 F.3d 1462, 1469 (Fed. Cir. 1997) (trebling damages for willful infringement where the defendant did not have a "good faith belief" that the patent would be held "invalid or unenforceable or not infringed").  "An infringer may generally avoid enhanced damages for willfulness where it makes a meritorious good faith defense and substantial challenge to infringement." Bose Corp. v. JBL, Inc., 112 F. Supp. 2d 138, 157 (D. Mass. 2000) (internal quotation marks omitted) (citing Delta-X Corp. v. Baker Hughes Prod. Tools, Inc., 984 F.2d 410, 413 (Fed. Cir. 1993)).

Again, the only case Diomed cites to support its claim for enhanced or treble damages is a case where the defendant's pre-verdict infringement was found to be willful and the defendant continued its willful infringement post-verdict. Padco, Inc. v. Newell Companies, Inc., No. 85-C-1325, 1988 WL 187504, at *1 (E.D. Wisc. July 27, 1988).  AngioDynamics' pre-verdict

12

infringement was not found to be willful.  In addition, as noted <u>supra</u> Section II.E.1,

AngioDynamics has a substantial case on the merits as set forth in Defendants' joint JMOL

Motion.  AngioDynamics continued to sell the products underlying the jury's finding of

infringement because AngioDynamics maintains a reasonable, good faith belief that its products

do not infringe based on substantial defenses and that the jury verdict will be overturned either

by this Court or on appeal.  At no time has AngioDynamics engaged in any egregious conduct,

nor has Diomed alleged any egregious conduct, that would warrant the enhancement of damages.

Like the courts did in <u>TA Instruments</u> and <u>Oscar Mayer Foods</u>, this Court should decline to

award any enhanced damages.

**(3)    The Court Should Not Award Attorneys' Fees Even If It Finds Willful Infringement.**

The circumstances here do not warrant the award of attorneys' fees to Diomed.  "Under

35 U.S.C. § 285, [t]he court in <u>exceptional cases</u> may award reasonable attorney fees to the

prevailing party in patent infringement litigation." <u>JBL, Inc. v. Bose Corp.</u>, 112 F. Supp. 2d 138,

169 (D. Mass. 2000) (internal quotation marks omitted) (emphasis added).  "Among the types of

conduct which can form a basis for finding a case exceptional are willful infringement,

inequitable conduct before the P.T.O., misconduct during litigation, vexatious or unjustified

litigation, and frivolous suit." <u>Id.</u>  (citing <u>Beckman Instruments, Inc. v. LKB Produkter AB</u>, 892

F.2d 1547, 1551 (Fed. Cir. 1989)).  The movant must show the presence of such conduct by

"clear and convincing evidence." <u>JBL, Inc.</u>, 112 F. Supp. 2d at 169 (citing <u>Beckman</u>

<u>Instruments, Inc.</u>, 892 F.2d at 1551).

The only claim that Diomed makes that would conceivably support an award of

attorneys' fees is that AngioDynamics' post-judgment sales constitute willful infringement.  As

noted <u>supra</u> II.E.1-2, AngioDynamics' post-judgment conduct does not constitute willful

13

infringement and even if it did, the circumstances do not warrant the trebling of damages or the award of attorneys' fees.

### III.    CONCLUSION

For the foregoing reasons, AngioDynamics respectfully requests that the Court deny Diomed's request for an accounting of AngioDynamics' February and March, 2007 sales that the jury found to infringe and for a finding of willfulness, treble damages, and attorneys' fees.  In addition, AngioDynamics' requests that the Court set Diomed's damages for AngioDynamics' post-judgment sales at the reasonable royalty rate presented by AngioDynamics' damages expert.

Dated: April 27, 2007

**I hereby certify that a true copy of the above document was served upon the attorney of record for the Plaintiff and Counterclaim-Defendant Diomed, Inc. by electronic mail.**

**/s/ William H. Bright, Jr.**

THE DEFENDANT,
ANGIODYNAMICS, INC.

By  /s/ William H. Bright, Jr.
    William H. Bright, Jr.
    *wbright@mccarter.com*
    Mark D. Giarratana
    *mgiarratana@mccarter.com*
    McCARTER & ENGLISH, LLP
    CityPlace I
    Hartford, CT  06103
    Phone:  (860) 275-6700