IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIOMED, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>ANGIODYNAMICS, INC,<br><br>        Defendant. | Civil Action No. 04-10019 NMG |
| DIOMED, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>VASCULAR SOLUTIONS, INC.,<br><br>        Defendant. | Civil Action No. 04-10444 NMG<br>**(CONSOLIDATED UNDER<br>04-10019 NMG)**<br><br>**Leave to File Granted on May 8, 2007** |

## REPLY IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION

AngioDynamics and VSI concede that Diomed is entitled to a permanent injunction so long as the jury's verdict stands.[1] The Court therefore need only determine the terms of that order.

The injunction that the defendants propose is unreasonably narrow and would leave Diomed with a hollow victory despite prevailing after more than three years of expensive litigation culminating in a two-week jury trial.

First, the defendants ask the Court for a preemptive finding that the sale of redesigned fibers – products that Diomed has not yet had an opportunity to test (or even examine, in the case

---

[1] Diomed's opposition (D.I. 261) to defendants' motion for JMOL or New Trial addresses the reasons why the defendants' request to overturn the verdict lacks merit.

of the hypothetical AngioDynamics fiber) – cannot possibly fall within the injunction. Such a carve-out is premature and inappropriate as it would deny Diomed its rightful opportunity to examine the alleged design-around devices and determine whether they infringe before presenting any such claim to the Court in the form of a contempt motion.

Second, AngioDynamics and VSI propose that they should be allowed to continue selling kits so long as they change the accompanying instructions for use (IFUs). This argument recycles evidence that the defendants offered unsuccessfully at trial, ignoring the reality that the jury returned a verdict not just of <u>inducing</u> infringement (based on a variety of evidence – not only IFUs), but also of <u>contributory</u> infringement (a type of infringement that is wholly independent of any IFUs). In finding contributory infringement, the jury necessarily found that the VenaCure and Vari-Lase products lack <u>any</u> substantial noninfringing uses. 35 U.S.C. § 271(c). Thus, changes to the IFUs are irrelevant and cannot as a matter of law avoid contributory infringement.

Finally, AngioDynamics and VSI seek an injunction that would leave them free to distribute laser consoles and individual kit components without any restrictions at all – a thinly-veiled attempt to end-run the verdict and allow continued infringement and irreparable harm to Diomed.

**ARGUMENT**

I. **THERE IS NO BASIS IN LAW OR FACT FOR PREEMPTIVELY EXCLUDING CERTAIN TYPES OF LASER FIBERS FROM THE SCOPE OF THE INJUNCTION.**

Attempting to shut the door on possible contempt proceedings before Diomed has even had the opportunity to study their redesigned products and related documentation, AngioDynamics and VSI seek, in effect, an advisory opinion specifying that certain laser fibers

are "materially different" from the ones found to be infringing at trial. By using this language, the defendants prematurely seek an adjudication that the Court affirmatively exclude certain devices from the scope of the injunction. The Federal Circuit has rejected such "carve-out" attempts as premature even when the products in question were on sale <u>before</u> the underlying judgment. <u>Int'l Rectifier Corp. v. IXYS Corp.</u>, 383 F.3d 1312, 1318 (Fed. Cir. 2004) ("This court has never so held [that such devices should be affirmatively excluded from the scope of an injunction], and we decline to do so now.") Here, moreover, Diomed could not possibly have addressed the redesigned products at trial, as the defendants had not even disclosed their existence, let alone produced them or related documentation. VSI waited until after the verdict to disclose its new fiber, and the AngioDynamics design remains under wraps to this day. Neither company has yet provided Diomed with any design files, test data, or other materials important for determining whether those products are materially different from the ones already found to infringe.[2]

      Contempt motions offer a vital mechanism for ensuring that patent litigation does not devolve into a costly game of whack-a-mole, with defendants making trivial changes so as to stay one step ahead of injunctive relief. The Federal Circuit has emphasized that a defendant introducing a redesigned product still "bears the risk that the enjoining court may find [the] changes to be too insubstantial to avoid contempt." <u>KSM Fastening Sys., Inc. v. H.A. Jones Co.</u>, 776 F.2d 1522, 1526 (Fed. Cir. 1985) It has also held that the time to apply this standard to any purported redesign is as part of a contempt motion, not at the time that the injunction enters. <u>Int'l Rectifier</u>, 383 F.3d at 1318 ("If in the future IR chooses to bring a contempt motion against

---

[2] Defendants' withholding of this information was a violation of the discovery rules from which they ought not be permitted to benefit. <u>See</u> Fed. R. Civ. P. 26(e)(2); <u>Klonoski v. Mahlab</u>, 156 F.3d 255, 268 (1st Cir. 1998).

IXYS's modified products, the district court <u>at that time</u> must . . . apply [] the standard established by this court in <u>KSM</u>.") (emphasis added).

Trying to circumvent these time-tested procedures, the defendants ask the Court for a preemptive advisory ruling that any fiber with a "centering device, spacer or other mechanism to prevent contact" is "materially different" from the products that the jury addressed at trial. The record is not sufficiently developed for the Court to reach such a conclusion with respect to the new VSI product, let alone the non-existent AngioDynamics one. Diomed accordingly has not yet had a full and fair opportunity to assess the defendants' bald conclusion (Opp. at 3) that any fibers with centering or spacer devices are "materially – i.e., more than colorably – different" from the products that the jury considered.

To justify their extraordinary request, AngioDynamics and VSI rely on Diomed's purported "admissions" during trial that using the new fibers does not infringe the '777 patent. Defendants mischaracterize the record. First, Diomed's attorneys were referring to <u>defendants'</u> contention that certain embodiments shown in their patent applications avoided contact. This, of course, is not an "admission" that such contentions were correct.[3] In fact, with respect to the embodiment shown in VSI's patent application, VSI's CEO Howard Root told this Court, in a sworn affidavit, that the embodiment did "<u>not</u> concern a device seeking to prevent contact." (D.I. 136 ¶ 5) (emphasis added). VSI's present contentions contradict its prior ones.

In any event, the embodiment shown in the VSI patent application is different from the one that VSI belatedly disclosed to Diomed. When VSI ultimately produced a sample more than two weeks after the verdict, it was apparent that this fiber has a ceramic coating different in shape, design, and material properties from the wire coil shown in the patent application that the

---

[3] In any event, as the Court instructed the jury, arguments of counsel are not "evidence." (3-21 (Jury Charge) 98).

parties referenced during trial. The discussion of the VSI patent application at trial simply has no relevance to the embodiment addressed in defendants' motion.

For its part, AngioDynamics to this day has not disclosed what the structure of its supposed "NeverTouch" fiber will be, if and when any such product is released into the market. Moreover, <u>neither</u> defendant has disclosed material data sheets, design files, or other technical information about the properties, use, or effects of these products.

After improperly withholding from Diomed prior to trial the existence of these purported design-arounds – information material to numerous issues in the case, including willfulness – defendants now seek to cloak their conduct in mischaracterizations of Diomed's trial statements. They cite snippets of testimony (and in some cases attorney argument, which is not evidence) regarding "spacer" and "centering" devices generally. But the quoted materials say nothing at all about whether any <u>particular</u> designs (such as the new products, which Diomed had not yet seen) include mechanisms that actually prevent contact.

In sum, any question of whether doctors using the VSI "Bright Tip" or AngioDynamics "NeverTouch" fiber (whatever that may turn out to be) infringe the '777 patent is premature. The issue would properly come before the Court only upon a motion for contempt, after Diomed has been allowed to assess the products and determine through appropriate discovery whether to bring such a motion. See <u>Int'l Rectifier</u>, 383 F.3d at 1318 ("If in the future IR chooses to bring a contempt motion against IXYS's modified products, the district court at that time must determine whether contempt proceedings are appropriate . . . . It would have been improper for the district court to address that issue until or unless it was properly before the court.").

## II. NARROWING THE INJUNCTION TO COVER ONLY INSTRUCTIONS RATHER THAN PRODUCTS WOULD IGNORE THE JURY'S VERDICT.

AngioDynamics and VSI also object to the scope of Diomed's injunction on the theory that they should be allowed to sell even their existing products so long as they feature revised IFUs. This argument fails for two reasons: First, just because the IFUs were among the <u>evidence</u> of inducement to infringe does not mean that absent such instructions no inducement occurs. Defendants have brought about direct infringement in multiple ways besides the IFUs (including physician trainings, published articles, etc.), which cannot be undone. A cosmetic alteration to an instruction does not change that reality found by the jury. Second, an entirely independent basis for Diomed's requested injunction is the jury's finding of <u>contributory</u> infringement, which as a matter of law has nothing to do with the IFUs, deriving instead from the jury's finding (and indeed the undisputed evidence) that defendants' products have no substantial noninfringing uses.

### A. **<u>Defendants' Proposal Ignores Inducement that Goes Well Beyond the IFUs.</u>**

Defendants' suggestion that they can evade injunctive relief by tweaking their IFUs overlooks the training that the defendants have already provided doctors to use the products in an infringing manner. AngioDynamics and VSI have long trained physicians to use their products in a way that the jury found to constitute direct infringement. The defendants do not even try to explain why these doctors would suddenly change their practices upon receiving a slightly rewritten leaflet included with a product that they have already used dozens or hundreds of times.[4] The IFUs simply are not the only (or even the primary) means by which defendants have over the past several years trained an entire generation of doctors to use their products in an

---

[4] Indeed, one of AngioDynamics' own physician trainers admitted that he has *never* read the company's instructions. (3-22 (Golan) 134).

infringing manner. For this reason, courts do not limit the scope of a permanent injunction by allowing defendants simply to alter such instructions. As one court recently explained in declining to narrow an injunction's scope:

> Merely modifying the instructional materials will not undo the years of infringement. Doctors who have used the TFN and PFN products for years in an infringing manner are not likely to stop infringing if the injunction is limited to the use of TFN and PFN products with the step of interfragmentary compression.

Smith & Nephew, Inc. v. Synthes (U.S.A.), 466 F. Supp. 2d 978, 989 (W.D. Tenn. 2006).

### B. Defendants' Argument Ignores the Contributory Infringement Verdict.

Defendants' argument fails for a second and independent reason as well: It ignores the jury's verdict of contributory infringement (which does not turn on the contents of any IFUs). By returning verdicts of contributory infringement against each defendant, the jury necessarily found that the AngioDynamics and VSI lasers and kits lack any substantial noninfringing uses. That is how the Court instructed the jury, and properly so. See 35 U.S.C. § 271(c); see also 3-26 Tr. (Court's Instruction) at 119 ("In order for Diomed to prove that the defendants have committed contributory infringement, it must prove by a preponderance of the evidence that [the] product was not capable of a substantial, noninfringing use.").

The defendants do not cite a single case in which a court limited a permanent injunction against an adjudged contributory infringer so as to allow the party to continue selling the products that had been the subject of the litigation. Courts in fact regularly enjoin product sales on the basis of contributory infringement judgments. E.g., Standard Havens Prods v. Gencor Indus., 953 F.2d 1360, 1375 (Fed. Cir. 1991); MPT, Inc. v. Marathon Labels, Inc., 2007 WL 184747, at *15 (N.D. Ohio 2007) ("The jury has already found that the [product] does not have a substantial noninfringing use. Thus, any use . . . will necessarily be to practice the [infringing] method."). By contrast, the defendant in Mickowski v. Visi-Trak Corp., 36 F. Supp. 2d 171

- 7 -

(S.D.N.Y. 1999) was liable only for inducing infringement, not contributory.[5]  In <u>Allergen Sales, Inc. v. Pharmacia & Upjohn, Inc.</u>, 41 U.S.P.Q.2d 1283 (S.D. Cal. 1996), the court likewise denied a preliminary injunction motion because the plaintiffs had <u>failed</u> to show that they would likely prevail on the merits of their contributory infringement claim.  Here, by contrast, Diomed already <u>has</u> prevailed on it.

Defendants' argument recycles evidence that they offered unsuccessfully to the jury.  Before reaching their verdict of contributory infringement, jurors heard the very same theory that AngioDynamics and VSI now offer – the idea that one could change the tumescent fluid instructions to avoid contact.  During closing arguments, counsel for VSI even highlighted Dr. Fan's supposed "admission" on this subject. (3-26 (Vitt) 21).[6]  Indeed, both defendants tried throughout trial to establish that tumescent fluid alone does <u>not</u> necessarily lead to contact.  In returning a verdict of contributory infringement, the jurors disagreed.

AngioDynamics and VSI also seek another bite at the apple by suggesting possible noninfringing uses that they failed to raise at trial.  That there are no noninfringing uses has been resolved by the jury.  Defendants are collaterally estopped from rearguing it.

---

[5] More limited injunctions may be appropriate in such cases, as inducement by law requires *more* than the mere sale of a product.

[6] Dr. Fan, of course, made no such "admission."  She was asked hypothetically whether with a very small amount of tumescent one could collapse the vein down only partially.  But the evidence of record was that doctors do not practice any such "partial" compression, nor would they do so since that would not bring about an effective treatment.  See <u>Smith & Nephew</u>, 466 F. Supp. 2d at 988-89 (declining to limit injunction to the use of the defendant's products with a particular technique, which the record suggested might be "essential for surgeons to use the…products effectively").

In particular, AngioDynamics and VSI have cited (Opp. at 11) revised IFUs that they are distributing or planning to distribute.[7] Allowing parties to hold such information back during trial and then later present it to the Court would disregard the jury's role as the finder of fact. If the defendants had evidence to suggest that there were substantial noninfringing ways their lasers or kits could be used, trial was the time to raise it (if not sooner, pursuant to their discovery obligations). Dana Corp. v. NOK, Inc., 882 F.2d 505, 508 (Fed. Cir. 1989) (applying collateral estoppel: "There is no indication that such evidence was not then in existence or otherwise not available to Dana through no fault of its own."); In re Sonus Networks, Inc. Shareholder Derivative Litigation, 422 F. Supp. 2d 281, 293 n.6 (D. Mass. 2006) ("To allow this type of evidence would contravene the very principles on which collateral estoppel is based.").

### III. DIOMED'S PROPOSED LANGUAGE IS NARROWLY TAILORED TO PRECLUDE THE DEFENDANTS FROM CONTINUING TO INDUCE INFRINGEMENT OR CONTRIBUTORILY INFRINGE.

Diomed's proposed injunction is limited on its face to products that the defendants make, use, sell, offer to sell, or import "for the endovenous laser treatment of varicose veins." (D.I. 232 at 2). For example, the order would cover laser fibers and consoles that are "marketed" for such infringing treatments. (Id.).

This language is necessary in order to preclude the defendants from continuing to induce patent infringement and thereby irreparably harm Diomed. Marketing a product for a particular infringing use is a classic form of inducement. Chiuminatta Concrete Concepts, Inc. v. Cardinal

---

[7] These revised IFUs are not properly before the Court, as they were not trial evidence and as any question of whether a future product infringes is premature until a motion for contempt raises the issue. In any event, the revised IFUs would not change the analysis even if it were proper for the Court to consider them. Both proceed from the false premise that one can inject tumescent anesthesia without compressing the vein. That contention was rejected by the jury. Indeed, the IFUs are another attempt (similar to the original IFUs' nonsensical "warnings" to avoid contact) to paper over their sale of infringing kits and lasers with meaningless suggestions to use them in a way that no one does or would (particularly after being trained by defendants).

Indus., 145 F.3d 1303, 1311-12 (Fed. Cir. 1998) (affirming summary judgment of inducement based on the defendant's advertising). If the injunction were limited on its face to packaged kits alone, AngioDynamics and VSI would be free to target their existing customer bases – doctors whom the companies have already trained – and emphasize (whether explicitly or implicitly) that the defendants remain one-stop sources for all of the items needed to perform a procedure that the jury found to infringe Diomed's patent. Taking their product out of one box and packaging it in two boxes does not avoid infringement, and the notion that it might makes light of the Court's authority to stop, once and for all, the infringing conduct defendants have engaged in for over four years. This is the same problem that the Smith & Nephew court addressed when it declined the adjudged infringer's motion to narrow the injunction. 466 F. Supp. 2d at 988 ("Because Synthes has designed products and then taught the medical community to use those products in an infringing manner, it would work a manifest injustice to allow continued infringement.").

Diomed's proposal is in fact even *more* narrowly tailored than the jury's verdict would dictate. By finding contributory infringement, the jurors necessarily concluded that the VenaCure and Vari-Lase products[8] lack any substantial noninfringing functions at all, in any market (not just when sold into the endovenous laser market).

Defendants' suggestion that the FDA cleared the 980 nm laser console for a variety of uses is beside the point: AngioDynamics and VSI admitted at trial that they do not market their products for any purpose other than the endovenous laser ablation of varicose veins. (3-20 (Doster) 17; 3-21 (Jakubowski) 182). AngioDynamics' Vice President of Product Development

---

[8] Even the verdict form that AngioDynamics and VSI proposed did not distinguish between different types of VenaCure and Vari-Lase products (e.g., kits versus consoles). (D.I. 193). Not having sought any such distinction in the verdict, defendants cannot now be heard to argue that somehow one of those categories of infringing products should be outside the scope of the injunction. The fact is, as the jury found, both are used for (and only for) infringement, a fact defendants had conceded both before and at trial.

conceded that he could not even recall any discussions about other uses. (3-14 (Recinella) 111-12).[9] The defendants' newfound suggestion that there are alternative applications is too little, too late. The time for such evidence was at trial. In any event, hypothetical possibilities are irrelevant and do not alter the reality that AngioDynamics and VSI sell their products for laser ablation only. Mentor H/S, Inc. v. Med. Device Alliance, Inc., 244 F.3d 1365, 1371 (Fed. Cir. 2001) ("The jury was entitled to reject Misonix's assertions that Lysonix 2000 had other potential uses because the record does not indicate any actual uses of the device."); Vesture Corp. v. Thermal Solutions, Inc., 284 F. Supp. 2d 290, 317 (M.D.N.C. 2003) (granting summary judgment of contributory infringement because, while the defendant's device had "possible" noninfringing functions, it was not enough that a product "be physically capable" of such use).

In short, the record would support an injunction precluding AngioDynamics and VSI from selling consoles or kit components in any context – let alone the more limited set of circumstances covered in Diomed's proposed injunction. Only after the verdict did the defendants place any stock in supposedly "noninfringing uses" unrelated to laser vein ablation. That is not how they sell their products, and more to the point they had their chance to argue this issue to a jury and were unsuccessful.

When exercising its broad power in shaping the scope of an injunction following a judgment of patent infringement, this Court must ensure that the injunctive relief is meaningful and effective. E.g., Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc., 750 F.2d 1552, 1564

---

[9] Similarly, the evidence showed that various components of the AngioDynamics and VSI kits are specifically designed for endovenous laser ablation alone. (Ex. 65 at VSI 7223; Ex. 1034). For instance, the AngioDynamics guidewire is "double-ended" to offer physicians several options "when negotiating tortuous veins." (Ex. 1034). The sheath likewise is highly visible on ultrasound, has a low profile for easy vein access, and features centimeter markers to allow for "a more accurate pull-back rate per centimeter." (Id.). These are hardly "standard products that can be used in a multitude of other procedures." (Opp. at 2).

(Fed. Cir. 1984) (holding that district court abused its discretion in excluding certain activities from the scope of the injunction).  Here, the injunction should be broad enough to ensure that AngioDynamics and VSI do not sell consoles or kit components for some nominal purpose while in reality continuing to induce customers to infringe Diomed's patent.

## CONCLUSION

For the reasons set forth above and in Diomed's opening memorandum (D.I. 231), Diomed respectfully requests the Court enter a permanent injunction in the form that Diomed proposed (D.I. 232).

                                                  Respectfully submitted,
                                                  DIOMED, INC.
                                                  By its attorneys,

Dated: May 9, 2007                              /s/ Michael A. Albert
                                                  Michael A. Albert (BBO #558566)
                                                  malbert@wolfgreenfield.com
                                                  Michael N. Rader (BBO #646990)
                                                  mrader@wolfgreenfield.com
                                                  John L. Strand (BBO #654985)
                                                  jstrand@wolfgreenfield.com
                                                  WOLF, GREENFIELD & SACKS, P.C.
                                                  600 Atlantic Avenue
                                                  Boston, MA 02210
                                                  (617) 646-8000

## CERTIFICATE OF SERVICE

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF).  Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

                                                  /s/ Michael A. Albert